**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand
ndiamand@lchb.com
Douglas I. Cuthbertson
dcuthbertson@lchb.com
Abbye R. Klamann (SBN 311112)
aklamann@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (SBN 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs individually and on behalf of all others similar situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| MICHAEL MCDONALD, TAMARA DRAUT, and their children, P.G.M., P.S.M., P.R.M., and H.D.-F., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KILOO APS; SYBO GAMES APS; ADCOLONY, INC.; ALTABA INC.; CHARTBOOST, INC.; FLURRY, INC.; INMOBI PTE LTD.; INMOBI INC.; IRONSOURCE LTD.; IRONSOURCE USA INC.; TAPJOY, INC.; and VUNGLE, INC.<br><br>Defendants. | Case No. 3:17-cv-4344<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

I.      **INTRODUCTION**

1.      This is an action brought by the parents of children[1] who, while playing online games via smart phone apps, have had their personally identifying information exfiltrated by the defendant game developers and their partners, for future commercial exploitation, in direct violation of the federal Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501–6506.  Plaintiffs bring claims under state laws to obtain an injunction to cease these practices, sequester illegally obtained information, and damages.

II.     **PARTIES**

**Plaintiffs**

2.      Plaintiffs are the parents and their children who used online gaming apps via websites or online services operated by the Defendants.

3.      Plaintiff Michael McDonald, and his children, "P.G.M.," "P.S.M.," and "P.R.M.," reside in Blue Lake, California.  Mr. McDonald brings this action on behalf of himself, P.G.M., P.S.M., and P.R.M., and all others similarly situated.  P.G.M., P.S.M., and P.R.M. were under the age of 13 while using the gaming app Subway Surfers.

4.      Plaintiff Tamara Draut and her child, "H.D.-F.," reside in Brooklyn, New York.  Ms. Draut brings this action on behalf of herself, H.D.-F, and all others similarly situated.  H.D.-F was under the age of 13 while using the gaming app Subway Surfers.

**The Developer Defendants**

5.      The Defendants Kiloo and Sybo (collectively, the "Developer Defendants") developed and marketed the online gaming apps used by Plaintiffs, and many others in the United States.[2]

6.      Defendant Kiloo ApS ("Kiloo") is a commercial mobile game development company headquartered at Klostergade 28, First Floor, 8000 Aarhus C in Copenhagen, Denmark.

---

[1] All references to "children" contained herein refer to persons under the age of 13 pursuant to COPPA's definition of children.  *See* 16 C.F.R. § 312.2.

[2] *See* https://sensortower.com/ios/us/kiloo/app/subway-surfers/512939461/ (last visited July 13, 2017) (approximately 32% of Subway Surfers users are based in the United States).

CLASS ACTION COMPLAINT
CASE NO. 3:17-CV-4344

7.      Defendant Sybo Games ApS ("Sybo") is a commercial mobile game development company headquartered at Jorcks Passage 1A, 4, 1162 Copenhagen K in Denmark.

8.      Kiloo and Sybo co-developed the gaming app Subway Surfers.

**The SDK Defendants**

9.      The "SDK Defendants" – identified in paragraphs 10 through 16 below – are entities which provided their own proprietary computer code to the Developer Defendants Kiloo and Sybo, known as software development kits ("SDK"), for installation and use in the Developer Defendants' gaming apps, including Subway Surfers.  Each of the SDK Defendants named herein embedded their respective SDKs in the Developer Defendants' gaming apps, causing the transmittal of app users' personally identifying information to the SDK Defendants to facilitate subsequent behavioral advertising.

10.      SDK Defendant AdColony, Inc. ("AdColony") is an American technology company with offices throughout the world, headquartered at 11400 W. Olympic Blvd., 12th Floor, Los Angeles, CA 90064.

11.      SDK Defendant Chartboost, Inc. ("Chartboost") is an American technology headquartered at 85 2nd Street, Suite 100, San Francisco, CA 94105.

12.      SDK Defendant Flurry, Inc. is an American technology company headquartered at 360 3rd Street, Suite 750, San Francisco, CA 94107.  Flurry Inc. is a subsidiary of Defendant Altaba Inc., which is headquartered at 140 East 45th Street, 15th Floor, New York, NY 10017 (Flurry, Inc. and Altaba Inc. together, "Flurry").

13.      SDK Defendant InMobi Pte Ltd. is a technology company with offices throughout the world.  Its headquarters are located at 30 Cecil Street # 19-08, Prudential Tower, Singapore 049712.  SDK Defendant InMobi Inc. is a U.S. subsidiary wholly owned by InMobi Pte Ltd.  Its headquarters are located at 475 Brannan Street, Suite 420, San Francisco, CA 94107.  On information and belief, InMobi Inc. functions as the marketing arm and acts as a general manager of its parent company, InMobi Pte. Ltd. (InMobi Inc. and InMobi Pte. Ltd. together, "InMobi").

14.      SDK Defendant ironSource Ltd. is a global technology company with offices throughout the world and headquarters at 121 Menachem Begin Road, Azrieli Sarona Tower, Tel

Aviv.  Upon information and belief, SDK Defendant ironSource USA Inc. is the U.S. subsidiary of ironSource Ltd., headquartered at 17 Bluxome Street, San Francisco, CA 94107, which acts as a general manager of its parent company, ironSource Ltd. (ironSource Ltd. and ironSource USA Inc. together, "ironSource").  SDK Defendant ironSource owns and operates the advertising SDK "Supersonic."

15.     SDK Defendant Tapjoy, Inc. ("Tapjoy") is an American technology company with offices throughout the world, headquartered at 111 Sutter Street, 12th Floor, San Francisco, CA 94104.

16.     SDK Defendant Vungle, Inc. ("Vungle") is an American technology company with offices throughout the world and headquarters at 185 Clara Street, San Francisco, CA 94107.

III.     **JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some defendants.

18.     This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, have substantial aggregate contacts with the United States, including in this District, engaged and are engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States.

19.     In accordance with 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact business in this District, and because numerous Defendants reside in this District.

IV.     **INTRADISTRICT ASSIGNMENT**

20.     Pursuant to Civil L.R. 3-2(c), assignment to this Division is proper because a substantial part of the conduct which give rise to Plaintiffs' claims occurred in this District. Defendants market their products throughout the United States, including in San Francisco and

Alameda counties.  In addition, most SDK Defendants are headquartered in or have offices in San Francisco.

## V.     ALLEGATIONS APPLICABLE TO ALL COUNTS

### A.     The Programming of Mobile Online Gaming Apps Enables the Collection of Personal Data.

21.     The number of Americans using and relying on mobile devices connected to the internet ("smart" phones, tablets, and other devices) had increased to 77% of Americans by November 2016.  Consumers increasingly use smart devices to play their favorite online games, or "apps."  Many apps are aimed at children, who increasingly use smart devices to play their favorite games.

22.     Most consumers, including parents of children consumers, do not know that apps created for children are engineered to surreptitiously and unlawfully collect the child-users' personal information, and then exfiltrate that information off the smart device for advertising and other commercial purposes.

23.     App developers contract with third-parties for the right to embed third-party computer code into the developers' apps, for various purposes.  For example, a developer may incorporate Google's "In-App Billing SDK," so that app users may make purchases and payments directly to the developer.  In this way, app developers are like vehicle manufacturers, which also incorporate third-party components, such as airbags or brake pads, into their vehicles, rather than developing their own component parts from scratch.

24.     Advertising-specific SDKs are blocks of computer code which operate to secretly collect an app user's personal information and track online behavior to facilitate behavioral advertising or marketing analysis.  In the case of an advertising SDK, the creator of the SDK will embed its SDK code into the underlying code of the app itself, collect personal information to serve behavioral advertisements, and then pay the app developer based on the number of ads shown.  This practice is a substantial source of many app developers' revenue, enabling app developers to allow users to download the apps without charging a purchase price.[3]

---

[3] "Only 33% of US Mobile Users Will Pay for Apps This Year," eMarketer (Feb. 5, 2015),

25.     App developers and their SDK-providing partners can track children's behavior while they play online games with their mobile devices by obtaining critical pieces of data from the mobile devices, including "persistent identifiers," typically a unique number linked to a specific mobile device (*e.g.*, an individual's smart phone may be identified as "45 125792 45513 7"). SDK providers, such as the SDK Defendants, use their advertising SDKs, embedded into an app in conjunction with the app developers, such as the Developer Defendants, to capture and collect persistent identifiers associated with a particular child user from her mobile device. These persistent identifiers allow SDK providers to detect a child's activity across multiple apps and platforms on the internet, and across different devices, effectively providing a full chronology of the child's actions across devices and apps. This information is then sold to various third-parties who sell targeted online advertising.

26.     Key digital privacy and consumer groups described why and how a persistent identifier alone facilitates behavioral advertising:

> With the increasing use of new tracking and targeting techniques, any meaningful distinctions between personal and so-called non-personal information have disappeared. This is particularly the case with the proliferation of personal digital devices such as smart phones and Internet-enabled game consoles, which are increasingly associated with individual users, rather than families. This means that marketers do not need to know the name, address, or email of a user in order to identify, target and contact that particular user.

*See* Comments of The Center for Digital Democracy, et al., FTC*, In the Matter of Children's Online Privacy Protection Rule* at 13-14 (Dec. 23, 2011).

27.     In other words, the ability to serve behavioral advertisements to a specific user no longer turns upon obtaining the kinds of data with which most consumers are familiar (email addresses, etc.), but instead on the surreptitious collection of persistent identifiers, which are used in conjunction with other data points to build robust online profiles. Permitting technology

---

*available at* https://www.emarketer.com/Article/Only-33-of-US-Mobile-Users-Will-Pay-Apps-This-Year/1011965 (last visited July 31, 2017) ("Put a dollar sign in front of an app, and the number of people who are willing to download and install it drops dramatically. According to a new forecast from eMarketer, 80.1 million US consumers will pay for mobile apps at least once this year, representing only 33.3% of all mobile users.").

companies to obtain persistent identifiers associated with children exposes them to the behavioral advertising (as well as other privacy violations) that COPPA was designed to prevent.

28.     When children are tracked over time and across the internet, various activities are linked to a unique and persistent identifier to construct a profile of the user of a given smart device.  Viewed in isolation, a persistent identifier is merely a string of numbers uniquely identifying a user, but when linked to other data points about the same user, such as app usage, geographic location (including likely domicile), and internet navigation, it discloses a personal profile that can be exploited in a commercial context.  The chain of events typically works as follows:  an app developer installs an SDK in an app, which collects persistent identifiers, permitting the SDK entity to sell the child's persistent identifier to an advertising network or third-party data aggregator (who then further resells the data to additional partners).  An "Ad Network" will store the persistent identifiers on its servers.  Later, other app or SDK developers sell that same child's persistent identifier to the Ad Network, bolstering the Ad Network's profile of the child, increasing the value of the child's data and, relatedly, the ability to serve a more highly-targeted ad to a specific device.  Multiple Ad Networks or other third-parties can then buy and sell data, exchanging databases amongst themselves, creating an increasingly sophisticated and merchantable profile of how, when, and why a child uses her mobile device, along with all of the demographic and psychographic inferences that can be drawn therefrom.

29.     The Ad Networks, informed by the surreptitious collection of data from children, will assist in the sale of advertising placed within the gaming apps and targeted specifically to children.

30.     In sum, children's personal information is captured from them, as is information of their online behavior, which is then sold to third-parties who track multiple data points associated with a personal identifier, analyzed with the sophisticated algorithms of Big Data to create a user profile, and then used to serve behavioral advertising to children whose profile fits a set of demographic and behavioral traits.

B.     **COPPA Outlaws the Collection of Children's Personal Information Without Verifiable Parental Consent.**

31.     Children are especially vulnerable to online tracking and the resulting behavioral advertising.  As children's cognitive abilities still are developing, they have limited understanding or awareness of sophisticated advertising and therefore are less likely than adults to distinguish between the actual content of online gaming apps and the advertising content that is targeted to them alongside it.  Thus, children may engage with advertising content without realizing they are doing so.  *See* Comments of The Center for Digital Democracy, et al., FTC*, In the Matter of Children's Online Privacy Protection Rule* at 13-14 (Dec. 23, 2011).

32.     Recognizing the vulnerability of children in the Internet age, in 1999 Congress enacted the Children's Online Privacy Protection Act (COPPA).  *See* 15 U.S.C. §§ 6501–6506.  COPPA's express goal is to protect children's privacy while they are connected to the internet.[4]  Under COPPA, developers of child-focused apps, and any third-parties working with these app developers, cannot lawfully obtain the personal information of children under 13 years of age without first obtaining verifiable consent from their parents.

33.     COPPA applies to any operator of a commercial website or online service (including an app) that is directed to children and that: (a) collects, uses, and/or discloses personal information from children, or (b) on whose behalf such information is collected or maintained.  Under COPPA, personal information is "collected or maintained on behalf of an operator when . . . [t]he operator benefits by allowing another person to collect personal information directly from users of" an online service.  16 C.F.R. § 312.2.  In addition, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children.

34.     Under COPPA, "personal information" includes more commonly understood information like names, email addresses, and social security numbers, but it also includes "persistent identifier[s] that can be used to recognize a user over time and across different Web

---

[4] *See* Federal Trade Commission, "New Rule Will Protect Privacy of Children Online," Oct. 20, 1999, *available at* https://www.ftc.gov/news-events/press-releases/1999/10/new-rule-will-protect-privacy-children-online (last visited July 31, 2017).

sites or online services."  16 C.F.R. § 312.2.  COPPA's broad definition of "personal

information" is as follows:

> "individually identifiable information about an
> individual collected online," which includes (1) a first and last
> name; (2) a physical address including street name and name of a
> city or town; (3) online contact information (separately defined as
> "an email address or any other substantially similar identifier that
> permits direct contact with a person online"); (4) a screen name or
> user name; (5) telephone number; (6) social security number; (7) a
> media file containing a child's image or voice; (8) geolocation
> information sufficient to identify street name and name of a city or
> town; (9) a "persistent identifier that can be used to recognize a user
> over time and across different Web sites or online services"
> (including but not limited to "a customer number held in a cookie,
> an Internet Protocol (IP) address, a processor or device serial
> number, or unique device identifier"); and (10) any information
> concerning the child or the child's parents that the operator
> collects then combines with an identifier.

35.     The FTC regards "persistent identifiers" as "personally identifiable" information

that can be reasonably linked to a particular child.  The FTC amended COPPA's definition of

"personal information" to clarify the inclusion of persistent identifiers.  *See*

https://www.ftc.gov/news-events/blogs/business-blog/2016/04/keeping-online-advertising-

industry (2016 FTC Blog post from Director of the FTC Bureau of Consumer Protection) (last

visited July 19, 2017).

36.     In order to lawfully collect, use, or disclose personal information, COPPA requires

that an operator meet specific requirements, including *each* of the following:

> i.     Posting a privacy policy on its website or online service providing

clear, understandable, and complete notice of its information practices, including what

information the website operator collects from children online, how it uses such information, its

disclosure practices for such information, and other specific disclosures as set forth in the Rule;

> ii.    Providing clear, understandable, and complete notice of its

information practices, including specific disclosures, directly to parents; and

> iii.   Obtaining verifiable parental consent prior to collecting, using,

and/or disclosing personal information from children.

37.     Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child. . . [r]eceives notice of the operator's personal information collection, use, and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personal information." 16 C.F.R. § 312.2.

38.     The FTC recently clarified acceptable methods for obtaining verifiable parental consent, which include: (i) providing a consent form for parents to sign and return; (ii) requiring the use of a credit card/online payment that provides notification of each transaction; (iii) connecting to trained personnel via video conference; (iv) calling a staffed toll-free number; (v) emailing the parent soliciting a response email plus requesting follow-up information from the parent; (vi) asking knowledge-based questions; or (vii) verifying a photo ID from the parent compared to a second photo using facial recognition technology.  *See* https://www.ftc.gov/tips-advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance (last visited July 20, 2017).

C.     **Defendants Collect and Use Children's Personal Information Through Their Game Tracking Apps.**

39.     Kiloo and Sybo co-developed the mobile online gaming app Subway Surfers which they have marketed since 2012.  By 2015, it had been downloaded more than 1 billion times.[5]  By 2016, it became the top Google Play game of all time, calculated by both revenue and number of downloads.[6]

40.     In addition to Subway Surfers, the Developer Defendants have developed and marketed other gaming apps that, like Subway Surfers, track their users.  Sybo has developed an app called Blades of Brim, and Kiloo has developed these other apps:  Frisbee Forever, Frisbee Forever 2, Spellbinders, Smash Champs, Tesla Tubes, and Storm Blades (with Subway Surfers, these apps are collectively referred to as the "Game Tracking Apps").  Since at least 2012, the

---

[5]http://www.gamasutra.com/view/pressreleases/254458/Subway_Surfers_Reaches_One_Billion_Downloads_Worldwide.php (last visited July 19, 2017).
[6] http://www.adweek.com/digital/report-subway-surfers-most-downloaded-google-play-game-ever/ (last visited July 25, 2017).

1   Developer Defendants, individually and together, have offered one or more of the Games

2   Tracking Apps for download from Apple's App Store, Google Play, and Amazon.

3       41.     The Developer Defendants collect and maintain personal information about the

4   users of the Game Tracking Apps, including users under the age of 13, and permit the SDK

5   Defendants to embed their advertising SDKS to collect those users' personal information and use

6   that information to track those users over time and across different websites and online services.

7       42.     The Developer Defendants have control over and responsibility for any advertising

8   and data mining permitted by the Game Tracking Apps.  The Developer Defendants have failed

9   to safeguard children's personal information and ensure that third-parties' collection of data from

10  children is lawful, in part, by allowing the SDK Defendants to embed advertising SDKs in the

11  Game Tracking Apps directed at children.

12      43.     Each SDK Defendant has an SDK placed in Subway Surfers which collects

13  persistent identifiers to track children app users over time and across the internet.  In addition to

14  Subway Surfers, the other Game Tracking Apps contain SDKs that surreptitiously track child

15  users for behavioral advertising, analytics, or both.  Subway Surfers and the other Game Tracking

16  Apps contain multiple SDKs, each operating independently from and in concert with one another.

17      44.     Each SDK Defendant facilitates behavioral advertising in the mobile app space by

18  collecting personal information about app users that enables advertisers and other third-parties to

19  reach those users over time and across different websites and online services.  Each SDK

20  Defendant does so through its proprietary SDK embedded in the Developer Defendants' Apps –

21  including Subway Surfers – which collect personal information about children under the age of

22  13 so that advertisers and other third-parties can target those children over time and across

23  different websites and online services.

24      45.     Analytics and network analysis tools have detected the persistent identifiers that

25  each Game Tracking App accessed in real time, determined which SDKs reside in the Game

26  Tracking Apps' code, and recorded all network traffic, including encrypted data.  That

27  documentation contains raw network data, which shows the presence of persistent identifiers and

28  documents (i) when the Game Tracking Apps first attempted to access persistent identifiers, (ii)

which persistent identifiers were sent from a users' device, and (iii) the SDK Defendant to which they were sent.

46.     Extensive analysis conducted as to each of the Developer Defendants' Game Tracking Apps and as to each SDK Defendant, found substantial evidence that each of these child-directed apps collect and use children's persistent identifiers.

### 2.     The Developer Defendants' Tracking Game Apps Are Directed to Children.

47.     COPPA defines "children" as individuals under the age of 13.  *See* 16 C.F.R. § 312.2.  An app is directed to children if the "subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children."  *See* 16 C.F.R. § 312.2.

48.     Subway Surfers and the other Game Tracking Apps are directed to children under age 13.[7]  For example, Subway Surfers is a game in which users pretend to be a graffiti artist, described by the Developer Defendants as a "youthful hooligan," who runs down subway tracks to avoid capture by the police.  The description of Subway Surfers in both Apple's App Store and Google Play states, "DASH as fast as you can! DODGE the oncoming trains! Help Jake, Tricky & Fresh escape from the grumpy Inspector and his dog.  Grind trains with your cool crew! Colorful and vivid HD graphics!  Hoverboard Surfing!  Paint powered jetpack!  Lightning fast swipe acrobatics!  Challenge and help your friends!  Join the most daring chase!"  Below is a screenshot from the game:

---

[7] A description of the additional Game Tracking Apps, including screenshots of the games from the Apple Store and from Google Play, is appended hereto as Exhibit A.



49.     In the Apple Store, Google Play, and Amazon, Subway Surfers is rated as a game for users younger than 13 or as appropriate for most users.

50.     In 2015, the Children's Advertising Review Unit ("CARU"), the advertising industry's self-regulating body that is a branch of the Better Business Bureau, found that children under the age of 13 played Subway Surfers, that the game was directed to children, and that Defendant Kiloo may have violated COPPA.  CARU based its conclusion on the following:

> The protagonist is a brightly colored cartoon character and is himself a "kid" and the game is basic in its play pattern.  The game is featured as one of the "Games for Children" in the Android Store. It is rated for players age nine years and up in the Apple Store, players 10 years and up in the Google Play Store and for "All Ages" by Amazon.  Parents posting to the website of Common Sense Media rated the game as appropriate for children age nine and older, while children rated it appropriate for children age six or older.  The Australian Council on Children and the Media reviewed Subway Surfer and provided special advice for parents relating to the game.

*See* http://www.asrcreviews.org/following-caru-inquiry-app-maker-kiloo-agrees-to-modify-subway-surfers-privacy-policy-to-better-protect-child-players/ (last visited July 5, 2017).

51.     In response, Kiloo stated that – at that time – it did not "collect personal information that would require Kiloo to obtain verifiable parental consent under COPPA."  *See id.*  This statement was and remains false, because the Developer Defendants contracted then and contract now with the SDK Defendants to permit collection of personal information regarding children playing the Game Tracking Apps in violation of COPPA.

52.     Even if the Game Tracking Apps were not directed at children, on information and belief, Defendants have actual knowledge that they collected personal information from children. The Game Tracking Apps contain child-oriented "subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children."  16 C.F.R. § 312.2.

### 3.     The Defendants Are Operators under COPPA.

53.     Each Defendant is an "operator" pursuant to COPPA.  Specifically, COPPA defines an "operator," in pertinent part, as:

> any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation.

16 C.F.R. § 312.2.

54.     Both the Developer Defendants and the SDK Defendants operate the Game Tracking Apps entirely online.  Indeed, without a connection to the internet, Plaintiffs could not have downloaded and played Subway Surfers.

- 13 -

### 4. Defendants Engaged in the Foregoing Acts Without Obtaining Verifiable Parental Consent.

55. Defendants collected, used, or disclosed the personal information of Plaintiffs' children without notifying their parents. The Developer Defendants never obtained Plaintiffs' verifiable parental consent to collect, use, or disclose their children's personal information. The SDK Defendants failed to adequately ensure that when they embedded their advertising SDKS on the Game Tracking Apps or when they collected, used, or disclosed personal information from children via their advertising SDKs on the Game Tracking Apps, that the Developer Defendants had obtained verifiable parental consent for those children's use of the Game Tracking Apps.

56. Plaintiffs never knew that Defendants collected, disclosed, or used their children's personal information because Defendants at all times failed to provide Plaintiffs any of the required disclosures, never sought verifiable parental consent, and never provided a mechanism by which the Plaintiffs could provide verifiable consent.

### 5. Each SDK Defendant, in Coordination with the Developer Defendants, Collects, Uses, or Discloses Children's Personal Information Within Subway Surfers without Verifiable Parental Consent.

57. The Developer Defendants' Subway Surfers app contains each of the SDK Defendants' behavioral advertising SDKs.

58. Each SDK Defendant knows or should know that it operates within Subway Surfers.

59. Each SDK Defendant knows or should know the age rating or suggested guidance for Subway Surfers listed in the Google Play Store, the Apple App Store, or Amazon, within which the SDK Defendant operates.

60. Accordingly, each SDK Defendant knows or should know that its behavioral advertising SDK is contained within Subway Surfers, among other child-directed apps.

61. The Developer Defendants did not inform the Plaintiffs, their children, or class members that the SDK Defendants' behavioral advertising SDKs are incorporated into and operate within the Game Tracking Apps, including Subway Surfers, to collect Plaintiffs' children's and class members' personal information in the form of persistent identifiers.

- 14 -

62.     Each SDK Defendant failed to inform the Plaintiffs, their children, or class members that its behavioral advertising SDK is incorporated into and operates within Subway Surfers to collect the Plaintiffs' children's and class members' personal information in the form of persistent identifiers.

63.     The Developer Defendants did not obtain verifiable parental consent to track children playing the Game Tracking Apps, including Subway Surfers, via persistent identifiers, over time and across different websites and online services.

64.     Each SDK Defendant failed to obtain verifiable parental consent to track children playing Subway Surfers, via persistent identifiers, over time and across different websites and online services.

65.     Each SDK Defendant systemically tracks each user of Subway Surfers, including users under the age of 13, over time and across different websites and online services, through its behavioral advertising SDK.

66.     Each SDK Defendant does this by operating within Subway Surfers to collect, use, and share persistent identifiers from children who play Subway Surfers.

67.     Accordingly, each SDK Defendant, in coordination with the Developer Defendants, collects, uses, and/or discloses the personal information of the Plaintiffs' children's and class members under the age of 13, in the form of persistent identifiers, to track children's activity over time and across different websites and online services.

68.     By affirmatively incorporating the SDK Defendants' behavioral advertising SDKs into their child-directed apps and permitting them to track children by collecting, using, or disclosing their persistent identifiers without verifiable parental consent, the Developer Defendants violated COPPA.

69.     Further, each SDK Defendant knew or should have known that its SDK had been incorporated into Subway Surfers and that engaging in the above-described tracking and collection of children's personal information violated COPPA.

1

2

> **6.      The Developer Defendants Engage in Substantially Similar Conduct in
> Their Other Game Tracking Apps by Incorporating the SDK
> Defendants' Behavioral Advertising SDKs into Those Game Tracking
> Apps.**

3

4

70.      The Developer Defendants' other Game Tracking Apps also contain the behavioral

advertising SDKs, which operate in a substantially similar manner as in Subway Surfers.

5

6

71.      Defendant AdColony's AdColony SDK is incorporated into the following

additional Game Tracking Apps developed by Kiloo:  Smash Champs, Frisbee Forever 2,

7

8

Spellbinders, and Tesla Tubes.  The AdColony SDK is also incorporated into Sybo's Blades of

Brim.

9

10

72.      Defendant Chartboost's Chartboost SDK is incorporated into the following

additional Game Tracking Apps developed by Kiloo:  Smash Champs, Frisbee Forever, Frisbee

11

Forever 2, Stormblades, Spellbinders, and Tesla Tubes.

12

13

73.      Defendant Flurry's Flurry SDK is incorporated into the following additional Game

Tracking App developed by Kiloo:  Spellbinders.

14

15

74.      Defendant InMobi's InMobi SDK is incorporated into the following additional

Game Tracking Apps developed by Kiloo:  Smash Champs, Stormblades, Spellbinders, and Tesla

16

Tubes.

17

18

75.      Defendant ironSource's Supersonic SDK is incorporated into the following

additional Game Tracking App developed by Kiloo:  Spellbinders.

19

20

76.      Defendant Tapjoy's Tapjoy SDK is incorporated into the following additional

Game Tracking Apps developed by Kiloo:  Smash Champs and Spellbinders.

21

22

77.      Defendant Vungle's Vungle SDK is incorporated into the following additional

Game Tracking Apps developed by Kiloo:  Spellbinders and Tesla Tubes.

23

24

**D.      Fraudulent Concealment and Tolling.**

78.      The applicable statutes of limitations are tolled by virtue of Defendants' knowing

25

26

and active concealment of the facts alleged above.  Plaintiffs and class members were ignorant of

the information essential to the pursuit of these claims, without any fault or lack of diligence on

27

their own part.

28

79.     At the time the action was filed, Defendants were under a duty to disclose the true character, quality, and nature of its activities to Plaintiffs and the classes.  Defendants are therefore estopped from relying on any statute of limitations.

80.     Defendants' fraudulent concealment is common to the classes.

**E.       Named Plaintiff Allegations**

**Plaintiff Michael McDonald and His Children, P.G.M., P.S.M., and P.R.M.**

81.     In or around 2014 or 2015, Mr. McDonald downloaded the Developer Defendants' App "Subway Surfers" onto his mobile devices in order for his children, P.G.M., P.S.M., and P.R.M., to play the game.  P.G.M., P.S.M., and P.R.M. thereafter frequently played Subway Surfers on these devices an ongoing and continuous basis.

82.     On information and belief, during the time P.G.M., P.S.M., and P.R.M. played Subway Surfers, one or more of the SDK Defendants had, with the permission of the Developer Defendants, embedded one or more advertising SDKs which collected, disclosed, or used personal information and persistent identifiers of P.G.M., P.S.M., and P.R.M.. Defendants did not collect P.G.M.'s, P.S.M.'s, or P.R.M.'s personal information to provide support for the internal operations of Subway Surfers, but instead to profile P.G.M., P.S.M., and P.R.M. for commercial gain.

83.     The Defendants never asked Mr. McDonald for his verifiable parental consent – in any form or at any time – to collect, disclose, or use his children's personal information, including persistent identifiers, as required by COPPA.

84.     The Defendants never provided direct notice – as required by COPPA – to Mr. McDonald regarding Defendants' practices with regard to collecting, using, and disclosing his children's personal information, or regarding the rights of Mr. McDonald or his children under COPPA, either when Mr. McDonald initially downloaded the app, or afterwards, on the app's home or landing screen.

85.     Defendants' tracking and collection of P.G.M.'s, P.S.M.'s, and P.R.M.'s personal information without his verifiable parental consent is highly offensive to Mr. McDonald and

1    constitutes an invasion of his children's privacy and of Mr. McDonald's right to protect his

2    children from this invasion.

3         **Plaintiff Tamara Draut and Her Child, H.D.-F.**

4         86.    In 2015 or 2016, Ms. Draut downloaded the Developer Defendants' App "Subway

5    Surfers" onto her mobile device in order for her daughter to play the game.  H.D.-F. thereafter

6    frequently played Subway Surfers on this device on an ongoing and continuous basis.

7         87.    On information and belief, during the time H.D.-F. played Subway Surfers on the

8    device, one or more of the SDK Defendants had, with the permission of the Developer

9    Defendants, embedded one or more advertising SDKs which collected, disclosed or used

10   persistent identifiers of H.D.-F.  Defendants did not collect H.D.-F.'s personal information to

11   provide support for the internal operations of Subway Surfers, but to profile H.D.-F. for

12   commercial gain.

13        88.    The Developer Defendants never asked Ms. Draut for her verifiable parental

14   consent – in any form or at any time – to collect, disclose, or use her child's personal information,

15   including persistent identifiers, as required by COPPA.

16        89.    The Developer Defendants never provided direct notice to Ms. Draut – as required

17   by COPPA – regarding Defendants' practices with regard to collecting, using, and disclosing her

18   child's personal information, or regarding the rights of Ms. Draut or her child under COPPA,

19   either when Ms. Draut initially downloaded the app, or afterwards, on the app's home or landing

20   screen.

21        90.    Defendants' tracking and collection of H.D.-F.'s personal information without Ms.

22   Draut's verifiable parental consent is highly offensive to Ms. Draut and constitutes an invasion of

23   her child's privacy and of Ms. Draut's right to protect her child from this invasion.

24   **VI.    CLASS ALLEGATIONS**

25        91.    Plaintiffs seek class certification of the classes and subclass set forth herein

26   pursuant to Federal Rule of Civil Procedure 23.

27

28

92.     Plaintiffs seek class certification of claims for the common law privacy cause of action "Intrusion Upon Seclusion," on behalf of a multi-state class, with a class defined as follows:

> **The Multi-state Class:** all persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 13, or were younger than the age of 13 when they played the Game Tracking Apps, and their parents and/or legal guardians, from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

93.     Plaintiffs seek class certification of a claim for violation of the State of California Constitution Right to Privacy on behalf of a subclass of the Multi-state Class, with a subclass defined as follows:

> **The California Subclass of the Multi-state Class:** all persons residing in the State of California who are younger than the age of 13, or were younger than the age of 13 when they played the Game Tracking Apps, and their parents and/or legal guardians, from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

94.     Plaintiffs seek class certification of a claim for violation of the State of New York General Business Law § 349 on behalf of a class defined as follows:

> **The New York Class:** all persons residing in the State of New York who are younger than the age of 13, or were younger than the age of 13 when they played the Game Tracking Apps, and their parents and/or legal guardians ,from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

95.     Plaintiffs reserve the right to modify or refine the Class or Subclass definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

96.     Excluded from the Classes and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants'

current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

97.    **Ascertainability.**  The proposed Classes and Subclass are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Classes and Subclass can be readily identified through records maintained by Defendants.

98.    **Numerosity (Rule 23(a)(1)).**  The Classes and Subclass are so numerous that joinder of individual members herein is impracticable.  The exact number of Class or Subclass members, as herein identified and described, is not known, but download figures indicate that the Game Tracking Apps have been downloaded more than a billion times.[8]

99.    **Commonality (Rule 23(a)(2)).**  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

         i.     Whether Developer Defendants engaged in the activities referenced in paragraphs 39 to 90 via the Game Tracking Apps;

        ii.     Whether the SDK Defendants engaged in the activities referenced in paragraphs 39 to 90 via the Game Tracking Apps;

        iii.     Whether Defendants provided disclosure of all the activities referenced in paragraphs 39 to 90 on a website as required by COPPA;

        iv.     Whether Defendants directly notified parents of any of the activities referenced in paragraphs 39 to 46, 52, 55-77, 80-90;

        v.     Whether Defendants sought verifiable parental consent prior to engaging in any of the activities referenced in paragraphs 39 to 46, 52, 55-77, 80-90;

---

[8] *See* n 2, *infra*.

vi.     Whether Defendants provided a process or mechanism for parents to provide verifiable parental consent prior to engaging in any of the activities referenced in paragraphs 39 to 46, 52, 55-77, 80-90;

vii.     Whether Defendants received verifiable parental consent prior to engaging in any of the activities referenced in paragraphs 39 to 46, 52, 55-77, 80-90;

viii.     Whether Defendants' acts and practices complained of herein violate COPPA;

ix.     Whether Defendants' acts and practices complained of herein amount to acts of intrusion upon seclusion under the law of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South  Dakota, Texas, Utah, Vermont, Washington, and West Virginia;

x.     Whether Defendants' conduct violated Subclass members' California constitutional Right to Privacy;

xi.     Whether Defendants' acts and practices complained of herein violate New York General Business Law § 349;

xii.     Whether members of the Classes and Subclass have sustained damages, and, if so, in what amount; and

xiii.     What is the appropriate injunctive relief to ensure Defendants no longer illegally collect children's personal information to track them over time and across different websites or online services.

100.     **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of members of the proposed Classes and Subclass because, among other things, Plaintiffs and members of the Classes and Subclass sustained similar injuries as a result of Defendants' uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendants.

101.   **Adequacy (Rule 23(a)(4)).**  Plaintiffs will fairly and adequately protect the interests of the proposed Classes and Subclass.  Plaintiffs' interests do not conflict with the interests of the Classes and Subclass members and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Classes and Subclass.

102.   **Predominance & Superiority (Rule 23(b)(3)).**  In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3).  Common questions of law and fact predominate over any questions affecting only individual Class and Subclass members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy.  The amount of damages available to individual Plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

103.   **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).**  Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the proposed Classes and Subclass, making final declaratory or injunctive relief appropriate with respect to the proposed Classes and Subclass as a whole.

104.   **Particular Issues (Rule 23(c)(4)).**  Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4).  Their claims consist of particular issues that are common to all Class and Subclass members and are capable of class-wide resolution that will significantly advance the litigation.

## VII.    CLAIMS FOR RELIEF

### COUNT I
### Intrusion Upon Seclusion
### (Brought on Behalf of the Multi-state Class)

105.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

106.    Plaintiffs and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally.  Plaintiffs' and Class members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by the Game Tracking Apps.

107.    The reasonableness of such expectations of privacy is supported by Developer Defendants' unique position to monitor Plaintiffs' and Class members' behavior through their access to Plaintiffs' and Class members' private mobile devices.  It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

108.    Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the Game Tracking Apps (as well as all SDKs identified in this Complaint) to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the monitoring technologies and activities described herein.

109.    These intrusions are highly offensive to a reasonable person.  This is evidenced by, *inter alia*, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children.  Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Class members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.  Also supporting the highly offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to surreptitiously monitor Plaintiffs and Class members—in one of the most private spaces available to an individual in modern life—and to allow third-parties to do the same.

110.     Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

111.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

112.     As a result of Defendants' actions, Plaintiffs and Class members seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of COPPA, and destruction of all personal data obtained in violation of COPPA.

113.     As a result of Defendants' actions, Plaintiffs and Class members seek nominal and punitive damages in an amount to be determined at trial.  Plaintiffs and Class members seek punitive damages because Defendants' actions – which were malicious, oppressive, willful – were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights.  Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**COUNT II**
**California Constitutional Right to Privacy**
**(Brought on Behalf of the California Subclass of the Multi-state Class)**

114.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

115.     Plaintiffs and Subclass members have reasonable expectations of privacy in their mobile devices and their online behavior, generally.  Plaintiffs' and Subclass members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by the Game Tracking Apps.

116.     The reasonableness of such expectations of privacy is supported by Developer Defendants' unique position to monitor Plaintiffs' and Subclass members' behavior through their access to Plaintiffs' and Subclass members' private mobile devices.  It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendants' tracking.

117.     Defendants intentionally intruded on and into Plaintiffs' and Subclass members' solitude, seclusion, right of privacy, or private affairs by intentionally designing the Game Tracking Apps (as well as all SDKs identified in this Complaint) to surreptitiously obtain,

1  improperly gain knowledge of, review, and/or retain Plaintiffs' and Subclass members' activities

2  through the monitoring technologies and activities described herein.

3      118.   These intrusions are highly offensive to a reasonable person, because they

4  disclosed sensitive and confidential information about children, constituting an egregious breach

5  of social norms.  This is evidenced by, *inter alia*, the legislation enacted by Congress, rules

6  promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and

7  articles decrying the online tracking of children.  Further, the extent of the intrusion cannot be

8  fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Subclass members'

9  personal information with potentially countless third-parties, known and unknown, for

10  undisclosed and potentially unknowable purposes, in perpetuity.  Also supporting the highly

11  offensive nature of Defendants' conduct is the fact that Defendants' principal goal was to

12  surreptitiously monitor Plaintiffs and Subclass members—in one of the most private spaces

13  available to an individual in modern life—and to allow third-parties to do the same.

14      119.   Plaintiffs and Subclass members were harmed by the intrusion into their private

15  affairs as detailed throughout this Complaint.

16      120.   Defendants' actions and conduct complained of herein were a substantial factor in

17  causing the harm suffered by Plaintiffs and Subclass members.

18      121.   As a result of Defendants' actions, Plaintiffs and Subclass members seek

19  injunctive relief, in the form of Defendants' cessation of tracking practices in violation of

20  COPPA, and destruction of all personal data obtained in violation of COPPA.

21      122.   As a result of Defendants' actions, Plaintiffs and Subclass members seek nominal

22  and punitive damages in an amount to be determined at trial.  Plaintiffs and Class members seek

23  punitive damages because Defendants' actions – which were malicious, oppressive, willful –

24  were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights.  Punitive

25  damages are warranted to deter Defendants from engaging in future misconduct.

26                          **COUNT III**
                **Violation of N.Y. Gen. Bus. Law § 349**
27               **(Brought on Behalf of the New York Class)**

28      123.   Plaintiffs repeat and reallege all preceding paragraphs contained herein.

124.    Plaintiffs and Class members are "persons" within the meaning of New York General Business Law § 349(h).

125.    Each Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

126.    Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

127.    Defendants conduct constitutes "deceptive acts or practices" within the meaning of N.Y. Gen. Bus. Law § 349.  Defendants surreptitiously tracked children without disclosing their activities to their parents, in violation of applicable laws.

128.    Defendants conduct occurred in the conduct of trade or commerce, and was directed at consumers.

129.    Defendants conduct was misleading in a material way, because, *inter alia*, Defendants utilized technology—in the form of the SDKs described in this Complaint—into the Game Tracking Apps, yet failed to provide the required disclosures or obtain verifiable parental consent prior to tracking children over time and across websites and other online portals, as well as prior to sharing any of the data so obtained with third-parties or using said data for commercial purposes or any other undisclosed purposes.  Given (1) the entirely passive and secretive nature of the tracking technology at play, and (2) the obligations *not to track children* under federal law absent *both* transparent disclosures *and* verified parental consent, it is clear that Defendants purposely misled Class members, in the course of surreptitiously tracking children playing the Game Tracking Apps.

130.    As a result of Defendants' deceptive acts and practices, Plaintiffs and Class members were injured and damaged in that they suffered a loss of privacy and autonomy through Defendants' acquisition and use of children's personal information, for Defendants' own benefit, without the Class members' knowledge or verifiable parental consent.

131.    Because Defendants' willful and knowing conduct caused injury to Plaintiffs and Class members, the Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and

1    costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief

2    available under N.Y. Gen. Bus. Law § 349.  Plaintiffs and Class members seek punitive damages

3    because Defendants' actions – which were malicious, oppressive, willful – were calculated to

4    injure Plaintiffs and made in conscious disregard of Plaintiffs' rights.  Punitive damages are

5    warranted to deter Defendants from engaging in future misconduct.

6    **VIII.    <u>PRAYER FOR RELIEF</u>**

7           WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

8    respectfully requests that this Court:

9           a)    Certify this case as a class action, appoint Plaintiffs as Class and Subclass

10                representatives, and appoint Plaintiffs' counsel to represent the Classes and

11                Subclass;

12          b)    Find that Defendants' actions, as described herein, constitute: (i) violations of

13                New York General Business Law § 349, (ii) breaches of the common law claim of

14                intrusion upon seclusion in the states of Alabama, Alaska, Arizona, Arkansas,

15                California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois,

16                Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri,

17                Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio,

18                Oklahoma, Oregon, Pennsylvania, South  Dakota, Texas, Utah, Vermont,

19                Washington, and West Virginia; and (3) a violation of the right to privacy under

20                California Constitution, Article I, Section 1;

21          c)    Enter a declaratory judgment that Defendants' actions of collecting, using, or

22                disclosing personal information of child users without first obtaining verifiable

23                parental consent violates COPPA;

24          d)    Enter an order permanently enjoining Defendants from collecting, using, or

25                disclosing personal information of child users without first obtaining verifiable

26                parental consent;

27          e)    Award Plaintiffs and Class and Subclass members appropriate relief, including

28                actual and statutory damages and punitive damages, in an amount to be determined

1    at trial;

2    f)    Award equitable, injunctive, and declaratory relief as may be appropriate;

3    g)    Award all costs, including experts' fees, attorneys' fees, and the costs of

4          prosecuting this action; and

5    h)    Grant such other legal and equitable relief as the Court may deem appropriate.

6    Dated: July 31, 2017                    Respectfully Submitted,

7                                            /s/ Michael W. Sobol

8                                            Michael W. Sobol (State Bar No. 194857)
9                                            msobol@lchb.com
                                             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
10                                           275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339
11                                           Telephone:  415.956.1000
                                             Facsimile:  415.956.1008

12                                           Nicholas Diamand
                                             ndiamand@lchb.com
13                                           Douglas I. Cuthbertson
                                             dcuthbertson@lchb.com
14                                           Abbye R. Klamann (State Bar No. 311112)
                                             aklamann@lchb.com
15                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                             250 Hudson Street, 8th Floor
16                                           New York, NY  10013-1413
                                             Telephone:  212.355.9500
17                                           Facsimile:  212.355.9592

18                                           Hank Bates (State Bar No. 167688)
                                             hbates@cbplaw.com
19                                           Allen Carney
                                             acarney@cbplaw.com
20                                           David Slade
                                             dslade@cbplaw.com
21                                           CARNEY BATES & PULLIAM, PLLC
                                             519 W. 7th St.
22                                           Little Rock, AR 72201
                                             Telephone:  501.312.8500
23                                           Facsimile:  501.312.8505

24                                           *Attorneys for Plaintiffs and the proposed Classes*

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO. 3:17-CV-4344

1

2

## **DEMAND FOR JURY TRIAL**

3
Plaintiffs hereby demand a trial by jury of all issues so triable.

4

5
Dated: July 31, 2017                         Respectfully Submitted,

6
                                                            */s/* Michael W. Sobol

7
                                                            Michael W. Sobol (State Bar No. 194857)
                                                            msobol@lchb.com

8
                                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                            275 Battery Street, 29th Floor

9
                                                            San Francisco, CA  94111-3339
                                                            Telephone:  415.956.1000

10
                                                            Facsimile:  415.956.1008

11
                                                            Nicholas Diamand
                                                            ndiamand@lchb.com

12
                                                            Douglas I. Cuthbertson
                                                            dcuthbertson@lchb.com

13
                                                            Abbye R. Klamann (State Bar No. 31112)
                                                            aklamann@lchb.com

14
                                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                            250 Hudson Street, 8th Floor

15
                                                            New York, NY  10013-1413
                                                            Telephone:  212.355.9500

16
                                                            Facsimile:  212.355.9592

17
                                                            Hank Bates (State Bar No. 167688)
                                                            hbates@cbplaw.com

18
                                                            Allen Carney
                                                            acarney@cbplaw.com

19
                                                            David Slade
                                                            dslade@cbplaw.com

20
                                                            CARNEY BATES & PULLIAM, PLLC
                                                            519 W. 7th St.

21
                                                            Little Rock, AR 72201
                                                            Telephone:  501.312.8500

22
                                                            Facsimile:  501.312.8505

23
                                                            *Attorneys for Plaintiffs and the Proposed Classes*

24

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO. 3:17-CV-4344