1   GLENN D. POMERANTZ (Bar No. 112503)
    glenn.pomerantz@mto.com
2   JORDAN D. SEGALL (Bar No. 281102)
    jordan.segall@mto.com
3   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, 50th Floor
4   Los Angeles, California 90071
    Telephone: (213) 683-9100
5
    ROSEMARIE T. RING (Bar No. 220769)
6   rose.ring@mto.com
    JONATHAN H. BLAVIN (Bar No. 230269)
7   jonathan.blavin@mto.com
    MUNGER, TOLLES & OLSON LLP
8   560 Mission Street, 27th Floor
    San Francisco, California 94105
9   Telephone: (415) 512-4000

10  Attorneys for Defendants The Walt Disney
    Company, Disney Enterprises, Inc., and Disney
11  Electronic Content Inc.

12  *[Additional counsel for Defendants listed on
    signature pages]*

13

14                    **UNITED STATES DISTRICT COURT**

15                  **NORTHERN DISTRICT OF CALIFORNIA**

16  | MICHAEL MCDONALD et al., | Case No.: 3:17-cv-04344-JD (L) |

    MICHAEL MCDONALD et al.,

17              Plaintiffs,

18       vs.

19  KILOO APS et al.,

20              Defendants.

21

22  AMANDA RUSHING et al.,

23              Plaintiffs,

24       vs.

25  THE WALT DISNEY COMPANY et al.,

26              Defendants.

Case No.: 3:17-cv-04344-JD (L)

**NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFFS' COMPLAINTS;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Judge:   Hon. James Donato
Date:    February 1, 2018
Time:    10:00 a.m.
Ctrm:    11

Case No. 3:17-cv-04419-JD

27

28

AMANDA RUSHING et al.,

        Plaintiffs,

    vs.

VIACOM INC. et al.,

        Defendants.

Case No.: 3:17-cv-04492-JD

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

        A.      Facts Alleged in the Complaints ............................................................ 1

        B.      COPPA's Remedial Framework ............................................................ 3

III.    LEGAL STANDARD ........................................................................................ 4

IV.     ARGUMENT ..................................................................................................... 4

        A.      Plaintiffs' State-Law Claims Are Expressly Preempted by COPPA ..................... 4

        B.      Plaintiffs' State-Law Claims Are Impliedly Preempted by COPPA ........................ 8

                1.      Plaintiffs' Claims Are Barred by *Buckman* Preemption ............................. 8

                        (a)      Plaintiffs Seek Directly to Enforce COPPA .................................... 8

                        (b)      Plaintiffs' Claims Are Not Grounded in Traditional State
                                 Law ................................................................................ 10

                2.      Private Enforcement Would Undermine Congressional Purposes ............... 11

        C.      Plaintiffs' Claims Are Inconsistent With COPPA Insofar As They Rest on
                Conduct That Is Expressly Permitted by COPPA .................................. 13

V.      CONCLUSION ................................................................................................ 15

-i-

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abbett v. Bank of Am.*,
    2006 WL 581193 (M.D. Ala. Mar. 8, 2006) ................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................4

*Atay v. Cnty. of Maui*,
    842 F.3d 688 (9th Cir. 2016)........................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................15

*Belluomini v. Citigroup, Inc.*,
    2013 WL 3855589 (N.D. Cal. July 24, 2013) ............................................................10

*Blick v. JP Morgan Chase Bank, N.A.*,
    2012 WL 1030115 (W.D. Va. Mar. 27, 2012) ..............................................................6

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005)..........................................................................................6

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001) ................................................................................................8, 11

*Buckman. Norman v. Bayer Corp.*,
    2016 WL 4007547 (D. Conn. July 26, 2016) .............................................................10

*Capital Cities Cable, Inc. v. Crisp*,
    467 U.S. 691 (1984) ....................................................................................................11

*Carter v. Novartis Consumer Health, Inc.*,
    582 F. Supp. 2d 1271 (C.D. Cal. 2008)........................................................................8

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010).........................................................................................4

*Conboy v. AT&T Corp.*,
    241 F.3d 242 (2d Cir. 2001)..........................................................................................6

*Connelly v. St. Jude Med., Inc.*,
    2017 WL 3619612 (N.D. Cal. Aug. 23, 2017)..........................................................8, 9

*DeBons v. Globus Medical, Inc.*,
    2014 WL 12495351 (C.D. Cal. Aug. 8, 2014)...........................................................8, 9

*Eidson v. Medtronic, Inc.*,
  981 F. Supp. 2d 868 (N.D. Cal. 2013) .....................................................................................9

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ...................................................................................14

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) .....................................................................................11

*Grochowski v. Phx. Const.*,
  318 F.3d 80 (2d Cir. 2003) ......................................................................................................6

*Jackson v. Wells Fargo Bank, N.A.*,
  2013 WL 5945732 (W.D. Pa. Nov. 6, 2013) .........................................................................12

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................................10, 11

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ..............................................................................................................4, 7

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) .................................................................................................15

*Mount v. PulsePoint, Inc*,
  684 F. App'x 32 (2d Cir. 2017) .............................................................................................11

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
  2013 WL 6172953 (N.D. Cal. Nov. 25, 2013) ......................................................................15

*Nat'l Women's Health Network, Inc. v. A.H. Robins Co.*,
  545 F. Supp. 1177 (D. Mass. 1982) .........................................................................................6

*Nathan Kimmel, Inc. v. DowElanco*,
  275 F.3d 1199 (9th Cir. 2002) .............................................................................................8, 9

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...................................................................................................4

*In re Nickelodeon Consumer Privacy Litigation*,
  827 F.3d 262 (3d Cir. 2016) .....................................................................................................7

*Offshore Serv. Vessels, L.L.C. v. Surf Subsea, Inc.*,
  2012 WL 8021738 (E.D. La. Oct. 17, 2012) .........................................................................12

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) ...........................................................................................9, 14

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................................................................................11

-iii-

*Spencer v. Nat'l City Mortg.,*
    2011 WL 13217023 (N.D. Ga. Apr. 13, 2011) ...................................................................6

*Stich v. BAC Home Loans Servicing, LP,*
    2011 WL 1135456 (D. Colo. Mar. 29, 2011) ..................................................................5

*Synopsys, Inc. v. ATopTech, Inc.,*
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ...............................................................4

*Umland v. PLANCO Fin. Servs., Inc.,*
    542 F.3d 59 (3d Cir. 2008) ...........................................................................................12

*W. Va. Univ. Hosps., Inc. v. Casey,*
    499 U.S. 83 (1991) .........................................................................................................7

*Yunker v Pandora Media,*
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .............................................................11

**STATE CASES**

*Folgelstrom v. Lamps Plus, Inc.,*
    195 Cal. App. 4th 986 (2011) .......................................................................................10

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) ........................................................................................................10

**FEDERAL STATUTES**

15 U.S.C. § 1681t(a) ............................................................................................................6

15 U.S.C. § 6501 .................................................................................................................2

15 U.S.C. § 6502 .................................................................................................................3

15 U.S.C. § 6502(d) ................................................................................................3, 4, 5, 14

15 U.S.C. § 6503(a) ...........................................................................................................12

15 U.S.C. § 6504(a)(2)(A) ..................................................................................................1

15 U.S.C. § 6504(b) .............................................................................................................1

47 U.S.C. § 223(f)(2) ...........................................................................................................7

49 U.S.C. § 40120 ................................................................................................................7

**STATUTES - OTHER**

N.Y. Gen. Bus. Law § 349 .......................................................................................2, 6, 9, 11

**FEDERAL REGULATIONS**

16 C.F.R. § 312.2 ...................................................................................................14, 15

16 C.F.R. § 312.5(c)(7) ............................................................................................2, 13

16 C.F.R. § 312.11(g) ...................................................................................................12

78 Fed. Reg. 3972 (2013)..............................................................................................14

**LEGISLATIVE MATERIALS**

144 Cong. Rec. S11657 (Oct. 7, 1998) ........................................................................12

144 Cong. Rec. S27459 (Oct. 21, 1998) ........................................................................6

*Privacy in Cyberspace: Hearing Before the Subcomm. on Telecommunications,*
*Trade, and Consumer Protection of the H. Comm. on Commerce,*
   1998 WL 634723 (July 21, 1998) ..........................................................................5

**OTHER AUTHORITIES**

*FTC Updates COPPA Compliance Plan for Business,* https://www.ftc.gov/news-
   events/blogs/business-blog/2017/06/ftc-updates-coppa-compliance-plan-
   business (June 21, 2017) .......................................................................................13

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

PLEASE TAKE NOTICE that on February 1, 2018, Defendants in the three related cases captioned above will and hereby do move to dismiss the complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants move for dismissal on the ground that Plaintiffs' claims are preempted by federal law.  Defendants seek an order dismissing each complaint with prejudice.

## I.     INTRODUCTION

Plaintiffs purport to allege a violation of the federal Children's Online Privacy Protection Act, commonly known as COPPA.  Yet none of their claims are brought under COPPA itself.  That is because there is no private right of action under COPPA, which has an express and defined remedial structure and an express preemption clause.  Under that structure, only the Federal Trade Commission ("FTC") or a state attorney general (working in coordination with the FTC) can bring a COPPA claim.  *See* 15 U.S.C. § 6504(a)(2)(A), (b).  The language of the statute, the structure of the Act, and the legislative history explain why.  By vesting remedial enforcement and supervision with the FTC, Congress ensured that (i) the FTC can exercise flexibility in adapting rulemaking and enforcement in a rapidly evolving sector and can take into account COPPA's express "safe harbor" requirements, and (ii) regulated entities can enjoy certainty and predictability in coordinating with the FTC.  If private litigants had the right to enforce COPPA in any court of law—without any obligation to coordinate with the FTC—each of these values would be at profound risk.

In an effort to end-run around this exclusive remedial structure and the important policies behind it, Plaintiffs assert various state-law claims.  No matter how Plaintiffs attempt to disguise them, every one of their claims is predicated *entirely* on alleged COPPA violations.  These claims are thus inconsistent with COPPA's remedial scheme and expressly and impliedly preempted by federal law.  And even if the claims were not barred on that basis, they would still be inconsistent with and preempted by COPPA because they fail plausibly to allege that the data at issue—here, wholly anonymized device identifiers—was in fact used for any purpose prohibited by COPPA.

## II.    BACKGROUND

### A.     Facts Alleged in the Complaints

Plaintiffs' allegations are based entirely on perceived violations of COPPA's requirement for

-1-

"verifiable parental consent" when an operator of an online service collects "personal information" from children under age 13.  Defendants Disney, Viacom, Kiloo, and Sybo (the "Developer Defendants") develop and market a variety of games and other applications ("apps") for mobile devices.  (McDonald Compl. ("MC") ¶ 5; Disney Compl. ("DC") ¶ 4; Viacom Compl. ("VC") ¶ 4.) Plaintiffs allege that they are the parents of various minors who began playing games offered by the Developer Defendants when they were under the age of 13.  (MC ¶¶ 3–4; DC ¶ 3; VC ¶ 3.) Plaintiffs allege that these games incorporate third-party software development kits ("SDKs"), provided by co-defendants in these actions (the "SDK Defendants"),[1] and that these SDKs collect unique persistent identifiers that allow a specific mobile device's usage of the game to be tracked over time.  (MC ¶¶ 25, 82, 87; DC ¶¶ 19, 72; VC ¶¶ 17, 70.)  These identifiers are completely anonymized—they do not include any personal data about the person using the mobile device, such as a name, age, sex, or physical or email address.  Rather, a persistent identifier is a string of integers associated with a particular mobile device.  (MC ¶ 25; DC ¶ 19; VC ¶ 17.)  Plaintiffs allege that these identifiers are collected by Defendants to "profile" users "for commercial gain," (MC ¶¶ 82, 87; DC ¶ 72; VC ¶ 70), but do not allege any facts to support this conclusory statement, e.g., about how or why Defendants "profiled" users, or how they commercially benefitted from doing so.

    Although Plaintiffs technically assert state-law claims—for (1) common-law intrusion upon seclusion; (2) violation of the right to privacy under the California Constitution; and, in the *McDonald* action only, (3) a claim brought under New York General Business Law ("GBL") § 349—Plaintiffs' claims are predicated exclusively on alleged COPPA violations.  The first paragraph of each complaint states that each action is brought on behalf of children who "have had their personally identifying information exfiltrated … for future commercial exploitation, in direct violation of [COPPA]."  (MC ¶ 1; DC ¶ 1; VC ¶ 1.)  Plaintiffs allege that Defendants "collected, used, or disclosed" persistent identifiers "without notifying [minors'] parents," as COPPA requires. (MC ¶¶ 55–56; DC ¶¶ 49–50; VC ¶¶ 48–49.)  Plaintiffs acknowledge that the collection of such identifiers for the "internal operations" of an app is exempted from COPPA's parental-consent requirement, *see* 16 C.F.R. § 312.5(c)(7); 15 U.S.C. §§ 6501–06, but nonetheless allege—without

---

[1] A complete list of the Developer and SDK Defendants by case is attached as Appendix A.

any supporting factual allegations—that the collection of identifiers in these cases does not fall within the exemption.  (MC ¶¶ 82, 87; DC ¶ 72; VC ¶ 70.)

Plaintiffs seek to compel Defendants to comply with COPPA alone, not with any state-law standard of conduct.  In each complaint, Plaintiffs pray for (1) a declaratory judgment that Defendants' conduct "violates COPPA"; and (2) an order permanently enjoining Defendants from violating COPPA's parental-consent requirement.  (MC ¶ 27; DC ¶¶ 24–25; VC ¶¶ 23–24.)

### B.  COPPA's Remedial Framework

COPPA prohibits an operator of an online service that is directed at children from collecting or using certain information from users under the age of 13 without verifiable parental consent.  *See* 15 U.S.C. § 6502.  COPPA does not authorize private citizens to sue to enforce COPPA violations.  Instead, its enforcement provisions provide that a violation of COPPA or its implementing regulations is treated as an unfair or deceptive practice under the Federal Trade Commission Act, *id.* § 6502(c), with remedial power vested principally in the FTC, *id.* § 6505(d).  COPPA also empowers certain other federal agencies to enforce COPPA compliance by online service operators in various regulated industries, such as national banks and air carriers.  *Id.* § 6505(b).

COPPA creates one alternate remedy to enforcement by federal agencies: Section 6504(a) authorizes state attorneys general to bring civil actions on behalf of residents of their states in federal district court, where they may "obtain damage, restitution, or other compensation on behalf of residents of the State."  *Id.*  Before proceeding with a suit, however, a state attorney general must provide the FTC with written notice of the action and a copy of the complaint.  *Id.* § 6504(a)(2)(A).  The FTC has the right to intervene in any COPPA action filed by an attorney general, including the right to be heard "with respect to any matter that arises in that action" and the right to file a petition for appeal.  *Id.* § 6504(b).  A state attorney general cannot bring an action during the pendency of an FTC enforcement action against the same defendant.  *Id.* § 6504(d).

Section 6502(d) of COPPA, *id.* § 6502(d), expressly preempts any state or local law that imposes liability on operators of online services in a manner inconsistent with the statute:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

1   **III.   LEGAL STANDARD**

2    A motion to dismiss "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729,

3   732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state

4   a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Federal

5   preemption "is a pleading issue" and is "entirely appropriate for resolution on a Rule 12(b)(6)

6   motion." *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *7 (N.D. Cal. Oct. 24, 2013).

7   **IV.   ARGUMENT**

8    **A.   Plaintiffs' State-Law Claims Are Expressly Preempted by COPPA**

9    Aware that Congress did not provide for a private right of action in COPPA, Plaintiffs allege

10  COPPA violations in the guise of state-law claims.  Treating state common law and constitutional or

11  statutory provisions as vehicles for privately enforcing COPPA would permit the state to "impose

12  … liability" for COPPA violations in a manner "that is inconsistent with the treatment of those

13  activities or actions under" the Act.  15 U.S.C. § 6502(d).  COPPA's express preemption provision

14  thus preempts Plaintiffs' state-law claims.

15   "Congress may indicate its intent to displace state law through express language." *Chae v.*

16  *SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010).  Courts "use the text of the provision, the

17  surrounding statutory framework, and Congress's stated purposes in enacting the statute to

18  determine the proper scope of an express preemption provision." *Id.*  Because "'[t]he purpose of

19  Congress is the ultimate touchstone' in every pre-emption case," "any understanding of the scope of

20  a pre-emption statute must rest primarily on 'a fair understanding of *congressional purpose*.'"

21  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485–86 (1996) (emphasis in original).  While Congress's

22  intent "primarily is discerned from the language of the pre-emption statute and the 'statutory

23  framework' surrounding it," also relevant is "the way in which Congress intended the statute and its

24  surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 486.

25   Here, the text, framework, and purposes of COPPA all make plain that Congress intended to

26  preempt state-law causes of action that conflict with COPPA's exclusive remedial scheme.  COPPA

27  establishes uniform national standards for safeguarding the online privacy of children under 13.

28  COPPA's express preemption provision ensures national uniformity in the privacy standards

-4-

applicable to websites and other online services.  *See* 15 U.S.C. § 6502(d).  COPPA has no private

right of action, notwithstanding efforts made to convince Congress to include one[2]; its remedial

scheme permits enforcement only by the FTC, certain other federal agencies, or state attorneys

general acting in concert with the FTC.  *See supra* Part II.B.

The structure of COPPA's remedial framework means that any private right of action under

state law to enforce COPPA would be "inconsistent with the treatment of" COPPA violations under

federal law.  15 U.S.C. § 6502(d).  In the statute, the sole exception to enforcement by the FTC and

certain other federal agencies is enforcement by state attorneys general, who may seek damages and

other relief on behalf of their residents for COPPA violations.  *See id.* § 6504.  And this

enforcement mechanism is subject to two important limitations: state attorneys general must give

the FTC notice and an opportunity to intervene, and they cannot bring an action against a party who

is already a defendant in an FTC enforcement proceeding.  *Id.* § 6504(a)(2), (b), (d).  The statutory

framework thus promotes uniformity in enforcement by guaranteeing the FTC the right to

participate in enforcement actions and to exercise discretion in this rapidly evolving area.

Permitting private enforcement of COPPA under state causes of action would vitiate this

framework: private plaintiffs have no obligation to involve the FTC, and—because virtually all

websites and mobile applications are available in all 50 states—they would be incentivized to pursue

COPPA claims simultaneously in multiple forums against the same defendant.  The result would be

a patchwork of rules under different state laws and decisions in different judicial proceedings.

Congress could not have intended this result, which would upset the uniformity, stability,

and state-federal cooperation that COPPA's remedial scheme was designed to achieve.  As courts

consistently have held in analogous circumstances, recognizing such a claim under state law would

be "inconsistent" with the federal statute's exclusive enforcement scheme and therefore preempted.

*See, e.g.*, *Stich v. BAC Home Loans Servicing, LP*, 2011 WL 1135456, at *10 (D. Colo. Mar. 29,

2011) (because only FTC can seek injunctive relief against reporter of credit information under Fair

---

[2] *See Privacy in Cyberspace: Hearing Before the Subcomm. on Telecommunications, Trade, and Consumer Protection of the H. Comm. on Commerce*, 1998 WL 634723 (July 21, 1998) (testimony of Kathryn Montgomery, President, Center for Media Education) (arguing that COPPA "bill should be altered to provide consumers with a private right of action").

1   Credit Reporting Act (FCRA), claim for injunctive relief under state law failed because "FCRA

2   preempts state laws to the extent that they are inconsistent with the federal statute"); *Spencer v.*

3   *Nat'l City Mortg.*, 2011 WL 13217023, at *9 (N.D. Ga. Apr. 13, 2011), *report and recommendation*

4   *adopted*, 831 F. Supp. 2d 1353 (N.D. Ga. 2011) (allowing "state law cause of action based on

5   conduct falling within the scope of § 1681s–2(a), when the federal statute does not provide for a

6   private cause of action, would be inconsistent with the express language of the FCRA" and

7   "preempted under § 1681t(a)")[3]; *Grochowski v. Phx. Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (finding

8   state-law claims "clearly an impermissible 'end run'" as they were "indirect attempts at privately

9   enforcing" a federal statute with no private right of action); *Nat'l Women's Health Network, Inc. v.*

10   *A.H. Robins Co.*, 545 F. Supp. 1177, 1181 (D. Mass. 1982) ("Preemption, like the implication of a

11   right of action, is a question of congressional intent.  A private right of action is equally

12   inconsistent with the federal regulatory scheme").  Courts also consistently have dismissed New

13   York GBL § 349 claims predicated on laws lacking a private right of action.  *See Broder v.*

14   *Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (using GBL § 349 "to assert a private

15   right of action for violation of a federal law otherwise lacking one" would "thwart Congress's

16   intentions on a significant scale"); *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

17        COPPA's legislative history also supports the view that Congress intended to preempt state-

18   law remedies.  In an October 21, 1998 Senate hearing, Senator Richard Bryan, one of COPPA's co-

19   sponsors, inserted into the Congressional record a section-by-section summary of COPPA to explain

20   "the purpose and some of the important features" of the bill.  144 Cong. Rec. S27459 (Oct. 21,

21   1998).  The portion of the summary describing COPPA's enforcement mechanisms explained that

22   *"[e]xcept as otherwise provided in the amendment*, the FTC shall conduct enforcement proceedings"

23   under COPPA.  *Id.* at S27461.  Of course, nowhere does COPPA "otherwise provide[]" for

24   enforcement by private plaintiffs.  *See supra* Part II.B.  The summary also contains a section entitled

---

[3] Several other courts have held the same with respect to FCRA's express preemption provision, which like COPPA preempts "inconsistent" state laws.  15 U.S.C. § 1681t(a).  *See Abbett v. Bank of Am.*, 2006 WL 581193, at *5 (M.D. Ala. Mar. 8, 2006) ("Congress unquestionably intended for no claims to be brought against furnishers of information for making inaccurate reports to CRAs except for those brought by the government.  Allowing any private state law action to proceed … is inconsistent with the FCRA."); *Blick v. JP Morgan Chase Bank, N.A.*, 2012 WL 1030115, at *8 (W.D. Va. Mar. 27, 2012), *aff'd*, 475 F. App'x 852 (4th Cir. 2012) (same).

1   "Actions by States," which provides that "State Attorneys General may file suit on behalf of the

2   citizens of their state," but "must provide the FTC with written notice of the action and a copy of the

3   complaint," so that the "FTC may intervene in the action, in which case it has the right to be heard."

4   *Id.* at S27461.  And if "the FTC has filed a pending action for violation of a regulation," then "no

5   state attorney general may file an action."  *Id.*  Nowhere does the "Actions by States" section of this

6   summary suggest that states may adopt their own private enforcement mechanisms for COPPA

7   violations.  And, as noted, permitting a private right of action under state law would nullify

8   Congress's requirement that states cooperate closely with the FTC in initiating any proceedings in

9   federal court for COPPA violations.  The "structure and purpose of the statute as a whole" compels

10  the conclusion that COPPA precludes state-law claims that would impermissibly import a private

11  cause of action into the statute.  *See Medtronic*, 518 U.S. at 486.[4]

12          Plaintiffs previously have indicated (*McDonald*, ECF No. 97, at 4) their reliance on *In re*

13  *Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016), but that decision, if

14  anything, supports Defendants.  There, the court held that a New Jersey intrusion upon seclusion

15  claim was not preempted by COPPA because "at the heart of the plaintiffs' intrusion claim is not

16  that [defendants] *collected* children's personal information, or even that they *disclosed* it," but rather

17  that defendants had falsely represented that they did not collect such information at all.  *Id.* at 292.

18  Thus, as the court explained, "[u]nderstood this way, there is no conflict between the plaintiffs'

19  intrusion claim and COPPA.  While COPPA certainly regulates whether personal information can be

20  collected from children in the first instance, it says nothing about whether such information can be

21  collected using deceitful tactics."  *Id.*  Here, Plaintiffs have not alleged any misrepresentations, and

22  instead base their claims squarely on conduct that they (incorrectly) claim violates COPPA.

23

24  [4] In addition, COPPA does not contain a remedial savings clause of the type that is common in
    other statutes.  For example, in 47 U.S.C. § 223(f)(2), a section of the Communications Decency
25  Act of 1996 enacted two years before COPPA, Congress included a near-identical preemption
    provision with the additional clause that, "*Provided, however*, [t]hat nothing herein shall preclude
26  any State or local government from enacting and enforcing complementary oversight, liability, and
    regulatory systems, procedures, and requirements."  Other statutes have similar language.  *See, e.g.*,
27  49 U.S.C. § 40120 (Federal Aviation Act provision providing that "[a] remedy under this part is in
    addition to any other remedies provided by law").  This significant difference is a purposeful signal
28  from Congress that COPPA does not reserve any complementary state-law remedies for COPPA
    violations.  *See, e.g.*, *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 88–92 (1991).

**B.      Plaintiffs' State-Law Claims Are Impliedly Preempted by COPPA**

**1.      Plaintiffs' Claims Are Barred by *Buckman* Preemption**

Even if Plaintiffs' state-law claims were not expressly preempted, they are impliedly

preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001).[5]  Under

*Buckman*, a state-law claim is impliedly preempted where (1) there is "no doubt that it is the Federal

Government rather than private litigants who [is] authorized to file suit for noncompliance" with a

federal statute, and (2) the state-law claim "exist[s] solely by virtue" of the federal law's

"requirements" and is not grounded in "traditional state tort law."  *Id*. at 349 n.4 & 352–53.  In

*Buckman*, the Supreme Court applied these standards to conclude that a common-law negligence

claim was impliedly preempted by a federal statute called the Medical Device Amendments.  *Id*. at

348.  Although *Buckman* involved a "fraud-on the FDA" claim, courts "routinely interpret

*Buckman* to preempt a variety of other types of claims."  *Connelly v. St. Jude Med., Inc.*, 2017 WL

3619612, at *5 (N.D. Cal. Aug. 23, 2017).  As the Ninth Circuit has held, "[t]he key factor

identified by the Supreme Court in concluding that Buckman's claims were pre-empted was that

'the existence of these federal enactments is a critical element in their case.'"  *Nathan Kimmel, Inc.*

*v. DowElanco*, 275 F.3d 1199, 1206 (9th Cir. 2002).

The same is true here.  As to the first prong of *Buckman*, COPPA does not authorize private

litigants to sue; rather, federal agencies handle and/or oversee all enforcement.  *Supra* Part II.B.  And

as to the second prong, the complaints make clear that (a) Plaintiffs seek directly to enforce COPPA,

and (b) their claims are not grounded in state law, but owe their existence entirely to federal law.

**(a)      Plaintiffs Seek Directly to Enforce COPPA**

As Plaintiffs allege in the first paragraph of their complaints, "[t]his is an action brought by

and on behalf [of] parents of children who … have had their personally identifying information

exfiltrated … in direct violation of [COPPA]."  (MC ¶ 1; DC ¶ 1; VC ¶ 1; *see* MC ¶ 53; DC ¶ 47;

VC ¶ 46 ("Each Defendant is an 'operator' pursuant to COPPA"); MC ¶¶ 68–69; DC ¶¶ 62–63; VC

¶¶ 61–62 (Defendants "violated COPPA"); MC ¶¶ 112, 121; DC ¶¶ 96, 105; VC ¶¶ 94, 103 (seeking

---

[5] The implied preemption analysis "is independent of the express preemption inquiry," and if
express preemption "is inapplicable, implied conflict preemption may still apply."  *Carter v.
Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1279 n.11 (C.D. Cal. 2008).

1    "cessation of tracking practices in violation of COPPA").  There can be no doubt that the "existence

2    of [COPPA] is a critical element in [Plaintiffs'] case."  *Nathan Kimmel*, 275 F.3d at 1206.

3           Although the claims in the complaints are styled as state common law, constitutional, and

4    statutory claims, they are "in substance [claims] for violating [COPPA] and exist[] solely by virtue

5    of the federal ban on" collecting certain data without parental consent.  *Eidson v. Medtronic, Inc.*,

6    981 F. Supp. 2d 868, 891 (N.D. Cal. 2013).  In *DeBons v. Globus Medical, Inc.,* 2014 WL 12495351

7    (C.D. Cal. Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016), for example, the plaintiff asserted

8    common-law claims regarding a surgical device that had been implanted in his body.  The plaintiff

9    argued that his claims arose under a traditional common-law tort duty to sell "safe and effective

10   products."  *Id.* at *3.  The court rejected the argument and deemed his claims preempted, because the

11   only allegations regarding *why* the surgical device "was not 'safe or effective'" were that it was not

12   FDA approved.  *Id.*  "Fundamentally," then, the plaintiff's claims were "premised entirely on"

13   federal law and "would not exist 'even if the [Food, Drug, and Cosmetic Act] had never been

14   enacted.'"  *Id.*  Several other courts have held similarly.  *See, e.g.*, *Connelly*, 2017 WL 3619612, at

15   *5 (plaintiff's "negligence" claim preempted where "based entirely on violations of the FDCA" and

16   its implementing regulations); *Eidson*, 981 F. Supp. 2d at 891.

17          In short, Plaintiffs allege that Defendants' actions were "highly offensive to a reasonable

18   person"—an essential element of their intrusion upon seclusion and constitutional privacy claims—

19   *only* because of "the legislation enacted by Congress, rules promulgated and enforcement actions

20   undertaken by the FTC," and the research that allegedly led Congress to enact COPPA.  (MC ¶¶ 109,

21   118; DC ¶¶ 93, 102; VC ¶¶ 91, 100.)  Similarly, the *McDonald* Plaintiffs' New York GBL § 349

22   claim is based on the "obligations *not to track children* under federal law [COPPA] absent *both*

23   transparent disclosures *and* verified parental consent."  (MC ¶ 129.)  COPPA permeates practically

24   every paragraph of the complaints,[6] and Plaintiffs' allegations make plain that they are suing

25   "*because* the conduct violates" COPPA.  *Perez v. Nidek Co.*, 711 F.3d 1109, 1119–20 (9th Cir.

26

27   _____

     [6] As examples of how closely the allegations track the contours of COPPA, Plaintiffs rely on the
28   FTC's categorization of "persistent identifiers" as "personally identifiable" information under
     COPPA (MC ¶ 35; DC ¶ 29; VC ¶ 27) and COPPA's requirements and the FTC's rules regarding
     "obtaining verifiable parental consent" (MC ¶¶ 36–38; DC ¶¶ 30–32; VC ¶¶ 28–30).

2013).  As Plaintiffs' claims are "wholly derivative" of COPPA, they are "preempted" under *Buckman*.  *Norman v. Bayer Corp.*, 2016 WL 4007547, at \*2 (D. Conn. July 26, 2016).

  **(b)**  **Plaintiffs' Claims Are Not Grounded in Traditional State Law**

  Plaintiffs' claims are not grounded in state law, and they owe their existence entirely to COPPA.  State law has not deemed it an "invasion" of privacy to collect wholly *anonymized* data like the "persistent identifiers" at issue here.  To establish an invasion of privacy under the California Constitution and the tort of intrusion upon seclusion, the invasion must be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994) (emphasis added); *see Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (constitutional and intrusion claims have "similarly high standards for the type of invasion that is actionable"); *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at \*6 (N.D. Cal. July 24, 2013).

  Plaintiffs' allegations do not meet this "high bar" as a matter of law.  Courts only find this demanding standard satisfied based on egregious conduct such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or improper use of confidential mental health records.  *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991 (2011) (summarizing cases).  Plaintiffs' claims involving alleged collection of anonymized persistent identifiers do not approach this standard, as is evidenced by decisions dismissing claims alleging far more serious conduct.  For example, in *In re iPhone Application Litigation*, the plaintiffs alleged the defendants permitted third-party apps to collect much more personal data of users than is alleged here—address, unique device identifier, age, gender, and ZIP code—without consent and for commercial purposes.  844 F. Supp. 2d. 1040, 1050 (N.D. Cal. 2012).  The court dismissed the claim, holding that the alleged conduct does not "constitute an *egregious breach* of the social norms."  *Id.* at 1063 (internal quotation marks & citation omitted).

  Similarly, in *Low*, the plaintiffs alleged that LinkedIn allowed transmission of users' browsing history and user IDs to third-party advertisers.  900 F. Supp. 2d at 1016.  The court dismissed the intrusion upon seclusion and California constitutional right to privacy claims because such disclosures of information "do[] not meet the standard set by California courts."  *Id.* at 1025.

1    The court noted that "[e]ven disclosure of personal information, including social security numbers,

2    does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy

3    claim." *Id.*  Several other courts have held similarly.[7]

4         Likewise, courts applying New York GBL § 349 have held that the type of privacy

5    violations alleged in *McDonald* are not actionable under the statute.  *Mount v. PulsePoint*, *Inc*, 684

6    F. App'x 32 (2d Cir. 2017), is directly on point.  There, the plaintiffs alleged that an advertiser was

7    liable under § 349 for the alleged "placement of tracking cookies on plaintiffs' computers in order

8    to gather information about their internet use."  *Id.* at 34.  Affirming dismissal, the Second Circuit

9    stated, "[n]o New York court . . . has ever construed § 349 to reach the privacy invasion alleged

10   here, *i.e.*, collection of internet users' aggregated, anonymized web-browsing data."  *Id.* at 35.

11        Here, Plaintiffs have only alleged the collection of anonymized persistent identifiers that do

12   not identify anyone's, including any child's, personal information, such as name, age, race, gender,

13   or address.  Because this theory of liability is not cognizable under state law, Plaintiffs must rely

14   wholly on COPPA for their claims, which are accordingly preempted.

15              **2.**       **Private Enforcement Would Undermine Congressional Purposes**

16        Implied preemption also exists here because Plaintiffs' state-law claims "stand[] as an

17   obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

18   *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984).  What is a sufficient "obstacle" to give

19   rise to implied preemption is "informed by examining the federal statute as a whole and identifying

20   its purpose and intended effects."  *Atay v. Cnty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016).

21        In *Buckman*, for example, the Supreme Court noted that the federal statutory scheme

22   empowered the FDA to punish and deter fraud using a variety of enforcement options, that this

23   "flexibility is a critical component of the statutory and regulatory framework under which the FDA

24   pursues difficult (and often competing) objectives," and that such flexibility would be constrained if

25   _____

26   [7] *E.g.*, *Yunker v Pandora Media*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (providing personally identifiable data to advertising libraries did not constitute "an egregious breach of social norms"); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (conduct resulting in theft of confidential personal data, including social security numbers, did "not approach th[e] standard" of "an egregious breach"); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (intrusion upon seclusion claim dismissed because plaintiffs' allegations that Google disclosed browsing habits and search queries to third parties did not meet "high bar" for claim).

-11-

1   applicants were forced to comply with the FDA's regulations "'in the shadow of 50 States' tort

2   regimes."  531 U.S. at 348–50.  *See also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 65 (3d

3   Cir. 2008) (where "'Congress has established a comprehensive regulatory scheme'" without a

4   private right of action, it "intended the administrative remedies to preempt state-law claims").[8]

5          Interpreting COPPA's preemption provision to permit state law to supply a private cause of

6   action for COPPA would undermine Congress's purposes and objectives in enacting an exclusive

7   remedial scheme.  *First*, vesting enforcement powers solely in the FTC (and state attorneys general

8   cooperating with the FTC) gives the FTC flexibility in adapting its rulemaking and enforcement to a

9   rapidly evolving sector of the economy.  For example, Senator Byrd's summary of COPPA

10  explained that the bill would empower the FTC to "specify through rulemaking what is required" for

11  the verifiable parental consent provisions.  144 Cong. Rec. S11657 (Oct. 7, 1998).  The summary

12  explained that the phrase "verifiable parental consent" "should be interpreted flexibly,

13  encompassing 'reasonable effort' and 'taking into consideration available technology.'"  *Id.*

14         *Second*, private enforcement of COPPA via state-law causes of action would undermine

15  Congress's goal of promoting self-regulation by operators of online services.  In enacting COPPA,

16  Congress created a "safe harbor" that allows operators to demonstrate COPPA compliance by

17  "following a set of self-regulatory guidelines, issued by representatives of the marketing or online

18  industries" and endorsed by the FTC.  15 U.S.C. § 6503(a).  The FTC's COPPA regulations provide

19  that, "[i]n considering whether to initiate an investigation or bring an enforcement action against a

20  subject operator for violations of this part, the Commission will take into account the history of the

21  subject operator's participation in the safe harbor program."  16 C.F.R. § 312.11(g).  And the FTC

22  frequently issues updated rules and guidance for companies to comply with COPPA given the

23  rapidly evolving online industry; just this past spring, the FTC updated its "guidance for businesses

24  about complying with COPPA to reflect developments in the marketplace."  *See FTC Updates*

25  *COPPA Compliance Plan for Business*, https://www.ftc.gov/news-events/blogs/business-

26

27  [8] *See also Jackson v. Wells Fargo Bank, N.A.*, 2013 WL 5945732, at *21 (W.D. Pa. Nov. 6, 2013) ("[t]he great weight of authority likewise holds that recognition of common law claims predicated on a violation of [federal statute] would be an improper intrusion into a federally regulated area where Congress chose to forego creating a right of enforcement"); *Offshore Serv. Vessels, L.L.C. v.*

28  *Surf Subsea, Inc.*, 2012 WL 8021738 (E.D. La. Oct. 17, 2012) (same).

-12-

blog/2017/06/ftc-updates-coppa-compliance-plan-business (June 21, 2017).

Opening the floodgates to private enforcement of COPPA would undermine both these purposes.  First, it would vitiate the flexibility afforded the FTC as the principal enforcer of the statute.  Instead of the FTC making considered judgments in its own enforcement actions about, for example, when an operator has acted reasonably in seeking verifiable parental consent, those questions would become matters of 50 states' common law.  Second, permitting state-by-state causes of action alleging technical violations of COPPA rules would result in uncertainty in this rapidly evolving industry, undermining Congress's objectives of providing clear regulatory guidance promoting self-regulation.  Regulated entities exposed to private enforcement under a patchwork of inconsistent state rules, procedures, and decisions would have no guarantee that complying with FTC-approved guidelines would immunize them against enforcement actions.

### C.     Plaintiffs' Claims Are Inconsistent With COPPA Insofar As They Rest on Conduct That Is Expressly Permitted by COPPA

Even if Plaintiffs' claims were not barred by COPPA's exclusive remedial scheme, they would still be "inconsistent" with the "treatment" of Defendants' activities under COPPA to the extent they seek to impose liability for merely *collecting* persistent identifiers.  COPPA explicitly authorizes the collection of this data for certain purposes and would prohibit it only if Defendants *used* the data in a manner prohibited by COPPA.  Plaintiffs offer no factual allegations that Defendants have used the persistent identifiers in a manner prohibited by statute, instead making only conclusory allegations based on their mere collection.

The FTC's COPPA regulations do not ban outright the collection of persistent identifiers from children without parental consent.  Rather, such collection without parental consent is prohibited *only* if the information is used for certain purposes.  Specifically, the regulation provides that operators of online services do not need parental consent to "collect[] a persistent identifier … [that] is used for the sole purpose of providing support for the internal operations of the Web site or online service…."  16 C.F.R. § 312.5(c)(7).  The regulation defines "support for the internal operations of the Web site or online service" to include "[t]hose activities necessary to," for example, "[m]aintain or analyze the functioning of the Web site or online service" or "[a]uthenticate

-13-

1  users of, or personalize the content on, the Web site or online service."  16 C.F.R. § 312.2.

2         The FTC has explained that this formulation is necessary because "persistent identifiers are

3  … fundamental to the smooth functioning of the Internet, the quality of the site or service, and the

4  individual user's experience."  78 Fed. Reg. 3972, 3998 (2013).  Persistent identifiers may be used

5  appropriately "for a host of functions," including to provide "spam protection," "de-bug[]" an app,

6  provide "payment and delivery functions," optimize performance, generate "statistical reporting," or

7  allow operators to preserve user preferences and progress.  *Id.* at 3979 & n.95, 3980–81.  The FTC

8  has recognized that for many providers these benign "site maintenance and analysis" and other

9  functions are "crucial to their ongoing operations."  *Id.* at 3979.  Hence, the FTC expressly preserved

10  providers' ability to perform these critical functions without first obtaining parental consent.  *Id.*

11         Plaintiffs fail to allege facts that, if proven, would establish that Defendants *used* persistent

12  identifiers in a manner that violates COPPA.  And a claim predicated on the use of persistent

13  identifiers in a manner *permitted* by COPPA is "inconsistent with the treatment of those activities"

14  under the Act and thus preempted.  15 U.S.C. § 6502(d); *see Perez*, 711 F.3d at 1118–19 (finding

15  similar provision preempted state claim that "depend[ed] on a requirement that is 'in addition to'

16  [applicable] federal requirements"); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 948 (N.D. Cal.

17  2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) (observing that claims

18  requiring different "treatment" of conduct not barred by COPPA could be preempted).

19         Plaintiffs allege that they used "[a]nalytics and network analysis tools" to obtain evidence

20  that Defendants *collect* persistent identifiers (MC ¶ 45; DC ¶ 41; VC ¶ 40), but they do not claim to

21  have detected any improper unconsented *use* of that data.  Nor do they allege any other facts from

22  which it can be plausibly inferred that Defendants use any collected identifiers for a purpose that

23  would require parental consent under COPPA.  On this point, Plaintiffs offer only ambiguous and

24  conclusory allegations suggesting that the SDK Defendants *could* have improperly disclosed or used

25  the information.  Such allegations are mostly presented in the disjunctive, thus failing to plead any

26  actual violation.  For example, Plaintiffs allege that the SDK Defendants "collected, disclosed, *or*

27  used personal information."  (MC ¶¶ 82, 87; DC ¶ 72; VC ¶ 70 (emphasis added); *see also* MC ¶ 68;

28  DC ¶ 62; VC ¶ 61 (alleging that Developer Defendants "permitt[ed]" SDK Defendants "to track

-14-

children by collecting, using, *or* disclosing their persistent identifiers" (emphasis added).)  Since

both "collect[ing]" and "us[ing]" identifiers is lawful under COPPA so long as the latter is confined

to internal operations, these disjunctive allegations fail to plead any actual violation.  Similarly,

Plaintiffs allege that the apps "contain SDKs that surreptitiously track child users for behavioral

advertising, analytics, *or both*."  (MC ¶ 43; DC ¶ 39; VC ¶ 38 (emphasis added).)  Again, the

disjunctive phrasing means that the SDKs could be collecting identifiers only for "analytics," an

activity that falls squarely within COPPA's internal operations exemption to the consent

requirement.  *See* 16 C.F.R. § 312.2.  The factual allegations are therefore equally consistent with

lawful behavior under COPPA.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also*

*Moss v. U.S. Secret Service*, 572 F.3d 962, 971–72 (9th Cir. 2009) (alleged facts "at some level" are

"consistent with a viable … claim, but mere possibility is not enough").

Plaintiffs' claims are not saved by their conclusory allegation, "[o]n information and belief,"

that "Defendants did not collect [the Plaintiff children's] personal information to provide support for

the internal operations of" the apps at issue.  (MC ¶ 87; DC ¶ 72; VC ¶ 70.)  This is no more than a

"bare assertion" of unlawful conduct untethered to *facts* that plausibly suggest it might be true.  *See*

*Twombly*, 550 U.S. at 556–57; *see also Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL

6172953, at *6 (N.D. Cal. Nov. 25, 2013) (dismissing claim when plaintiff "relie[d] on 'information

and belief' allegations" but "never explain[ed] the factual bases for those beliefs").  The complaints

do not identify a single instance of behavioral advertising or other inappropriate use of Plaintiffs'

persistent identifiers.  Nor do they allege any other fact that plausibly suggests Defendants are

collecting persistent identifiers for any use other than to support internal operations.

Thus, even if Plaintiffs' claims were not barred by the absence of a private right of action

under COPPA, they would still be "inconsistent" with the "treatment" of Defendants' alleged

activities under COPPA.  The COPPA preemption provision does not permit Plaintiffs simply to

challenge the mere collection of persistent identifiers, particularly when the use of such data is

explicitly authorized under COPPA.

## V.    CONCLUSION

Defendants respectfully request that the Court dismiss the complaints with prejudice.

-15-

1    DATED: November 22, 2017              Respectfully submitted,

2                                    By:   /s/ Jonathan H. Blavin

3                                          GLENN D. POMERANTZ (Bar No. 112503)
                                           JORDAN D. SEGALL (Bar No. 281102)
4                                          MUNGER, TOLLES & OLSON, LLP
                                           350 South Grand Avenue, 50th Floor
5                                          Los Angeles, CA 90071-3426
                                           Telephone:  (213) 683-9132
6                                          Facsimile:  (213) 687-3702
                                           Email: glenn.pomerantz@mto.com

7                                          ROSEMARIE T. RING (Bar No. 220769)
8                                          JONATHAN H. BLAVIN (Bar No. 230269)
                                           MUNGER, TOLLES & OLSON, LLP
9                                          560 Mission Street, 27th Floor
                                           San Francisco, CA 94105
10                                         Telephone:  (415) 512-4000
                                           Facsimile:  (415) 512-4700
11                                         Email: rose.ring@mto.com
                                           Email:jonathan.blavin@mto.com
12                                         Email: joshua.meltzer@mto.com

13                                         *Attorneys for Defendants The Walt Disney
                                           Co.; Disney Enterprises, Inc.; and Disney
14                                         Electronic Content Inc.*

15                                   By:   /s/ Sonya D. Winner

16                                         SONYA D. WINNER (Bar No. 200348)
                                           COVINGTON & BURLING LLP
17                                         One Front Street, 35th Floor
                                           San Francisco, CA 94102
18                                         Telephone:  (415) 591-6000
                                           Facsimile:  (415) 591-6091
19                                         Email: swinner@cov.com

20                                         EMILY JOHNSON HENN (Bar No. 269482)
                                           KATHRYN E. CAHOY (Bar No. 298777)
21                                         COVINGTON & BURLING LLP
                                           333 Twin Dolphin Drive, Suite 700
22                                         Redwood Shores, CA 94065-1418
                                           Telephone:  (650) 632-4700
23                                         Facsimile:  (650) 632-4800
                                           Email:  ehenn@cov.com
24                                         Email:  MCahoy@cov.com

25                                         *Attorneys for Defendants Viacom Inc.
                                           and Viacom International Inc.*[9]

26

27   _____

28   [9] Viacom Inc. and Viacom International Inc. (collectively "Viacom") join this motion conditionally.
     Such joinder is in the alternative in the event the Court denies Viacom's Motion for Stay Pending
     Arbitration, also filed today, which seeks enforcement of Viacom's arbitration agreement with

                                           -16-

1

By:   /s/ Sonali D. Maitra

2      SONALI D. MAITRA (Bar No. 254896)
       DARALYN J. DURIE (Bar No. 169825)
3      LEERON MORAD (Bar No. 284771)
       DURIE TANGRI LLP
4      217 Leidesdorff Street
       San Francisco, CA 94111
5      Telephone:   (415) 362-6666
       Facsimile:    (415) 236-6300
6      Email: smaitra@durietangri.com
       Email: ddurie@durietangri.com
7      Email: lmorad@durietangri.com

8      *Attorneys for Defendant Kiloo A/S*

9

By:   /s/ Jack P. DiCanio

10     JACK P. DICANIO (Bar No. 138782)
       SKADDEN, ARPS, SLATE, MEAGHER &
11     FLOM LLP
       525 University Avenue
12     Palo Alto, CA 94301
       Telephone:   (650) 470-4500
13     Facsimile:    (650) 470-4570
       Email: jdicanio@skadden.com

14     LANCE A. ETCHEVERRY (Bar No. 199916)
       ALLISON B. HOLCOMBE (Bar No. 268198)
15     SKADDEN, ARPS, SLATE, MEAGHER &
       FLOM LLP
16     300 South Grand Avenue, Suite 3400
       Los Angeles, CA 90071
17     Telephone:   (213) 687-5000
       Facsimile:    (213) 621-5432
18     Email: letcheve@skadden.com
       Email: allison.holcombe@skadden.com

19

20     *Attorneys for Defendant Sybo Games APS*

21

22

23

24

25

26

27

28  Plaintiffs.  Should that arbitration motion be granted, the preemption issues addressed in this motion
    will appropriately be addressed by the arbitrator as they relate to Viacom.

-17-

By:   /s/ David R. Singh

DAVID R. SINGH (Bar No. 300840)
JOHN A. STRATFORD (Bar No. 294245)
AUDREY E. STANO (Bar No. 315370)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 5th Floor
Redwood Shores, CA 94065
Telephone:   (650) 802-3000
Facsimile:    (650) 802-3100
Email: david.singh@weil.com
Email: john.stratford@weil.com
Email: audrey.stano@weil.com

*Attorney for Defendant AdColony, Inc.*

By:   /s/ Tera M. Heintz

TERA M. HEINTZ (Bar No. 241414)
ASHLEY A. KRUPSKI (Bar No. 270536)
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:   (415) 442-1000
Facsimile:    (415) 442-1001
Email: theintz@morganlewis.com
Email: akrupski@morganlewis.com

JOSEPH DUFFY (Bar No. 241854)
MORGAN, LEWIS & BOCKIUS, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone:   (213) 612-7378
Facsimile:    (213) 612-2501
Email: joseph.duffy@morganlewis.com

*Attorney for Defendants Altaba Inc. and
Flurry, Inc.*

-18-

By:   */s/ Benjamin H. Kleine*

MICHAEL G. RHODES (Bar No. 116127)
BENJAMIN H. KLEINE (Bar No. 257225)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-222
Email: rhodesmg@cooley.com
Email:bkleine@cooley.com

*Attorneys for Defendant Chartboost, Inc.*

By:   */s/ Tyler G. Newby*

TYLER G. NEWBY (Bar No. 205790)
AVERY L. BROWN (Bar No. 313478)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   (415) 875-2300
Facsimile:    (415) 875-2391
Email: tnewby@fenwick.com
Email:avery.brown@fenwick.com

*Attorneys for Defendant InMobi Pte Ltd.*

By:   */s/ Celeste M. Brecht*

CELESTE M. BRECHT (Bar No. 238604)
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:   (310) 229-9900
Facsimile:    (310) 229-9901
Email: cmbrecht@venable.com

EDWARD P. BOYLE
JOHN C. VAZQUEZ
VENABLE LLP
1270 Avenue of the Americas
New York, NY 10020
Telephone:   (212) 808-5675
Facsimile:    (212) 307-5598
Email: epboyle@venable.com
Email:jcvazquez@venable.com

*Attorneys for Defendant ironSource USA Inc.*

DEFENDANTS' MOTION TO DISMISS COMPLAINTS
3:17-cv-04419-JD; 3:17-cv-04344-JD; 3:17-cv-04492-JD

1

By:    */s/ Jacob A. Sommer*

2          JACOB A. SOMMER (admitted *pro hac vice*)
           ZWILLGEN PLLC
3          1900 M Street NW, Suite 250
           Washington, D.C. 20036
4          Telephone:   (202) 296-3585
           Facsimile:    (202) 706-5298
5          Email: jake@zwillgen.com

6          JUI-TING ANNA HSIA (Bar No. 234179)
           ZWILLGEN LAW LLP
7          235 Montgomery Street, Suite 425
           San Francisco, CA 94104
8          Telephone:   (415) 590-2341
           Facsimile:    (415) 636-5965
9          Email: anna@zwillgen.com

10         *Attorneys for Defendants Tapjoy, Inc. and Vungle,*
           *Inc.*

11

By:    */s/ Matthew D. Brown*

12         MATTHEW D. BROWN (Bar No. 196972)
           BENJAMIN H. KLEINE (Bar No. 257225)
13         AMY M. SMITH (Bar No. 287813)
           KELLY E. FABIAN (Bar No. 310359)
14         COOLEY LLP
           101 California Street, 5th Floor
15         San Francisco, CA 94111-5800
           Telephone:   (415) 693-2000
16         Facsimile:    (415) 693-2222
           Email: brownmd@cooley.com
17         Email: bkleine@cooley.com
           Email: amsmith@cooley.com
18         Email: kfabian@cooley.com

19

20         *Attorneys for Defendant Upsight, Inc.*

21

22

23

24

25

26

27

28

-20-

By:    /s/ Purvi G. Patel

DAVID F. MCDOWELL (Bar No. 125806)
PURVI G. PATEL (Bar No. 270702)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone:   (213) 892-5200
Facsimile:    (213) 892-5454
Email: DMcDowell@mofo.com
Email: PPatel@mofo.com

JULIE O'NEILL (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue N.W.
Washington D.C. 20006
Telephone:   (202) 887-1500
Facsimile:    (202) 887-0736
Email: JONeill@mofo.com

*Attorneys for Defendant Unity Technologies SF*

By:    /s/ Craig J. Mariam

CRAIG J. MARIAM (Bar No. 225280)
HAZEL MAE B. PANGAN (Bar No. 272657)
SAMUEL B. LAUGHLIN (Bar No. 299720)
GORDON & REES SCULLY MANSUKHANI LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone:   (213) 576-5000
Facsimile:    (877) 306-0043
Email: cmariam@gordonrees.com
Email: hpangan@gordonrees.com
Email: slaughlin@grsm.com

ALLISON J. FERNANDEZ (Bar No. 272853)
GORDON & REES SCULLY MANSUKHANI LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054
Email: afernandez@gordonrees.com

*Attorneys for Defendant Kochava, Inc.*

In accordance with Local Rule 5-1(i), the filer attests that each of the above signatories has

concurred in the filing of this document.

DATED:  November 22, 2017          By:    /s/ Jonathan H. Blavin
                                          JONATHAN H. BLAVIN

-21-

1

## **APPENDIX A**

2

## **LIST OF DEFENDANTS BY RELATED CASE**

3

*McDonald et al. v. Kiloo ApS et al.*, No. 3:17-cv-4344:

4

      *Developer Defendants:* Kiloo ApS ("Kiloo"); Sybo Games ApS ("Sybo").

5

      *SDK Defendants:*        Adcolony, Inc.; Altaba Inc.; Chartboost, Inc.; Flurry, Inc.; InMobi

6

                                 Pte Ltd.; ironSource USA Inc.; Tapjoy, Inc.; Vungle, Inc.

7

*Rushing et al. v. The Walt Disney Company et al.*, No. 3:17-cv-4419:

8

      *Developer Defendants:* The Walt Disney Company; Disney Enterprises, Inc.;

9

                                 Disney Electronic Content, Inc. (collectively "Disney")

10

      *SDK Defendants:*        Upsight, Inc.; Unity Technologies SF; Kochava, Inc.

11

*Rushing et al. v. Viacom Inc. et al*, No. 3:17-cv-4492:

12

      *Developer Defendants:* Viacom Inc.; Viacom International Inc. (collectively "Viacom")

13

      *SDK Defendants:*        Upsight Inc.; Unity Technologies SF.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28