**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand
ndiamand@lchb.com
Douglas I. Cuthbertson
dcuthbertson@lchb.com
Abbye R. Klamann (SBN 311112)
aklamann@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (SBN 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs individually and on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL MCDONALD, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>KILOO APS, et al.,<br><br>              Defendants. | Case No. 3:17-cv-04344-JD (L)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**<br><br>Judge:     Hon. James Donato<br>Date:      February 1, 2018<br>Time:      10:00 a.m.<br>Courtroom:  11 |
| AMANDA RUSHING, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>              Defendants. | Case No. 3:17-cv-04419-JD |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMANDA RUSHING, et al.,

                  Plaintiffs,

v.

VIACOM INC., et al.

                  Defendants.

Case No. 3:17-cv-04492-JD

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II. NATURE OF PLAINTIFFS' CLAIMS.................................................................... 2

    A.  Plaintiffs bring traditional state law privacy claims that parallel COPPA's privacy protection for children................................................................................. 2

    B.  Defendants violated the law when they surreptitiously took persistent identifiers from children for behavioral advertisements without obtaining verifiable parental consent. ........................................................................ 3

III. ARGUMENT ........................................................................................................... 4

    A.  COPPA expressly does not preempt consistent traditional state law privacy claims. ............................................................................................................. 4

        1.  COPPA only preempts "inconsistent" state law and not Plaintiffs' parallel state law claims. ....................................................................... 5

        2.  Plaintiffs' state law claims are consistent with the substantive provisions of COPPA................................................................................ 6

        3.  The Third Circuit has ruled that COPPA does not preempt state law claims like those Plaintiffs bring here............................................. 7

        4.  COPPA's enforcement provisions do not render Plaintiffs' state law claims "inconsistent" with COPPA........................................................ 9

    B.  Plaintiffs' state law claims are not impliedly preempted by COPPA. ................... 13

        1.  Plaintiffs' traditional state law claims are not impliedly preempted under *Buckman*. ..................................................................................... 13

        2.  Plaintiffs' state law claims do not undermine Congressional purposes. ....... 13

    C.  Defendants' merits arguments are improper and unpersuasive. .............................. 14

IV. CONCLUSION ......................................................................................................... 15

EXACTLY

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbett v. Bank of Am.*,
No. 3:04CV 01102 WKW VPM, 2006 WL 581193 (M.D. Ala. Mar. 8, 2006) ........................ 9

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ............................................................................................................... 6

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*,
870 F.3d 1140 (9th Cir. 2017) .............................................................................................. 6

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ........................................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 15

*Blair v. Medtronic, Inc.*,
No. 3:15-CV-01678-JD, 2016 WL 9149503 (N.D. Cal. Sept. 12, 2016) ............................ 13

*Blick v. JP Morgan Chase Bank, N.A.*,
No. 3:12-CV-00001, 2012 WL 1030115 (W.D. Va. Mar. 27, 2012) ...................................... 9

*Bose v. Interclick, Inc.*,
No. 10 Civ. 9183(DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 7, 2011) .................................. 2

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ................................................................................................. 9

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ........................................................................................................... 13

*City of Chicago v. Envtl. Def. Fund*,
511 U.S. 328 (1994) ........................................................................................................... 12

*City of Los Angeles v. AECOM Servs., Inc.*,
854 F.3d 1149 (9th Cir. 2017) .............................................................................................. 5

*College Loan Corp. v. SLM Corp.*,
396 F.3d 588 (4th Cir. 2005) .............................................................................................. 11

*Conboy v. AT&T Corp.*,
241 F.3d 242 (2d Cir. 2001) ................................................................................................. 9

*Connelly v. St. Jude Med., Inc.*,
No. 17-cv-02006, 2017 WL 3619612 (N.D. Cal. Aug. 23, 2017) ........................................ 13

*Fraley v. Facebook*,
638 F. App'x 594 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 68 (2016) .................................. 14

*Gilstrap v. United Air Lines, Inc.*,
709 F.3d 995 (9th Cir. 2013) ......................................................................................... 11, 13

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003) ................................................................................................... 9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................................................................................................... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ............................................................................................................... 2

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
        806 F.3d 125 (3d Cir. 2015) ............................................................................ 6, 8

4    *In re Nickelodeon Consumer Privacy Litig.,*
        827 F.3d 262 (3d Cir. 2016) .......................................................................... passim

5

6    *In re Vizio, Inc., Consumer Privacy Litig.,*
        238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................... 6, 9, 10

7    *In the Matter of True Ultimate Standards Everywhere, Inc., d/b/a Truste, Inc.,*
        159 F.T.C. 970, 2015 WL 1346182 (2015) ..................................................... 14

8    *Ishikawa v. Delta Airlines, Inc.,*
        343 F.3d 1129 (9th Cir. 2003) .................................................................... 10, 11

9

10   *Keams v. Tempe Tech. Inst., Inc.,*
        39 F.3d 222 (9th Cir. 1994) ............................................................................. 11

11   *Matera v. Google Inc.,*
        No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................................. 2

12   *Medtronic, Inc. v. Lohr,*
        518 U.S. 470 (1996) .................................................................................... passim

13   *Meyerson v. Prime Realty Servs., LLC,*
        796 N.Y.S. 2d 848 (2005) ................................................................................ 9

14

15   *Nat'l Women's Health Network, Inc. v. A. H. Robins Co.,*
        545 F. Supp. 1177 (D. Mass. 1982) .................................................................. 9

16   *Shulman v. Grp. W Prods., Inc.,*
        18 Cal. 4th 200, 232 P.2d 469 (1998) .............................................................. 6

17   *Spencer v. Nat'l City Mortg.,*
        No. 1:10-CV-3532-TCB-JFK, 2011 WL 13217023 (N.D. Ga. Apr. 13, 2011) ......................... 9

18   *Sprietsma v. Mercury Marine,*
        537 U.S. 51 (2002) ..................................................................................... 5, 12

19

20   *Stengel v. Medtronic Inc.,*
        704 F.3d 1224 (9th Cir. 2013) ......................................................................... 13

21   *Stich v. BAC Home Loans Servicing, LP,*
        No. 10-CV-01106-CMA-MEH, 2011 WL 1135456 (D. Colo. Mar. 29, 2011) ...................... 9

22   *Wyeth v. Levine,*
        555 U.S. 555 (2009) ..................................................................................... 14

23   **Statutes**

24   15 U.S.C. §1681t .......................................................................................... 9

25   15 U.S.C.A. § 57b ....................................................................................... 12

     16 C.F.R. § 312.2 ....................................................................................... 15

26   Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6502 et seq. ..................... passim

27   Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972 (Jan. 17, 2013) .................... 8

28   Copyright Act, 17 U.S.C. § 301(a) .................................................................... 5

     New York's General Business Law § 349 ............................................................ 1, 8

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**Treatises**

4

Restatement (Second) of Torts § 652A (1977) ............................................................. 5

Restatement (Second) of Torts § 652B cmt. b. (1977) ................................................. 2

5

**Other Authorities**

6

Brief for FTC as Amicus Curiae, *Fraley v. Facebook*,
    No. 13-16819, 2014 WL 1279409 (9th Cir. Mar. 20, 2014).................................... 14

7

FTC, *Privacy Online: A Report to Congress*, 1998 WL 299974 (1998) ....................... 7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

Plaintiffs are concerned parents bringing state law claims to protect against Defendants'
surreptitious online tracking and profiling of their children.  Centuries of common law principles
firmly establish the privacy interests upon which Plaintiffs base their state law claims.  Nothing in
this long common law history, or Plaintiffs' state law rights, conflicts with the Children's Online
Privacy Protection Act of 1998 ("COPPA").  Contrary to Defendants' preemption argument,
while COPPA recognizes our national interest in ensuring that businesses do not deploy new
technologies to exploit our vulnerable children, it does not supplant parents' ability to enforce the
privacy interests of their children in, as here, a manner consistent with COPPA.  Accordingly,
Plaintiffs' claims for Intrusion Upon Seclusion, violations of California's Constitution, and
violations of New York's General Business Law ("GBL") § 349 are not preempted by COPPA.

Defendants' preemption argument has been squarely rejected by the only court to have
addressed this issue.  *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267, 291-93
(3d Cir. 2016).  There, the Third Circuit relied on COPPA's text, purpose, and history to conclude
that parallel state law claims, and specifically a claim for Intrusion Upon Seclusion—based on the
same kind of surreptitious conduct which Plaintiffs allege here—are consistent with COPPA.

Plaintiffs do not allege a claim under COPPA, which provides no private right of action,
but amply reference COPPA and its Congressional findings in their complaint.  COPPA offers
specific guidelines regarding protecting and respecting a child's privacy online and a parent's
right to maintain that privacy, that are fully consistent with Plaintiffs' state law claims.  Thus,
COPPA provides a legislative standard of the conduct society expects from those engaged in
specific business practices with children and why breaches of those expectations are highly
offensive.  Plaintiffs' state law claims—which exist independent of COPPA—merely reference
COPPA's legislative standards to establish liability and are therefore consistent with, and parallel
to, COPPA.  Accordingly, the Court should deny Defendants' motion to dismiss Plaintiffs' state
law claims as preempted under COPPA.

1

## II.     NATURE OF PLAINTIFFS' CLAIMS

2

### A.     Plaintiffs bring traditional state law privacy claims that parallel COPPA's privacy protection for children.

3

4      Plaintiffs bring three state law claims that, while grounded in the same privacy interests

5    that Congress sought to enhance with the enactment of COPPA, are nonetheless longstanding,

6    traditional state law claims: (1) common law intrusion upon seclusion (*see* Class Action

7    Complaint ("Compl.") ¶¶ 105-13); (2) California's constitutional right to privacy (*id.* ¶¶ 114-

8    122); and (3) N.Y. GBL § 349 (*id.* ¶¶ 123-31).  *See, e.g.*, *Matera v. Google Inc.*, No. 15-CV-

9    04062-LHK, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) ("Invasion of privacy has been

10   recognized as a common law tort for over a century."); Restatement (Second) of Torts § 652B

11   cmt. b. (1977) (recognizing the tort of intrusion upon seclusion, for which the "intrusion itself"

12   makes the defendant liable); *Nickelodeon*, 827 F.3d at 291-92 (sustaining intrusion upon

13   seclusion claim for defendants' taking of personal information from children without parental

14   consent); *Bose v. Interclick, Inc.*, No. 10 Civ. 9183(DAB), 2011 WL 4343517, at *8-9 (S.D.N.Y.

15   Aug. 7, 2011)  (GBL § 349 "recognize[s] . . . privacy violations as injuries" where Defendant

16   surreptitiously collected browsing histories via "flash cookies"); *see also Hill v. Nat'l Collegiate*

17   *Athletic Ass'n*, 7 Cal. 4th 1, 27 (1994) (drawing on more than one hundred years of common law

18   right to privacy to recognize a state constitutional privacy right).

19      As such, Plaintiffs' state law privacy claims do not exist "solely by virtue" of COPPA's

20   requirements. (Section III. B. 1., *infra*; Defendants' Notice of Motion and Motion to Dismiss

21   Plaintiffs' Complaints (Motion" or "Mot." at 9), Dkt. 115.)  Even though Plaintiffs' claims stand

22   independently of COPPA, Congress's declaration that children are not to be surreptitiously

23   exploited online through the collection and tracking of their personal information provides a

24   significant reference for determining the applicable standard of expected conduct.  The privacy

25   interests underlying COPPA have long existed at common law and were not invented, nor

26   shunted aside, by Congress when it passed COPPA in 1998.  Rather, Plaintiffs' privacy rights are

27   parallel to those recently embodied in COPPA.

28

1

**B.** __Defendants violated the law when they surreptitiously took persistent__
__identifiers from children for behavioral advertisements without obtaining__
__verifiable parental consent.__

2

3    Defendants surreptitiously and illegally exfiltrated children's personal information from

4    mobile apps ("Game Tracking Apps") directed to children[1] through passive and secretive tracking

5    technologies (called "software development kits" or "SDKs") built into child-directed apps to

6    obtain private data associated with a particular child's device to track that child across multiple

7    apps and platforms on the Internet, and across different devices.  Defendants monetize

8    information gained from this profiling through third-parties who send targeted behavioral

9    advertising to those same children, while providing no notice to parents or means to obtain their

10   consent.  (Class Action Complaint "Compl." ¶¶ 25, 28, 29, 41-44, 47-54, 82, 87, Dkt. 1.)[2]

11   Plaintiffs are parents of children and children who played Defendants' Game Tracking

12   Apps online.  (Compl. ¶ 2.)  Unbeknownst to Plaintiffs, hidden SDKs allow the Defendants to

13   secretly collect and use children's personal information to track their online behavior.  (*Id.* ¶¶ 24-

14   25.)  Specifically, Defendants Kiloo, Sybo, Viacom, and Disney (the "Developer Defendants")

15   partner with the other Defendants (the "SDK Defendants") to plant computer code in their online

16   apps that tracks children's behavior when playing those apps by obtaining critical pieces of data

17   from their mobile devices, including "persistent identifiers."  (*Id.* ¶ 25.)  This information is then

18   sold to third-parties, who sell targeted online advertising.  (*Id.*)

19   Persistent identifiers are typically a unique string of numbers linked to a mobile device,

20   which are "used to recognize a user over time and across different Web sites or online services."

21   16 C.F.R. ¶12.  Persistent identifiers are far from "anonymized" (Mot. at 1, 2, 10.)  Quite the

22   opposite, they are linked to individuals and reveal intimate details about them.  (Compl. ¶ 28.)  In

23   the current online advertising ecosystem, a persistent identifier is actually a *more* accurate way to

24

---

[1] All references to "children" contained herein refer to persons under the age of 13 pursuant to
COPPA's definition of children.  *See* 16 C.F.R. § 312.2

25

[2] Defendants' motion to dismiss, and this opposition to the same, span three related cases:
*McDonald et al. v. Kiloo APS et al.*, No. 3:17-cv-4344-JD (N.D. Cal.); *Rushing et al. v. The Walt
Disney Company et al.*, No. 3:17-cv-04419-JD (N.D. Cal.); and *Rushing et al. v. Viacom Inc. et
al.*, No. 3:17-cv-04492-JD (N.D. Cal.).  Aside from the particularities of the parties and apps at
issue, these complaints allege nearly identical conduct by Defendants.  All references to the
Complaint refer to the complaint filed in the lead case, *McDonald et al. v. Kiloo APS et al.*

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
3:17-CV-04344-JD; 3:17-CV-04419-JD; 3:17-CV-04492-JD

identify a child than her name, address, or even Social Security Number (a more traditional

unique string of numbers), because a persistent identifier provides a direct, real-time window into

a child's online activity on her mobile device.  (*Id.* ¶ 26.)  Advertisers target specific devices to

place tailored advertisements before a specific child, whom they have previously and uniquely

identified by her persistent identifiers.  (*Id.*)

As a result, this surreptitious collection of persistent identifiers alone, even without the

kinds of data familiar to most consumers (e.g., names, email addresses, etc.), facilitates

behavioral advertising to children.  (Compl. ¶¶ 26-28.)  In other words, permitting technology

companies to secretly obtain persistent identifiers makes possible the offensive and invasive

behavior directed toward children, by allowing the construction of a sophisticated and profitable

online profile of how, when, and why a child uses her mobile device, including the demographic

and psychographic inference that can be drawn therefrom.  (*Id.* ¶¶ 27-28.)  Moreover, parents

have no way to know that Defendants actively mine child-directed apps to build these profiles,

and therefore have no way to stop it.  (*Id.* ¶ 22.)

Using sophisticated analytics and network analysis tools, Plaintiffs detected and

documented the Defendants' secret exfiltration and transmittal of specific persistent identifiers

from the Game Tracking Apps to serve behavioral advertising.  (Compl. ¶¶ 45-46.)  Defendants'

clandestine tracking and collection of children's personal information is a highly offensive breach

of expected societal norms.  Defendants' conduct is particularly deceitful given previous denials

that they collected personal information from children.  (*See, e.g.*, *id.* ¶¶ 50-51 (Defendant Kiloo

denied taking personal information from children after the Children's Advertising Review Unit

found that children under the age of 13 play Kiloo's *Subway Surfers* app).)

### III.   <u>ARGUMENT</u>

#### A.   <u>COPPA expressly does not preempt consistent traditional state law privacy claims.</u>

Defendants do not, and cannot, identify how Plaintiffs' state law privacy claims are

"inconsistent" with COPPA's substantive provisions.  Instead, Defendants attempt to bootstrap

COPPA's lack of a private right of action into a Congressional mandate that only federal

1    regulators or state attorneys general can enforce the privacy interests of children, to the exclusion

2    of their parents.  COPPA neither states nor implies, as Defendants argument inevitably leads to,

3    that the federal government intended to displace parents and completely occupy the field of

4    protecting their children's privacy online.  Indeed, the Third Circuit already has concluded that

5    COPPA expresses no such intention, holding that COPPA does not preempt parallel state law

6    privacy claims.

7         **1.    COPPA only preempts "inconsistent" state law and not Plaintiffs'
               parallel state law claims.**

8

9         This Court's preemption analysis begins with the "plain wording of [COPPA's

10   preemption] clause, which necessarily contains the best evidence of Congress' pre-emptive

11   intent."  *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002) (internal citation and quotation

12   marks omitted).  COPPA provides that "[n]o State . . . may impose any liability for commercial

13   activities or actions by operators . . . that is *inconsistent* with the treatment of those activities or

14   actions under this section."  15 U.S.C. § 6502(d) (emphasis added).  By its plain language, the

15   clause preempts only state laws "inconsistent" with COPPA, but not consistent state laws.

16   Congress could have expressly preempted *all* state law claims, as it has elsewhere, but chose not

17   to.[3]

18        Moreover, because "Congress . . . legislated . . . in a field which the States have

19   traditionally occupied," courts assume that "the historic police powers of the States were not to be

20   superseded by [COPPA] unless that was the *clear and manifest* purpose of Congress."

21   *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484–85 (1996) (emphasis added) (internal citation and

22   quotation marks omitted); *City of Los Angeles v. AECOM Servs., Inc.*, 854 F.3d 1149, 1154 (9th

23   Cir. 2017).  States law has a long tradition of protecting their citizens' privacy.  Restatement

24   (Second) of Torts § 652A (1977) ("[T]he existence of a right to privacy is now recognized in the

25   great majority of the American jurisdictions . . . .").  Quite the opposite of expressing a "clear and

26

27   _____
     [3] *See, e.g.*, Copyright Act, 17 U.S.C. § 301(a) (preemption clause states, "No person is entitled to
     any such right or equivalent right in any such work under the *common law or statutes* of any
28   State") (emphasis added).

1    manifest" intent by Congress to supersede these state law privacy protections, COPPA expressly

2    ensures that redress for breaches of *consistent* state law requirements remain available to parents.

3    *Medtronic*, 518 U.S. at 485; *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) ("[W]hen

4    the text of a pre-emption clause is susceptible of more than one plausible reading, courts

5    ordinarily 'accept the reading that disfavors pre-emption.'") (citation omitted); *accord Ass'n des*

6    *Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1146 (9th Cir. 2017).

7    **2.      Plaintiffs' state law claims are consistent with the substantive
             provisions of COPPA.**

8

9    Defendants fail to identify how the *substantive* provisions of COPPA are at odds with

10   Plaintiffs' state law claims.  In fact, Plaintiffs' state law claims are totally consistent with

11   COPPA's mandate to protect children from surreptitious collection of personal data.  *See, e.g.*,

12   15 U.S.C. § 6502(a)(1) ("It is unlawful for an operator of a website or online service directed at

13   children, or any operator that has actual knowledge that it is collecting personal information from

14   a child, to collect information from a child"); *In re Google Inc. Cookie Placement Consumer*

15   *Privacy Litig.*, 806 F.3d 125, 151 (3d Cir. 2015) (applying California law and holding that a

16   highly offensive intrusion was sufficiently pleaded where defendant obtained data surreptitiously

17   by contravening cookie-blockers); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d

18   1204, 1233 (C.D. Cal. 2017) (denying a motion to dismiss intrusion upon seclusion claim, noting

19   the "collection of intimate or sensitive personally identifiable information may amount to a highly

20   offensive intrusion."); *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 232, 955 P.2d 469 (1998)

21   ("To prove actionable intrusion, the plaintiff must show the defendant . . . obtained unwanted

22   access to data about[] the plaintiff").

23   Courts discern congressional intent from the "structure and purpose of the statute as a

24   whole."  *Medtronic*, 518 U.S. at 485-86 (internal citation and quotation marks omitted).  The

25   structure and history of COPPA show that Congress intended to preserve and enhance traditional

26   state privacy protections by providing specific standards in the context of the rapidly advancing

27   technology and the growing online presence of children.  The impetus behind COPPA was a 1998

28   Federal Trade Commission ("FTC") report that urged Congress to develop "legislation [that]

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS
3:17-CV-04344-JD; 3:17-CV-04419-JD; 3:17-CV-04492-JD

would set out the basic standards of practice governing the online collection and use of information from children."  FTC, *Privacy Online: A Report to Congress*, 1998 WL 299974, at 110 (1998) (hereafter "FTC Report"); *see also id.* at 91-92 (noting the "particular vulnerability of children, the immediacy and ease with which information can be collected from them . . . .").  COPPA's lead sponsor, Senator Richard Bryan, expressed concern over parents' ability to protect their children from commercial exploitation via commercial websites, and thus sought to build upon parents' existing rights to protect their children:

> (1) *to enhance* parental involvement in a child's online activities in order to protect the privacy of children in the online environment;
> (2) to *enhance* parental involvement to help protect the safety of children in online fora such as chatrooms, home pages, and pen-pal services in which children may make public postings of identifying information . . . .

(Declaration of Michael W. Sobol ("Sobol Decl."), Ex. A at S11647 (144 Cong. Rec. S11643 (Oct. 7, 1998) (Statement of Senator Richard Bryan) (emphasis added)).)  House Member Inslee similarly stated that "Acts such as COPPA . . . are necessary safeguards of our privacy. Americans *have* a right to privacy in regards to their personal information, and I recognize [COPPA] as *enhancing* this right."  *Id.*, Ex. B (146 Cong. Rec. E616 (May 2, 2000) (Statement of Honorable Jay Inslee) (emphasis added)).  This history shows that Congress drafted COPPA to provide standards that enhance traditional privacy norms, not override existing state privacy laws or create an "exclusive" remedial structure supplanting parents' rights to enforce state laws consistent with those standards.

### 3.      The Third Circuit has ruled that COPPA does not preempt state law claims like those Plaintiffs bring here.

The Third Circuit, in the only apparent reported case addressing the scope of COPPA's preemption clause, held that that a common-law intrusion upon seclusion claim—one of the claims Plaintiffs assert here—was *not* preempted by COPPA.  *Nickelodeon*, 827 F.3d at 267, 291-93.  In *Nickelodeon*, plaintiffs alleged that defendant Viacom represented that it would not disclose children's personal information, including persistent "unique device identifiers" as defined by COPPA, but did so anyway to facilitate targeted advertising directed at the children.

1   *Id.* at 269-70.  The court held that "even when federal laws have preemptive effect in some

2   contexts, states generally retain their right to provide a traditional damages remedy for violations

3   of common-law duties when those duties parallel federal requirements." *Id.* at 291-92 (internal

4   quotation marks omitted).  As a result, the "intrusion [upon seclusion] claim rest[ed] on common-

5   law duties that are compatible with [COPPA] obligations," because Viacom "created an

6   expectation of privacy on its website and then obtained the [Viacom] [P]laintiffs' personal

7   information under false pretenses." *Id.* at 292; *see also Google*, 806 F.3d at 151 ("Google's

8   alleged conduct was  . . . surreptitious, surfacing only because of the independent research" of

9   third-parties, giving rise to plaintiffs' California law-based privacy claims).

10          Here too, Plaintiffs base their invasion of privacy claims on allegations that Defendants

11   secretly collected children's personal information for external, advertising uses.  (Compl. ¶¶ 4,

12   29, 106-108.)  Contrary to Defendants' argument, Plaintiffs' claims are predicated upon

13   Defendants' deceptive conduct, including that Viacom and the other Defendants behaved secretly

14   and deceitfully when they used "passive and secret . . . tracking technology" to "surreptitiously"

15   track, obtain, and disclose personal information from children.  (Compl. ¶¶ 22, 24, 27, 29, 43, 55-

16   56, 106-09, 115-18, 129-30).[4]  Further, Plaintiffs allege that Defendants' deception prevented

17   them from knowing about and preventing the privacy violations.  (*Id.* ¶¶ 55-56.)  In short, under

18   the rule established in *Nickelodeon*, Plaintiffs' claims are not preempted by COPPA.[5]

19          Defendants offer cases from outside of the Ninth Circuit to argue that Plaintiffs' state law

20   claims are inconsistent with COPPA's enforcement scheme (Mot. at 5-6), but these cases have no

21   _____

22   [4] Allegations concerning Defendants' deceptive conduct also support Plaintiffs' claims for
     invasion of California's constitutional right to privacy and violation of New York's General

23   Business Law § 349.  (Compl. ¶¶ 22, 24, 27, 29, 43, 55-56, 106-09, 115-18, 129-30.)

     [5] Defendants try to minimize the impact of collecting and disclosing persistent identifiers about

24   children (Mot. at 10), but *Nickelodeon* held that "static digital identifiers" qualify as "personal
     information" to parents who want to protect their children from privacy invasions, and that

25   "COPPA leaves the states free to police this kind of deceptive conduct." *Nickelodeon*, 827 F.3d
     at 292.  As the FTC has stressed, "arguments that persistent identifiers only permit the contacting

26   of a device [as opposed to a specific individual] . . . ignore[] the reality that, at any given moment,
     a specific individual is using that device.  Indeed, the whole premise underlying behavioral

27   advertising is to serve an advertisement based on the perceived preferences of the individual
     user."  Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3980 (Jan. 17, 2013),

28   *available at* 2013 WL 169584 (promulgating updated rule).

relevance to COPPA.  Four cases[6] arise under the Fair Credit Reporting Act ("FCRA") and are inapplicable because the FCRA's preemption provisions are far broader than COPPA's.[7] *Grochowski* and *National Women's Health Network, Inc.* primarily address whether an implied right of action exists under other statutes and do not focus on preemption jurisprudence.[8]  And *Broder* and *Conboy*, which relate to the New York GBL § 349 claim, do not engage in *any* federal-state preemption analysis, but instead address the scope of § 349's right of action,[9] even though New York courts agree that "a privacy invasion claim . . . may be stated under [GBL § 349] based on nonpecuniary injury."  *Bose*, 2011 WL 4343517, at *9 (citing *Meyerson v. Prime Realty Servs., LLC*, 796 N.Y.S. 2d 848, 856 (2005)).

**4.   COPPA's enforcement provisions do not render Plaintiffs' state law claims "inconsistent" with COPPA.**

Defendants argue that COPPA's lack of a private right of action, together with its grant of permission to the FTC and state attorneys general to enforce COPPA, makes private enforcement of children's privacy rights inconsistent with COPPA.

Defendants' initial fallacy comes in asserting that Plaintiffs seek to enforce COPPA itself—they do not.  Rather, Plaintiffs' state law claims permissibly borrow from federal standards, as well as other indicators of common law norms, to demonstrate the serious nature of Defendants' intrusion.  *See, e.g.*, *In re Vizio*, 238 F. Supp. 3d at 1232 ("[V]arious federal and state

---

[6] *Blick v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-00001, 2012 WL 1030115, at *8 (W.D. Va. Mar. 27, 2012); *Spencer v. Nat'l City Mortg.*, No. 1:10-CV-3532-TCB-JFK, 2011 WL 13217023, at *9 (N.D. Ga. Apr. 13, 2011) (FCRA's broad preemption provision states that no "requirement . . . may be imposed under the laws of any State— (1) with respect to any subject matter regulated . . .."); *Stich v. BAC Home Loans Servicing, LP*, No. 10-CV-01106-CMA-MEH, 2011 WL 1135456, at *8 (D. Colo. Mar. 29, 2011) (Plaintiffs' claim exempt from FCRA's preemption provision, which "explicitly applies to state common law claims"); *Abbett v. Bank of Am.*, No. 3:04CV 01102 WKW VPM, 2006 WL 581193, at *5 (M.D. Ala. Mar. 8, 2006) (same);

[7] One FCRA exemption provision explicitly preempts certain common law claims; the other consists of a complex web of exceptions. 15 U.S.C. §§ 1681h(e) & 1681t.  The FCRA also has a private right of action.  *Id.* § 1681n.

[8] *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 85 (2d Cir. 2003); *Nat'l Women's Health Network, Inc. v. A. H. Robins Co.*, 545 F. Supp. 1177, 1180 (D. Mass. 1982).

[9] *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005); *Conboy v. AT&T Corp.*, 241 F.3d 242, 254 (2d Cir. 2001).

1  statutes that specifically protect video viewing histories make Plaintiffs' assertion [intrusion upon

2  seclusion and invasion of privacy claims] stronger . . . ."); Restatement (Second) of Torts § 874A

3  (1979) ("When a legislative provision protects a class of persons by proscribing or requiring

4  certain conduct but does not provide a civil remedy for the violation, the court may . . . accord to

5  an injured member of the class a right of action, using a suitable existing tort action or a new

6  cause of action analogous to an existing tort action.").  Indeed, with respect to their claim for

7  Intrusion Upon Seclusion, Plaintiffs may refer to legislative standards such as COPPA as a well-

8  settled means to establish that Defendants' intrusion is "highly offensive."  *See, e.g.*, *In re Visio*,

9  238 F. Supp. 3d at 1231-32; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 291 (2009).  Therefore,

10  Plaintiffs' state law claims, while buttressed by COPPA, exist independently of COPPA and are

11  embodied in state law whose history predates COPPA.

12       COPPA's lack of a private right of action does not defeat parents' ability to bring

13  consistent state law claims.  For example, in *Medtronic*, plaintiff brought state law tort claims

14  when her pacemaker failed, though the device had temporary approval under the Medical Device

15  Amendments ("MDA").  518 U.S. at 480-81.  Like COPPA, MDA preemption is limited to "any

16  requirement . . . which is different from, or in addition to, any requirement applicable under this

17  [Act] . . . ."  *Id.* at 481.  Thus, the Supreme Court held that the MDA did not preempt plaintiff's

18  common law tort claims, even though the MDA had no private right of action, because "nothing

19  in [the MDA's preemption provision] denies [states] the right to provide a traditional damages

20  remedy for violations of common-law duties when those duties parallel federal requirements."  *Id.*

21  at 495.

22       Law in the Ninth Circuit amplifies this principle.  In *Ishikawa v. Delta Airlines, Inc.*, the

23  Ninth Circuit found no preemption of a state law negligence claim for a botched drug-detection

24  urine test under the Omnibus Transportation Employee Testing Act of 1991 ("OTETA").  343

25  F.3d 1129, 1130-31 (9th Cir. 2003).  Although OTETA has no private right of action, its

26  preemption clause is "expressly limited to 'inconsistent' state law," such that the court could not

27  see how "the duty the state common law imposed, that [Defendant] test urine and report the

28  results with due care, could be inconsistent with the federal guidelines, which require the same

1    thing with more specificity." *Id.* at 1132.   Here too, Plaintiffs' state law claims are not

2    inconsistent with COPPA but instead reference, parallel, and draw support from COPPA's

3    specific guidelines enhancing traditional state law privacy protections in the context of children

4    online.  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 452 (2005) (Preemption clause "does

5    not . . . pre-empt any state rules that are fully consistent with federal requirements"); *Kearns v.*

6    *Tempe Tech. Inst., Inc.*, 39 F.3d 222, 225 (9th Cir. 1994) (no preemption where federal law

7    expressly preempts only certain state law claims).[10]

8            Indeed, "the Supreme Court . . . has recognized that the availability of a state law claim is

9    even *more* important in an area where no federal private right of action exists."   *College Loan*

10   *Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005) (emphasis in original); *see also*

11   *Medtronic*, 518 U.S. at 487 (state claim incorporating federal statutory standards was not

12   preempted, even though there was no federal statutory private right of action); *Gilstrap v. United*

13   *Air Lines, Inc.*, 709 F.3d 995, 1008 (9th Cir. 2013) ("That Congress has not chosen to provide a

14   federal cause of action to enforce a statute does not necessarily mean that all conceivably related

15   state personal-injury claims are displaced."); *Ishikawa*, 343 F.3d at 1134 ("[S]tatutory remedy of

16   regulatory action" did not preclude a tort remedy because "Congressional 'silence' about

17   'recourse for those injured' implied the contrary, that tort remedies were *not* preempted . . . .").

18          COPPA's delegation of enforcement authority to the FTC and state attorneys general also

19   does not mean that prosecution of privacy interests by private parties would be "'inconsistent

20   with the treatment of' COPPA violations."  (Mot. at 5, quoting 15 U.S.C. § 6502(d).)  *First*,

21   Congress enabled FTC enforcement actions under COPPA out of concern that the FTC Act

22   provided "limited authority over the collection and dissemination of personal data collected

23   online" and that the FTC "lack[ed] authority to require firms to adopt information practice

24   policies."  FTC Report, 1998 WL 299974, at \*109; *see also* Sobol Decl., Ex. C (*Children's*

25   _____

26   [10] The *Medtronic* and *Ishikawa* holdings refute Defendants' assertion—made without any
     authority or basis in the text of COPPA—that COPPA provides an "exclusive enforcement

27   scheme" for the FTC.  (Mot. at 5.)  To the contrary, these cases—and the language of the
     preemption clause—demonstrate that harmonious state law claims brought by private citizens are

28   permissible.  Defendants' argument is tantamount to an assertion of field preemption, for which
     there is no basis.

1  *Online Privacy Protection Act of 1998: Hearing before S. Comm. on Commerce*, 105th Cong. S.

2  Hrg. 105-1069, at 6 (1998)).  COPPA thus provides that the FTC "shall prevent any person from

3  violating" COPPA consistent with the FTC Act.  15 U.S.C. § 6505.  As the FTC Act does not

4  preclude parallel actions under state consumer protection laws,[11] it logically follows that COPPA

5  does not preclude them either simply by delegating enforcement authority to the FTC.  Nor does

6  COPPA state that the FTC's new enforcement powers come at the expense of existing state

7  remedies.

8       *Second*, COPPA's preemption clause describes the standards of conduct governing

9  *liability*, and not the means of *enforcement*.  The preemption provision prevents states from

10  enforcing laws that are "inconsistent with the treatment of those activities or actions *under this*

11  *section*," 15 U.S.C. § 6502 (emphasis added), referring to the substantive provisions of § 6502,

12  and not COPPA's enforcement section.  *See City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328,

13  338 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it

14  includes particular language in one section of a statute but omits it in another.") (internal citation

15  and quotation marks omitted).

16       *Finally*, Defendants claim, with no support, that private actions would undermine

17  COPPA's federal standards and result in "a patchwork of rules under different state laws and

18  decisions in different judicial proceedings."  (Mot. at 5.)  However, Plaintiffs' state law claims are

19  the opposite of "patchwork," because they are perfectly *consistent* with COPPA, which merely

20  requires the same thing – albeit with more specificity – consistent with Defendants' duties under

21  state law.  Moreover, illusory concerns about uniformity cannot displace state law remedies that

22  advance COPPA's "prominent objective" of enhancing children's online privacy rights.

23  *Sprietsma*, 537 U.S. at 70 (a "concern with uniformity does not justify the displacement of state

24  common-law remedies that . . . serve the Act's more prominent objective . . . .").

25

26

27

28

---

[11] 15 U.S.C.A. § 57b ("Remedies provided in [FTC Act] are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law.").

**B.**   **Plaintiffs' state law claims are not impliedly preempted by COPPA.**

**1.**   **Plaintiffs' traditional state law claims are not impliedly preempted under *Buckman*.**

Defendants' assertion of implied preemption under the Supreme Court's *Buckman* case is without merit.  Implied preemption under *Buckman* requires a showing that Plaintiffs' claims exists "solely by virtue of" COPPA, a standard that Defendants cannot meet here.  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001).  As Plaintiffs explain above, their state law claims—while supported by COPPA and its associated Congressional findings—would exist with or without COPPA.  *See* Section II.A. & III.A.2, *supra*.  Further, unlike the claims in *Buckman*, here Plaintiffs rely "on traditional state tort law which had predated the federal enactments in question" in a field—privacy—traditionally occupied by the states.  *Id.* at 347-48, 353.

Because Plaintiffs allege privacy intrusions that "exactly parallel[] the defendants' federal law duty under" COPPA, *Buckman* is irrelevant.  *Blair v. Medtronic, Inc.*, No. 3:15-CV-01678-JD, 2016 WL 9149503, at *2 (N.D. Cal. Sept. 12, 2016) (Donato, J.); *see also Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013) ("In contrast to the plaintiffs in *Medtronic v. Lohr*, the plaintiffs in *Buckman* alleged no state-law claim and were concerned exclusively with alleged fraud on the FDA that had occurred as part of that approval process."); *Connelly v. St. Jude Med., Inc.*, No. 17-cv-02006, 2017 WL 3619612, at *4 (N.D. Cal. Aug. 23, 2017) (Plaintiffs "sufficiently alleged a parallel state claim that survives preemption").  Due to the parallel nature of the claims, this action will not create any unanticipated burdens, because Defendants must comply with COPPA regardless of whether the FTC files suit under COPPA or Plaintiffs file suit under state law claims referencing COPPA's standards.  *See Gilstrap*, 709 F.3d at 1010 (holding tort law claims not preempted under *Buckman* because "state damages liability premised in part on [federal regulatory] violations [do not] increase the burdens facing [Defendants]").

**2.**   **Plaintiffs' state law claims do not undermine Congressional purposes.**

Defendants offer no viable rationale for their contention that Plaintiffs' state law claims undermine COPPA enforcement and regulation.  (Mot. at 11-13.)  As Plaintiffs explain above, Congress's purpose in enacting COPPA was to enhance privacy protections as they already exist under state law, not to replace them.  *See* Section III.A.2, *supra*.  As *Medtronic* and *Nickelodeon*

1 | demonstrate, state law claims that are consistent with COPPA cannot possibly undermine the

2 | Congressional purpose in enacting COPPA. *Medtronic*, 518 U.S. at 496-97 (parallel state law

3 | claims do not frustrate Congressional purposes); *Nickelodeon*, 827 F.3d at 291-92 (same); *Wyeth*

4 | *v. Levine*, 555 U.S. 555, 589 (2009) (state law that complements federal regulations does not

5 | stand "as an obstacle to the accomplishment" of federal law) (citation omitted).

6 |      The FTC itself has said that COPPA "was enacted in the shadow of state privacy laws—

7 | including state protections that are particular to minors—that had existed for nearly a century."

8 | Brief for FTC as Amicus Curiae, *Fraley v. Facebook*, No. 13-16819, 2014 WL 1279409, at *11

9 | (9th Cir. Mar. 20, 2014); *Fraley v. Facebook*, 638 F. App'x 594, 598 (9th Cir. 2016), *cert. denied*,

10 | 137 S. Ct. 68 (2016).  Congress enacted COPPA to ensure that longstanding privacy protections

11 | keep pace with increasing Internet use by children; the continued viability of state law privacy

12 | claims advances that purpose. (Sobol Decl., Ex. C (S. Hrg. 105-1069, at 12).)  Keeping pace with

13 | rapid changes in technology supports the need for parallel private state law claims that further

14 | COPPA's goals and FTC rulemaking in support of the same.  (*Id.*)

15 |      Finally, Congress's promotion of "self-regulation by operators of online services" through

16 | compliance consultancies like TRUSTe does not translate into a legislative intent to preclude

17 | private enforcement through consistent state law claims.  This program—which Defendants

18 | characterize as a "safe harbor" (Mot. at 12)—requires voluntarily participation and continued

19 | compliance with COPPA.  *See* 15 U.S.C. § 6503.  Viacom, Kiloo, and Sybo appear to have never

20 | participated.  And during Disney's claimed participation in the program, the FTC nonetheless

21 | initiated an enforcement action against it.  *See In the Matter of True Ultimate Standards*

22 | *Everywhere, Inc., d/b/a Truste, Inc.*, 159 F.T.C. 970, 2015 WL 1346182 (2015).  Simply,

23 | TRUSTe does not immunize its clients from liability for privacy claims brought under state laws

24 | consistent with COPPA, and allowing meritorious, consistent state law claims to go forward

25 | actually promotes the Congressional goal of protecting children's privacy.

26 |      **C.**    **Defendants' merits arguments are improper and unpersuasive.**

27 |      Defendants briefly argue that Plaintiffs' claims are inconsistent with COPPA because they

28 | rest on permitted conduct (Mot. at 13-15), but that argument ignores (and argues with) the factual

1    statements in the complaint and is procedurally defective, because this Court "deferred to a later

2    time . . . other motion to dismiss arguments . . . directed to specific state law claims." (Dkt. 107

3    (Nov. 9, 2017 Order) at 2.)

4          Defendants' main claim is that Plaintiffs do not plausibly allege that Defendants' actions

5    do not fall within COPPA's narrow "internal operations" exception, which permits the collection

6    of children's persistent identifiers without verifiable consent for activities necessary to, for

7    example, "[m]aintain or analyze the functioning" of any online service, but which also explicitly

8    forbids using that data to target children through behavioral advertising. *See* 16 C.F.R. § 312.2.

9    Plaintiffs, however, address this potential affirmative defense when they specifically and

10   repeatedly allege that Defendants collected, disclosed, or used children's data for commercial

11   gain to serve illegal behavioral advertising, and not simply or exclusively for "internal

12   operations." (Compl. ¶¶ 9, 43, 44, 82, 87.)

13         Similarly unavailing is Defendants' argument that to the extent state law claims impose

14   liability for "mere" surreptitious collection of data without demonstration of an illicit use of the

15   data, it is inconsistent with COPPA. (Mot. at 13.) COPPA generally prohibits "collecting

16   personal information from a child . . . ." 15 U.S.C. § 6502(a)(1). Moreover, this argument has no

17   application to the case at hand because Plaintiffs *have alleged* that Defendants collected

18   children's private information for illicit uses, namely to serve behavioral advertisements to

19   children. (Compl. ¶¶ 25, 26, 28-31, 41-44, 82, 87.) *See Bell Atl. Corp. v. Twombly*, 550 U.S.

20   544, 555 (2007) (Plaintiffs' allegations at the pleadings stage must only be "enough to raise a

21   right to relief above the speculative level").[12]

22   **IV.    CONCLUSION**

23         For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.

24

25

26   ───────────────────

27   [12] Defendants rely on *Fraley*, but *Fraley* holds only that the "issue of COPPA preemption ha[d] not been resolved." 638 F. App'x at 598. Defendants also cite *Perez v. Nidek Co.*, which is inapposite as it addresses a state law fraud claim seeking to add to federal requirements under the

28   MDA. 711 F.3d 1109, 1118 (9th Cir. 2013). Plaintiffs' claims add no requirements to COPPA.

1    Dated: December 22, 2017              Respectfully Submitted,

2                                          /s/ _____

3                                          Michael W. Sobol (State Bar No. 194857)
                                           msobol@lchb.com
4                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           275 Battery Street, 29th Floor
5                                          San Francisco, CA 94111-3339
                                           Telephone: 415.956.1000
6                                          Facsimile: 415.956.1008

7                                          Nicholas Diamand
                                           ndiamand@lchb.com
8                                          Douglas I. Cuthbertson
                                           dcuthbertson@lchb.com
9                                          Abbye R. Klamann (State Bar No. 311112)
                                           aklamann@lchb.com
10                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           250 Hudson Street, 8th Floor
11                                         New York, NY 10013-1413
                                           Telephone: 212.355.9500
12                                         Facsimile: 212.355.9592

13                                         Hank Bates (State Bar No. 167688)
                                           hbates@cbplaw.com
14                                         Allen Carney
                                           acarney@cbplaw.com
15                                         David Slade
                                           dslade@cbplaw.com
16                                         CARNEY BATES & PULLIAM, PLLC
                                           519 W. 7th St.
17                                         Little Rock, AR 72201
                                           Telephone: 501.312.8500
18                                         Facsimile: 501.312.8505

19                                         *Attorneys for Plaintiffs and the proposed Classes*

20

21

22

23

24

25

26

27

28