GLENN D. POMERANTZ (State Bar No. 112503)
glenn.pomerantz@mto.com
JORDAN D. SEGALL (State Bar No. 281102)
jordan.segall@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Attorneys for Defendants The Walt Disney
Company, Disney Enterprises, Inc., and Disney
Electronic Content Inc.

*[Additional counsel for Defendants listed on
signature pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MCDONALD et al., | Case No.: 3:17-cv-04344-JD (L) |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| KILOO APS et al., | |
| Defendants. | Judge:  Hon. James Donato<br>Date:   October 18, 2018<br>Time:   10:00 a.m.<br>Ctrm:   11 |
| AMANDA RUSHING et al., | Case No. 3:17-cv-04419-JD |
| Plaintiffs, | |
| vs. | |
| THE WALT DISNEY COMPANY et al., | |
| Defendants. | |

| | |
|---|---|
| AMANDA RUSHING et al., | Case No.: 3:17-cv-04492-JD |
| Plaintiffs, | |
| vs. | |
| VIACOM INC. et al., | |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINTS ................................... 2

        A.      The Developer Defendants' Relationship with the SDK Defendants ...................... 2

        B.      Allegations Regarding Defendants' Collection of User Data ................................. 3

        C.      Allegations About Defendants' Use of Data ........................................................ 3

        D.      Procedural History ............................................................................................. 4

III.    LEGAL STANDARD ............................................................................................... 4

IV.     ARGUMENT ......................................................................................................... 5

        A.      Courts Consistently Have Held that Collecting and Using Anonymous
                Persistent Identifiers Does Not Violate California Privacy Law ............................. 5

                1.      Collecting Anonymous Persistent Identifiers For Advertising
                        Purposes Does Not Constitute an Egregious Breach of Social Norms ......... 5

                2.      Plaintiffs' Reliance on Surveys and Related Allegations Does Not
                        Establish that the Alleged Conduct Constitutes an Egregious Breach
                        of Social Norms ....................................................................................... 10

                3.      Plaintiffs Do Not Allege Deceitful Conduct. ............................................ 11

        B.      Plaintiffs Fail to State a Claim Under N.Y. Gen. Bus. Law § 349 ........................ 13

        C.      The *Rushing v. Disney* FAC Fails to State a Claim Under Mass. Gen. L. Ch.
                214 .................................................................................................................... 14

        D.      Plaintiffs Fail to Allege Facts Plausibly Suggesting that Their Data Was
                Used for Any Improper Purpose .......................................................................... 15

                1.      Plaintiffs' Allegations About Data Use Are Conclusory and
                        Deficient. ................................................................................................ 15

                2.      The Contracts Plaintiffs Cite Contradict Allegations of Improper
                        Use. ........................................................................................................ 18

V.      CONCLUSION ...................................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page**

3

***F*EDERAL *C*ASES**

4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................4, 20

5

6

*Avila v. Wells Fargo Bank, Nat'l Ass'n,*
    2016 WL 7425925 (N.D. Cal. Dec. 23, 2016) ........................................................18

7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................16, 17, 20

8

9

*Belluomini v. Citigroup, Inc.,*
    2013 WL 3855589 (N.D. Cal. July 24, 2013) .......................................................5, 8

10

11

*Cahen v. Toyota Motor Corp.,*
    147 F. Supp. 3d 973 (N.D. Cal. 2015), aff'd, 717 F. App'x 720 (9th Cir. 2017) ......................7

12

*Chodos v. W. Publ'g Co.,*
    292 F.3d 992 (9th Cir. 2002)...............................................................................20

13

14

*Cohen v. Casper Sleep Inc.,*
    2018 WL 3392877 (S.D.N.Y. July 12, 2018) ........................................................13

15

16

*Coto Settlement v. Eisenberg,*
    593 F.3d 1031 (9th Cir. 2010)..............................................................................18

17

18

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017)..................................................................................9

19

*Garcia v. Enterprise Holdings, Inc.,*
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................................18, 19

20

21

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008)................................................................................4

22

23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    806 F.3d 125 (3d Cir. 2015)..............................................................................11, 12

24

*In re Google, Inc. Privacy Policy Litig.,*
    58 F. Supp. 3d 968 (N.D. Cal. 2014) .................................................................8, 12

25

26

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................5, 7

27

*Low v. LinkedIn Corp.,*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................5, 7, 9, 10

28

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
   No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ....................................7

*Moss v. U.S. Secret Service*,
   572 F.3d 962 (9th Cir. 2009)...................................................................................................20

*Mount v. PulsePoint, Inc.*,
   2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ........................................................................13

*Mount v. PulsePoint, Inc*,
   684 F. App'x 32 (2d Cir. 2017).........................................................................................13, 14

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
   2013 WL 6172953 (N.D. Cal. Nov. 25, 2013) .......................................................................17

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015).........................................................................................16, 20

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001)....................................................................................................4

*In re Nickelodeon Consumer Privacy Litig.*,
   2014 WL 3012873 (D.N.J. July 2, 2014) .............................................................................8, 9

*In re Nickelodeon Consumer Privacy Litigation*,
   827 F.3d 262 (3d Cir. 2016) .........................................................................................8, 11, 12

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...................................................................................8

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)..............................................................................................4, 18

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) .................................................................................18

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................................................11, 12

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003).................................................................................................18

*White v. Soc. Sec. Admin.*,
   111 F. Supp. 3d 1041 (N.D. Cal. 2015) ...................................................................................9

*Yunker v. Pandora Media*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .........................................................................7

**STATE CASES**

*Bratt v. IBM Corp.*,
    392 Mass. 508 (1984)........................................................................................14

*Catsouras v. Dep't of Cal. Highway Patrol*,
    181 Cal. App. 4th 856 (2010).............................................................................5

*Folgelstrom v. Lamps Plus*,
    195 Cal. App. 4th 986 (2011).........................................................................6, 9

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009).....................................................................................10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal.4th 1 (1994).......................................................................................5, 10

*Kelley v. CVS Pharmacy, Inc.*,
    2007 WL 2781163 (Mass. Super. Aug. 24, 2007) .........................................14

*Lackner v. Dep't of Health Servs.*,
    29 Cal. App. 4th 1760 (1994).......................................................................5, 10

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007).......................................................................................5

*Urbaniak v. Newton*,
    226 Cal. App. 3d 1128 (1991)............................................................................5

**FEDERAL STATUTES**

15 U.S.C. § 6502(d) .............................................................................................16

Children's Online Privacy Protection Act......................................................... 1, passim

**STATUTES - OTHER**

Mass. Gen. Laws Chapter 214, § 1B.............................................................14, 15

N.Y. Gen. Bus. Law § 349 .............................................................................13, 14

**RULES - OTHER**

Fed. R. Civ. P. 12(b)(6) .........................................................................................1

**FEDERAL REGULATIONS**

16 C.F.R. §§ 312.2, 312.5(c)(7) ....................................................................15, 16

16 C.F.R. § 312.5(c)(3) and (4) ...........................................................................15

78 Fed. Reg. 3972, 3998 (Jan. 17, 2013) ........................................................................15

**TREATISES**

Restatement (Second) of Torts, § 652B ...........................................................................8

**OTHER AUTHORITIES**

FAQ, No. I.5 (https://www.ftc.gov/tips-advice/business-
    center/guidance/complying-coppa-frequently-asked-questions) ................................16

http://www.asrcreviews.org/following-caru-inquiry-app-maker-kiloo-agrees-to-
    modify-subway-surfers-privacy-policy-to-better-protect-child-players/ ...................12

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2      PLEASE TAKE NOTICE that on October 18, 2018, Defendants in the three cases captioned

3 above will and hereby do move to dismiss Plaintiffs' first amended complaints ("FACs") pursuant to

4 Federal Rule of Civil Procedure 12(b)(6).  Defendants move for dismissal on the grounds that the

5 FACs (1) fail to state claims for violation of state law and (2) fail to state facts plausibly alleging that

6 any data collected from the apps at issue was used for any improper purpose.  Defendants seek an

7 order dismissing each complaint with prejudice.

8 ## I.      INTRODUCTION

9      Plaintiffs initially filed these actions asserting claims entirely predicated upon purported

10 violations of the federal Children's Online Privacy Protection Act ("COPPA").  Plaintiffs' exclusive

11 reliance on COPPA was no accident; it reflected Plaintiffs' implicit recognition that their claims

12 were not actionable under traditional state-law principles.  After the Court expressed "concerns

13 about the need for claims independent of COPPA" and instructed Plaintiffs to file amended

14 complaints (Dkt. 159 at 2), Plaintiffs repackaged their COPPA-based theory of liability by excising

15 most of the explicit references to COPPA.  Plaintiffs now assert that Defendants' collection and use

16 of anonymous user data from mobile apps allegedly aimed at minors violates users' privacy rights

17 under state law, independent of COPPA.

18      Plaintiffs' restated claims are barred by an established body of case law rejecting materially

19 identical invasion of privacy claims based on collecting user data and using it for marketing,

20 whether online or off.  Plaintiffs' claims fail for two independent reasons.

21      *First*, the conduct alleged here—collecting anonymous "persistent identifiers" and related

22 data for targeted advertising and other purposes—does not support a claim for intrusion upon

23 seclusion or invasion of privacy under the California constitution.  Instead, to state such a claim, a

24 plaintiff must allege conduct constituting an "egregious breach of the social norms underlying the

25 privacy right."  Courts consistently have held that the collection of anonymous user data from

26 websites and mobile apps for use in digital advertising does not constitute an actionable invasion of

27 privacy, even in the face of evidence indicating that such collection is unpopular.  Nor do Plaintiffs

28 allege that any Defendant affirmatively misled them about what kind of data would be collected or

-1-

how it would be used.  To the contrary, the very privacy policies Plaintiffs cite contain robust and transparent disclosures of Defendants' data-collection practices.

*Second*, and independently, the FACs do not allege facts plausibly suggesting that Defendants *used* Plaintiffs' data for any improper or unlawful purpose.  While the FACs allege the types of anonymous data the apps at issue might *collect*, they do not offer any concrete and non-conclusory factual allegations suggesting that Defendants actually engaged in behavioral advertising using the identifiers obtained from the apps at issue.  Plaintiffs' allegations are consistent with lawful conduct: There is no question that the collection of anonymous identifiers like advertising IDs and IP addresses alone is not actionable.  Even COPPA expressly authorizes collection of persistent identifiers from child-directed apps for certain "internal operations" purposes.  Plaintiffs' speculation that Defendants could have used the collected data for improper purposes is insufficient as a matter of law and is contradicted by the contracts between the Developer Defendants and the SDK Defendants that Plaintiffs selectively quote, ignoring the provisions that expressly prohibit the use of these identifiers for the purposes alleged.

## II.      FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINTS

### A.      The Developer Defendants' Relationship with the SDK Defendants

Plaintiffs allege that the four "Developer Defendants"—Disney, Viacom, Kiloo, and Sybo[1]—develop and publish mobile applications geared for children.  Disney Amended Complaint ("DAC") ¶¶ 7–10; Kiloo Amended Complaint ("KAC") ¶¶ 6–8; Viacom Amended Complaint ("VAC") ¶¶ 4–6.  The Defendants contract with developers of so-called "software development kits" that add functionality to the apps (the "SDK Defendants").  DAC ¶¶ 44–79; KAC ¶¶ 53–106; VAC ¶¶ 44–51.  The Developer Defendants' contracts with the SDK Defendants typically restrict how data collected from apps aimed at children can be used.  For example, Disney's and Viacom's contracts with SDK Defendants prohibit the latter from collecting or using user data collected from apps aimed at children for any purposes other than those sanctioned by COPPA (i.e., for internal operations).  *See* Request for Judicial Notice (hereafter "RJN"), Exs. A–D, L–M.

---

[1] Sybo is defined as a Developer Defendant but does not have any relevant contractual relationships with the SDK Defendants.

B.     **Allegations Regarding Defendants' Collection of User Data**

Plaintiffs allege that their forensic analysis shows that, when users use various apps identified in the FACs, certain data is collected and transmitted to the SDK Defendants.  DAC ¶¶ 40–43; KAC ¶¶ 40–44; VAC ¶¶ 30–32.  The principal piece of data that Defendants allegedly collect is a "persistent identifier," which is a long "alphanumeric string" associated with a specific mobile device.  DAC ¶ 36; KAC ¶ 35; VAC ¶ 26.  Plaintiffs also allege that Defendants collect certain other data about users' mobile devices, such as IP addresses, device make and model, and the app and operating system running on the device.  The FACs describe the specific categories of user data allegedly transmitted to each of the SDK Defendants.  For example, Plaintiffs allege that Kiloo's Subway Surfers app transmits the following data to SDK Defendant Vungle:

| | |
|---|---|
| **IDFA (Apple users)** | B3626A74-54CZ-314C-C825-C2A87669D561 |
| **AAID (Android users)** | A42c89c4-1dc7-5b79-92cd-01fa2cd5cab2 |
| **User's device IP address** | 216.3.128.12 |
| **Device language** | X-VUNGLE-LANGUAGE: en-US |
| **Manufacturer, make, model** | "model": "iPhone6,1" |
| **Operating system and version** | "platform": "iOS"; "osVersion": "10.3.2" |
| **Screen dimensions of device** | "dim": "height": 1136; "width": 640 |
| **App name and developer** | X-VUNGLE-BUNDLE-ID:com.kiloo.subwaysurfers |

KAC ¶ 86.  Plaintiffs do not allege that Defendants collect any personally identifying information about users, such as addresses, social security numbers, or dates of birth.[2]

C.     **Allegations About Defendants' Use of Data**

Plaintiffs allege that Defendants "collect and use the Personal Data [i.e., the data identifying devices] … to track, profile, and target children with targeted advertising."  DAC ¶ 119; KAC ¶ 110; VAC ¶ 57.  Plaintiffs describe generally the way that persistent identifiers and similar data can be used to track users, compiled and sold to third parties, and used to serve targeted advertising.  *See*

---

[2] Plaintiffs speculate that a user might reconfigure the default name of her mobile device with her first and last name, but they do not allege that any of them did so.  DAC ¶ 38; KAC ¶ 38; VAC ¶ 28.

DAC ¶¶ 120–32; KAC ¶¶ 111–23; VAC ¶¶ 58–71.  While Plaintiffs provide conclusory allegations that Defendants in fact engage in this conduct, *e.g.*, DAC ¶ 134 ("Defendants use Disney Gaming App users' Personal data to serve them targeted ads"), they allege no specific facts demonstrating that such conduct actually occurred with respect to data collected from their devices by the apps at issue.  Nor do Plaintiffs allege they were shown ads while using the apps.

    **D.**    **Procedural History**

       In their original complaints, Plaintiffs made materially identical allegations regarding the nature of Defendants' data collection and use practices, but the primary basis for their state-law claims was that such conduct violated COPPA.  *See, e.g.*, Kiloo Complaint ("KC") ¶ 1; Disney Complaint ("DC") ¶ 1; Viacom Complaint ("VC") ¶ 1 (each action is brought on behalf of children who "have had their personally identifying information exfiltrated … for future commercial exploitation, in direct violation of [COPPA]"); KC ¶ 27; DC ¶¶ 24–25; VC ¶¶ 23–24 (seeking declaratory judgment that Defendants' conduct "violates COPPA").  Defendants moved to dismiss the complaints because Plaintiffs' state law claims conflicted with COPPA's remedial scheme and were expressly and impliedly preempted by federal law.  On April 6, 2018, the Court issued an order reflecting its "concerns about the need for claims independent of COPPA" and instructing Plaintiffs to file amended complaints (Dkt. 159 at 2).  Plaintiffs did so on June 4, 2018.

**III.**    **LEGAL STANDARD**

       A motion to dismiss "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations or allegations that merely state legal conclusions "are not entitled to the assumption of truth," and a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement." *Id.* (alteration in original).  Moreover, a court "need not … accept as true allegations that contradict matters properly subject to judicial notice." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Such judicially noticeable matters include the content of documents that are themselves cited and incorporated by reference into the complaint. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

IV.  **ARGUMENT**

A.  **Courts Consistently Have Held that Collecting and Using Anonymous Persistent Identifiers Does Not Violate California Privacy Law**

1.  **Collecting Anonymous Persistent Identifiers For Advertising Purposes Does Not Constitute an Egregious Breach of Social Norms**

The Court should dismiss Plaintiffs' claims for violation of the California constitutional right to privacy and intrusion upon seclusion because Plaintiffs fail adequately to allege an "egregious breach of social norms."

To state a claim for invasion of privacy under the California Constitution, a plaintiff must allege "conduct by the defendant that amounts to a serious invasion" of a "protected privacy interest." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).  Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37 (1994).  The common-law tort of intrusion upon seclusion shares "similarly high standards for the type of invasion that is actionable." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013) (requirements of both claims are "similarly stringent"). Whether allegations are sufficiently serious to meet this "high bar" may "be adjudicated as a matter of law." *Low*, 900 F. Supp. 2d at 1025; *see also, e.g.*, *Lackner v. Dep't of Health Servs.*, 29 Cal. App. 4th 1760, 1765 (1994) (question whether conduct "constitutes a serious invasion of privacy" is a "matter of law for the court").

Only the most egregious circumstances meet this standard, such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or misrepresenting one's identity to access confidential information about childhood abuse. *See, e.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010) (CHP officers emailed their friends and family gruesome photographs of accident victim's decapitated corpse for "shock value"); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991) (physician publicly and gratuitously disseminated irrelevant fact of patient's HIV status in a report); *Taus v. Loftus*, 40 Cal.

1    4th 683 (2007) (investigator allegedly posed as an associate of a mental health professional in whom

2    plaintiff had previously confided facts about childhood abuse).

3        Plaintiffs' allegations fall well short of this high standard.  Plaintiffs claim that Defendants

4    collect anonymous alphanumeric strings of data regarding users' devices and the software running

5    on them for purported advertising and commercial purposes.  The FACs describe the information

6    collected as "Personal Data," but Plaintiffs' own allegations show this label to be a misnomer: the

7    so-called "Personal Data" is device-based, not person-based.  It consists of fields such as persistent

8    device identifiers; IP addresses; device language, device operating system, and version; screen

9    dimensions; the manufacturer, make, and model of the device; and the name and developer of the

10   app the device is running.  *See, e.g.*, DAC ¶¶ 82, 86, 89, 92, 95, 98, 101, 104, 108, 111, 114; KAC

11   ¶¶ 52, 59, 72, 80, 86, 94, 103; VAC ¶¶ 40, 43, 54.  Plaintiffs assert, in a conclusory fashion (*see*

12   *infra* at 15–20), that Defendants violate their users' privacy by using this information to "target

13   children with targeted advertising."  DAC ¶ 119; KAC ¶ 110; VAC ¶ 57.

14       The case law reflects a broad consensus that this alleged collection of anonymous digital

15   user data, including for advertising or marketing purposes, is fundamentally unlike the gratuitous

16   disclosure of deeply private facts or unreasonably intrusive investigations into highly personal

17   matters that courts have found to violate the right to privacy.  Indeed, the alleged conduct is simply

18   a digital version of commercial conduct that the California Court of Appeal already has held does

19   not constitute an egregious breach of the social norms underlying the privacy right.  In *Folgelstrom*

20   *v. Lamps Plus*, 195 Cal. App. 4th 986 (2011), the plaintiff alleged that the defendant, a light-fixture

21   retailer, surreptitiously collected data from customers during in-store retail transactions, paid a

22   third-party credit reporting agency to use the data to obtain individualized home addresses, and

23   used those home addresses for direct advertising and other purposes.  *Id.* at 990, 992.  Though the

24   Court of Appeal held that such conduct might have violated the California Song–Beverly Credit

25   Card Act, the court rejected plaintiffs' claims for intrusion upon seclusion and violation of the state

26   constitutional right to privacy, holding that "obtaining plaintiff's address without his knowledge or

27   permission" and "using it to mail him coupons and other advertisements" was "not an egregious

28   breach of social norms, but routine commercial behavior."  *Id.* at 989, 992.

-6-

Courts hearing similar claims regarding digital data collection and marketing have likewise held as a matter of law that the conduct does not constitute an egregious breach of social norms.  In *In re iPhone*, for example, the plaintiffs alleged that Apple and other defendants permitted third-party apps to collect much more personal data than is alleged here—including, in addition to a device identifier, address, age, gender, and zip code—without consent and for commercial purposes. 844 F. Supp. 2d. at 1050, 1063.  The court dismissed the constitutional invasion of privacy claim, holding that the alleged conduct did not "constitute an egregious breach of social norms." *Id.* at 1063.

Similarly, in *Low*, the plaintiffs alleged that LinkedIn allowed transmission of users' browsing history and user IDs to third-party "advertisers, marketing companies, data brokers, and web tracking companies," which plaintiffs alleged "allow these third parties to identify both the individual LinkedIn user, and the user's browsing history." *Low*, 900 F. Supp. 2d at 1016–17.  The court dismissed the intrusion upon seclusion and California constitutional privacy claims because such disclosures of information did not meet the high standard set by California courts.  *See id.* at 1025.  The court noted that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Id.*

As another example, in *Yunker v. Pandora Media*, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013), the court dismissed a California constitutional privacy claim alleging that Pandora provided the plaintiff's personally identifiable information to "advertising libraries for marketing purposes, in violation of the terms of Pandora's Privacy Policy." *Id.* at *15.  The court again held that such conduct did not constitute "an egregious breach of social norms." *Id.*  Numerous other courts have held the same. [3]

---

[3] *See, e.g.*, *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (dismissing California constitutional privacy and intrusion upon seclusion claims and noting that "[i]n this age of mobile technology the Court cannot conclude that a reasonable user would consider it highly offensive or egregious that a voluntarily downloaded mobile application which utilizes the user's cell phone identifier and location data when the app is in use, also 'periodically' accesses that anonymous data while the application is not in use"); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) (defendants' tracking of a vehicle's driving history, performance, or location "at

Courts have reached the same conclusion in cases involving minors.  In *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016), the plaintiffs alleged that Google "use[d] cookies to track users' behavior across large swaths of the Internet" to help advertising companies "target advertisements more effectively" to users, and that this included "plac[ing] third-party cookies on the computers" of "children."  *Id*. at 268–69.  Google allegedly collected and tracked not only data such as unique device identifiers, persistent cookie identifiers, operating system, screen resolution, and browser version, but also much more information than the data alleged here, including a child's username/alias, gender, birthdate, IP address, and browser settings, as well as the child's web communications, such as detailed URL requests and video materials requested and obtained from children's websites.  *Id*.  Also, unlike the FACs here, the *Nickelodeon* plaintiffs claimed that the defendants were "able to link online and offline activity and identify specific users, including the Plaintiffs and children that form[ed] the putative class."  *Id*. at 270.

The Third Circuit affirmed the dismissal of the state law intrusion upon seclusion claim as to Google.[4]  Like Plaintiffs here, the plaintiffs did not challenge "the use of 'cookies on websites geared toward adults,'" but rather "[fell] back on the claim that the use of cookies to track *children* is particularly odious."  *Id*. at 294 (emphasis in original).  The Third Circuit rejected this argument, stating, "Google used third-party cookies on Nick.com in the same way that it deploys cookies on myriad other[] websites.  Its decision … does not strike us as sufficiently offensive, standing alone, to survive a motion to dismiss."  *Id*. at 294–95 & n.205.

In an effort to make the alleged facts appear more egregious than they are, Plaintiffs allege

---

various times," is not categorically the type of sensitive and confidential information the California constitution aims to protect); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (dismissing intrusion upon seclusion claim because disclosure of browsing habits and search queries to third parties did not meet "high bar" required for claim); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (conduct resulting in theft of confidential personal data, including social security numbers, did "not approach th[e] standard" of "an egregious breach"); *cf. Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *7 (N.D. Cal. July 24, 2013) (bank's disclosure of a customer's "contact information" to third party did not amount to a serious invasion of a protected privacy interest).

[4] Though this intrusion upon seclusion claim was brought under New Jersey law, Plaintiffs have not alleged any material variation between New Jersey and California law on this point.  To the contrary, Plaintiffs allege that the law of both states (among others) "adheres to Restatement (Second) of Torts, § 652B with no material variation" and seek to certify a multi-state intrusion upon seclusion class that includes both California and New Jersey residents.  DAC ¶ 81.

that persistent device identifiers "link one specific individual to all of the apps on her device and her activity on those apps."  DAC ¶ 35; KAC ¶ 34; VAC ¶ 25.  The collection of alphanumeric identifiers that identify a specific mobile device but not personal information about the user of that device, however, is far less intrusive than the collection of home addresses at issue in *Folgelstrom*, which the defendant used to send advertisements to customers' private residences.

Plaintiffs' analogy of persistent identifiers to social security numbers, DAC ¶ 35; KAC ¶ 34; VAC ¶ 25, also is inapt: social security numbers (assigned at birth and, absent extraordinary circumstances, permanent) can be used in numerous contexts to match personal data (name, date of birth, and so on) to highly sensitive personal information, such as that contained in medical records or credit reports.  Persistent identifiers, by contrast, identify devices, not persons, and so cannot "serve to identify an actual, identifiable Plaintiff."  *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) (disclosure of each plaintiff's "anonymous username, IP address, browser setting, unique device identifier, operating system, screen resolution, browser version, and detailed URL requests and video materials requested and obtained," even considered in aggregate, did not constitute personally identifiable information); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985–86 (9th Cir. 2017) (holding that persistent device identifiers do not constitute "personally identifiable information" under Video Privacy Protection Act because "an ordinary person could not use the information" to "identify [a particular] individual").  Even if Plaintiffs' analogy to social security numbers were accurate, it would fall short: "Even disclosure of personal information [such as] social security numbers[] does not constitute an 'egregious breach of social norms' to establish an invasion of privacy claim."  *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015) (quoting *Low*, 900 F. Supp. 2d at 1025).[5]

---

[5] The only allegation in the FACs suggesting that persistent identifiers are matched to personally identifying information is Plaintiffs' allegation that the "name" of a given mobile device sometimes includes "users' first and/or last names (*e.g.*, 'Jane Minor's iPhone')" if the user decides to reconfigure the device name.  DAC ¶ 38; KAC ¶ 38; VAC ¶ 28.  But this is purely hypothetical: Plaintiffs do not plead any facts suggesting that their own device IDs reflect their legal names, much less that an appreciable percentage of users manually rename their devices using their legal names.

## 2. Plaintiffs' Reliance on Surveys and Related Allegations Does Not Establish that the Alleged Conduct Constitutes an Egregious Breach of Social Norms.

Notwithstanding the body of authority foreclosing their claims, Plaintiffs contend that Defendants' conduct amounts to an "egregious breach of the social norms underlying the privacy right," *Hill*, 7 Cal. 4th at 37, by alleging that some surveys have found that a portion of the public has concerns about digital tracking, data-collection, and advertising practices. DAC ¶¶ 155–170, KAC ¶¶ 151–163; VAC ¶¶ 156–168. But surveys are irrelevant to the legal question of whether the conduct at issue—taking the facts alleged as true—rises to the level of an egregious breach of social norms. *See Low*, 900 F. Supp. 2d at 1025 (question "may be adjudicated as a matter of law"); *Lackner*, 29 Cal. App. 4th at 1765 (same). And no case has held that an "egregious" breach of social norms may exist based on public-opinion polling about the conduct in question.

Even if these surveys were pertinent to the legal question of whether the conduct at issue was actionable, Plaintiffs' polling data does not reflect the relevant standard. An invasion of privacy is actionable only if the conduct in question constitutes an "egregious breach of social norms." The fact that some people may find conduct objectionable does not mean that it arises to an egregious breach of social norms. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 300 (2009) (no actionable invasion of privacy for hidden camera recording employees' office notwithstanding acknowledgement of "plaintiffs' dismay over the discovery of video equipment"). Plaintiffs do not cite any survey that specifically asked whether the particular conduct at issue here—the collection of anonymous persistent identifiers and usage data—is "sufficiently serious and unwarranted as to constitute an egregious breach" of social norms. *Id.* at 295. The surveys Plaintiffs cite merely asked respondents whether they approved or disapproved of particular conduct.[6]

---

[6] Many of the survey questions Plaintiffs cite asked about conduct in which Defendants are not even alleged to have engaged, such as whether "[i]t is okay for advertisers to collect information about a child's location from that child's mobile phone." DAC ¶ 156(c); KAC ¶ 151(c); VAC ¶ 97(c). Moreover, the mixed results of Plaintiffs' own survey allegations suggest that no broad social consensus exists that anonymous digital data collection (even for targeted advertising) is undesirable. For example, Plaintiffs cite a study by the Pew Research Center finding that 28 percent of respondents were "ok with [targeted advertising] because it means I see ads and get information about things I'm really interested in." DAC ¶ 161; KAC ¶ 156; VAC ¶ 102.

Indeed, courts readily have rejected claims relying on surveys of this kind.  In *Nickelodeon*, for example, the plaintiffs relied on a survey by the Center for Digital Democracy (a survey source on which Plaintiffs also rely, *see* DAC ¶¶ 156–57; KAC ¶¶ 151–152; VAC ¶¶ 97–98), in which "80 percent of respondents oppose[d] the tracking of children even where an advertiser does not 'know a child's name and address,' and 91 percent believe[d] advertisers should receive a parent's permission before placing tracking software on a minor child's computing device."  827 F.3d at 270. The surveys made no difference: the Third Circuit held that Google's alleged actions in tracking children's devices and collecting data through the use of cookies did not, as a matter of law, constitute highly offensive conduct sufficient to constitute intrusion upon seclusion.  *Id*. at 295.

### 3.      Plaintiffs Do Not Allege Deceitful Conduct.

A handful of cases have allowed privacy claims to proceed where there were allegations that the defendants affirmatively deceived plaintiffs about their conduct and overrode their privacy choices.  In *Nickelodeon,* for example, the court held that the plaintiffs had adequately pleaded a deception claim against one defendant when they alleged that it "promise[d] not to collect 'ANY personal information' from children" on certain of its websites but did so anyway, effectively encouraging parents "to permit their children to browse those websites under false pretenses."  827 F.3d at 295;[7] *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 150 (3d Cir. 2015) (intrusion claim adequately pleaded where complaint alleged that Google "over[rode] the plaintiffs' cookie blockers, while concurrently announcing in its Privacy Policy that internet users could 'reset your browser to refuse all cookies'"); *In re Vizio, Inc., Consumer Privacy Litig.,* 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (claim adequately pled where "even if consumers believed they had opted out of Vizio's data collection practices, Vizio was still collecting their data for a considerable period").

Plaintiffs allege just three instances of "deceit" across the three FACs, none of which suffices to state a claim.

*First*, Plaintiffs allege that certain Defendants "deceive" parents or the public by generally

---

[7] As discussed above (*see supra* at 8), the same court rejected a claim against Google that rested solely on that defendant's mere collection and use of the data.

omitting to mention that their apps contain "data-exfiltrating SDKs." *See* DC ¶ 202–03; MC ¶¶ 189–90; VC ¶¶ 141–42.  Even if that were true—and it demonstrably is not, *see infra* at 19–20—that conduct does not entail *affirmatively* deceptive statements like those alleged in *Nickelodeon*, *Google*, and *Vizio*.  *See Google*, 806 F.3d at 150 (holding that Google's affirmative "deceit and disregard" raised "different issues" than a mere failure to disclose).

*Second*, Plaintiffs allege that Defendant Disney "affirmatively, and falsely, state[s] that it does not unlawfully collect Personal Data from children[.]"  DAC ¶ 202.  That is not so.  Disney's Privacy Policy (cited at DAC ¶ 201 n.179) incorporates by reference its Children's Privacy Policy.[8]  The Children's Privacy Policy, in turn, describes with specificity the data collected from children, and includes a section titled "Persistent Identifiers" that explains that Disney collects persistent identifiers and usage data such as "the type of computer operating system, the child's IP address or mobile device identifier, the web browser, the frequency with which the child visits various parts of our sites or applications, and information regarding the online or mobile service provider."[9]  And as discussed *infra* at 15, federal law approves the collection of user data for certain purposes, including site maintenance and other operational uses.

*Third*, Plaintiffs allege that Defendant Kiloo falsely responded to an inquiry by the Children's Advertising Review Unit by "*affirmatively stating* that it does not collect personal data from children."  KAC ¶ 189.  This, too, is a misrepresentation: as the article Plaintiffs cite makes clear, *see* KAC ¶ 188 n.175, CARU requested user data regarding the percentage of children playing the iOS app "Subway Surfer" who were 12 years old and younger, and Kiloo "stated that it did not have data relating to a younger audience."[10]  Kiloo did not state that it "does not collect personal data from children," as Plaintiffs allege.  KAC ¶ 189.  In any case, Plaintiffs do not allege that Kiloo

---

[8] *See* RJN, Exs. N & O.

[9] Plaintiffs also allege generally that the Developer Defendants engage in deceptive conduct by stating that their apps are "suitable" for children and in compliance with "applicable privacy laws and norms."  *E.g.*, DAC ¶¶ 185–203.  These allegations are circular, and depend upon whether Plaintiffs have stated a viable claim for violation of privacy—which they have not.  Defendants maintain that their apps are suitable for children and in compliance with all applicable privacy laws.

[10] http://www.asrcreviews.org/following-caru-inquiry-app-maker-kiloo-agrees-to-modify-subway-surfers-privacy-policy-to-better-protect-child-players/.

-12-

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINTS
3:17-cv-04419-JD; 3:17-cv-04344-JD; 3:17-cv-04492-JD

1    made any deceptive or misleading statement *to Plaintiffs*—or even to the general public.  Nor is

2    there an allegation that any Plaintiff ever saw the cited article.

3              **B.       Plaintiffs Fail to State a Claim Under N.Y. Gen. Bus. Law § 349**

4              The FACs in *McDonald* and *Rushing v. Disney* (but not in *Rushing v. Viacom*) purport to

5    assert causes of action under GBL § 349, New York's statute prohibiting deceptive trade practices or

6    acts, *see* DAC ¶¶ 269–278; KAC ¶¶ 247–256, but the type of conduct alleged is not actionable under

7    GBL § 349.  *Mount v. PulsePoint*, *Inc*, 684 F. App'x 32 (2d Cir. 2017), is directly on point.  There,

8    the plaintiffs alleged that an advertiser was liable under § 349 for the "placement of tracking cookies

9    on plaintiffs' computers in order to gather information about their internet use." *Id*. at 34.  Affirming

10   dismissal, the Second Circuit stated, "[n]o New York court … has ever construed § 349 to reach the

11   privacy invasion alleged here, *i.e.*, collection of internet users' aggregated, anonymized web-

12   browsing data." *Id*. at 35.  "Rather, § 349 injury has been recognized only where confidential,

13   individually identifiable information," such as medical records, is "collected without the individual's

14   knowledge or consent." *Id.*; *see also Cohen v. Casper Sleep Inc.,* 2018 WL 3392877, at *1, 8

15   (S.D.N.Y. July 12, 2018) (following *PulsePoint* and dismissing GBL § 349 claim premised on

16   collection of keystrokes, page visits, IP addresses, and other "PII" from "visitors' devices"; plaintiff

17   "suppl[ies] no basis for us to assume that New York courts would consider the information allegedly

18   collected here" to be actionable under GBL § 349).

19             The persistent identifiers at issue in the FACs are indistinguishable from the persistent

20   cookies at issue in *PulsePoint*.  Plaintiffs allege that the data collected is not "aggregated" or

21   "anonymized" because it is "associable with specific, individual child users."  DAC ¶ 276; KAC

22   ¶ 254.  (In fact, it is associable only with *devices*, not individuals.)  *PulsePoint* involved "persistent

23   cookies," which the plaintiffs also contended were associable with "specific, individual" users.  *See*

24   *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *1 (S.D.N.Y. Aug. 17, 2016) (noting that persistent

25   cookies are text files used in targeted advertising that "identify a unique browser returning to [a

26   website]").  The *PulsePoint* plaintiffs alleged that persistent cookies allowed "third-party advertising

27   companies [to] create digital profiles of internet users based on their browsing activities"—just as

28   Plaintiffs allege here for persistent identifiers.  *Compare id. with* DAC ¶ 36 (alleging that persistent

1   identifiers allow apps and third parties to "track and profile the user").  Yet the *PulsePoint* court

2   dismissed the GBL § 349 claim—just as the Court should do so here.

3          **C.      The *Rushing v. Disney* FAC Fails to State a Claim Under Mass. Gen. L. Ch. 214**

4          The FAC in *Rushing v. Disney* purports to assert a claim under Massachusetts General Laws

5   Chapter 214, § 1B, which establishes a "freedom from unreasonable, substantial or serious

6   interference" with individual privacy.  DAC ¶¶ 291–93.[11]  Similar to how California courts have

7   construed the California constitutional right to privacy, the Massachusetts Supreme Judicial Court

8   has interpreted Section 1B to "proscribe[] disclosure of facts about an individual that are of a highly

9   personal or intimate nature."  *Bratt v. IBM Corp.*, 392 Mass. 508, 518 (1984).

10          In *Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *1–3 (Mass. Super. Aug. 24, 2007),

11   the court explained that the dissemination of personal information—"name, address, and date of

12   birth"—to a limited set of third parties for purposes of targeted advertising did not constitute

13   disclosure of "highly personal or intimate" facts sufficient to state a claim under the statute.  In

14   *Kelley*, CVS entered into an agreement with a pharmaceutical company to mail advertising letters to

15   CVS customers who had been prescribed certain medications without those customers' consent.  *Id.*

16   CVS provided a third-party contractor with access to a computerized database containing the names,

17   addresses, and dates of birth of CVS's customers.  *Id.*  One recipient who had been targeted for

18   advertising because he filled a prescription for a diabetes medication sued CVS under G.L. ch. 214,

19   § 1B.  The court dismissed the claim, holding that the plaintiff could not "prevail in proving that he

20   suffered a substantial or serious interference with his privacy."  *Id.* at *2.

21          The conduct alleged in the *Rushing v. Disney* FAC is far less intrusive than that at issue in

22   *Kelley*, where customers were selected for targeted advertising based on their prescription histories,

23   and CVS disclosed to a third-party direct-mailer its customers' names, addresses, dates of birth, and

24   partial medical histories.  Here, in contrast, the persistent identifiers and usage data that the

25   Developer Defendants allegedly share with the SDK Defendants contain no such "highly personal or

26   ────────────────────

27   [11] Although the Mass. Gen. L. Ch. 214 claim is unique to the *Rushing v. Disney* FAC, Defendants discuss it here because it is closely related to the other privacy claims asserted commonly against all

28   Defendants.  Other claims specific to the *Rushing v. Disney* FAC are discussed in the *Rushing v. Disney* Defendants' separate brief, filed concurrently with this motion.

1    intimate" information.  Thus, Plaintiffs' G.L. ch. 214, § 1B claim fails as well.

2         **D.      Plaintiffs Fail to Allege Facts Plausibly Suggesting that Their Data Was Used for
                    Any Improper Purpose**

3         The FACs also fail to state a claim for the independent reason that Plaintiffs have not pleaded

4    adequate facts to plausibly allege that Defendants use minors' data to create behavioral advertising

5    profiles.

6              **1.      Plaintiffs' Allegations About Data Use Are Conclusory and Deficient.**

7         Plaintiffs allege that they used "[a]nalytics and network analysis tools" to obtain evidence

8    that Defendants *collect* device IDs and related information, KAC ¶¶ 33, 40–41, DAC ¶¶ 34, 40–41,

9    VAC ¶¶ 24, 30, 32, but on the subject of how Defendants actually *use* that data, Plaintiffs offer only

10   conclusory allegations, with no factual support.

11        This distinction is a critical one.  Even COPPA expressly authorizes collection of persistent

12   identifiers such as device IDs and similar information from child-directed apps for certain purposes

13   without the need for parental consent.  Indeed, the FTC recognizes that collection and certain uses of

14   "persistent identifiers are … fundamental to the smooth functioning of the Internet, the quality of the

15   site or service, and the individual user's experience."  Children's Online Privacy Protection Rule, 78

16   Fed. Reg. 3972, 3998 (Jan. 17, 2013).  For example, they may be used to provide "spam protection,"

17   "de-bug[]" a game, provide "payment and delivery functions," optimize game performance, generate

18   "statistical reporting," or allow operators to preserve user preferences and progress.  *Id.* at 3979 &

19   n.95, 3981.  The FTC recognized that for many applications, data collection for site maintenance and

20   analysis and network communication functions are "crucial to their ongoing operations."  *Id.* at

21   3979.  FTC regulations under COPPA therefore explicitly authorize content providers to collect

22   persistent identifiers to perform these critical functions and others.  *Id.*; *see also* 16 C.F.R. §§ 312.2,

23   312.5(c)(7).[12]

24

25   _____

26   [12] Specifically, the regulations permit the collection of persistent identifiers for "activities necessary
     to: (i) Maintain or analyze the functioning of the Web site or online service; (ii) Perform network
27   communications; (iii) Authenticate users of, or personalize the content on, the Web site or online
     service; (iv) Serve contextual advertising on the Web site or online service or cap the frequency of
28   advertising; (v) Protect the security or integrity of the user, Web site, or online service; (vi) Ensure
     legal or regulatory compliance; or (vii) Fulfill a request of a child as permitted by § 312.5(c)(3) and

                                              -15-

Because FTC regulations expressly authorize Defendants to collect and use persistent identifiers for certain purposes, factual allegations of data collection alone are not sufficient to allege a plausible violation of law.  Although COPPA does not purport to establish complete field preemption in this area, it expressly preempts any state law that is "inconsistent with the treatment" of a particular activity under the statute and its implementing regulations.  *See* 15 U.S.C. § 6502(d) ("No State or local government may impose any liability for commercial activities … that is inconsistent with the treatment of those activities or actions under this section.").  Thus, to plead a viable cause of action, Plaintiffs must plead facts that, if proven, would establish that Defendants used persistent identifiers for an impermissible purpose, not merely that the data was collected. They have not done so.

Plaintiffs implicitly recognize that allegations concerning the mere collection of this information is inadequate.  *See, e.g.*, VAC ¶ 111 (claiming that defendants violated state laws "[b]y collecting and sharing Plaintiff's child's Personal Data in order to assist in profiling and tracking them across multiple online platforms"); KAC ¶ 165 (same), DAC ¶ 170 (same); *see also* KAC ¶¶ 113–116, 206, 229, 240; DAC ¶¶ 122–25, 226, 251, 262; VAC ¶¶ 60–63, 150, 171, 182.  But on the critical question of how Defendants *use* the data they allegedly collect, the FACs offer nothing but conclusory allegations, based on speculation that Defendants *could have* improperly used the information.  Plaintiffs allege no facts that plausibly suggest Defendants engaged in behavioral advertising using device IDs collected through the apps at issue.

Plaintiffs offer conclusory allegations that collected data "is used to track, profile, and target users."  *See, e.g.*, KAC ¶ 30, DAC ¶ 31, VAC ¶ 21.[13]  This is no more than a "bare assertion" of the elements of alleged unlawful conduct untethered to facts that plausibly suggest it might be true.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *see also In re Musical Instruments &*

---

(4)."  16 C.F.R. §§ 312.2, 312.5(c)(7); *see also* Complying with COPPA: FAQ, No. I.5 (https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions) (FTC guidance document explaining internal operations exception).

[13] *See also* VAC ¶ 57 ("[Defendants], in coordination, collect and use the Personal Data described above to track, profile, and target children with targeted advertising."); KAC ¶ 110 (same); DAC ¶ 119 (same); VAC ¶¶ 74, 82, 148 (similar conclusory allegations regarding tracking and targeting); KAC ¶ 127, 138, 196, 200, 204 (same); DAC ¶¶ 136, 144, 212, 216 (same).

-16-

*Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 & n.6 (9th Cir. 2015) (recognizing that plaintiffs cannot simply plead element of claim without alleging "evidentiary facts" in support); *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 6172953, at *6 (N.D. Cal. Nov. 25, 2013) (dismissing claim when plaintiff "never explain[ed] the factual bases" for allegations).  The FACs do not identify a single instance of behavioral advertising based on data collected through the apps at issue.  Nor do they allege any facts that plausibly suggest Defendants are using device IDs for improper purposes, rather than simply to support internal operations for these apps.  Because these allegations concerning data collection are fully consistent with lawful behavior, they fail to state a viable claim.  *See Twombly*, 550 U.S. at 554 (allegations that are consistent with both lawful and unlawful conduct cannot state a plausible claim).

Lacking any concrete facts, Plaintiffs instead allege that some Defendants have certain advertising capabilities, implying that the collected data *could* be used for such advertising.[14]  Plaintiffs then point to general contractual arrangements (not specific to the apps at issue) through which Developer Defendants contract to receive various services from SDK Defendants, which may include services relating to advertising.[15]  Plaintiffs then explain how information of the kind they allege was collected *can be* used for behavioral advertising purposes, but do not allege whether or how Defendants use the data for that purpose.  *See, e.g.*, VAC ¶ 22 ("Once exfiltrated to an SDK Defendant, the Personal Data harvested from Llama Spit Spit users can be combined with other data … which can track and identify the same user." ); KAC ¶ 31 (same); DAC ¶ 32 (same); VAC ¶¶ 58–71 (allegations describing general process for and concerns regarding behavioral advertising); KAC ¶¶ 111–23 (same); DAC ¶¶ 120–32 (same).  The "mere possibility" that data could have been used for an improper purpose is not enough to state a plausible claim.  *Twombly*, 550 U.S. at 557.

---

[14] *See, e.g.*, VAC ¶ 29 (alleging general description of behavioral advertising without alleging facts suggesting that such practices apply to all users); KAC ¶ 39 (same); DAC ¶ 39 (same); VAC ¶ 33 (alleging that SDK Defendant "offers companies the *ability* to deliver targeted advertisements" (emphasis added)); KAC ¶ 73, 137 (same); DAC ¶ 44 (same); VAC ¶¶ 47–50 (generally describing other SDK Defendants' advertising services); KAC ¶¶ 45–46 (same); DAC ¶¶ 49–52, 57–62 (same).

[15] *See* KAC ¶¶ 53–54, 60–62, 74–75, 81–82, 87–88; 96–97; 104–06; DAC ¶¶ 47–48, 54–56, 64–68; VAC ¶¶ 44–45; 55–56.

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINTS
3:17-cv-04419-JD; 3:17-cv-04344-JD; 3:17-cv-04492-JD

2.      **The Contracts Plaintiffs Cite Contradict Allegations of Improper Use.**

The contracts Plaintiffs cite in the FACs also render their conclusory allegations about data use implausible.[16]  The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Because the allegations of the FACs mischaracterize or contradict the documents on which Plaintiffs rely, the allegations are implausible and "need not be accepted as true."  *Avila v. Wells Fargo Bank, Nat'l Ass'n*, 2016 WL 7425925, at *4 n.2 (N.D. Cal. Dec. 23, 2016).[17]

The FACs refer to contracts between the SDK and Developer Defendants to establish "the purposes for which [collected data] is used," KAC ¶ 43, DAC ¶ 42, VAC ¶ 32, but they selectively omit provisions of those same contracts that contradict Plaintiffs' conclusory allegations about how Defendants use the collected data.  For example, the Viacom-Unity contract contains explicit covenants that in child-directed apps Unity will not (1) collect or use persistent identifiers to recognize users "over time or across different websites or online services," (2) use any persistent identifier except "to support [Viacom's] 'internal operations' as that term is defined in COPPA," or (3) "use or disclose the Personal Information it has collected and/or stored for the purposes of contacting a user (including through retargeting or other behavioral advertising), to amass a profile of the user or any other purpose not specifically permitted herein."  RJN Ex. M, at 2.  The Disney-Unity contract incorporates similar restrictions, and provides that Unity shall use persistent identifiers "solely … as necessary for the internal operations of [Unity]," and "[i]n no event shall tracking technologies or persistent identifiers collected be used or disclosed by Company to contact a specific individual, including for online behavior advertising or to benchmark or derive inferences

---

[16] *See* KAC ¶¶ 53–54, 60–62, 74–75, 81–82, 87–88; 96–97; 104–06; DAC ¶¶ 47–48, 54–56, 64–68; VAC ¶¶ 44–45; 55–56.  Because they are referenced in the FACs, these contracts are subject to judicial notice.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

[17] *See also, e.g.*, *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (rejecting plaintiff's allegations as insufficient when they were contradicted by disclosures in defendant's privacy policy); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038–39 (9th Cir. 2010) (finding contentions implausible when contradicted by language in an agreement incorporated by reference into the complaint); *Terraza v. Safeway Inc*., 241 F. Supp. 3d 1057, 1073 (N.D. Cal. 2017) (allegations "rendered implausible by the judicially-noticed disclosures").

about users or their activity or behavior across other websites or online services."  RJN Ex. C, at 1.

Other contracts cited by Plaintiffs have similar language requiring compliance with applicable laws,

including COPPA, and prohibiting targeting ads to children based on data collected in connection

with the provision of services under the agreements.[18]  This contractual language directly contradicts

Plaintiffs' unsupported assertions that these arrangements were created so that Defendants could use

data from the apps at issue to amass behavioral advertising profiles on children.

      Defendants' privacy policies also render implausible the allegations that data was being

collected surreptitiously so that it could be used for improper purposes.[19]  Contrary to Plaintiffs'

conclusory allegation that the data is collected without notice, *see* KAC ¶ 29 ("Defendants

completely fail to inform Subway Surfers users that, as they play Subway Surfers, Defendants are

surreptitiously collecting the Personal Data . . . ."); DAC ¶ 30 (same); VAC ¶ 20 (same),

Defendants' privacy policies disclose the relevant facts.  For example, Kiloo's privacy policy

discloses that device ID information is collected.[20]  The apps of other developers addressed in the

---

[18] *See, e.g.*, RJN Ex. A, at § 2(a) (Disney-Kochava agreement containing similar provisions); RJN Ex. D, at 7 (additional Disney-Unity agreement containing similar provisions); RJN Ex. B, at § 2 (Disney-Upsight agreement containing similar provisions); RJN Ex. E, §§ 1.6, 3.1.3, 3.1.6, 5.1, 8.1(ii), 8.2(ii) (Kiloo-ironSource agreement not to "engage in the receipt, collection, storing, processing, use or disposal of any data regarding individual Users … that … [is] per se illegal under Applicable Data Protection Laws"); RJN Ex. F, §§ 5.1; 8.3 (Kiloo-AdColony agreement requiring compliance with COPPA); RJN Ex. G, §§ 8.2(ii); 8.1(ii) (Kiloo-Tapjoy agreement); RJN Ex. H, § 8.1(ii) (Kiloo-Chartboost agreement); RJN Ex. I, §§ 3.1.3, 3.3.9, 5.1, 8.1(ii), 8.2(ii); (Kiloo-Flurry agreement); RJN Ex. J, §§ 3.1.3, 5.1, 7.1(ii), and 7.2(ii) (Kiloo-InMobi agreement); RJN Ex. K, §§ 3.1.3, 3.3.2, 5.1, 8.1(ii), 8.2(ii) (Kiloo-Vungle agreement); RJN Ex. L, at 14–15 (Viacom-Upsight agreement in which each party "represents and warrants that … it will comply with (a) all applicable federal, state and local laws and regulations in connection with this Agreement, including, without limitation, the CAN-SPAM Act of 2003 and the Children's Online Privacy Protection Act"); *id.* at 7–8 (Viacom-Upsight agreement that allows Upsight to use collected data only if it cannot "identify or enable identification of any End User").

[19] These privacy policies are referenced in the FACs and so are properly subject to judicial notice. *See supra* at note 16; *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136–37 (N.D. Cal. 2015) (taking judicial notice of privacy policy applicable to app at issue); RJN Exs. N–Q; *see also* KAC ¶ 182 n.171 (referencing Kiloo privacy policy), KAC ¶ 188 n.175 (same); DAC ¶ 201 & n.179 (citing and quoting Disney privacy policy, which incorporates the Disney Children's Privacy Policy); VAC Fig. 3 (referencing Viacom's privacy policy).

[20] *See* RJN Ex. P, at 4–5 (Kiloo privacy policy disclosing that it collects "IP-address, Device ID and advertising ID").

1   FACs include similarly prominent disclosures.[21]

2          Plaintiffs' allegations that Defendants possibly could have used data collected to improperly

3   target children for behavioral advertising—data that could lawfully be collected for other purposes—

4   is not sufficient to state a plausible claim for relief.  *See Twombly*, 550 U.S. at 554 (allegations

5   consistent with lawful conduct do not satisfy the pleading standard); *see Iqbal*, 556 U.S. at 678

6   (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

7   'stops short of the line between possibility and plausibility of entitlement to relief.'" (internal

8   quotations omitted)); *In re Musical Instruments*, 798 F.3d at 1194 & n.6 (affirming dismissal when

9   plaintiffs failed to plead "evidentiary facts" that raised plausible inference that defendants engaged

10   in unlawful conduct); *Moss v. U.S. Secret Service*, 572 F.3d 962, 971–72 (9th Cir. 2009) (the "mere

11   possibility" of unlawful conduct is insufficient).

12   **V.    CONCLUSION**

13          Plaintiffs' claims fail both because the alleged conduct does not constitute an actionable

14   invasion of privacy as a matter of law and because Plaintiffs have not plausibly alleged that any

15   Defendant has used user data unlawfully.  Defendants respectfully request that the Court dismiss the

16   FACs with prejudice.  *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (district

17   court's discretion to deny further leave is particularly broad when it has already granted leave to

18   amend once).

19

20

21

22

---

23   [21] *See* RJN Ex. N, at 2–3 (describing the types of information Disney collects and how it collects it);
     RJN Ex. O, at 6 (Disney Children's Privacy Policy explaining that the company may collect
24   information regarding "operating system, the child's IP address or mobile device identifier, the web
     browser, the frequency with which the child visits various parts of our sites or applications, and
25   information regarding the online or mobile service provider"); RJN Ex. Q, § I.C (Viacom privacy
     policy explaining that Viacom may collect information about mobile users' "operating system
26   (e.g., Windows XP or Mac OS), the visitor's IP address, the web browser, … UDID [("unique
     device identifier")] (for certain mobile devices), … information collected through the use of unique
27   identifiers such as cookies …, information regarding the Internet service provider, and other
     standard server log information"); *id.* § I.D (notifying users that third parties may collect cookie
28   information, IP addresses or other identifiers from devices).

1    DATED: August 3, 2018                Respectfully submitted,

2                                    By:   */s/ Jonathan H. Blavin*

3                                         GLENN D. POMERANTZ
                                          JORDAN D. SEGALL
4                                         MUNGER, TOLLES & OLSON, LLP
                                          350 South Grand Avenue, 50th Floor
5                                         Los Angeles, CA 90071-3426
                                          Telephone:  (213) 683-9132
6                                         Facsimile:   (213) 687-3702
                                          Email: glenn.pomerantz@mto.com

7                                         ROSEMARIE T. RING
                                          JONATHAN H. BLAVIN
8                                         MUNGER, TOLLES & OLSON, LLP
                                          560 Mission Street, 27th Floor
9                                         San Francisco, CA 94105
                                          Telephone:  (415) 512-4000
10                                        Facsimile:   (415) 512-4700
                                          Email: rose.ring@mto.com
11                                        Email:jonathan.blavin@mto.com
                                          Email: joshua.meltzer@mto.com
12
                                          *Attorneys for Defendants The Walt Disney*
13                                        *Co.; Disney Enterprises, Inc.; and Disney*
                                          *Electronic Content Inc.*
14
                                    By:   */s/ Sonya D. Winner*
15
                                          SONYA D. WINNER
16                                        COVINGTON & BURLING LLP
                                          One Front Street, 35th Floor
17                                        San Francisco, CA 94102
                                          Telephone:  (415) 591-6000
18                                        Facsimile:   (415) 591-6091
                                          Email: swinner@cov.com
19
                                          EMILY JOHNSON HENN
20                                        KATHRYN E. CAHOY
                                          COVINGTON & BURLING LLP
21                                        333 Twin Dolphin Drive, Suite 700
                                          Redwood Shores, California 94065-1418
22                                        Telephone:  (650) 632-4700
                                          Facsimile:  (650) 632-4800
23                                        Email:  ehenn@cov.com
                                          Email:  kcahoy@cov.com
24
                                          *Attorneys for Defendants Viacom Inc. and*
25                                        *Viacom International Inc.*[22]

26
27   ――――――――――――――――
     [22] Viacom Inc. and Viacom International Inc. (collectively "Viacom") join this motion conditionally.
28   Such joinder is in the alternative in the event the Court denies Viacom's Motion for Stay Pending
     Arbitration.  (Dkt. 66, 3:17-cv-04492-JD.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:   */s/ Daralyn J. Durie*

DARALYN J. DURIE
JOSHUA H. LERNER
RAGHAV KRISHNAPRIYAN
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:   (415) 362-6666
Facsimile:    (415) 236-6300
Email: ddurie@durietangri.com
Email: slerner@durietangri.com
Email: rkrishnapriyan@durietangri.com

*Attorneys for Defendant Kiloo A/S*

By:   */s/ Lance A. Etcheverry*

JACK P. DICANIO
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone:   (650) 470-4500
Facsimile:    (650) 470-4570
Email: jdicanio@skadden.com

LANCE A. ETCHEVERRY
ALLISON B. HOLCOMBE
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:   (213) 687-5000
Facsimile:    (213) 621-5432
Email: letcheve@skadden.com
Email: allison.holcombe@skadden.com

Attorneys for Defendant Sybo Games ApS

By:   */s/ David R. Singh*

DAVID R. SINGH
JOHN A. STRATFORD
AUDREY E. STANO
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 5th Floor
Redwood Shores, CA 94065
Telephone:   (650) 802-3000
Facsimile:    (650) 802-3100
Email: david.singh@weil.com
Email: john.stratford@weil.com
Email: audrey.stano@weil.com

Attorneys for Defendant AdColony, Inc.

-22-

By:   */s/ Tera M. Heintz*

TERA M. HEINTZ
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:   (415) 442-1000
Facsimile:   (415) 442-1001
Email: theintz@morganlewis.com

JOSEPH DUFFY
MORGAN, LEWIS & BOCKIUS, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone:   (213) 612-7378
Facsimile:   (213) 612-2501
Email: joseph.duffy@morganlewis.com

Attorney for Defendant Flurry, Inc., Oath
(Americas) Inc., and Oath Inc.

By:   */s/ Benjamin H. Kleine*

MICHAEL G. RHODES
BENJAMIN H. KLEINE
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-222
Email: rhodesmg@cooley.com
Email:bkleine@cooley.com

Attorneys for Defendant Chartboost, Inc.

By:   */s/ Tyler G. Newby*

TYLER G. NEWBY
AVERY L. BROWN
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   (415) 875-2300
Facsimile:   (415) 875-2391
Email: tnewby@fenwick.com
Email:avery.brown@fenwick.com

Attorneys for Defendant InMobi Pte Ltd.

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINTS
3:17-cv-04419-JD; 3:17-cv-04344-JD; 3:17-cv-04492-JD

1

By:   */s/ Celeste M. Brecht*

2
CELESTE M. BRECHT
RAMANDA R. LUPER

3
VENABLE LLP
2049 Century Park East, Suite 2300

4
Los Angeles, CA 90067
Telephone:   (310) 229-9900

5
Facsimile:    (310) 229-9901
Email: cmbrecht@venable.com

6
Email: rrluper@venable.com

7
EDWARD P. BOYLE
JOHN C. VAZQUEZ

8
VENABLE LLP
1270 Avenue of the Americas

9
New York, NY 10020
Telephone:   (212) 808-5675

10
Facsimile:    (212) 307-5598
Email: epboyle@venable.com

11
Email:jcvazquez@venable.com

12
Attorneys for Defendants ironSource USA Inc.,
comScore, Inc., and Full Circle Studies, Inc.

13

By:   */s/ Jacob A. Sommer*

14
JACOB A. SOMMER
ZWILLGEN PLLC

15
1900 M Street NW, Suite 250
Washington, D.C. 20036

16
Telephone:   (202) 296-3585
Facsimile:    (202) 706-5298

17
Email: jake@zwillgen.com

18
JUI-TING ANNA HSIA
ZWILLGEN LAW LLP

19
235 Montgomery Street, Suite 425
San Francisco, CA 94104

20
Telephone:   (415) 590-2341
Facsimile:    (415) 636-5965

21
Email: anna@zwillgen.com

22
Attorneys for Defendants Tapjoy, Inc. and
Vungle, Inc.

23

24

25

26

27

28

By:   */s/ Matthew D. Brown*
        MATTHEW D. BROWN
        BENJAMIN H. KLEINE
        AMY M. SMITH
        KELLY E. FABIAN
        COOLEY LLP
        101 California Street, 5th Floor
        San Francisco, CA 94111-5800
        Telephone:   (415) 693-2000
        Facsimile:    (415) 693-2222
        Email: brownmd@cooley.com
        Email: bkleine@cooley.com
        Email: amsmith@cooley.com
        Email: kfabian@cooley.com

        Attorneys for Defendant Upsight, Inc..

By:   */s/ Purvi G. Patel*
        DAVID F. MCDOWELL
        PURVI G. PATEL
        MORRISON & FOERSTER LLP
        707 Wilshire Boulevard
        Los Angeles, CA 90017-3543
        Telephone:   (213) 892-5200
        Facsimile:    (213) 892-5454
        Email: DMcDowell@mofo.com
        Email: PPatel@mofo.com

        JULIE O'NEILL
        MORRISON & FOERSTER LLP
        2000 Pennsylvania Avenue N.W.
        Washington D.C. 20006
        Telephone:   (202) 887-1500
        Facsimile:    (202) 887-0736
        Email: JONeill@mofo.com

        Attorneys for Defendant Unity Technologies
        SF

By:   */s/ Craig J. Mariam*

CRAIG J. MARIAM
HAZEL MAE B. PANGAN
SAMUEL B. LAUGHLIN
GORDON & REES SCULLY
MANSUKHANI LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone:   (213) 576-5000
Facsimile:    (877) 306-0043
Email: cmariam@gordonrees.com
Email: hpangan@gordonrees.com
Email: slaughlin@grsm.com

ALLISON J. FERNANDEZ
GORDON & REES SCULLY
MANSUKHANI LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:   (415) 986-5900
Facsimile:    (415) 986-8054
Email: afernandez@gordonrees.com

Attorneys for Defendant Kochava, Inc.

By:   */s/ James G. Snell*

JAMES G. SNELL
ANNA C. MOURLAM
JULIE ERIN SCHWARTZ
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:    (650) 838-4367
Facsimile:    (650) 838-4567
Email: jsnell@perkinscoie.com
Email: amourlam@perkinscoie.com
Email: jschwartz@perkinscoie.com

Attorneys for Defendants Mopub, Inc. and
Twitter, Inc.

In accordance with Local Rule 5-1(i), the filer attests that each of the above signatories has concurred in the filing of this document.

DATED:  August 3, 2018          By:   */s/ Jonathan H. Blavin*
                                      JONATHAN H. BLAVIN

-26-

**APPENDIX A**

**LIST OF DEFENDANTS BY RELATED CASE**

*McDonald et al. v. Kiloo ApS et al.*, **No. 3:17-cv-4344:**

      *Developer Defendants:* Kiloo ApS ("Kiloo"); Sybo Games ApS ("Sybo").

      *SDK Defendants:*          Adcolony, Inc.; Altaba Inc.; Chartboost, Inc.; Flurry, Inc.; Oath (Americas) Inc.; Oath, Inc.; InMobi Pte Ltd.; ironSource USA, Inc.; Tapjoy, Inc.; Vungle, Inc.

*Rushing et al. v. The Walt Disney Company et al.*, **No. 3:17-cv-4419:**

      *Developer Defendants:* The Walt Disney Company; Disney Enterprises, Inc.; Disney Electronic Content, Inc. (collectively "Disney").

      *SDK Defendants:*          Upsight, Inc.; Unity Technologies SF; Kochava, Inc.; MoPub, Inc.; comScore, Inc.; Full Circle Studies, Inc.

      *Other Defendants:*        Twitter, Inc.

*Rushing et al. v. Viacom Inc. et al*, **No. 3:17-cv-4492:**

      *Developer Defendants:* Viacom Inc.; Viacom International Inc. (collectively "Viacom").

      *SDK Defendants:*          Upsight Inc.; Unity Technologies SF.