REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Facundo Bouzat (SBN 316957)
fbouzat@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand
ndiamand@lchb.com
Douglas I. Cuthbertson
dcuthbertson@lchb.com
Abbye R. Klamann (SBN 311112)
aklamann@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (SBN 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs individually and on
behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL MCDONALD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KILOO A/S, et al.,<br><br>Defendants. | Case No.  3:17-cv-04344-JD (L)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**<br><br>Judge:      Hon. James Donato<br>Date:       October 18, 2018<br>Time:       10:00 a.m.<br>Courtroom: 11 |
| AMANDA RUSHING, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>Defendants. | Case No.  3:17-cv-04419-JD |

1  AMANDA RUSHING,

2              Plaintiff,                    Case No.  3:17-cv-04492-JD

3  v.

4  VIACOM INC., et al.,

5              Defendants.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    LEGAL STANDARD ...................................................................................... 1

III.   ARGUMENT .................................................................................................. 2

    A.    The FACs Make Specific Allegations that Defendants Collected and Used Personal Data from Children for Impermissible Purposes...................................... 2

    B.    

                    .................................................................................. 3

    C.    Plaintiffs Properly Pleaded Their State Law Invasion of Privacy Claims. ............. 5

        1.    The FACs Comprehensively Plead The Highly Offensive Nature of Defendants' Conduct In Part By Alleging Breach of Longstanding Social Norms Protecting Children's Privacy and Parents' Right to Keep Their Children Safe.............................................................................. 6

        2.    Children's Privacy Warrants Special Consideration, And Courts Considering Analogous Conduct by Defendants Towards Adults Have Refused to Dismiss Invasion of Privacy Claims at the Pleadings Stage. ........................................................................... 9

        3.    Defendants' Authority is Inapposite. ....................................... 11

        4.    Defendants Attempt to Dismiss the Significance of the Data They Collect and Exploit in Order to Conceal the Offensiveness of Their Acts. ............................................................................. 14

        5.    The Invasions of Privacy Are Compounded by Defendants' Deceit ........ 15

    D.    Plaintiffs Properly Pleaded Their Massachusetts and New York State Law Claims. ....................................................................................... 18

IV.    CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anonymous v. CVS Corp.*,
188 Misc. 2d 616 (Sup. Ct. 2001) ............................................................................ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 1

*Belluomini v. CitiGroup, Inc.*,
No. C 13-01743 CRB, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ...................... 13

*Bose v. Interclick, Inc.*,
No. 10 CIV. 9183 DAB, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .............. 20, 21

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) ...................................................................... 13

*Carpenter v. United States*,
138 S. Ct. 2206 (2018) ...................................................................................... 7, 11, 12

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) ................................ 21

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) ...................................................................... 9

*Ellis v. Safety Ins. Co.*,
41 Mass. App. Ct. 630 (1996) .................................................................................. 19

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ............................................................................ 11, 12

*Goodman v. HTC America, Inc.*,
No. C11-1793MJP, 2012 WL 2412070 (W.D. Wash. June 26, 2012) ............ 11, 13, 16

*Heffernan v. Hashampour*,
No. 09-CV-2060F, 2009 WL 6361870, at *3 (Mass. Super. Dec. 19, 2009) ............ 13

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .............................................................................................. 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ................................................................................................. 5, 6

*In re Carrier iQ, Inc., Consumer Privacy Litigation*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Google Inc. Cookie Placement Consumer Privacy Litigation,*
    806 F.3d 125 (3d Cir. 2015) .................................................................... 18

*In re Google, Inc. Privacy Policy Litig.,*
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................... 13

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................... 12, 13, 14

*In re Nickelodeon Consumer Privacy Litig.,*
    827 F.3d 262 (3d Cir. 2016) ......................................................... 14, 17, 18

*In re Vizio, Inc.,*
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................... 5, 10, 18, 19

*Kelley v. CVS Pharmacy, Inc.*
    No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Mass. Super. Aug. 24, 2007) ...................... 19

*Lloyd v. Cnty. of Los Angeles,*
    172 Cal. App. 4th 320 (2009) ................................................................... 9

*Loder v. City of Glendale,*
    14 Cal. 4th 846 (1997) ............................................................................. 5

*Long v. Graco Children's Prods.,*
    No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) .......................... 16, 17

*Low v. LinkedIn Corporation,*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................. 13

*McLaughlin v. Meehan,*
    1681-cv-00866, 2018 WL 1041371 (Mass. Super. Ct. Jan. 19, 2018) ...................... 19

*Meyerson v. Prime Realty Servs.*, LLC,
    7 Misc. 3d 911 (N.Y. Sup. 2005) ............................................................ 20

*Moreno v. S.F. Bay Area Rapid Transit Dist.,*
    No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .................... 13

*Mount v. PulsePoint, Inc.,*
    684 F. App'x 32 (2d Cir. Mar. 27, 2017) ........................................... 20, 21

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) ..................................................................... 1

*Opperman v. Path, Inc.,*
    87 F. Supp. 3d 1018 (2014) ("*Opperman I*") .......................... 6, 10, 12, 13

*Opperman v. Path, Inc.,*
    205 F. Supp. 3d 1064 (2016) ("*Opperman II*") ...................... 5, 6, 10, 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Pioneer Electronics (USA), Inc. v. Superior Court*,
  40 Cal. 4th 360 (2007) ................................................................ 11

*Polay v. McMahon*,
  468 Mass. 379, 10 N.E.3d 1122, 1126 (Mass. 2014) ................................ 19

*Rowe v. Educ. Credit Mgmt. Corp.*,
  559 F.3d 1028 (9th Cir. 2009) ...................................................... 1

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) ............................................ 13

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ........................................................... 5, 6

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ..................................................... 2

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ............................................................ 6

*Weld v. CVS Pharmacy*,
  No. CIV. A. 98-0897F, 1999 WL494114 (Mass. Super. Ct. Jun. 29, 1999) ........... 19

*Yunker v. Pandora Media, Inc.*,
  No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................. 13

**STATUTES**

Cal. Penal Code §§ 627, *et seq*. ..................................................... 7

Mass. Gen. Laws Ch. 214 § 1B ......................................................... 19

New York GBL § 349 ................................................................... 19

**RULES**

78 FR 3972-01, 3910, available at 2013 WL 169584 (Jan. 17, 2013) ..................... 15

**OTHER AUTHORITIES**

Brief for Technology Companies as Amici Curiae in Support of Neither Party, filed August 14,
  2017, *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (No. 16-402), *available at* 2017 WL
  3530959 ........................................................................... 8

Cal. Civ. Code, § 1670.5, Legis. Comm. Comments, n. 2 ................................ 5

Madden, Mary & Lee Rainie, *Americans' Attitudes About Privacy, Security and Surveillance*,
  Pew Research Center, May 20, 2015 ................................................. 8

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3      Merriam Webster dictionary .................................................................................................... 15

4      Rest. (2d) of Torts § 652B, Comment d........................................................................... 6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    **INTRODUCTION**

2          Plaintiffs, parents of children who play Defendants' online gaming applications ("Apps")

3   on their mobile devices, seek to prevent Defendants from collecting their children's Personal

4   Data,[1] tracking their children online, and exposing them to commercial exploitation.  Plaintiffs'

5   claims are adequately pleaded in the Amended Complaints.  (A summary of Plaintiffs' allegations

6   most relevant to this motion is provided in the accompanying Appendix, attached hereto.)  *First*,

7   Plaintiffs' allegations are based on comprehensive forensic testing demonstrating that

8   Defendants' Apps exfiltrate Personal Data sufficient to identify and target individual children.

9   *Second*, Plaintiffs allege that ████████████████████████, and Defendants' own

10  privacy policies, ████████████████████████████████████████

11  ████████████████████.  Rather than accept these allegations as true, as is required

12  on this motion, Defendants' arguments rely upon ignoring, mischaracterizing, or baldly denying

13  these facts.  When taken as true, Plaintiffs' allegations demonstrate that Defendants' conduct has

14  breached time-honored social norms recognizing the importance of privacy, autonomy, and

15  parents' right to protect their kids, and, therefore, Plaintiffs have adequately pleaded their state

16  law privacy claims upon which relief can be granted.

17  ## II.   **LEGAL STANDARD**

18         At the pleadings stage, "[d]ismissal is proper only where there is no cognizable legal

19  theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v.*

20  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The complaints must allege "enough facts to state a

21  claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

22  (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a

23  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

24  unlawfully.").  The Court must "accept all factual allegations in the complaint as true and

25  construe the pleadings in the light most favorable to the nonmoving party."  *Rowe v. Educ. Credit*

26  *Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation and quotation omitted).  "If there

27

28  ---
    [1] As used herein, "Personal Data" is any data that refers to, is related to, or is associated with an identified or identifiable individual.  (DAC ¶ 11; KAC ¶ 10; VAC ¶ 7.)

1    are two alternative explanations, one advanced by defendant and the other advanced by plaintiff,

2    both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule

3    12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

4    **III.    ARGUMENT**

        **A.    The FACs Make Specific Allegations that Defendants Collected and Used**
5            **Personal Data from Children for Impermissible Purposes.**

6            Defendants dispute or ignore Plaintiffs' detailed and carefully researched allegations

7    concerning Defendants' exfiltration and use of children's Personal Data, rather than accept them

8    as true, as required on this motion.  This challenge is not only improper but betrays Defendants'

9    recognition that – if true – the FACs demonstrate highly egregious breaches of social norms.  For

10   example, Defendants' claims that the FACs do not include "factual allegations suggesting that

11   Defendants actually engaged in behavioral advertising using identifiers obtained in the apps at

12   issue" (Mot. at 2) or mis-characterization of the exfiltrated Personal Data as "anonymous" (Mot.

13   at 1) cannot be reconciled with *scores of pages* diligently and accurately describing how

14   Defendants illegally exfiltrate and use Personal Data (including persistent identifiers) to

15   unlawfully profile, track, and target children *individually* for commercial exploitation and to

16   induce compulsive play.  *See, e.g.*, App. (listing paragraphs alleging that (1) the exfiltrated

17   Personal Data is not anonymous but instead personally identifying, and (2) Defendants used that

18   Personal Data impermissibly for tracking, profiling, and targeting).

19           The FACs' robust allegations are neither "conclusory [nor] deficient." Mot. at 15-17.  To

20   the contrary, the FACs contain voluminous, unimpeachable source material ████████

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████.[2]  *See*

23   App.  Put simply, Plaintiffs plead that (1) each Defendant is in the business of obtaining  Personal

24   Data to track and profile children and serve targeted/behavioral advertising (rather than

25   _____

26   [2] Contrary to Defendants' assertion, Plaintiffs' allegations do not concern COPPA-compliant
     "contextual" advertising, which does not involve the need for persistent identifiers or the user
27   profiling that is the subject matter of these actions.  Instead, Plaintiffs allege that Defendants
     specifically use the exfiltrated Personal Data to target individual children over time with
28   "behavioral" advertising, which not only violates longstanding privacy norms, but also happens to
     be illegal under The Children's Online Privacy Protection Act of 1998 ("COPPA").

1   "contextual" advertising, for which Personal Data is *not even needed or used*); (2) forensic testing

2   shows that Defendants acquire children's Personal Data from the Apps; and ███████████

3   ████████████████████████████████████████████████████████

4   █████████████████████.[3]

5   █████

6

7

8

9   ██████████████████   For example:

10  <u>Disney</u>.   ████████████████████████████████

11  ████████████████████████████████████████████████

12  ██████████████████   Declaration of David Slade ("Slade Decl.") in Support of Plaintiffs'

13  Motion for Judicial Notice, Ex. A at ████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████   *Id.* (emphasis added).

16  Similarly, Unity ██████████████████████████████████

17  ████████████████████████████████████████████████

18  █████████████████" Slade Decl., Ex. B at █████████████.   Unity ████

19  ████████████████████████████████████████████████

20  ███████   *Id.* at ████████████████████████████   MoPub

21  provides ████████████████████████████████.[4]  *Id.*

22  Further, Upsight ████████████████████████████████████

23  ████████████████████████████████████████

---

24  [3] Plaintiffs fully state a claim by alleging the exfiltration of Personal Data for *the purpose* of
    commercial exploitation, without having to allege a specific instance of a commercial application.

25  To the extent that Defendants attempt to prevail at this stage in the case because the FACs do not

26  show the service of a targeted ad to Plaintiffs' children with the same forensic detail used to show
    the exfiltration of Personal Data, this turns the plausibility standard on its head, and is entirely

27  improper at the pleadings stage.
    [4]

28  ████████████████████████████████████   DAC ¶¶ 70-71.



1    ████████████████████████████████████████████. Slade Decl., Ex. C at

2    ███████████. Upsight ████████████████████████████████████████

3    ████████████████████████████████████████████████

4    ██████████████ *Id.* at ███████████ (emphasis added).

5        <u>Viacom</u>.  Viacom's ██████████████████████████████████

6    ████████████████████████████████████████████████████

7    ███████████ ██████ ██████████████████████████████████

8    ███████████████████ Slade Decl., Ex. K at ██████████████ (emphasis added).

9        <u>Kiloo</u>.  Plaintiffs previously summarized the contracts between Kiloo and SDK

10   Defendants Tapjoy, Flurry, Vungle, and Chartboost ████████████████████████

11   ████████████████████ *See* Dkt. No. 132.  ████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████

21   ██████████████████████████

22        The self-serving, exculpatory █████████████████████████████████

23   ███████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████

26   ████████████████████████████████████████████

27   ⁵ Defined as ███████████████████████████████████████████████

28   ████████████████████████████████ (Slade Decl., Ex. K at ██████████████)

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████████

4  ██████████████████████████    *Cf.* Cal. Civ. Code, § 1670.5, Legis. Comm. Comments, n. 2

5  ("Under this section the court . . . may strike any single clause or group of clauses which are so

6  tainted or which are contrary to the essential purpose of the agreement").

7  In short, ██████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████

10  ### C.   Plaintiffs Properly Pleaded Their State Law Invasion of Privacy Claims.

11  To state a constitutional right to privacy claim, plaintiffs must show (1) "a legally

12  protected privacy interest," (2) a "reasonable expectation of privacy," and (3) a "serious invasion

13  of [the] privacy interest." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994).

14  Similarly, an intrusion upon seclusion claim must allege "(1) intrusion into a private place,

15  conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v.*

16  *Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  As Defendants concede (*see* Mot. at 5), courts'

17  analysis of these respective prongs is effectively identical.  *See, e.g., In re Vizio, Inc. Consumer*

18  *Privacy Litig.*, 238 F. Supp. 3d 1204, 1232 n. 11 (C.D. Cal. 2017).  These elements do not

19  mandate a rigid, formulaic test, but provide a threshold analytical framework for courts "to weed

20  out claims that involve so insignificant or *de minimis* an intrusion on a . . . privacy interest as not

21  even to require an explanation or justification by the defendant." *Loder v. City of Glendale*, 14

22  Cal. 4th 846, 893 (1997).

23  Defendants contest only each claim's final prong:  the seriousness or offensiveness of the

24  challenged conduct.[6]  Mot. at 5-13. "California tort law provides no bright line" on what

25  [6] ███████████████████████████████████████████████████████

26  ██████████████████████████████████████ *See Supra* Section III.C.

27  **5.** ███

28  ██████████████████ *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060
(N.D. Cal. 2014) ("*Opperman* I") (Plaintiffs had reasonable expectation of privacy in personal

*Footnote continued on next page*

MPA IN OPPOSITION TO DEFS' MOTION TO
DISMISS PLTFFS' AMENDED COMPLAINTS
3:17-CV-4344-JD; 3:17-CV-04419-JD; 3:17-CV-04492-JD

1  constitutes a serious or offensive violation of privacy interests under California's constitution or

2  common law, and "each case must be taken on its facts." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th

3  272, 287 (2009) (quoting *Shulman*, 18 Cal. 4th 200, 237). The intrusion should be "sufficiently

4  serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of

5  the social norms underlying the privacy right." *Hill*, 7 Cal. 4th 1, 37; *see also Opperman I*, 87 F.

6  Supp. 3d at 1060 (the intrusion should be "a substantial one, of a kind that would be highly

7  offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man

8  would strongly object.'") (quoting Rest. (2d) of Torts § 652B, Comment d). Analysis of this

9  element "essentially . . . involves a 'policy' determination." *Hernandez*, 47 Cal. 4th at 287

10  (quoting *Taus v. Loftus*, 40 Cal. 4th 683, 737 (2007)).

11       No court within the Ninth Circuit has considered the surreptitious theft of children's

12  Personal Data from mobile devices for tracking, profiling, and targeting without obtaining

13  parental consent. However, when *adult* plaintiffs allege secret exfiltration of personal

14  information – which is indisputably *less offensive* than exfiltrating children's personal

15  information – courts recognize "surreptitious theft" of such information should not be "qualified

16  as 'routine commercial behavior,'" and such conduct may be "highly offensive." *Opperman I*, 87

17  F. Supp. 3d at 1061. "That question is best left for a jury," and thus dismissal at the pleadings

18  stage, or, indeed, at summary judgment, is inappropriate. *Id*; *Opperman v. Path, Inc.*, 205 F.

19  Supp. 3d 1064, 1079-80 (2016) ("*Opperman II*") (denying summary judgment on intrusion upon

20  seclusion claim because jury must determine offensiveness of the intrusion).

21&22   **1.    The FACs Comprehensively Plead The Highly Offensive Nature of Defendants' Conduct In Part By Alleging Breach of Longstanding Social Norms Protecting Children's Privacy and Parents' Right to Keep Their Children Safe.**

23       The FACs demonstrate that Defendants' surreptitious tracking is contrary to time-honored

24  social norms deeply rooted in the long-standing recognition that the privacy of children – who are

25  especially vulnerable to manipulation and exploitation – should be protected, and the associated

26  *Footnote continued from previous page*
   data where defendants "obtained [plaintiffs'] consent by misrepresenting their purpose."); *see*

27  *also In re Vizio, Inc.*, 238 F. Supp. 3d at 1233 (Plaintiffs had a reasonable expectation of privacy
   in viewing data where Vizio collected consumers' data even after "they believed they had opted

28  out of Vizio's data collection practices.").

right of parents to keep their children safe and raise them as they see fit.  *See* App. A.  If

Defendants drove to an elementary school playground, gathered this same information from

secret interviews with the children, and assembled dossiers for targeting and manipulating

children, it would be deemed an egregious violation of social norms.  Indeed, it would be

criminal.[7]  The sophistication—and invisibility—of online tracking only *heightens* the

egregiousness of this conduct, allowing Defendants far greater access to children, with far greater

secrecy, to apply far more refined tools for tracking, psychographic profiling, and targeting

children over time and across devices, without their parents' knowledge or consent.

The present litigation highlights the need for the law to keep pace with the "seismic shifts

in digital technology" that have, for instance, turned the mobile device into "almost a feature of

human anatomy."  *Carpenter v. United States*, 138 S. Ct. 2206, 2218, 2219 (2018) (citation

omitted).  As the Supreme Court recognized in *Carpenter*, time-honored societal values, like

those embodied in the Fourth Amendment, should not be sacrificed at "the mercy of advancing

technology."  *Id*. at 2214; *see also id.* at 2220 ("the Court must tread carefully in such cases, to

ensure that we do not embarrass the future") (quotations omitted).  Indeed, the Supreme Court

distinguished prior Fourth Amendment precedent on the basis that it did not have to contend with

the powerful nature of digital computing that has a "nearly infallible memory" and enables the

"exhaustive chronicle of location information."  *Id*. at 2219.

The FACs contain extensive allegations of how Defendants egregiously violate

longstanding social norms through the use of new mobile technology, including norms regarding

children's privacy, parents' autonomy, and the online, mobile-device context.  In at least fifteen

pages of detailed allegations, each FAC cites (1) academic papers, (2) statements from advocacy

groups, (3) articles from major media outlets, (4) public opinion surveys, (5) industry self-

regulatory standards, and (6) state and federal statutes and regulations enacted to protect the

privacy of children's Personal Data.  *See* App.  These sources establish that society deems

children more vulnerable than adults, holds children's privacy to a higher standard, and respects

---

[7] Cal. Penal Code §§ 627, *et seq*. expressly prohibits individuals from entering school property and interacting with students without first registering with the school and thereby getting permission to be on school grounds.

1    parents' roles in raising their children.  Defendants trivialize this ample evidence as nothing more

2    than "surveys" (Mot. at 10), but ignore all other sources of evidence—which consistently and

3    unambiguously show that our society does not condone the surreptitious tracking of children.

4        Moreover, Defendants fail to explain how studies *quantifying* social norms do not

5    *evidence* social norms.  Their argument is further undercut by the fact that in their amicus brief in

6    support of *Carpenter*, Defendants Twitter and Oath relied on surveys from the same researchers

7    cited by Plaintiffs.  *See* Brief for Technology Companies as Amici Curiae in Support of Neither

8    Party, filed August 14, 2017, *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (No. 16-402),

9    *available at* 2017 WL 3530959.  Like Plaintiffs, the *Carpenter* amici rely on Pew Research

10   Center surveys for the proposition that consumers have reasonable expectations of privacy in their

11   data.  As Twitter and Oath explained in the *Carpenter* brief, users consider "collected electronic

12   data to be private—particularly given the personal details that information can reveal—regardless

13   of whether transmission to a third party has occurred behind the scenes in the creation or

14   processing of that data. . . .User and market research, including extensive review of user feedback

15   and complaints, confirms this expectation."  *Id.* at 18-19 (citing Madden, Mary & Lee Rainie,

16   *Americans' Attitudes About Privacy, Security and Surveillance*, Pew Research Center, May 20,

17   2015); *compare* KAC ¶¶ 153-57; VAC ¶¶ 99-103; DAC ¶¶ 158-62 (citing Pew studies from

18   Madden, Rainie, and others). [8]

19        Finally, ███████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████

23   _____

24   [8] In a moment of candor, the *Carpenter* amici acknowledge the depth and breadth of "non-content" electronic data that should be considered private and protected: "Some types of data that digital devices generate may reveal with considerable precision granular details about the

25   materials people read, the precise actions they take on their devices, and much more.…For example, when an Internet user opens a news story, views a photograph, or sends a message to a

26   friend, the user's smartphone often makes a record of that action, and those records are often transmitted to third parties such as the operator of the Internet platform or mobile application.

27   Arguably, these records are not 'content' in the analog sense; they do not contain communications in sentence or paragraph form. But they have the potential to reveal highly private and personal

28   information about the user." *Id.* at 31.

1
2
3
4
5

6               **2.**     **Children's Privacy Warrants Special Consideration, And Courts Considering Analogous Conduct by Defendants Towards Adults Have Refused to Dismiss Invasion of Privacy Claims at the Pleadings Stage.**
7

8        Children's online privacy warrants special protection as the attendant "public policy

9 concerns may counsel setting a lower threshold for 'egregious violations of social norms' when it

10 comes to certain types of information." *Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal.

11 2014) (accidental disclosure of prisoner's HIV status supports right to privacy claims). Such

12 public policy concerns reflect (and embody) prevailing social norms and can be "embodied in

13 statutes," *Id.* (citing *Lloyd v. Cnty. of Los Angeles*, 172 Cal. App. 4th 320, 329 (2009)), such as

14 those detailed in the FACs, which expressly address and proscribe the invasion of children's

15 privacy. KAC ¶¶ 149, 170-71; DAC ¶¶ 154, 175-76; VAC ¶¶ 95, 116-17.

16        Although there is an absence of in-circuit authority involving the online surreptitious

17 tracking of children, analogous cases dealing with surreptitious exfiltration of *adults'* Personal

18 Data hold that dismissal at the pleadings stage is inappropriate where complaints plausibly

19 alleged egregious violations of social norms. For example, in *Opperman*, plaintiffs brought an

20 intrusion upon seclusion claim against app developer defendants that had exfiltrated the contacts

21 and calendar information stored on mobile devices without the users' consent. *Opperman I* at

22 1032-33. Defendants moved to dismiss on the grounds that their conduct was not sufficiently

23 offensive. *Id.* at 1060. The court disagreed, holding that "the Court does not believe that the

24 surreptitious theft of personal contact information — which is what the CAC alleges — has come

25 to be qualified as 'routine commercial behavior.'" *Id.* at 1061. The court also highlighted

26 allegations similar to Plaintiffs' allegations here that social norms were violated: "Indeed,

27 [p]laintiffs allege that consumers, the media, the Federal Trade Commission, and Congress have

28 closely scrutinized the practices at issue in this case because of concerns that the practices were

MPA IN OPPOSITION TO DEFS' MOTION TO
DISMISS PLTFFS' AMENDED COMPLAINTS
3:17-CV-4344-JD; 3:17-CV-04419-JD; 3:17-CV-04492-JD

1    inappropriate." *Id.*; *accord,* fn. 3, *supra.* Accordingly, the court could not conclude as a matter

2    of law that the challenged conduct "was not 'highly offensive,'" which was a "question . . . .best

3    left for a jury." *Id.*

4         Even at summary judgment, the *Opperman* court *still* declined to decide the issue of the

5    conduct's egregiousness as a matter of law, holding that "[f]undamentally, this case is about

6    whether [the defendants' conduct] violated community norms of privacy," and that "[t]he

7    technology underlying the allegations in this case is still developing. The iPhone was introduced

8    less than ten years ago . . . and the prospect of an application developer taking advantage of a

9    user's contacts data is even newer still. . . . A judge should be cautious before substituting his or

10   her judgment for that of the community. In sum, this is not—or is not yet—a question that can be

11   decided as a matter of law[.]" *Opperman II* at 1079-80.

12        More recently, the court in *In re Vizio, Inc.* refused to dismiss both California

13   constitutional privacy and intrusion upon seclusion claims where plaintiffs challenged a television

14   manufacturer's surreptitious collection of class members' viewing data. 238 F. Supp. 3d 1204,

15   1233 (C.D. Cal. 2017). In denying the defendant's motion, the court was persuaded "not only [by

16   the fact] that Vizio collects an exceptionally vast array of information about their digital identities

17   and viewing histories, but also that the standard industry practice is not to collect viewing history

18   data unless a consumer affirmatively opts in." *Id.* The privacy claims survived dismissal due to

19   "the quantum and nature of the information collected, the purported failure to respect consumers'

20   privacy choices, and the divergence from the standard industry practice." *Id.*

21        Similarly, when considering a UCL claim, the court in *In re Carrier iQ, Inc., Consumer

22   Privacy Litigation* looked to California's constitutional right to privacy holding that the

23   defendants' surreptitious gathering of personal information—including data relating to app use—

24   violated the public policy set forth in the state constitution, giving rise to an "unfair" violation of

25   the UCL. 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015) (the California Constitution "'protects the

26   individual's reasonable expectation of privacy against a serious invasion...'… The SCAC—

27   alleging in detail, as detailed above, that the Carrier iQ Software surreptitiously intercepts various

28   personal information [including app usage data]—sufficiently alleges for purposes of the pleading

1   stage that Defendants' conduct offended the public policy reflected in these provisions.) (quoting

2   *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 370 (2007)); *see also*

3   *Goodman v. HTC Am., Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *14-*15 (W.D. Wash.

4   June 26, 2012) (plaintiffs alleged sufficiently egregious conduct to state a California

5   constitutional invasion of privacy claim where defendants used, *inter alia*, persistent identifiers—

6   exfiltrated via apps—to track, monitor, and profile users).

## 3.   Defendants' Authority is Inapposite.

8   Defendants' principal authority, *Folgelstrom v. Lamps Plus, Inc.*, not only illustrates the

9   flaws in Defendants' arguments, it reveals, by contrast, Defendants' egregious violation of social

10  norms.  195 Cal. App. 4th 986, 992 (2011).  In *Folgelstrom*, the California Court of Appeal held

11  merely that retailers requiring zip codes during credit card transactions, and subsequently using

12  that information to send junk mail was "routine commercial behavior" and did not comprise an

13  egregious breach of social norms.  *Id.* at 989, 992.  Courts distinguish *Folgelstrom* when, as here,

14  the challenged conduct is not "routine" or when the complaint sufficiently pleads facts plausibly

15  showing that the challenged conduct violated social norms.  *See Opperman I*, 87 F. Supp. 3d at

16  1061 (holding that "[t]he decision in *Folgelstrom* is distinguishable," because the plaintiffs

17  alleged "theft [by app developers] of the information in their personal contact lists, which is more

18  private than a person's mailing address.").  In *Opperman*, the digital nature of the exfiltration—

19  which was highly technical, non-intuitive, and entirely unobservable to the *Opperman* plaintiffs—

20  militated against classifying the challenged conduct as "routine" and benign.  *Id.*; *see also*

21  *Goodman*, 2012 WL 2412070, at *15 ("Unlike collecting someone's address or telephone

22  number, which courts have called 'routine commercial behavior,' [p]laintiffs allege that

23  [d]efendants engaged in the continuous tracking of their location and movements, and that

24  [d]efendants built and sold individualized profiles containing this information.") (citations

25  omitted).  Indeed, the reasoning in *Opperman* aligns with that of the Supreme Court observing

26  that "[t]here is a world of difference between the limited types of personal information addressed

27  [in cases involving older technology] and the exhaustive chronicle of location information

28  casually collected by wireless carriers today."  *Carpenter*, 138 S. Ct. at 2219.

- 11 -

Further, *Folgelstrom* failed to consider any possible societal norms that might warrant shielding adults from junk mail *(id.* at 991-92), but if it did, they would have little bearing on Plaintiffs' allegations, which concern radically different conduct and additional attendant social norms: (1) *the privacy of children* (not adults), and the related right of their parents' to protect their children; (2) the exfiltration of personal data that can come only from a specific child's mobile device (as opposed to publicly available home addresses); (3) the exfiltration of *numerous* personal data points (*Folgelstrom* involves only one piece of information); (4) the use of behaviorally-targeted advertisements from companies worldwide to target children online (the *Folgelstrom* junk mail came from only Defendant Lamps Plus Inc., a single light fixture retailer); (5) efforts to identify and target children online and across devices whenever and wherever they access the web (i.e., not occasional home mailers)); (6) ███████████████████████████████████████████████████████████████████████; and (7) numerous examples of how American society has expressed concern for the exploitation alleged in the FACs.  *Folgelstrom* does not come close to proposing that surreptitiously tracking and profiling children individually while they play on the Internet—or at the school playground for that matter—is routine commercial behavior.

Defendants' reliance on *In re iPhone Application Litig.* is equally ineffective because it relies primarily upon *Folgelstrom,* and therefore is distinguishable, as the *Opperman* court itself squarely held.  *Opperman II,* 205 F. Supp. 3d at 1078-79 (discussing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)).  Further, the *In re iPhone Application Litig.* court provided no analysis how the holding in *Folgelstrom*, which pertains to analog collection of discrete data points for junk mail, extends to the realm of "qualitatively different" and "all encompassing" realities of online tracking and profiling.  *Carpenter*, 138 S. Ct. at 2216-17; *see In re iPhone Application Litig.* 844 F. Supp. 2d at 1063. As *Opperman* concluded, the court in *iPhone Application Litig.* "did not explain how expansion of *Folgelstrom*'s holding, counter to the privacy interests of [smart phone and tablet] users, was consistent with California's community privacy norms. . . . [and] relied on an overreading of *Folgelstrom*."  *Opperman II*, 205 F. Supp. 3d at 1078-79.

1   Defendants cite two other cases without analysis why defendants' surreptitious tracking of

2   individuals is "routine commercial behavior." *See Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010,

3   1025 (N.D. Cal. 2012); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL

4   1282980, at *14 (N.D. Cal. Mar. 26, 2013).[9]  More fundamentally, the *Low* and *Yunker* courts

5   found the plaintiffs insufficiently pleaded that they were profiled or otherwise deceived or harmed

6   due to the data access.  *Low*, 900 F. Supp. 2d at 1025 ("Although Plaintiffs postulate that these

7   third parties could, through inferences, de-anonymize this data, it is not clear that anyone has

8   actually done so, or what information, precisely, these third parties have obtained."); *Yunker*,

9   2013 WL 1282980, at *14 (stating that the *Yunker* plaintiffs did not allege that their data was used

10  for profiling purposes, and acknowledging that the *Goodman v. HTC* opinion found egregious

11  violations of social norms where plaintiffs alleged that collected Personal Data was used for

12  profiling purposes) (citing 2012 WL 2412070, at *14-*15).  In contrast, as discussed above,

13  Plaintiffs have amply pleaded such injury. *See* App. A.

14   In Defendants' only case addressing collection of *children's* Personal Data, *In re*

15  *Nickelodeon Consumer Privacy Litig.* (*see* Mot. at 8-9), defendants Viacom and Google were

16  each accused of using tracking cookies to "unlawfully collect[] personal information about

17  [9] Defendants' remaining authority, relegated to a footnote, is easily distinguishable.  *Moreno v.
18  S.F. Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2017 WL 6387764, at *7-*8 (N.D.
    Cal. Dec. 14, 2017) (a BART transportation app disclosed use of geolocation data, and data
19  inadvertently collected while the app was not in use was not later used or stored for any purpose,
    was not highly offensive); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 972-73 (N.D. Cal.
20  2015) (dismissing privacy claims alleging car manufacturers' unauthorized collection of vehicle
    geolocation information where (1) "[a]ll of plaintiffs' factual allegations with regard to the
21  privacy claim [we]re contained within just three paragraphs" and were therefore not sufficiently
    "robust;" (2) Plaintiffs provided no evidence of the severity of the privacy interest violation; and
22  (3) where Defendants provided notice and consent to obtain the data at issue); *In re Google, Inc.
    Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (relying entirely on *In re iPhone
23  Application Litig.* as basis for dismissal, but where (1) the court conducted no separate analysis of
    the privacy claim or relevant social norms; and (2) the allegations concerning disclosure of
24  consumers' browsing habits have little relevance to allegations contained herein on the hidden
    tracking and use of children's Personal Data); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1124-45,
25  1127-28 (N.D. Cal. 2008) (data breach case involving two stolen laptops in which defendant was
    not accused of surreptitiously acquiring children's Personal Data, and where defendant's
26  negligent protection of the laptops – which increased the risk of identity theft – was not an
    egregious breach of social norms); *Belluomini v. CitiGroup, Inc.*, No. C 13-01743 CRB, 2013
27  WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) (relying on *Ruiz* and *In re iPhone Application Litig.*
    and holding that allegations of identity theft, where bank defendants allegedly failed to prevent an
28  individual from issuing cashier checks in plaintiffs' names as part of Ponzi scheme, does not
    amount to egregious breach of social norms).

1    [children] on the Internet, including what webpages they visited and what videos they watched on

2    Viacom's websites." 827 F.3d 262, 267 (3d Cir. 2016).  The court deemed Defendant Viacom's

3    conduct sufficiently egregious to sustain an intrusion upon seclusion claim because it violated

4    parents' "expectation of privacy on Viacom's websites" and allowed "parents to permit their

5    children to browse those websites under false pretenses." *Id.* at 295.  Similarly, here, Defendants'

6    "duplicitous tactics" (*id.*) – which Plaintiffs describe in detail (*see infra*, Section III.C.5. & App.

7    (listing allegations concerning deceit)) – magnify the offensiveness of their wrongful conduct in

8    mobile games aimed at children.  Defendants note that the *Nickelodeon* Court dismissed the

9    intrusion upon seclusion claim as to Google (*see* Mot. at 8), yet that holding does not support

10   Defendants, since Defendants' deceptive behavior here mirrors that of Viacom – a defendant here

11   as well – and not Google.  *See* App. (listing allegations describing deceit).[10]

### 4.    Defendants Attempt to Dismiss the Significance of the Data They Collect and Exploit in Order to Conceal the Offensiveness of Their Acts.

14            Defendants mischaracterize Plaintiffs' allegations and how the mobile advertising

15   ecosystem profits from children.  This is evident in Defendants' attempt to diminish the

16   significance of exfiltrating children's personal identifiers.  Defendants falsely state that disclosure

17   of Plaintiffs' children's Personal Data via persistent identifiers is innocuous because – unlike

18   social security numbers – they "identify devices, not persons." Mot. at 8.  The FTC explains:

> The Commission continues to believe that persistent identifiers permit the online contacting of a specific individual. As the Commission stated in the 2011 NPRM, *it is not persuaded by arguments that persistent identifiers only permit the contacting of a device. This interpretation ignores the reality that, at any given moment, a specific individual is using that device. Indeed, the whole premise underlying behavioral advertising is to serve an advertisement based on the perceived preferences of the individual user.*[11]

---

[10] Moreover, to the extent that *Nickelodeon* can be read to hold that, absent deceit, tracking and profiling children is "generally acceptable" in society and thus not an egregious violation of social norms, the Third Circuit's analysis suffers from the same infirmity as *In re iPhone Application Litig.*—namely, it is nonexistent.  827 at 294 (3d Cir. 2016) ('The plaintiffs…claim… track[ing] *children* is particularly odious. We are not so sure.").  As discussed, *supra*, the "not so sure" standard is inconsistent with the law in the Ninth Circuit and this District.

[11] This highlights why Defendants' additional authority, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), is inapposite.  *Eichenberger* dealt with a specific, statutory definition of "personally identifiable information" from the Video Privacy Protection Act, a claim not present here.  Further, in *Eichenberger*, the "[p]laintiff concede[d], that information [at issue] *cannot*

*Footnote continued on next page*

1    Children's Online Privacy Prot. Rule, 78 FR 3972-01, 3910, 2013 WL 169584, at *3980 (Jan. 17,

2    2013) (emphasis added).  The FTC cites industry articles discussing how "advertisers can decide

3    to put a specific ad in front of a specific individual web user on a given site, bid for that

4    impression and—if they win the bid—serve the ad, all in the time it takes for a page to load on the

5    target consumer's computer."  *Id.* at n. 106. Defendants thus impermissibly use persistent

6    identifiers to learn children's behaviors and preferences to serve a specific child a specific ad.

7        Defendants are also wrong that the Personal Data is anonymous (*see* Mot. at 1, 2, 5, 10):

8    Plaintiffs allege just the opposite.  *See* App. A (listing relevant paragraphs).  "Anonymous" means

9    "not named or *identified*."  *See* https://www.merriam-webster.com/dictionary/anonymous

10   (emphasis added).  Persistent Identifiers *identify* the individual user.  A graphic from Kochava's

11   website shows how Kochava "markets its ability to match individual users to their devices,"

12   including children, even when there are multiple users of the same device.  *See* DAC ¶ 58, fig. 3.

13       Kochava is not alone – Plaintiffs allege how the other SDK Defendants work to identify

14   specific children to serve them with targeted advertisements using persistent identifiers.  *See* App.

15   A.  Accordingly, Plaintiffs' statement that persistent identifiers are akin to social security

16   numbers is apt, and Defendants' attempt to minimize the import of their actions by falsely

17   describing the children's advertising mobile space within which they work should be disregarded.

18                **5.    The Invasions of Privacy Are Compounded by Defendants' Deceit**

19       Defendants concede deceptive conduct gives rise to legally cognizable privacy claims,

20   particularly as to children (Mot. at 11), but attempt to distinguish their behavior by claiming they

21   did not *affirmatively* mislead Plaintiffs, but only failed to *disclose* their conduct.  *Id.* at 11-12.  It

22   is immaterial whether Defendants deceived Plaintiffs affirmatively or by omission.  This Court

23   previously explained: "You could also [deceive] by omission.  You cannot tell people what

24   you're doing and that can be equally deceitful."  Ex. A (4/5/2018 H'rg Tr.) at 33:13-15; *see also*

25   *Goodman v. HTC Am., Inc.*, 2012 WL 2412070, at *4 (W.D. Wash. June 26, 2012).

26   ────────────────────

     *Footnote continued from previous page*

27   identify an individual unless it is combined with other data[.]"  *Id.* at 986.  Here, Plaintiffs make
     no such concession, and instead assert that the Personal Data is acquired and used to identify
28   individual children for targeted advertising.

Defendants' actions would lead any reasonable person to believe the challenged Apps are suitable for children ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████. Indeed, the Apple Play Store and Google Play Store guidelines for child audience apps *require* Defendants to expressly warrant they would abide by those laws (such as COPPA) as a pre-condition for designation as child-friendly apps. Where Defendants' general representations and marketing of their child-oriented products, like here, create a reasonable expectation of their safety and suitability for children, material omissions contradicting that reasonable expectation support a cognizable claim of deceit. For example, in a products liability case against a car seat manufacturer, the court held that "the FAC adequately pleads that consumers were 'likely to be deceived' by the defendants' fraudulent omission because consumers have 'an expectation or an assumption' that child car seats will work properly and not have safety flaws. *Long v. Graco Children's Prods.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *8 (N.D. Cal. Aug. 26, 2013). Where "'[r]easonable consumers . . . reasonably expect that a child's car seat is safe, will function in a manner that will not pose a safety hazard, and is free from defects[,]'" plaintiff plausibly alleged deceit because he "pleaded with particularity that the defendants had a duty to reveal some fact and did not do so." *Id.* The same rationale applies here: Defendants created a reasonable expectation of privacy as to these child-oriented Apps, but omitted critical information from children and their parents that, if known, would defeat that expectation, ███████████████████████████████████████ ███████. This is deceit. *Id.*

Even assuming there is a legal difference between omission and affirmative misrepresentation (there is not), Defendants make multiple affirmative misrepresentations similar to those cited in the Motion. In *Nickelodeon*, Viacom promised not to collect any personal information from children on its websites, but did so anyway. 827 F.3d at 295. ██████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ *See* Viacom Privacy Policy (Dkt. No. 196-17

at 6) ("*Nickelodeon does not behaviorally target advertising to children under 13* on sites that are directed to children or where Nickelodeon has actual knowledge that a user is under 13.") (emphasis in original); Disney Privacy Policy (Dkt. No. 196-15 at 7) (children's Personal Data, is used to "provide children with access to features and activities on our sites and applications[;] customize content and improve our sites and applications[;] conduct research and analysis to address the performance of our sites and applications[; and] generate anonymous reporting for use by TWDC[.]  *In the event we collect (or allow others to collect) such information from children on our sites and applications for other purposes, we will notify parents and obtain consent prior to such collection.*") (emphasis added),[12] Kiloo Privacy Policy (Dkt. No. 196-16 at 4) (Personal Data is used only "to provide children (as this term is construed under…COPPA in the US…) with reasonable contextual advertisements in the App," while targeted advertising is only for "non-child users that have given us consent[.]").   In reality, Defendants track and profile users for targeted advertising purposes.  *See* App. A (citing paragraphs).

Kiloo's privacy policy particularly illustrates deception throughout the relevant period. The operative privacy policy through at least August 2017 (after the filing of this action) claimed that *all* advertising was contextual, not behavioral.  *See* Section III.A., *infra* (distinguishing between contextual and behavioral ads); Slade Decl., Exhibit N ("We may allow third parties to serve contextual advertisements and provide analytics services in connection with the App."). Yet, the current privacy policy proffered to this Court by Kiloo by judicial notice – *and operative only after this action commenced* – now admits just the opposite; Kiloo engages in behavioral/targeted advertising.  But the technology underlying the Subway Surfers app did not change between the long-operative privacy policy and any subsequent, post-filing version, demonstrating that for at least five years (including the period during which Plaintiffs' children downloaded and played the app), Kiloo made statements directly contradicted by its subsequent privacy policies and Plaintiffs' forensic analysis, as detailed in the FAC.  During this same period, Kiloo also affirmatively deceived CARU, an industry regulatory body, by explicitly

---

[12] This is particularly egregious given Disney's CEO's statements of being "bullish about… behavioural tracking," and identifying children as a particularly attractive target because "[k]ids don't care." DAC ¶¶ 204-06.

1    stating that it did not acquire children's Personal Data.[13]

2        Where, like here, defendants represent they will not track and profile children, ███

3    ████████████████████████████, that conduct is an egregious breach of social norms

4    supporting an invasion of privacy claim. *Nickelodeon*, 827 F.3d at 295; *accord In re Vizio, Inc.*,

5    238 F. Supp. 3d at 1233; *see also In re Google Inc. Cookie Placement Consumer Privacy*

6    *Litigation*, 806 F.3d 125, 151 (3d Cir. 2015) (egregious breach of social norms where Google

7    overrode users' cookie-blocking functionality despite stating in its privacy policy that it did not,

8    because "users are entitled to deny consent, and they are entitled to rely on the public promises of

9    the companies they deal with"). As stated above, the well-pleaded FACs demonstrate an

10   egregious breach of social norms even without evidence of Defendants' deceit. However,

11   allegations of deceit render it indisputable that Defendants behaved egregiously, and Plaintiffs'

12   privacy claims may proceed.

13       **D.**     <u>Plaintiffs Properly Pleaded Massachusetts and New York State Law Claims.</u>

14       Under the Massachusetts Privacy Act, any privacy violation must be ""substantial or

15   serious," such that an intrusion upon a person's "solitude" or "seclusion," even without public

16   disclosure of the private information, will suffice. *Polay v. McMahon*, 468 Mass. 379, 382

17   (Mass. 2014) (citations omitted). As Defendants acknowledge, the Massachusetts Privacy Act,

18   Mass. Gen. Laws Ch. 214 § 1B, is interpreted similarly to California's constitutional right to

19   privacy. Mot. at 14; *see also In re Vizio*, Inc., 238 F. Supp. 3d at 1232 ("[t]he California

20   Constitution and Massachusetts Privacy Act create similar causes of action for invasion of

21   privacy," and analyzing both claims jointly). Accordingly, as set forth in Section III(B)(ii),

22   *supra*, the Disney FAC adequately pleads a Massachusetts Privacy Act claim. *See In re Vizio,*

23   *Inc.,* 238 F. Supp. 3d at 1233 (denying motion to dismiss Massachusetts Privacy Act claim in

24   light of plaintiffs' allegations of "the quantum and nature of the information collected, the

25   purported failure to respect consumers' privacy choices, and the divergence from the standard

---

[13] *See* KAC ¶¶ 182-83, 188; Slade Decl. at Ex. O. Defendants quibble over what Kiloo meant in

26   asserting "it did not have data relating to a younger audience" (Mot. at 12), but Kiloo represented

27   to CARU (falsely) it was not collecting children's Personal Data. Kiloo's representations led
     CARU to conclude incorrectly "that Subway Surfer does not currently collect personal

28   information that would require Kiloo to obtain verifiable parental consent under COPPA."

1    industry practice[.]"); *see also McLaughlin v. Meehan*, 1681CV00866, 2018 WL 1041371, at *10

2    ( Mass. Super**.** Ct. Jan. 19, 2018) (denying motion to dismiss a Massachusetts Privacy Act claim

3    and holding that computer files which "contain a person's thoughts, ideas, and communications. .

4    . . are intensely personal, and functionally no different from a person's physical solitude or

5    seclusion."); *Heffernan v. Hashampour*, No. 09CV2060F, 2009 WL 6361870, at *3 (Mass. Super.

6    Dec. 19, 2009) (allegations of surreptitious phone monitoring "satisfies the...standard in pleading

7    a violation of the Massachusetts Privacy Act." (citing *Ellis v. Safety Ins. Co.,* 41 Mass. App. Ct.

8    630, 637-38 (1996)).[14]

9          Defendants' arguments regarding New York GBL § 349 are equally unavailing.  *See* Mot.

10   at 13-14.  Defendants again challenge and refuse to accept as true Plaintiffs' well-pleaded and

11   specific allegations that the Personal Data acquired is used to track children individually, and

12   which sufficiently allege injuries by Disney and Kiloo under GBL§ 349.  *See* Section III.A,

13   *supra*.  As New York courts have long held, "it cannot be doubted that a privacy invasion claim . .

14   . may be stated under GBL § 349 based on non-pecuniary injury."  *Meyerson v. Prime Realty*

15   *Servs*., LLC, 7 Misc. 3d 911, 920 (N.Y. Sup. 2005); *Anonymous v. CVS Corp.*, 188 Misc. 2d 616,

16   625 (Sup. Ct. 2001) (noting that actual injury "need not involve a pecuniary loss" and can arise

17   through "prevent[ing] plaintiff from exercising the right to take action to prevent or minimize the

18   disclosure" of personal information).  This broad formulation extends cleanly to the privacy harm

19   alleged here, as demonstrated in a case with highly similar facts.  In *Bose v. Interclick, Inc*., the

20   plaintiffs alleged Interclick found a way to "respawn" browser cookies that had been deleted,

21   thereby surreptitiously tracking and profiling the plaintiffs.  No. 10 CIV. 9183 DAB, 2011 WL

---

[14] Defendant's lone authority – *Kelley* (*see* Mot. at 14-15) – cautions against dismissal at the pleadings stage, because it was issued in response to a summary judgment motion.  *Kelley v. CVS Pharmacy, Inc.*, No. CIV.A. 98-0897-BLS2, 2007 WL 2781163, at *11-12 (Mass. Super. Aug. 24, 2007).  Moreover, the *Kelley* opinion demonstrates the subjective nature of this very inquiry. In a preceding opinion, under a different judge, summary judgment was *denied* as to the same Massachusetts Privacy Act claim.  *Weld v. CVS Pharmacy*, No. CIV. A. 98-0897F, 1999 WL494114 , at *5 (Mass. Super. Ct. Jun. 29, 1999) ("whether CVS's conduct as to plaintiff Kelley constituted a violation of G.L.c. 214, 1B presents a novel question suitable for initial resolution by a jury").  *Kelley* demonstrates that a developed factual record is warranted and that even on such a record, reasonable minds can differ.  Finally, *Kelley* did not address deceitful conduct, as raised by Plaintiffs here, but rather misconduct in sending adult CVS customers marketing materials by mail.

MPA IN OPPOSITION TO DEFS' MOTION TO
DISMISS PLTFFS' AMENDED COMPLAINTS
3:17-CV-4344-JD; 3:17-CV-04419-JD; 3:17-CV-04492-JD

1    4343517, at *1 (S.D.N.Y. Aug. 17, 2011). While the court dismissed a federal statutory claim for

2    lack of "personal economic loss," the court upheld the § 349 claim: "[a]lthough collection of

3    personal information does not constitute 'economic' injury for purposes of the [federal Computer

4    Fraud and Abuse Act], courts have recognized similar privacy violations as injuries for purposes

5    of Section 349." *Id*. at *9. The *Interclick* court noted the plaintiffs' exfiltrated data revealed

6    "user's internet habits," was linked to "unique identifiers" and particular devices, and was used to

7    build "behavioral profile[s]" for targeted advertisements. *Id*. at *1.

8           Defendants ignore *Interclick* and focus on *Mount v. PulsePoint, Inc*., 684 F. App'x 32, 34

9    (2d Cir. 2017), where the alleged injury was the collection of "internet users' *aggregated*,

10   *anonymized* web-browsing data." *Id*. at 35 (emphasis added).  The Second Circuit held this was

11   insufficient, concluding, "absent any allegations that the data collected would or could be

12   associated with individual users (*or some other alleged factual basis* for a cognizable privacy

13   injury)," the § 349 claim could not survive.  *Id*. (emphasis added).  And while the district court in

14   *PulsePoint* expressed disagreement with *Interclick*, the Second Circuit notably did not.  That is

15   because *PulsePoint* is consistent with *Interclick* and supports Plaintiffs' § 349 claim.  Here,

16   Defendants' practice represents a qualitative and quantitative leap in tracking; it is neither

17   "aggregated" nor "anonymized" but instead *individual* and *personally identifying*, as detailed in

18   the FACs.[15]  *See* App. A.  Plaintiffs' allegations thus clearly meet the "would or could" standard

19   the Second Circuit articulated. Moreover, given that the harm suffered is not just one of

20   informational privacy, but also of an interference with parental autonomy, Plaintiffs have alleged

21   "some other alleged factual basis for a cognizable privacy injury," *PulsePoint*, 684 F. App'x at

22   35, just as in *Interclick*.[16]

23   **IV.    CONCLUSION**

24          For the foregoing reasons, Defendants' Motion should be denied.

25   _____

26   [15] In stark contrast, the *PulsePoint* plaintiffs *conceded* "that there are no allegations that
     *PulsePoint* was able to link [browsing history] to specific persons."  *Mount v. Pulsepoint*, 13 Civ.
     6592 (NRB), 2016 WL 5080131, at *11 (S.D.N.Y. Aug. 17, 2016).

27   [16] Defendants' remaining authority, *Cohen v. Casper Sleep Inc.*, suffers from the same infirmity,
     as its analysis principally relies on *PulsePoint*. No. 17-CV-9325, 2018 WL 3392877, at *8

28   (S.D.N.Y. July 12, 2018).

1613935.11                                          - 20 -

MPA IN OPPOSITION TO DEFS' MOTION TO
DISMISS PLTFFS' AMENDED COMPLAINTS
3:17-CV-4344-JD; 3:17-CV-04419-JD; 3:17-CV-04492-JD

1   Dated:  September 7, 2018                     Respectfully submitted,

2                                                 /s/      Michael W. Sobol

3                                                 Michael W. Sobol (State Bar No. 194857)
                                                  msobol@lchb.com
4                                                 Facundo Bouzat (State Bar No. 316957)
                                                  fbouzat@lchb.com
5                                                 LIEFF CABRASER HEIMANN &
                                                  BERNSTEIN, LLP
6                                                 275 Battery Street, 29th Floor
                                                  San Francisco, CA  94111-3339
7                                                 Telephone:  415.956.1000
                                                  Facsimile:  415.956.1008
8
                                                  Nicholas Diamand
9                                                 ndiamand@lchb.com
                                                  Douglas I. Cuthbertson
10                                                dcuthbertson@lchb.com
                                                  Abbye R. Klamann (State Bar No. 311112)
11                                                aklamann@lchb.com
                                                  LIEFF CABRASER HEIMANN &
12                                                BERNSTEIN, LLP
                                                  250 Hudson Street, 8th Floor
13                                                New York, NY  10013-1413
                                                  Telephone:  212.355.9500
14                                                Facsimile:  212.355.9592

15                                                Hank Bates (State Bar No. 167688)
                                                  hbates@cbplaw.com
16                                                Allen Carney
                                                  acarney@cbplaw.com
17                                                David Slade
                                                  dslade@cbplaw.com
18                                                CARNEY BATES & PULLIAM, PLLC
                                                  519 W. 7th St.
19                                                Little Rock, AR 72201
                                                  Telephone:  501.312.8500
20                                                Facsimile:  501.312.8505

21                                                *Attorneys for Plaintiffs and the proposed Classes*

22

23

24

25

26

27

28

# **Appendix**

| Allegation | Kiloo FAC ("KAC") | Disney FAC ("DAC") | Viacom FAC ("VAC") |
|---|---|---|---|
| The Personal Data[17] exfiltrated from users is not anonymous | ¶¶ 10, 31, 34-39, 42, 47-52, 57-59, 64, 67, 70-73, 76, 78-80, 84-86, 89, 91, 93-95, 101-103, 111-17, 121-22, 124, 133, 134-38, 142-43, 254. | ¶¶ 11, 32, 35-39, 41, 44, 47, 52, 57-60, 64-66, 68, 70-71, 80-114, 120-26, 130-131, 133, 140-44, 147-48, 205, 276. | ¶¶ 7, 22, 25-29, 31, 33, 37-45, 50, 52-54, 58-64, 68-69, 71, 78-82, 84-89 |
| Defendants, as a whole, used Plaintiffs' Personal Data for behavioral/targeted advertising and other individually-profiling purposes | ¶¶ 1, 30-32, 39, 42, 44, 45-109, 110-112, 115, 123-125, 127-28, 131-38, 140-143 | ¶¶ 1, 31-33, 39, 41, 43, 44-114, 119-21, 124, 132-34, 136-37, 140-44, 147-148, 204-06 | ¶¶ 1, 21-23, 29, 31, 33-56, 57-59, 62, 70-72, 74-75, 78-82, 84-89, |
| KAC - Tapjoy-specific allegations | ¶¶ 45-55, 115, 142 | | |
| KAC - Flurry-specific allegations | ¶¶ 56-67, 115, 127, 137 | | |
| KAC - Vungle-specific allegations | ¶¶ 68-75 | | |
| KAC - Chartboost-specific allegations | ¶¶ 76-82, 115, 127, 137, 141-42 | | |
| KAC - ironSource-specific allegations | ¶¶ 83-91, 115, 137, 140, 142 | | |
| KAC - InMobi-specific allegations | ¶¶ 92-98, 115, 137, 142 | | |
| KAC - AdColony-specific allegations | ¶¶ 99-106, 115, 127, 135, 137, 140, 142 | | |
| DAC – Upsight-specific allegations | | ¶¶ 44-48, 83-86, 124, 143, 146-47 | |
| DAC – Unity-specific allegations | | ¶¶ 49-56, 73, 87-89, 102-05, 124, 147 | |
| DAC – Kochava-specific allegations | | ¶¶ 57-69, 80-82, 90-92, 96-98, 106-08, 124, 143, 147 | |
| DAC – Twitter/MoPub-specific allegations | | ¶¶ 70-74, 99-101, 112-14, 124 | |

---

[17] NB: any reference to "Personal Data" in the FACs is a reference to "data that refers to, is related to, or is associated with an **identified or identifiable individual**" (KAC ¶ 10, DAC ¶ 11, VAC ¶ 7) (emphasis added), and thus by definition ties to specific individuals. However, rather than cite to each use of the phrase "Personal Data" in each FAC (appearing 137 times in the KAC, 171 times in the DAC, and 91 times in the VAC) Plaintiffs instead cite to specific paragraphs that deal with specific items or uses of Personal Data.

| | | | |
|---|---|---|---|
| DAC – comScore/Full Circle Research-specific allegations | | ¶¶ 75-79, 93-95, 109-11, 124 | |
| VAC – Upsight-specific allegations | | | ¶¶ 28, 33-46, 62, 79, 81, 84-86 |
| VAC – Unity-specific allegations | | | ¶¶ 47-56, 62, 87 |
| Defendants deceived Plaintiffs by presenting their app(s) as suitable for children, while concealing the privacy-violative nature of their practices | ¶¶ 26-30, 40, 42, 54, 61-62, 75, 82, 88, 97, 106, 107-09, 177-91, 251, 253 | ¶¶ 24-31, 40-41, 48, 56, 69, 74, 79, 115-18, 182-207, 273, 275 | ¶¶ 17-21, 30-31, 46, 56, 123-43 |
| Social Norms articulated in: | | | |
|     Academic Literature | ¶¶ 125, 126, 128-130, 140, 146-48, 158-59, 160-62, 166(b) | ¶¶ 134, 135, 137-39, 146, 151-53, 163-64, 165-67, 171(b) | ¶¶ 72, 73, 75-77, 84, 92-94, 104-05, 106-108, 112(b) |
|     Advocacy and Regulatory Agency Statements | ¶¶ 113-14, 116-18, 144-48, 151-52 | ¶¶ 122-23, 125-27, 149-53, 156-57 | ¶¶ 60-61, 63-65, 90-94, 96-97 |
|     Print and Television Media | ¶¶ 126, 139, 146, 147, 164 | ¶¶ 135, 145, 151, 152, 169 | ¶¶ 73, 83, 92, 93, 110 |
|     Consumer Surveys and Case Studies | ¶¶ 148, 153-58, 163 | ¶¶ 153, 158-63, 168 | ¶¶ 94, 99-104, 109 |
|     Industry Self-Regulatory Standards | ¶¶ 166(c), 172-75, 182-83, 188 | ¶¶ 171(c), 177-80, 192-96, 201 | ¶¶ 112(c), 118-21, 132-136 |
|     State and Federal Statutes, Regulations and Common Law | ¶¶ 149, 166(a), 170, 171 | ¶¶ 154, 171(a), 175, 176 | ¶¶ 95, 112(a), 116, 117 |