# Durie Tangri

Kaveri Vaid
213-992-4499 (main)
kvaid@durietangri.com

February 6, 2020

**VIA CM/ECF FILING (COURTESY COPY VIA MESSENGER)**

Re:   *Michael McDonald et al. v. Kiloo APS et al.*
       Case No. 3:17-cv-04344-JD

Dear Judge Donato:

      Plaintiffs refuse to produce the discovery foundational to their claims.  Plaintiffs allege that Defendants collected their "children's Personal Data" without their consent through the Subway Surfers app.  Am. Compl. ¶¶ 30, 31.  They further allege that these data were "combined" with other data "to track and profile" their children for targeted advertising.  *Id.*, *see also id.* ¶ 111.  These allegations depend on whose data was collected, from what apps, and who knew about it.  Defendants can only test Plaintiffs' claims through the discovery at issue here:  (i) a list of apps on the mobile devices at issue that were solely or partially used by the parent-Plaintiffs; and (ii) a list of all apps and websites Plaintiffs allow their children to use, the dates of use, and the privacy settings used.  *See* Ex. A (Interrogatory No. 6); Ex. B (RFP Nos. 22, 23, 25, and 37) ("other-apps discovery").[1]

      The case hinges on this discovery.  Plaintiffs' claims require them to demonstrate that Defendants in fact collected information constituting their *children's* "Personal Data."  But what Plaintiffs call "children's Personal Data" is in fact data about the *parents' mobile devices*.  These data are associated with *devices*, not individuals.  Am. Compl. ¶¶ 34-39.  If the parent-Plaintiffs *also* used apps that collected and transmitted device identifiers during the time period when their children played Subway Surfers, then any advertising "profile" created from those identifiers would reflect the devices' shared use.  Such a "profile" does not reflect the activity or preferences of any one person, as anyone who has tried to make sense of the recommendations offered by a shared Netflix or Amazon account can attest.  Although this may not be an issue if a device is used only by one person, Plaintiffs' claims are based on *children's* usage, and children typically share their parents' mobile devices.  Case in point: Each named Plaintiff in this action admits that all of the devices on which the child-Plaintiffs played Subway Surfers were owned by the parent-Plaintiffs.

      Defendants cannot test Plaintiffs' conflation of device-specific identifiers with their children's Personal Data without knowing (i) whether the parent-Plaintiffs also used apps that transmitted device identifiers, and (ii) whether that data would have been commingled with data from Subway Surfers.  Assume, for example, that Plaintiffs' allegations that device identifiers can be used to assemble a "profile" are true, and that the profile indicates that the device associated with those identifiers runs the

---

[1] Pursuant to the Standing Order on Discovery in Civil Cases, Kiloo has met and conferred with Plaintiffs in an effort to resolve these issues.

Hon. James Donato
February 6, 2020
Page 2

Bloomberg, LinkedIn, United Airlines, Caltrain, Uber, Venmo, and Subway Surfers.  Under those circumstances, no one but a lawyer would describe the device identifiers as "children's Personal Data."

Plaintiffs' theory of liability also depends on a finding that they did not consent to the collection of the data at issue.  This Court has recognized that both express and implied consent are defenses to Plaintiffs' claims.  *See* ECF No. 270 at 14-15; *see also Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e*., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant.").  If Plaintiffs allowed their children to use *other* apps or websites that collected the same identifiers at issue here, and declined to use privacy settings to protect that information, their conduct manifests consent to the collection of those identifiers and their claims cannot stand.

Plaintiffs must finally prove that data identifying their children were *also* collected by other apps or websites.  Plaintiffs claim the device identifiers allegedly collected through Subway Surfers were "combined with other data" to "track" their children "across the Internet" and "across multiple online platforms."  Am. Compl. ¶¶ 30-31, 34, 165.  Plaintiffs make clear that this alleged *combination* of data underpins their claim that Defendants' conduct breached a reasonable expectation of privacy and was highly offensive.  To state the obvious, data can only be combined if there is other data to combine it with.  Plaintiffs' claims thus depend on *other* apps or websites used by their children *also* collecting the device identifiers at issue here.  Without this combination of identifiers from more than one source, no tracking profile could exist.  But Plaintiffs refuse to disclose whether their children used other apps or websites that collected their device identifiers and shared data with the SDK Defendants.

Courts in similar privacy cases have recognized the centrality of the plaintiffs' use of other apps and services and permitted just this sort of discovery.  *See, e.g.,* Order Regarding Discovery Disputes at 3, *Opperman v. Path*, No. 13-cv-00453-JST (N.D. Cal. Feb. 11, 2016), ECF No. 643 (in intrusion upon seclusion case, noting that how "Plaintiffs treated their address book data with respect to *other apps*" is "relevant" to issues in case, and permitting "up to five interrogatories regarding how Plaintiffs shared or declined to share their address book data with *other apps*" (emphases added)); *Olney v. Job.com*, No, 12-cv-01724-LJO-SKO, 2014 WL 5430350, at *21 (E.D. Cal. Oct. 24, 2014) ("[o]ther websites Plaintiff visited are also relevant because they may have similar consent procedures to Job.com or offer registered users a similar opportunity to receive calls about educational opportunities.  If Plaintiff visited these websites, such evidence may be circumstantially relevant to the scope of Plaintiff's consent to be contacted when he interacted with Job.com through Resume–Now.").  The information sought here is equally critical to Plaintiffs' professed expectations of privacy, the nature and magnitude of the alleged privacy intrusion, and whether they may have impliedly consented to the practices at issue.

Plaintiffs have no basis to demand that Defendants defend against these allegations in the blind.  Plaintiffs claim that providing this information would invade their privacy.  But they refuse to explain how or why.  Defendants do not seek *any* information relating to the actual use of apps or websites, such as posts or other content created by children or parents.  Indeed, Plaintiffs themselves admit that revealing whether or not a child uses an app is not inherently an invasion of privacy:  they have already

Hon. James Donato
February 6, 2020
Page 3

agreed to provide usage dates and privacy settings for twelve prominent social networking apps. If Plaintiffs are concerned that certain special categories of apps or websites used only by the parent-Plaintiffs could be so sensitive that even revealing the mere fact of use would be an invasion of privacy (e.g., adult entertainment), Defendants would have no objection to Plaintiffs proposing a reasonable list of sensitive app categories for which they would withhold the names of the individual apps and instead provide neutral placeholder names. Nor would Defendants object to Plaintiffs providing the Court with the full list of apps on their phones and allowing the Court to decide whether particular apps are so sensitive that even their names should not be disclosed to Defendants—in such a case, Defendants would only ask that the Court provide a neutral placeholder name (for example, "App A"), so that Defendants can at least determine how many apps on the devices were used by the parent-Plaintiffs. But this narrow concern cannot justify the wholesale concealment of this discovery.

Equally meritless is Plaintiffs' claim that the Court's order on the forensic inspection protocol, ECF No. 320, has resolved this issue. Discovery by means of forensic inspection is inherently more burdensome and invasive of Plaintiffs' privacy than doing so by means of interrogatories. The question of conducting written other-apps discovery has not previously been put before the Court, much less been ruled on. *See Opperman*, No. 13-cv-00453-JST, ECF No. 643, at 3 (holding forensic inspection a "disproportionate" method to conduct other-apps discovery, and permitting interrogatories instead).

Defendants respectfully ask the Court to order Plaintiffs to provide: (i) a list of apps on the mobile devices at issue during the time period at issue in the Complaint, identifying which apps are solely or partially used by the parent-Plaintiffs; and (ii) a list of all apps and websites Plaintiffs allow their children to use, the dates of use, and the privacy settings used.

In the alternative, if the Court considers the discovery sought in point (i) too intrusive, Defendants ask the Court to order Plaintiffs to disclose the number of apps on the phone during the time period at issue in the Complaint, identify how many of those apps were used solely or partially by the parent-Plaintiffs, and to deem it established that the parent-Plaintiffs used other apps that collected device identifiers at issue in this case and made those device identifiers available to SDKs including the SDK Defendants for the purpose of targeted or behavioral advertisements.[2]

Sincerely,

*/s/ Kaveri Vaid*

Kaveri Vaid

Counsel for Defendant Kiloo APS

---

[2] Defendants also ask that the Court set a reasonable date certain for the production of this material, given that after Plaintiffs were ordered to produce their "sniffing" analysis they waited over *4 weeks* to turn it over. *See* Minute Entry, *Rushing v. Viacom*, No. C-17-04492-JD (N.D. Cal. Jan. 02, 2020), ECF No. 112.