**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Nicholas Diamand
ndiamand@lchb.com
Douglas I. Cuthbertson
dcuthbertson@lchb.com
Sean Petterson
spetterson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (SBN 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

*Attorneys for Plaintiffs and the Proposed
Classes*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHAEL MCDONALD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>KILOO A/S, et al.,<br><br>    Defendants. | Case No.: 3:17-cv-04344-JD (L)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARDS OF ATTORNEYS' FEES, REIMBURSEMENTS OF EXPENSES, AND SERVICE AWARDS** |

2042705.1

NOTICE OF MOTION AND MOTION FOR AWARDS
OF ATTORNEYS' FEES, COSTS & SERVICE AWARDS
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

| | |
|---|---|
| 1 | AMANDA RUSHING, et al., | Case No.: 3:17-cv-04419-JD |

1   AMANDA RUSHING, et al.,                    Case No.: 3:17-cv-04419-JD

2              Plaintiffs,

3        v.

4   THE WALT DISNEY COMPANY, et al.,

5              Defendants.

6   AMANDA RUSHING,                             Case No.: 3:17-cv-04492-JD

7              Plaintiff,

8        v.

9   VIACOMCBS INC., et al.,

10             Defendants.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2042705.1

NOTICE OF MOTION AND MOTION FOR AWARDS
OF ATTORNEYS' FEES, COSTS & SERVICE AWARDS
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

1

## TABLE OF CONTENTS

2
**Page**

3    NOTICE OF MOTION AND MOTION FOR AWARDS OF ATTORNEYS' FEES,
        REIMBURSEMENTS OF EXPENSES, AND SERVICE AWARDS ............................. 1

4    MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

5    I.     PRELIMINARY STATEMENT ........................................................................ 1

6    II.    THE PARTIES' AGREEMENTS REGARDING FEES, EXPENSES, AND
            SERVICE AWARDS ........................................................................................ 3

7    III.   THE REQUESTED ATTORNEYS' FEES ARE FAIR, REASONABLE, AND
            APPROPRIATE. .............................................................................................. 4

8           A.     Class Counsel Incurred a Reasonable Lodestar. ...................................... 5

9                  1.     Class Counsel's Hours Worked Are Reasonable. ........................... 5

10                 2.     Class Counsel's Hourly Rates Are Reasonable. ............................. 7

            B.     Class Counsel's Reasonable Fees Are Justified in Light of the
11                 Circumstances. .................................................................................. 8

12                 1.     Class Counsel Obtained an Excellent Result. ................................ 9

13                 2.     The Actions Raised Novel and Complex Issues. .......................... 11

                   3.     Class Counsel Zealously Represented Class Members' Interests. ........... 13

14                 4.     Class Counsel Pursued this Litigation at the Risk of Nonpayment
                          and Preclusion of Other Legal Work. ......................................... 13

15   IV.    CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND
            SHOULD BE REIMBURSED. ........................................................................ 13

16   V.     THE REQUESTED SERVICE AWARDS ARE REASONABLE. ........................ 14

17   VI.    CONCLUSION .............................................................................................. 15

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Blum v. Stenson*,
   465 U.S. 886 (1984) .................................................................................................. 5, 7

*Campbell v. Facebook Inc.*,
   No. 4:13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ................................... 8

*Campbell v. Facebook, Inc.*,
   No. 4:13-cv-05996-PJH (May 30, 2017), Dkt. 239 ..................................................................... 8

*Cunningham v. County of Los Angeles*,
   879 F.2d 481 (9th Cir. 1988) ...................................................................................................... 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 4, 5, 8, 13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................................... 9

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................... 8

*In re Heritage Bond Litig.*,
   No. 02-ml-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................ 13

*In re High-Tech Employee Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .................................... 8

*In re Intuit Data Litig.*,
   No. 15-CV-1778-EJD-SVK (Dec. 17, 2018), Dkt. 185 .............................................................. 8

*In re Intuit Data Litig.*,
   No. 15-CV-1778-EJD-SVK, 2019 WL 2166236 (N.D. Cal. May 15, 2019) ............................. 8

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) .............................................................................................. 15

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................................................... 13

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................... 13

*In re Pokémon Go Nuisance Litig.*,
   No. 3:16-cv-04300-JD (N.D. Cal. Aug. 30, 2019), Dkt. 142 ..................................................... 8

*In re Pokémon Go Nuisance Litig.*,
   No. 3:16-cv-04300-JD (N.D. Cal. June 13, 2019), Dkt. 137 ...................................................... 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ....................................... 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*),
   19 F.3d 1291 (9th Cir. 1994) .................................................................................................... 13

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 9th Cir. 1975) .......................................................................................................... 8

*Kim v. Space Pencil, Inc.*,
   No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) .......................................... 9

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal. App. 4th 19 (2000) ................................................. 4, 5

4

*Lilly v. Jamba Juice Co.*,
   No. 13-CV-02998-JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015) ........................ 7

5

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009) ............................................. 9

6

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ...................................................... 14

7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................. 14

8

*Rodriguez v. W. Publ'g Corp.*,
   602 F. App'x 385 (9th Cir. 2015) .......................................... 8

9

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ............................................. 14

10

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ...................................................... 8

11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................ 13, 14

12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................... 4, 13

13

*Yeagley v. Wells Fargo & Co.*,
   365 F. App'x 886 (9th Cir. 2010) .......................................... 4

14

15

16

**RULES**

17

Fed. R. Civ. P. 23(h) ....................................................... 4

18

19

20

21

22

23

24

25

26

27

28

1

<u>**NOTICE OF MOTION AND MOTION FOR AWARDS OF ATTORNEYS' FEES,**</u>
<u>**REIMBURSEMENTS OF EXPENSES, AND SERVICE AWARDS**</u>

2

3          PLEASE TAKE NOTICE that on December 17, 2020, at 10:00 a.m., or soon thereafter in

4   accordance with General Order No. 72-6, Plaintiffs[1] will and hereby do move the Court for an

5   order awarding attorneys' fees and costs to be paid by Defendants[2] in these coordinated and

6   related Actions (*i.e.*, the *Kiloo* Action, the *Disney* Action, and the *Viacom* Action).

7          Specifically, Plaintiffs request that the Court approve: (1) awards of reasonable attorneys'

8   fees, (2) reimbursements of reasonably incurred litigation expenses, and (3) reasonable service

9   awards for each Class Representative (*i.e.*, each named Plaintiff).[3]

10                        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

11   **I.      PRELIMINARY STATEMENT**

12          For nearly three years, Plaintiffs and Class Counsel vigorously litigated these putative

13   class actions for the benefit of millions of parents or guardians and their children.  Those efforts

14   culminated in sixteen separate Settlements, which each implement meaningful and far-reaching

15   injunctive relief—not only for the six mobile gaming apps at issue in the three Actions, but for

16   thousands of other apps aimed at children.  After securing settlements in principle with each

17   Defendant on the core injunctive relief, the parties separately negotiated agreements governing

18   fees, expenses, and service awards.  Consistent with those agreements, Plaintiffs now petition this

19   Court for fee awards of $5,208,124 in the *Kiloo* Action, $2,167,670 in the *Disney* Action, and

20   $745,390 in the *Viacom* Action, and expense reimbursements of $501,876 in the *Kiloo* Action,

21   ---

[1] Plaintiffs are: Michael McDonald, Tamara Draut, Dominique Murillo, Amanda Rushing, Ashley
22   Supernault, Julie Remold, and Ted Poon.
[2] Defendants are: (i) Kiloo A/S ("Kiloo"); Sybo ApS ("Sybo"); The Walt Disney Co., Disney
23   Enterprises, Inc., and Disney Electronic Content, Inc. (collectively, "Disney"); and ViacomCBS
Inc. and Viacom International Inc. (collectively, "Viacom") (together, the "Developer
24   Defendants"); and (ii) AdColony, Inc. ("AdColony"); Chartboost, Inc. ("Chartboost"); Flurry,
Inc. ("Flurry"); InMobi Pte Ltd. ("InMobi"); ironSource USA Inc. ("ironSource"); Tapjoy, Inc.
25   ("Tapjoy"); Vungle, Inc. ("Vungle"); Twitter Inc. and MoPub, Inc. (collectively, "Twitter");
Comscore, Inc. and Full Circle Studies, Inc. (collectively, "Comscore"); Unity Technologies SF
26   ("Unity"); and Upsight, Inc. ("Upsight") (together, the "SDK Defendants").
[3] This motion is supported by the memorandum of points and authorities, the Joint Declaration of
27   Nicholas Diamand and Allen Carney ("Joint Decl."), the Joint Declaration of Michael W. Sobol
and Hank Bates in Support of Plaintiffs' Motion for Preliminary Approval (*Kiloo*, Dkt. 364) ("PA
28   Decl."), and such other matters as the Court may consider.

1   $237,330 in the *Disney* Action, and $189,610 in the *Viacom* Action.  Plaintiffs respectfully

2   request that the Court allocate these awards by Defendant in accordance with the payment caps

3   specified in each of the Settlements and as set forth in the table in Section II, *infra*.   In addition,

4   Plaintiffs request service awards of $2,500 per Class Representative in each Action.

5           Plaintiffs seek fee awards that are *less* than Class Counsel's reasonable lodestar in each

6   Action, with no impact on the substantial benefits class members will receive under these Rule

7   23(b)(2) injunctive-only Settlements.  These awards are justified in this first-of-its-kind lawsuit,

8   where Plaintiffs asserted state-law privacy claims against app developers and their advertising

9   partners for collecting and monetizing children's personal data.  During every phase of litigation,

10  Plaintiffs' previously untested legal theories faced novel and complex challenges.  Indeed, after

11  overcoming multiple rounds of motions to dismiss, Class Counsel litigated several discovery

12  disputes, took numerous depositions (including overseas), and prepared for vigorous opposition to

13  a motion for class certification and Defendants' anticipated summary judgment motions.  Despite

14  the significant risks that class members might not see timely and meaningful relief, or any relief

15  at all, Class Counsel's extensive efforts will culminate in substantial, wide-ranging injunctive

16  relief for class members and their children.  The Settlements provide:  (1) stringent limitations on

17  the collection and use of children's personal data; (2) meaningful changes to Defendants'

18  business practices concerning children's privacy that exceed existing requirements in the mobile

19  advertising industry; and (3) expanded injunctive relief that will cover thousands of apps popular

20  with children.  Moreover, Class Counsel brought to these Actions a wealth of skill and experience

21  from litigating other digital privacy cases.  And in doing so, they assumed the risk of

22  nonpayment, advancing all necessary expenses to seek a fee only in the event of a favorable

23  resolution for class members.  These considerations confirm the reasonableness of Plaintiffs' fee

24  request.  Plaintiffs also seek reimbursements of reasonable expenses incurred over the course of

25  this litigation, which were particularly necessary to support this forensic-heavy litigation.

26          Separately, Plaintiffs request service awards of $2,500 for each Class Representative in

27  each Action, in recognition of the work they performed on behalf of class members.  Each Class

28  Representative closely participated in every aspect of the litigation.  As with Plaintiffs' fee and

1  expense requests, these service awards are presumptively reasonable and should be approved.

2  **II.    THE PARTIES' AGREEMENTS REGARDING FEES, EXPENSES, AND
3       SERVICE AWARDS**

4       The parties negotiated payment caps with each Defendant for reasonable attorneys' fees

5  and expenses, as well as service awards, only *after* reaching agreement in principle to the core

6  material terms of the injunctive relief.  Each Settlement was negotiated through the same

7  mediators—Judge Jay Gandhi (Ret.) and Lexi W. Myer.  Because the Settlements do not create

8  common funds, any award of fees and expenses will not detract from the significant benefits

9  received by class members.  Further, each Defendant reserves the right to contest Plaintiffs'

10  requests; however, the parties will accept and not appeal this Court's ultimate determination on

11  the matter.  Joint Decl. ¶ 6.  In accordance with the Settlement terms, viewed globally, Plaintiffs

12  seek: (1) $5,710,000 in the *Kiloo* Action ($5,208,124 in fees and $501,876 in expenses); (2)

13  $2,405,000 in the *Disney* Action ($2,167,670 in fees and $237,330 in expenses); and (3) $935,000

14  in the *Viacom* Action ($745,390 in fees and $189,610 in expenses).  This amounts to $9,050,000

15  in attorneys' fees and expenses for all sixteen Settlements across all three Actions ($8,121,184 in

16  fees and $928,816 in expenses).  More specifically, Plaintiffs seek the following fees and

17  expenses from each Defendant in accordance with each of the sixteen Settlements:

| Action | Defendant | Fee Request | Expense Request | Total Request | Payment Cap |
|--------|-----------|-------------|-----------------|---------------|-------------|
| *Kiloo* | Kiloo | $704,236 | $55,764 | $760,000 | $760,000 |
| | Sybo | $469,236 | $55,764 | $525,000 | $525,000 |
| | AdColony | $469,236 | $55,764 | $525,000 | $525,000 |
| | Chartboost | $94,236 | $55,764 | $150,000 | $150,000 |
| | Flurry | $694,236 | $55,764 | $750,000 | $750,000 |
| | InMobi | $694,236 | $55,764 | $750,000 | $750,000 |
| | ironSource | $694,236 | $55,764 | $750,000 | $750,000 |
| | Tapjoy | $694,236 | $55,764 | $750,000 | $750,000 |
| | Vungle | $694,236 | $55,764 | $750,000 | $750,000 |
| | **Total** | **$5,208,124** | **$501,876** | **$5,710,000** | **$5,710,000** |
| *Disney* | Disney | $447,534 | $47,466 | $495,000 | $495,000 |
| | Comscore | $337,534 | $47,466 | $385,000 | $385,000 |
| | Twitter | $227,534 | $47,466 | $275,000 | $275,000 |
| | Unity | $702,534 | $47,466 | $750,000 | $750,000 |

- 3 -

| Action | Defendant | Fee Request | Expense Request | Total Request | Payment Cap |
|---|---|---|---|---|---|
| | Upsight | $452,534 | $47,466 | $500,000 | $500,000 |
| | **Total** | **$2,167,670** | **$237,330** | **$2,405,000** | **$2,405,000** |
| *Viacom* | Viacom | $340,195 | $94,805 | $435,000 | $435,000 |
| | Upsight | $405,195 | $94,805 | $500,000 | $500,000 |
| | **Total** | **$745,390** | **$189,610** | **$935,000** | **$935,000** |
| **Grand Total** | | **$8,121,184** | **$928,816** | **$9,050,000** | **$9,050,000** |

*See id.* ¶ 8.[4]  In addition, each Defendant has agreed to pay its pro rata portion of service awards

of $2,500 to each Class Representative in each Action.  *Id.* ¶ 7.

### III.    THE REQUESTED ATTORNEYS' FEES ARE FAIR, REASONABLE, AND APPROPRIATE.

In a class action, a court may award reasonable attorneys' fees as authorized by law or by

the parties' agreement. Fed. R. Civ. P. 23(h).  Where, as here, state substantive law applies, fees

are to be awarded in accordance with state law.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

1047 (9th Cir. 2002).  Under California law,[5] the lodestar method is "the primary method" for

awarding attorneys' fees.  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000).

Similarly, federal courts apply the lodestar method in class actions where a significant component

of the relief obtained is injunctive in nature.  *Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886,

887 (9th Cir. 2010) (lodestar method appropriate where no common fund created); *Hanlon v.

Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under the lodestar method, courts multiply

the number of hours reasonably expended by a reasonable hourly rate.  *Hanlon*, 150 F.3d at 1029

---

[4] The foregoing table is effectively identical to the table appearing in Plaintiffs' Motion for Preliminary Approval, but contains slight differences, including changes reflecting Class Counsel's final audit of their billing and cost documentation.  *Id.*

Separately, for each Defendant, if the Court denies or reduces any portion of the requested reimbursement of expenses, Plaintiffs seek fees in the amount of the unallocated balance of that Defendant's payment cap.  For example, should the Court deny any reimbursement of expenses from Defendant Kiloo, Plaintiffs would seek $760,000 in fees from Kiloo.

[5] In all three Actions, Plaintiffs primarily proceeded on claims of intrusion upon seclusion and a constitutional right to privacy under California law.  In the *Kiloo* and *Disney* Actions only, Plaintiffs also asserted a claim under Section 349 of the New York General Business Law.  And in the *Disney* Action only, Plaintiffs asserted claims under the Section 17200 of the California Business and Professions Code, and Chapter 214, Section 1B of the Massachusetts General Laws. *See* Order re Mots. to Dismiss, *Kiloo*, Dkt. 270.

- 4 -                        NOTICE OF MOTION AND MOTION FOR AWARDS
OF ATTORNEYS' FEES, COSTS & SERVICE AWARDS
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

1    (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *Lealao*, 82 Cal. App. 4th at 26.

2        Class Counsel's hours and rates are well documented.  In support of Plaintiffs' fee

3    request, Class Counsel submit a declaration with exhibits showing, for each Action: the

4    timekeepers, the hours they devoted to particular categories of work, and their rates.  *See* Joint

5    Decl. ¶¶ 21-23, 28-30; Exs. A.1-A.6, B.1-B.6.

6        **A.    Class Counsel Incurred a Reasonable Lodestar.**

7        As summarized in the following table, Class Counsel expended a reasonable number of

8    hours to investigate, litigate, and negotiate resolution of the Actions.

| Action | Hours Billed | Total Lodestar | Multiplier |
|--------|--------------|----------------|------------|
| *Kiloo* | 11,300.0 | $6,571,727.61 | 0.79 |
| *Disney* | 4,862.2 | $2,904,564.58 | 0.75 |
| *Viacom* | 2,823.9 | $1,645,977.53 | 0.45 |
| **Total** | **18,986.1** | **$11,122,269.72** | 0.73 |

14        **1.    Class Counsel's Hours Worked Are Reasonable.**

15        In total, Class Counsel devoted 11,300.0 hours in the *Kiloo* Action, 4,862.2 hours in the

16   *Disney* Action, and 2,823.9 hours in the *Viacom* Action—which were "reasonably expended" in

17   light of the work performed.  *See Hanlon*, 150 F.3d at 1029.  To determine the number of hours

18   worked, Class Counsel audited contemporaneously kept records for time devoted to prosecuting

19   Plaintiffs' claims from inception to resolution.  Joint Decl. ¶ 10.  Throughout the litigation,

20   timekeepers organized time entries into four matter codes—one code for each Action (*Kiloo*,

21   *Disney*, and *Viacom*), and a "general" code for work performed to in furtherance of all Actions.

22   Class Counsel equitably divided "general" time among the three Actions, based on the number of

23   settling Defendants in each Action, to determine a reasonable lodestar for each Action.  *Id.* ¶¶ 11-

24   12 (describing apportionment of lodestar).  Further, in the exercise of their discretion, Class

25   Counsel excluded, *inter alia*, several categories of time entries: (1) duplicative, unnecessary, or

26   irrelevant time entries; (2) time entered by timekeepers who recorded a *de minimis* amount of

27   time; (3) time spent on matters exclusive to defendant Kochava, Inc., which was dismissed from

28   the *Disney* Action almost two years into that case (*see Kiloo*, Dkt. 270 at 22); and (4) time spent

1    after June 30, 2020, including time spent in the preparation of this motion.  *Id.* ¶ 13.

2                 ***Class Counsel's Efforts Were Reasonable and Necessary.***  Over nearly three years,

3    Plaintiffs and Class Counsel spent significant time on each phase of litigation.  Before

4    commencing these Actions, Class Counsel (assisted by consulting experts) conducted rigorous

5    forensic analyses of the relevant mobile games to identify, *inter alia*, the information being

6    collected, the entities collecting it, and the relevant software development kits (SDKs) involved.

7    *See* PA Decl. ¶ 32.  Next, Class Counsel filed three related complaints, each requiring factual and

8    legal research unique to the relevant apps, claims, and Defendants.  *Id.* ¶¶ 33-34.  Class Counsel

9    then opposed two rounds of pleading challenges, which included two consolidated motions to

10    dismiss applicable to all Actions, six Defendant-specific motions to dismiss on jurisdictional and

11    substantive grounds, and a motion to compel arbitration filed by Viacom.  *Id.* ¶¶ 36-39.

12              Following the Court's orders largely denying Defendants' second round of motions to

13    dismiss, Class Counsel engaged in extensive discovery efforts.  *Id.* ¶¶ 40, 43-50; *see also* Joint

14    Decl. Exs. A.4-A.6, B.4-B.6 (summarizing hours devoted to particular categories of work).  Class

15    Counsel began this process with numerous meet and confers with each of the fifteen Defendants

16    to narrow the scope of disputed issues, to identify sources of relevant information, and to

17    establish proper protocols.  PA Decl. ¶¶ 45-47.  Over ten months of highly contested discovery,

18    Class Counsel served and responded to hundreds of requests for production and interrogatories,

19    and litigated multiple disputes.  *Id.* ¶ 48.  By the time all parties reached settlements in principle,

20    Class Counsel had reviewed tens of thousands of documents, produced hundreds of documents

21    related to the Plaintiffs as putative Class Representatives, inspected Defendant source code,

22    worked with outside vendors to preserve or forensically image approximately seventeen mobile

23    devices, and worked extensively with multiple testifying experts to develop their claims for trial.

24    *Id.* ¶ 50.  Class Counsel also took seventeen depositions, including six in Denmark, and prepared

25    for the seven Class Representative depositions that were cancelled shortly before their scheduled

26    dates.  *Id.* ¶ 49.  And after reaching an impasse, the parties presented four disputes for resolution

27    by the Court.  *See Kiloo*, Dkts. 306, 309 (forensic inspection of Plaintiffs' devices); *Kiloo*, Dkts.

28    323, 324, 326 (limits on depositions); *Kiloo*, Dkts. 329, 332 (production of other apps used);

- 6 -

1    *Viacom*, Dkts. 103, 106 (discovery of consulting expert work).

2          This vigorous advocacy, at every phase of litigation, was necessary for Class Counsel to

3    meaningfully negotiate and evaluate the terms of the Settlements (and short of resolution, to

4    prove Plaintiffs' claims at trial).  During the negotiation process, Class Counsel spent

5    considerable time communicating with each Defendant and addressing the unique needs and

6    business practices of that Defendant in order to craft customized terms.  *See* PA Decl. ¶ 53.  After

7    executing the Settlements, Class Counsel continued to work with Defendants and the settlement

8    administrator to ensure notice to class members would be effectively disseminated.  *Id.* ¶ 54.

9          ***Class Counsel's Efforts Were Efficient.***  Throughout their efforts, Class Counsel's two

10   law firms took all reasonable efforts to minimize inefficiency.  Joint Decl. ¶ 15.  Tasks were

11   assigned with clear instructions by lead counsel, to avoid duplication of efforts and to ensure that

12   appropriately skilled personnel performed each task.  *Id.*  Class Counsel also communicated

13   regularly with each other to monitor progress and ensure that tasks were being performed in a

14   timely and effective manner.  *Id.*  Class Counsel also ensured that strategy discussions were

15   limited to senior attorneys and personnel with direct responsibility over the tasks being discussed,

16   and guided by agendas prepared in advance.  *Id.*

17         In sum, the time spent pursuing Plaintiffs' claims was reasonable and efficient, and critical

18   to the success achieved through the Settlements.

19                      **2.     Class Counsel's Hourly Rates Are Reasonable.**

20         Class Counsel are highly experienced and well-regarded members of the bar.  They have

21   brought to this litigation their extensive experience in complex consumer class actions,

22   particularly in the area of digital privacy.  *See, e.g.*, PA Decl. ¶¶ 66-67, 79-81; *see also Kiloo*,

23   Dkt. 371 at 5.  Accordingly, their hourly rates are "in line with those prevailing in the community

24   for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*,

25   465 U.S. at 895 n.11 (1984).  Here, the relevant community is the Northern District of California.

26   *See Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4,

27   2015).  The rates in these Actions range from $615 to $975 for partners; $370 to $485 for

28   associates and staff attorneys; and $360 to $420 for paralegals and other support staff.  Joint Decl.

1   ¶ 20, Exs. A.1-A.3, B.1-B.3. Courts in this District (and elsewhere) have consistently approved

2   Class Counsel's rates. *See, e.g.*, *In re Intuit Data Litig.*, No. 15-CV-1778-EJD-SVK, 2019 WL

3   2166236, at *1 (N.D. Cal. May 15, 2019);[6] *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-

4   02617-LHK, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving rates of $400 to

5   $970 for partners, $185 to $850 for non-partner attorneys, and $95 to $440 for paralegals and

6   other staff); *Campbell v. Facebook Inc.*, No. 4:13-cv-05996-PJH, 2017 WL 3581179, at *7 (N.D.

7   Cal. Aug. 18, 2017);[7] *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*

8   *Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates

9   "ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for

10  paralegals"). And Class Counsel's current rates are also comparable to those found reasonable by

11  this Court in a recent decision. *See In re Pokémon Go Nuisance Litig.*, No. 3:16-cv-04300-JD

12  (N.D. Cal. June 13, 2019), Dkt. 137 ¶ 5 (declaration showing rates of $715 to $950 for partners,

13  $350 to $600 for associates, and $325 for paralegals), Dkt. 142 (approving fee request).

14          **B.      Class Counsel's Reasonable Fees Are Justified in Light of the Circumstances.**

15          There is a "strong presumption" that Plaintiffs' lodestar figures—$6,571,727 in the *Kiloo*

16  Action, $2,904,564 in the *Disney* Action, $1,645,977 for the *Viacom* Action (*see* Joint Decl.

17  ¶ 18)—represent reasonable attorneys' fees. *Rodriguez v. W. Publ'g Corp.*, 602 F. App'x 385,

18  387 (9th Cir. 2015); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir.

19  2002). Typically, these lodestar figures "may be adjusted upward or downward to account for

20  several factors including the quality of the representation, the benefit obtained for the class, the

21  complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d

22  at 1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *see also*

23  *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) (listing factors). "Only in rare or exceptional cases

24  will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to

25  ─────────────────────

26  [6] *See In re Intuit Data Litig.*, No. 15-CV-1778-EJD-SVK (Dec. 17, 2018), Dkt. 185 (LCHB declaration showing rates of $510 to $925 for partners, $510 for associates, and $375 to $390 for paralegals and other staff).

27  [7] *See Campbell v. Facebook, Inc.*, No. 4:13-cv-05996-PJH (May 30, 2017), Dkt. 239 (LCHB and CBP declaration showing rates of $575 to $900 for partners, $375 to $455 for associates, and

28  $345 to $375 for paralegals and other staff).

1    which he is entitled." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).

2    Here, where Plaintiffs seek a fee award that is less than Class Counsel's reasonable lodestar—

3    with fractional or "negative" lodestar multipliers of 0.79 in the *Kiloo* Action, 0.75 in the *Disney*

4    Action, and 0.45 in the *Viacom* Action[8]—consideration of these factors further confirms the

5    reasonableness of the requested fee award.

6                        **1.      Class Counsel Obtained an Excellent Result.**

7            As the "determinative factor" in assessing reasonableness of the fee award, the benefits

8    obtained for class members in these Actions are both substantial and far-reaching.  *Kim v. Space*

9    *Pencil, Inc*., No. C 11-03796 LB, 2012 WL 5948951, at *8 (N.D. Cal. Nov. 28, 2012); *see also*

10   *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009) ("The reasonableness of the

11   fee is determined primarily by reference to the level of success achieved by the plaintiff."

12   (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983))).  Here, the Settlements represent

13   strong, immediate injunctive relief for class members and their children, and "will meaningfully

14   change defendants' practices in ways that should improve privacy protections for children."

15   *Kiloo*, Dkt. 371 at 7.  While negotiated separately, the Settlements share three core principles.

16           ***Significant Privacy Protections.***  The Settlements incorporate stringent limitations on

17   how children's personal data may be collected and used, to prevent Defendants and others from

18   tracking children over time and across apps for commercial purposes.  For example, all SDK

19   Defendants (except Comscore) agreed to prohibit behavioral advertising to children in thousands

20   of child-directed and mixed audience apps, and to serve only contextual advertising in apps where

21   a user identifies as a child under age thirteen.  Comscore, which does not provide advertising

22   services directly, agreed to expand the prohibition on the use of personal data derived from its

23   services for behavioral advertising to a user for which the age was modeled as under 18 (up from

24   age 13).  The Developer Defendants agreed to prohibit behavioral advertising in apps identified as

25   child-directed (Disney's Primary Child Apps[9] and Viacom's Llama Spit Spit) or in apps where a

26   _____

27   [8] Even if Plaintiffs sought fee awards comprising the entirety of the payment caps under the
     Settlements (*i.e.*, excluding reimbursement of all expenses), the lodestar multipliers would remain
     below 1.0—0.87 in the *Kiloo* Action, 0.83 in the *Disney* Action, and 0.57 in the *Viacom* Action.

28   [9] Primary Child Apps are Disney-published apps whose primary audience is children under age
     (continued…)

child user has been identified as under age 13 (Kiloo and Sybo's Subway Surfers and Disney's Family Friendly Apps[10]).  Moreover, Kiloo and Sybo will delete or otherwise refrain from disclosing, using, or benefitting from personal data previously collected from Subway Surfers in three defined circumstances.  And Viacom agreed to modify Llama Spit Spit so that it will not use persistent identifiers for cross-promotional purposes relating to other Viacom apps.

At bottom, for each app covered under the Settlements, children will not be exposed to advertising based on past online activities or previously collected data (whether from that app or anywhere else on the internet).  No personal data collected from a current app session can be used *in any manner* to target that user in *future* sessions in the same app, opens other apps, or elsewhere on the internet.

***Improvements to Standard Business Practices.***  The Settlements mandate business practice changes that *exceed* prevailing industry standards and federal requirements, ensuring app developers and their SDK partners take proactive steps to protect children's privacy in an ecosystem that has been largely unpoliced.  All SDK Defendants except Comscore will make changes to the SDK enrollment process (*e.g.*, so-called "dashboards") aimed at screening for child-direct apps and educating developers about the use of behavioral advertising in such apps. Comscore will notify existing clients whose apps have been identified as child-directed to ensure certain personal data is not collected.  Separately, for Kiloo and Sybo's Subway Surfers and Disney's Where's My Water? apps at issue, those Developer Defendants agreed to modify existing age gates to what Plaintiffs contend is a more neutral format.

These changes serve two important functions in changing the online advertising ecosystem.  First, because the SDK Defendants comprise a substantial share of the online ad network marketplace, improvements to the enrollment process will undoubtedly educate developers and improve industry norms over time, as app developers are repeatedly guided to

---

13, including but not limited to, Princess Palace Pets.

[10] Family Friendly Apps are Disney-published apps that are directed to children, as determined by the criteria set forth in the Children's Online Privacy Protection Act, but do not target children under age 13 as their primary audience including, but not limited to, Where's My Water? (Paid), Where's My Water? (Free/Lite), and Where's My Water 2.

1    identify child-directed apps that should be limited to contextual advertising.  Second, parents will

2    also benefit because these changes will be implemented in the covered apps *without the need to*

3    *obtain parental consent*, which is hampered by the technical complexity, information imbalance,

4    and hidden nature of the tracking technology at issue.

5           ***Broad Industry-Wide Application.***  Lastly, much of the core injunctive relief provided

6    through the Settlements will apply industry-wide, extending to thousands of apps popular with

7    children.  Representing a significant portion of the mobile advertising industry, all SDK

8    Defendants except Comscore agreed to prohibit behavioral advertising in thousands of apps

9    played by children identified though Class Counsel's forensic analysis, identified by the

10   Children's Advertising Review Unit ("CARU"), and containing certain agreed-upon child-centric

11   words.  Moreover, the Settlements will increase protections for children playing one of the

12   world's most popular mobile gaming apps (Kiloo and Sybo's Subway Surfers), as well as in apps

13   developed by two of the largest creators of content aimed at children (Disney's Covered Apps and

14   Viacom's Llama Spit Spit).  Taken together, the core principles described above provide robust

15   injunctive relief affecting a broad segment of the mobile advertising industry.

16          ***Immediate Injunctive Relief.***  By agreeing to these Settlements, Plaintiffs ensure that

17   children and their parents receive significant protections *now*, and that certain previously

18   collected personal data is segregated or destroyed.  This is particularly important given the ever-

19   evolving nature of the mobile advertising ecosystem and the time-sensitive nature of any relief

20   affecting children.  Plaintiffs believe that securing this relief immediately is not just appropriate,

21   but preferable to holding out for the possibility of uncertain (and likely nominal) monetary

22   damages.  *See* Joint Decl. Exs. C.1 ¶ 5, C.2 ¶ 5, C.3 ¶ 5, C.4 ¶ 5, C.6 ¶ 5, C.7 ¶ 5, C.8 ¶ 5.

23   Nevertheless, class members are not prejudiced.  As the Settlements require class certification

24   under Rule 23(b)(2), class members (except the named Plaintiffs) will not release their claims for

25   money damages should they pursue such relief in the future.  *See Kiloo*, Dkt. 371 at 7.

26                      **2.      The Actions Raised Novel and Complex Issues.**

27          These Actions presented highly novel and complex issues, both legally and factually.

28   Each Action was premised on a California common law claim for intrusion upon seclusion and

NOTICE OF MOTION AND MOTION FOR AWARDS
OF ATTORNEYS' FEES, COSTS & SERVICE AWARDS
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

1    violations of California's constitutional right to privacy, as applied in the context of mobile

2    advertising in child-directed gaming apps.  The application of these claims to the facts alleged

3    here was novel and untested before this litigation commenced; indeed, no one had ever asserted

4    (much less succeeded in proving) such claims against app developers and their partners for

5    collecting children's data for commercial gain.  And as this Court knows, Defendants challenged,

6    at the pleading stage, whether the collection of persistent identifiers in this particular context

7    could ever rise to the level of offensiveness required by law.  *See Kiloo*, Dkt. 270 at 9-11

8    (rejecting "Defendants' insistence on a sky-high standard of egregiousness").  It was therefore far

9    from certain that Plaintiffs' claims could survive a threshold pleading challenge.

10          The attendant risks and complexities of this litigation were not limited to legal disputes.

11   As illustrated in Plaintiffs' complaints, extensive pre-suit forensic examination revealed that

12   persistent identifiers were routinely being exfiltrated from user devices to Defendants' servers

13   without the knowledge of children or their parents for monetization purposes.  Defendants

14   strenuously disputed these facts from the outset of this litigation.  And as discovery progressed, it

15   became apparent that individual Defendants took different approaches to how they collected,

16   stored, and used such data, and that Defendants would use these differences to argue that the

17   Court should deny class certification.  In light of these disputes, Class Counsel would have

18   certainly faced significant challenges and risks in proceeding to prove Plaintiffs' claims at trial.

19          These complexities are reflected in the Defendant-specific terms of the Settlements.  By

20   way of example, Plaintiffs learned through discovery that while Comscore does collect certain

21   personal data, it does not provide advertising services directly, instead enabling app developers to

22   identify and measure their respective audiences.  The Comscore Settlement, which is aimed at

23   preventing misuse of personal data by Comscore's clients, is therefore significantly different in

24   structure from those of other SDK Defendants.  Moreover, the Developer Defendants faced

25   materially different business choices in settling these Actions.  Unlike Kiloo and Sybo, whose

26   Subway Surfers is a primary source of app-related revenue, Disney and Viacom had to consider

27   the effect of any agreement on their broader portfolios of child-directed and family-friendly

28   gaming apps.  The novel and complex issues in these Actions weigh strongly in favor of awarding

1    the requested fees.

2           **3.**     **Class Counsel Zealously Represented Class Members' Interests.**

3         As this Court has acknowledged, Class Counsel "have significant experience in similar

4    cases and have demonstrated skill and effort in litigating these cases." *Kiloo*, Dkt. 371.  And

5    indeed, Class Counsel brought their wealth of experiences and skill to bear in these Actions.  As

6    explained above, Class Counsel vigorously represented the interests of Plaintiffs and class

7    members at every step of the litigation.  *See* Section III.A.1, *supra*.  As a result, Class Counsel

8    ensured that the Settlements were the product of well-informed negotiations.

9           **4.**     **Class Counsel Pursued this Litigation at the Risk of Nonpayment and**
                         **Preclusion of Other Legal Work.**
10

11        Courts have long recognized that attorneys should be rewarded "for taking the risk of non-

12   payment by paying them a premium over their normal hourly rates for winning contingency

13   cases."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.* (*WPPSS*), 19 F.3d 1291, 1299 (9th Cir.

14   1994); *accord Vizcaino*, 290 F.3d at 1051; *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047

15   (N.D. Cal. 2008).  Here, Class Counsel prosecuted these Actions on a purely contingent basis,

16   despite the very real risk that they might never be compensated.  Joint Decl. ¶ 8.  Class Counsel

17   also forewent opportunities to work on other cases in order to devote the appropriate time and

18   resources necessary to handle these matters.  *See Vizcaino*, 290 F.3d at 1050; *In re Heritage Bond*

19   *Litig.*, No. 02-ml-1475-DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005).

20        In light of the excellent benefit obtained for class members, the novelty and complexity of

21   the issues presented, the quality of representation, and the risk of nonpayment—and because the

22   requested fee award already represents a downward adjustment from Class Counsel's reasonable

23   lodestar—Plaintiffs' fee requests should be approved.  *Hanlon*, 150 F.3d at 1029.

24   **IV.**    **CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND**
              **SHOULD BE REIMBURSED.**
25

26        Class Counsel are entitled to reimbursements of the expenses they reasonably incurred

27   investigating and prosecuting this matter.  *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir.

28   2003); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing

1    *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).  Through June 30, 2020, Class

2    Counsel have incurred $501,879.46 in the *Kiloo* Action, $237,332.09 in the *Disney* Action, and

3    $189,611.71 in the *Viacom* Action in out-of-pocket litigation expenses for which they seek

4    reimbursement.  These amounts include costs for, *inter alia*, expert and consultant fees (including

5    for data preservation and collection), legal research, filing fees, electronic database maintenance,

6    travel, and mediation fees.  *See* Joint Decl. ¶¶ 36-37 (summarizing Class Counsel's litigation

7    expenses).  Notably, given the nature of Plaintiffs' claims, Class Counsel incurred significant

8    expense in performing forensic analyses with the assistance of consulting experts before and

9    during litigation.  These expenses were critical to development of Plaintiffs' legal and factual

10   theories for class certification and trial.  These costs, which are divided evenly among all

11   Defendants for each Action, were reasonably necessary for the continued prosecution and

12   resolution of this litigation, and were incurred for the benefit of class members with no guarantee

13   of recovery.  The Court should approve reimbursements of these critical expenses.

14   **V.      THE REQUESTED SERVICE AWARDS ARE REASONABLE.**

15          In accordance with the Settlements, Plaintiffs seek, and Defendants agree to pay (pro

16   rata), service awards totaling $2,500 for each Class Representative in each Action.[11]  Such

17   awards, "fairly typical" in class action cases, "are intended to compensate class representatives

18   for work done on behalf of the class, to make up for financial or reputational risk undertaken in

19   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

20   general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  In evaluating the

21   reasonableness of service awards, courts should consider "the actions the plaintiff has taken to

22   protect the interests of the class, the degree to which the class has benefitted from those actions,

23   [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Roes, 1-2 v.*

24   *SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019) (quoting *Staton*, 327 F.3d at 977).  "[I]n

25

26   _____

     [11] Accordingly, Defendants agree to pay $2,500 service awards each to Class Representatives
     McDonald, Draut, and Murillo in the *Kiloo* Action; $2,500 service awards each to Class
27   Representatives Rushing, Supernault, Remold, and Poon in the *Disney* Action; and a $2,500
     service award to Class Representative Rushing in the *Viacom* Action.  This means Rushing will
28   receive two separate awards for her service as Class Representative in two Actions.

1 | this district, a $5,000 incentive award is presumptively reasonable." *In re Linkedin User Privacy*
2 | *Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015).

3 |       Here, each Class Representative devoted extensive time and energy to these Actions.
4 | First, Plaintiffs provided information to Class Counsel that informed the complaints and,
5 | thereafter, regularly communicated with Class Counsel about strategy and major case
6 | developments throughout the litigation.  Second, during the course of discovery, Class
7 | Representatives provided documents and information to respond to scores of written
8 | interrogatories and verified the accuracy of those responses.  Third, each Class Representative
9 | provided one or more of his or her (and his or her family's) mobile devices to Class Counsel
10 | (which contain highly sensitive and important personal information), so that those devices could
11 | be forensically imaged and safely preserved for discovery purposes.  Fourth, the Class
12 | Representatives prepared and made themselves available for depositions, though none ultimately
13 | took place after the Settlements were reached.  Finally, each Class Representative reviewed and
14 | approved the Settlements after consulting with Class Counsel.  Joint Decl. Exs. C.1-C.8.

15 |       In addition to these efforts, the Class Representatives played a unique and pivotal role by
16 | taking the extraordinary step of litigating issues involving their own kids to gain privacy
17 | protections for others and their children.  In light of their contributions, these awards are
18 | eminently reasonable and supported by law.

19 | **VI.    CONCLUSION**

20 |       For the reasons set forth above, Plaintiffs respectfully request that the Court approve (1)
21 | attorneys' fee awards of $5,208,124 in the *Kiloo* Action, $2,167,670 in the *Disney* Action, and
22 | $745,390 in the *Viacom* Action—for a total of $8,121,184; (2) expense reimbursements of
23 | $501,876 in the *Kiloo* Action, $237,330 in the *Disney* Action, and $189,610 in the *Viacom*
24 | Action—for a total of $928,816.  Plaintiffs respectfully request that the Court allocate the award
25 | of fees and costs by Defendant in accordance with the payment cap specified in each of the
26 | sixteen Settlements, as set forth in the table in Section II, *supra*, and in the Proposed Order filed
27 | concurrently herewith.  In addition, Plaintiffs respectfully request that the Court approve service
28 | awards of $2,500 for each Class Representative in each Action, as set forth in the Proposed Order.

1    Dated: October 8, 2020                     */s/ Michael W. Sobol*

2                                               Michael W. Sobol (SBN 194857)
                                                msobol@lchb.com
3                                               Michael K. Sheen (SBN 288284)
                                                msheen@lchb.com
4                                               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                275 Battery Street, 29th Floor
5                                               San Francisco, CA  94111-3339
                                                Telephone:  415.956.1000
6                                               Facsimile:  415.956.1008

7                                               Nicholas Diamand (admitted *pro hac vice*)
                                                ndiamand@lchb.com
8                                               Douglas I. Cuthbertson (admitted *pro hac vice*)
                                                dcuthbertson@lchb.com
9                                               Sean Petterson (admitted *pro hac vice*)
                                                spetterson@lchb.com
10                                              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                250 Hudson Street, 8th Floor
11                                              New York, NY  10013-1413
                                                Telephone:  212.355.9500
12                                              Facsimile:  212.355.9592

13                                              Hank Bates (State Bar No. 167688)
                                                hbates@cbplaw.com
14                                              Allen Carney (admitted *pro hac vice*)
                                                acarney@cbplaw.com
15                                              David Slade (admitted *pro hac vice*)
                                                dslade@cbplaw.com
16                                              CARNEY BATES & PULLIAM, PLLC
                                                519 W. 7th St.
17                                              Little Rock, AR 72201
                                                Telephone:  501.312.8500
18                                              Facsimile:  501.312.8505

19                                              *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28