1

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

2

Michael W. Sobol (SBN 194857)
msobol@lchb.com

3

Michael K. Sheen (SBN 288284)
msheen@lchb.com

4

275 Battery Street, 29th Floor
San Francisco, CA  94111

5

Telephone:  415.956.1000
Facsimile:  415.956.1008

6

7

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

8

Nicholas Diamand
ndiamand@lchb.com

Douglas I. Cuthbertson

9

dcuthbertson@lchb.com
Sean Petterson

10

spetterson@lchb.com
250 Hudson Street, 8th Floor

11

New York, NY  10013
Telephone:  212.355.9500

12

Facsimile:  212.355.9592

13

*Attorneys for Plaintiffs and the Proposed
Classes*

14

**CARNEY BATES & PULLIAM, PLLC**

Hank Bates (SBN 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

15

## UNITED STATES DISTRICT COURT

16

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

17

## SAN FRANCISCO DIVISION

18

19

MICHAEL MCDONALD, et al.,

20

Plaintiffs,

21

v.

22

KILOO A/S, et al.,

23

Defendants.

Case No.: 3:17-cv-04344-JD (L)

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENTS
AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

24

25

26

27

28

1   AMANDA RUSHING, et al.,            Case No.: 3:17-cv-04419-JD

2           Plaintiffs,

3      v.

4   THE WALT DISNEY COMPANY, et al.,

5           Defendants.

6   AMANDA RUSHING,              Case No.: 3:17-cv-04492-JD

7           Plaintiff,

8      v.

9   VIACOMCBS INC., et al.,

10           Defendants.

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ................................................................................................... 1

4   II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

5   III.    THE SETTLEMENTS ........................................................................................... 3

6           A.      The Settlement Class Definitions ............................................................... 3

7           B.      Benefits to the Settlement Classes ............................................................. 5

8           C.      Class Members' Limited Release ............................................................... 7

9           D.      Attorneys' Fees and Expenses and Plaintiff Service Awards .................... 7

10  IV.     THE NOTICE PROGRAM ................................................................................... 8

11  V.      THE RESPONSE OF THE CLASS AND REGULATORS ................................. 8

12  VI.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................... 9

13          A.      The Court Should Certify the Settlement Class ......................................... 9

14                  1.      Rule 23(a) is Satisfied .................................................................... 9

15                  2.      Rule 23(b)(2) is Satisfied ............................................................. 10

16          B.      The Settlements are Fundamentally Fair, Adequate, and Reasonable ...... 11

17                  1.      Rule 23(e)(2)(A): The Class Representatives and Class Counsel have
18                          vigorously represented the Classes ............................................... 11

19                  2.      Rule 23(e)(2)(B): The Settlements were negotiated at arm's length ..... 12

20                  3.      Rule 23(e)(2)(C): The Settlements Provide Meaningful Relief to the
                            Classes ........................................................................................... 13

21                          a.      The Costs, Risks, and Delay of Trial And Appeal .................... 13

22                          b.      The Settlements Provide For Fair Determination of An Award
                                    of Class Counsel's Attorney's Fees and Expenses .................... 14
23

24                  4.      Rule 23(e)(2)(D): The Settlements treat all Class
                            members equitably .......................................................................... 15

25                  5.      All Remaining Factors Are Addressed in Plaintiffs' Motion for
                            Awards of Attorneys' Fees, Expenses, and Service Awards ................ 15
26

27  VII.    CONCLUSION………………………………………………………………………...15

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Campbell v. Facebook,*
315 F.R.D. 250 (N.D. Cal. 2016) ........................................................................... 11

*Harris v. Vector Mktg. Corp.,*
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ....................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) .............................................................................. 12

*In re Facebook Biometric Info. Privacy Litig.,*
326 F.R.D. 535 (N.D. Cal. 2018) ........................................................................... 10

*In re Yahoo Mail Litig.,*
No. 13-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ...................................... 8

*In Re: Vizio, Inc., Consumer Privacy Litig.,*
No. 8:16-ml-02693 (C.D. Cal. Jan. 4, 2019) ................................................................ 9

*Jordan v. Los Angeles County,*
669 F.2d 1311 (9th Cir. 1982) ............................................................................. 10

*Knight v. Red Door Salons, Inc.,*
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................... 12

*Lilly v. Jamba Juice Co.,*
No. 13-2998, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)..................................................... 8

*Matera v. Google Inc.,*
No. 5:15-cv-04062-LHK (N.D. Cal. Aug. 31, 2017) ...................................................... 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
688 F.2d 615 (9th Cir. 1982)................................................................................ 11

*Parsons v. Ryan,*
754 F.3d 657 (9th Cir. 2014) ............................................................................... 10

*Rodriguez v. Hayes,*
591 F.3d 1105 (9th Cir. 2010).............................................................................. 11

*Shin v. Plantronics, Inc.,*
No. 18-CV-05626-NC, 2020 WL 1934893 (N.D. Cal. Jan. 31, 2020) ...................... 11

*The Civ. Rts. Educ. & Enf't Ctr. v. RLJ Lodging Tr.,*
2016 WL 314400 (N.D. Cal. Jan. 25, 2016)..........................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

**Page**

**OTHER AUTHORITIES**

Statement of Chairman Simons, *FTC v. HyperBeard Inc.*, No. 1923109 (June 4, 2020)...........13

78 Fed. Reg. 3972 (Jan. 17, 2013). ................................................................................ 6

Fed R. Civ. P. 23(a)(1) ................................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 10

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 10

Fed. R. Civ. P. 23(c)(2) .................................................................................................. 8

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 2, 11

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................... 13

- iii -

NOTICE OF MOTION AND MOTION FOR AWARDS
OF ATTORNEYS' FEES, COSTS & SERVICE AWARDS
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

2093012.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**</u>

PLEASE TAKE NOTICE that on December 17, 2020, at 10:00 a.m., or soon thereafter in accordance with General Order No. 72-6, Plaintiffs[1] will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order granting final approval of the sixteen proposed class action settlement agreements with all Defendants[2] in these coordinated actions (the "Settlements") and entering final Judgments in this matter.

Plaintiffs request that the Court: (1) grant final approval of the Settlements as fair, reasonable, and adequate; (2) certify the Classes for settlement purposes; (3) appoint Plaintiffs as class representatives for the settlement classes; (4) appoint Lieff, Cabraser, Heimann & Bernstein, LLP and Carney Bates & Pulliam PLLC (collectively, "Class Counsel") as counsel for the settlement classes; and (5) enter final judgment as to all Defendants in these Actions. *See* Declaration of Hank Bates ¶¶ 19 to 34 (citing Ex.'s 17 to 32) (16 judgments for each Defendant).

<u>**MEMORANDUM AND POINTS OF AUTHORITIES**</u>

**I.      INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's September 24, 2020 Order Granting Preliminary Approval (*see Kiloo*, Dkt. 371), Plaintiffs respectfully request that the Court grant final approval of the Settlements, certify the Settlement Classes, and enter final judgment as to all Defendants.

The Settlements at issue in these first-of-their kind privacy actions implement industry-wide privacy protections for children in the mobile app space. *See* Dkt. 363 (Preliminary Approval Br.) at 1-2, 4-5. Collectively, the Settlements span tens of thousands of child-directed gaming apps and implement holistic protections both at the developer- and SDK-level. *Id.* at 2, 4-

---

[1] Plaintiffs are: Michael McDonald, Tamara Draut, Dominique Murillo, Amanda Rushing, Ashley Supernault, Julie Remold, and Ted Poon.

[2] Defendants are: (i) Kiloo A/S ("Kiloo"); Sybo ApS ("Sybo"); The Walt Disney Co., Disney Enterprises, Inc., and Disney Electronic Content, Inc. (collectively, "Disney"); and ViacomCBS Inc. and Viacom International Inc. (collectively, "Viacom") (together, the "Developer Defendants"); and (ii) AdColony, Inc. ("AdColony"); Chartboost, Inc. ("Chartboost"); Flurry, Inc. ("Flurry"); InMobi Pte Ltd. ("InMobi"); ironSource USA Inc. ("ironSource"); Tapjoy, Inc. ("Tapjoy"); Vungle, Inc. ("Vungle"); Twitter Inc. and MoPub, Inc. (collectively, "Twitter"); Comscore, Inc. and Full Circle Studies, Inc. (collectively, "Comscore"); Unity Technologies SF ("Unity"); and Upsight, Inc. ("Upsight") (together, the "SDK Defendants").

- 1 -

1    8, 16-18. At preliminary approval, the Court found that conditional certification of the Settlement

2    Classes was appropriate for settlement purposes (*Kiloo*, Dkt. 371 at 2-5), and that "the proposed

3    class settlement agreements are well within the range of final approval as 'fair, reasonable, and

4    adequate'" (*id.* at 8) (quoting Fed. R. Civ. P. 23(e)(2)).  Accordingly, the parties fully

5    implemented the Court-approved Notice Program.  To date, there have been *no objections* filed

6    with the Court or received by the Settlement Administrator and the deadline for class members to

7    timely object to the Settlements has passed (on November 20, 2020).  The class member

8    response, along with consideration of the other appropriate factors articulated in the Federal Rules

9    and the governing law of this Circuit, strongly weigh in favor of final approval.[3]

10   **II.    FACTUAL AND PROCEDURAL BACKGROUND[4]**

11          Plaintiffs filed the three Actions in July and August 2017, after conducting an exhaustive

12   pre-filing forensic investigation.  Rigorous litigation of the issues followed.  Defendants raised

13   multiple challenges to the pleadings in two rounds of briefing and argument over an eighteen

14   month period.  *Kiloo*, Dkt. Nos. 113-15, 193, 195, 202, 204, 205; *Viacom*, Dkt. No. 66.  On May

15   22, 2019, the Court issued an order largely denying Defendants' motion to dismiss.  *See* Dkt. No.

16   270.  The parties then engaged in comprehensive discovery including seventeen defendant

17   depositions.  Simultaneous settlement discussions were conducted via experienced mediators

18   right up until the class certification deadline in April 2020.  Most settlements were reported to the

19   Court on the eve of the April 2, 2020 class certification deadline, except for the settlement with

20   defendant Kiloo which was reported a few days later (*see* Dkt. No. 348), and settlements in the

21   *Viacom* Action and *Disney* Action reported in February.  *See Viacom*, Dkt. Nos. 116-18, *Disney*,

22   Dkt. Nos. 141-43.

23          On August 10, 2020, Plaintiffs moved for preliminary approval of the sixteen separate

24   Settlements, with the fifteen Defendants, across the instant coordinated and related Actions (the

25

26   [3] Any disputes concerning Plaintiffs' fee requests (*see* Dkt. No. 372) can be addressed separately
     and have no bearing on the Court's ability to finally approve the Settlements.

27   [4] A more extensive description of the factual and procedural background of these three actions is
     included in Plaintiffs' preliminary approval motion (*see* Dkt. No. 363), and additional detail

28   regarding Class Counsel's work in the cases is included in their application for attorneys' fees,
     expenses, and Plaintiff service awards (*see* Dkt. No. 372).

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

1    *Kiloo* Action, the *Disney* Action, and the *Viacom* Action).  *See* Dkt. No. 363.  On September 24,

2    2020, the Court granted preliminary approval of the Settlements, conditionally certifying the

3    Settlement Classes; appointing the undersigned as Class Counsel; appointing Angeion Group,

4    LLC ("Angeion") as Settlement Administrator; approving the form and manner of notice to the

5    Settlement Classes; and scheduling all remaining dates and deadlines pertaining to the

6    Settlements, including a Final Approval Hearing.  *See* Dkt. No. 371.

7    The parties have complied with the Court-approved Notice Plan, posting by October 9,

8    2020 the approved form of notice, relevant Court orders, each Settlement Agreement, and

9    Plaintiffs' respective motions for preliminary approval and for fees and costs to the settlement

10   website ("https://mobileappchildprivacysettlements.com/").  *See* Weisbrot Decl. ¶ 7.  From

11   October 9 to November 20, 2020, Angeion conducted outreach to class members through (i)

12   programmatic display advertising to websites likely visited by class members; (ii) social media

13   notice; and (iii) a paid search campaign.  *See id.* ¶¶ 4-6 (describing these efforts in further detail).

14   In addition to complying with the Court-approved notice, Defendants complied with their

15   Class Action Fairness Act ("CAFA") requirements by timely disseminating notice to the Attorney

16   General of the United States and all relevant state Attorneys General and filing notice of the same

17   with the Court. *See* Dkt. No. 370.  At the time of this filing, despite the proper and timely notice

18   described above, no class members nor any state or federal officials objected to any aspect of the

19   Settlements, or provided any comments to the same.

20   **III.**   **THE SETTLEMENTS**

21       **A.**   **The Settlement Class Definitions**

22   The Court has conditionally certified the following Settlement Classes, which include

23   parents or guardians of children below a set age when they played the relevant gaming app or

24   apps at issue in the respective settlements, and whom reside in states tied to the relevant claims:

25       **McDonald et al. v. Kiloo ApS et al., Case No. 3:17-cv-04344**

26       Class Definition (All Settlements): All parents and/or legal
27       guardians of persons residing in the States of Alabama, Alaska,
         Arizona, Arkansas, California, Colorado, Connecticut, Delaware,
         Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky,
28       Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New

Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are under the age of 13 and have played Subway Surfers, or who were under the age of 13 when they played Subway Surfers.

**Rushing et al. v. The Walt Disney Company et al, Case No. 3:17-cv-04419**

Disney Settlement Class Definition: All parents and/or legal guardians of persons who have played the Covered Apps residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 13, or were younger than the age of 13, when they played the Covered Apps.

Comscore Settlement Class Definition: All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 18, or were younger than the age of 18 when they played the Where's My Water? and Where's My Water? Free/Lite Disney Gaming Apps.

Twitter Settlement Class Definition: All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 13, or were younger than the age of 13 when they used a Disney app including Where's My Water? Free / Lite and/or Where's My Water? 2 (collectively, "Disney Gaming Apps") and/or an app listed below in Exhibits A through C that was embedded with MoPub's SDK.

Unity Settlement Class Definition: All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who were younger

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

1    than the age of 18 at the time they played any Relevant App.

2

3    Upsight Settlement Class Definition: All parents and/or legal
     guardians of persons residing in the States of Alabama, Alaska,
     Arizona, Arkansas, California, Colorado, Connecticut, Delaware,
4    Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky,
     Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri,
5    Nevada, New Hampshire, New Jersey, New York, North Carolina,
     Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas,
6    Utah, Vermont, Washington, and West Virginia, who are younger
     than the age of 18, or were younger than the age of 18 when they
7    played the Released Apps, and from whom Upsight collected, used,
     or disclosed personal data. The Settlement Class includes the
8    Intrusion Upon Seclusion Class and California Subclass, as those
     classes were identified in Plaintiff's Amended Complaint. (See Dkt.
9    No. 117-1 ¶¶ 228, 230, 232, and 234.)

10   **Rushing v. ViacomCBS Inc. et al, Case No. 3:17-cv-04492**

11   Viacom Settlement Class Definition: All parents and/or legal
     guardians of persons residing in the States of Alabama, Alaska,
12   Arizona, Arkansas, California, Colorado, Connecticut, Delaware,
     Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky,
13   Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New
     Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon,
14   Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington,
     and West Virginia who are younger than the age of 18, or were
15   younger than the age of 18 when they played Llama Spit Spit, and
     from whom Viacom collected, used, or disclosed personal data.
16

17   Upsight Settlement Class Definition: All parents and/or legal
     guardians of persons residing in the States of Alabama, Alaska,
18   Arizona, Arkansas, California, Colorado, Connecticut, Delaware,
     Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky,
19   Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New
     Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon,
20   Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington,
     and West Virginia, who are younger than the age of 18, or were
21   younger than the age of 18 when they played the Released Apps,
     and from whom Upsight collected, used, or disclosed personal data.
22   The Settlement Class includes the Intrusion Upon Seclusion Class
     and California Subclass, as those classes were identified in
23   Plaintiff's Amended Complaint. (See Dkt. No. 78-3 ¶¶ 153, 155.)

24   See Dkt. No. 371 at 4-5.

25       **B.      Benefits to the Settlement Classes**

26       As set forth more fully in Plaintiffs' preliminary approval motion (Dkt. No. 363 at 4-11),

27   the Settlements collectively achieve unique and significant business practice changes, resulting in

28

1   privacy-protective relief that extends across the mobile gaming industry.  While each Settlement

2   was negotiated separately, they share three overarching principles: (1) stringent privacy

3   protections governing the collection and use of children's personal data to prevent tracking

4   children over time and across apps for commercial purposes; (2) business practice changes that

5   exceed prevailing industry standards and federal requirements; and (3) industry-wide injunctive

6   relief, reaching thousands of apps popular with children, including in one of the world's most

7   popular gaming apps (Subway Surfers).

8          With the exception of Comscore, each of the SDK Defendants[5] commit to (1) strict

9   limitations on thousands of child-directed apps so that, at minimum, only contextual advertising is

10  served to children under thirteen; (2) limit advertising services to contextual advertising[6] in *any*

11  app where the user identifies as a child under thirteen; and (3) an enrollment process for app

12  developers to (i) educate them and (ii) enable these SDK Defendants to screen apps for child-

13  directed content.  Dkt. No. 364 ¶ 25.  Importantly, these SDK Defendants commit to these

14  practice changes in apps beyond those at issue in the Actions, resulting in over 16,000 unique

15  child-directed apps (and over 63,000 versions) receiving these privacy-protective changes. *Id*. ¶

16  25(c).

17         Due to its business practices that are unique among the SDK Defendants, Plaintiffs have

18  required that SDK Defendant Comscore commit to a different set of practice changes from the

19  manner in which it has previously treated children's information.  Comscore must create and

20  maintain a database of child-directed apps which it will check against all current and future

21  business partners and, when a child-directed app is identified as a partner, Comscore must now

22  ensure that no child's personal data is obtained or used.  *Id.*  ¶ 26.  Comscore must further update

23  its external-facing documentation to clarify this information to its partners, and also commits to

24  refraining from using its technology in any behavioral advertising in which the modeling involves

25  an age under 18. *Id.*

26  _____

27  [5] Defendants AdColony, Chartboost, Flurry, InMobi, ironSource, Tapjoy, Vungle, Twitter, Unity, and
    Upsight.

28  [6] As noted in Plaintiffs' preliminary approval motion, the Settlements adopt a definition for contextual
    advertising that is consistent with the Federal Trade Commission's ("FTC") articulation of that term.
    *See* 78 Fed. Reg. 3972, 3979 n. 94 (Jan. 17, 2013).

Broadly, Developer Defendants Kiloo and Sybo jointly commit to: (1) changing the current age gate in Subway Surfers that was first implemented in June 2017 and which Plaintiffs allege is not sufficiently neutral (i.e., it does not sufficiently prompt a user age 13 to accurately his age, but steers that user to enter an age that is 13 or above); refraining from any future collection of personal data from users under 13; and (3) refraining from the use or exploitation of any existing personal data obtained from users under age 13. *Id.* ¶ 27.

Developer Defendant Disney commits to either disabling or continuing to configure existing SDKs in dozens of its "Primary Child" apps (i.e., apps whose intended audience is primarily under 13), so that any personal data obtained in these apps will be used for contextual advertising, if at all. *Id.* ¶ 28.  For Disney's "Family Friendly" apps (which are intended for audiences of all ages), Disney will only collect personal data for targeted advertising for users who identify as 13 or over, via an age gate.  *Id.*  Finally, for the Where's My Water? apps at issue in this litigation, Disney commits to modify its existing age gate in order to better ensure that child users do not inadvertently enter an age of 13 or over.  *Id.*

Developer Defendant Viacom commits to modifying its Llama Spit Spit app so that the app will not use Persistent Identifiers for cross-promotions, to the extent that the Persistent Identifier is used to draw inferences about a user's usage of other Viacom apps—including whether or not additional Viacom apps are installed on the device. *Id.* ¶ 29.  Further, because Viacom classifies Llama Spit Spit as a "primarily child-directed app," and treats all users as under-13 for data-collection purposes, these business practice changes apply to all users, regardless of age. *Id.*

### C.    Class Members' Limited Release

In exchange for the foregoing, with the exception of the Class Representatives, no member of the Settlement Classes releases *any* claims for damages. *Id.* at ¶ 31.

### D.    Attorneys' Fees and Expenses and Plaintiff Service Awards

Class Counsel previously moved for an award of attorneys' fees and expenses, and service awards to the Class Representatives.  *See* Dkt. No. 372.  If approved, the fees, expenses, and service awards would be paid solely by Defendants.  The parties negotiated all provisions of the

Settlements governing fees, expenses, and service awards after reaching agreement as to class-wide relief and the release.  Dkt. No. 372-1 ¶ 5.

## IV.    THE NOTICE PROGRAM

As the Settlements only involve injunctive relief, and because the releases do not cover any claims for monetary damages, providing the Class notice is not mandated by Rule 23.  *See* Fed. R. Civ. P. 23(c)(2); *Lilly v. Jamba Juice Co.*, No. 13-2998, 2015 WL 1248027, at *8-9 (N.D. Cal. Mar. 18, 2015); *Cf.*, *In re Yahoo Mail Litig.*, No. 13-4980, 2016 WL 4474612, at *5 (N.D. Cal. Aug. 25, 2016) (finding banner ads on popular websites in injunctive relief-only settlement "fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.").

However, in order to inform Class members of the Settlements, the parties agreed to provide notice. Notice was effectuated by establishing the settlement website, and by engaging in an online digital advertising campaign that used programmatic advertising, social media notice, and a paid search campaign to alert prospective Settlement Class members to the existence of the settlement website.  Weisbrot Decl. ¶¶ 4-7.  On the settlement website, class members were (and remain) able to access, *inter alia*, the court-approved long form notice, each Settlement Agreement, the Court's Preliminary Approval Order, clear descriptions of the Settlement Classes and the Settlements, Plaintiffs' respective motions for preliminary approval and for fees and costs, and clearly-worded explanations of how to comment or object and how to contact the Settlement Administrator with any questions, including via a toll-free hotline. *Id.* ¶¶ 7, 9.  The Notice and notice methodology were thus reasonable and provided due, adequate, and sufficient notice of the Settlements to class members.

## V.    THE RESPONSE OF THE CLASS AND REGULATORS

In addition to the notice program described above, this litigation received substantial media attention both at its initiation[7] and in settlement.[8]  Following broad notice and public

---

[7] *See, e.g.,* Jonathan Vanian, *Disney Sued Over Gaming Apps That Allegedly Compromise Children's Privacy*, Fortune (Aug. 10, 2017) (available at https://fortune.com/2017/08/10/disney-lawsuit-children-apps-privacy/).

[8] *See, e.g.,* Craig Clough, *Disney, Viacom Agree To Limit Data Collection In Kids Apps*, Law360 (Aug. 6, 2020) (available at https://www.law360.com/articles/1291119/disney-viacom-agree-to-limit-data-collection-in-kids-apps); Julie Steinberg, *Disney, Viacom Kids' Gaming App Privacy* (continued…)

1    awareness, no class members have objected to approval of these Settlements.  Additionally, in

2    response to the CAFA notice issued by the Defendants *(see* Dkt. No. 370), no Attorneys General,

3    federal or state, objected to, or otherwise expressed concerns about, any of the Settlements.

4    **VI.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

5              **A.    The Court Should Certify the Settlement Class**

6              The Court preliminarily certified the Settlement Classes. Dkt. No. 371 at 2-5.  Since that

7    time, nothing has changed, and certification remains warranted.

8                        **1.    Rule 23(a) is Satisfied**

9              As set forth in Plaintiffs' preliminary approval motion, Rule 23(a) is readily satisfied,

10   militating in favor of certification of each of the Settlement Classes: **Numerosity**. The Settlement

11   Classes readily satisfy the numerosity requirement, because the relevant apps have been

12   downloaded millions of times in the United States alone.[9] *See The Civ. Rts. Educ. & Enf't Ctr. v.*

13   *RLJ Lodging Tr.*, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016) (noting this requirement is

14   "relaxed" where the class seeks injunctive relief only).  **Commonality**. The claims of the

15   Settlement Classes are sufficiently common as they "depend upon a common contention . . . of

16   such a nature that it is capable of classwide resolution."  *Wal-Mart*, 564 U.S. at 350; Fed. R. Civ.

17   P. 23(a)(2). Common questions underlie all class members' claims, including whether Defendants

18   collected and used children's personal data for commercial purposes, whether Defendants

19   intended or knew that children play the Gaming Apps, and whether Defendants' conduct violates

20   reasonable expectation of privacy and is highly offensive to a reasonable person.  *See Order, In re*

21   *Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693 (C.D. Cal. Jan. 4, 2019), Dkt. No. 297 at

22   8 (commonality established where defendant's "alleged data collection and disclosure practices

23

24   *Deals Get Early Nod*, Bloomberg Law (Sept. 25, 2020) (available at
     https://news.bloomberglaw.com/product-liability-and-toxics-law/disney-viacom-kids-gaming-
25   app-privacy-deals-get-early-nod)

     [9] On the Android platform alone, each of the Gaming Apps has exceeded one million
26   installations.  *See, e.g., Subway Surfers*, Google Play, https://play.google.com/store/apps/details?
     id=com.kiloo.subwaysurf (over 1 billion); *Where's My Water?*, Google Play,
27   https://play.google.com/store/apps/details?id=com.disney.WMW (over 1 million); *Where's My*
     *Water? 2*, Google Play, https://play.google.com/store/apps/details?
28   id=com.disney.wheresmywater2_goo (over 100 million); *Llama Spit Spit*, Google Play,
     https://play.google.com/store/apps/details?id=com.mtvn.llamaspit (over 1 million).

were uniform" across all devices). **Typicality.**  The class representatives' claims are "typical of

the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require total identity

between representative plaintiffs and the class. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir.

2014). Rather, typicality is satisfied here, where Plaintiffs' claims stem "from the same event,

practice, or course of conduct that forms the basis of the class claims, and . . .  upon the same

legal theory . . . ." *Jordan v. Los Angeles County*, 669 F.2d 1311, 1321 (9th Cir. 1982).  Plaintiffs

allege a common scheme whereby Defendants processed Plaintiffs' children's personal data for

commercial purposes. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 543

(N.D. Cal. 2018) (typicality satisfied where class representatives used Facebook like all others).

**Adequacy**. The class representatives "will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(4).  Plaintiffs have no interests in conflict with those of the classes.

Moreover, Plaintiffs' commitment to the case, as described in Plaintiffs' preliminary approval

motion (*see* Dkt. No. 363 at Section V.A) and fee motion (*see* Dkt. No. 372 at Section V; Dkt.

No. 372-1 at 241-280), demonstrates their adequacy.; Dkt. No. 364 ¶ 50.  Class Counsel likewise

are qualified to represent the Settlement Classes.  The Court appointed Lieff Cabraser Heimann &

Bernstein LLP and Carney Bates & Pulliam, PLLC as Class Counsel for the Settlement Classes

because of the firms' significant experience litigating analogous cases, and because of the skill

and effort demonstrated in the instant cases.  *See* Dkt. No. 371 at 5.

### 2.      Rule 23(b)(2) is Satisfied

        The Settlement Classes also satisfy Rule 23(b)(2), as Defendants "ha[ve] acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Plaintiffs allege Defendants engaged

in the ongoing practice of exfiltrating personal data from children for commercial use without

age-based restrictions, and the respective settlements compel the destruction or sequestration of

previously obtained personal data.[10]  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir.

---

[10] With respect to the *Kiloo* and *Disney* Actions, Plaintiffs have obtained additional injunctive
relief in the form of revisions to the "age gates" of the Gaming Apps at issue, which will make
users of the apps less likely to inadvertently enter an age 13 or over, and thereby become tracked
for targeted advertising and profiling purposes.  *See* Dkt. No. 364 ¶¶ 27(a), 28(d). This additional
(continued…)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

2010) (Rule 23(b)(2) satisfied where plaintiffs "complain of a pattern or practice that is generally applicable to the class as a whole."); *see also* Order, *Matera v. Google Inc.*, No. 5:15-cv-04062-LHK (N.D. Cal. Aug. 31, 2017), Dkt. No. 89 at 2-3 (approving Rule 23(b)(2) settlement requiring that Google "cease all processing of email content" from class members that is used for advertising purposes); *Campbell v. Facebook*, 315 F.R.D. 250, 269 (N.D. Cal. 2016) (certifying a 23(b)(2) class where defendant "utilized a uniform system architecture and source code").

Accordingly, the Court should allow the Rule 23(b)(2) Settlement Classes to seek immediate, prospective injunctive relief.

### B.      The Settlements are Fundamentally Fair, Adequate, and Reasonable

In determining whether a court should grant final approval to a class action settlement, "the universally applied standard is whether the settlement is fundamentally fair, adequate, and reasonable."  *Shin v. Plantronics, Inc*., No. 18-CV-05626-NC, 2020 WL 1934893, at *3 (N.D. Cal. Jan. 31, 2020) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  Rule 23(e) instructs that, in evaluating whether a settlement is fair, adequate, and reasonable, a court must consider whether: (1) the class representatives and Class Counsel have adequately represented the classes; (2) the Settlements were negotiated at arm's length; (3) the relief provided is adequate; and (4) the Settlements treat class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also* Procedural Guidance for Class Action Settlements, Preliminary Approval ("Procedural Guidance") (instructing parties to submit specific information to the Northern District of California).  Each of these factors is satisfied.

### 1.      Rule 23(e)(2)(A): The Class Representatives and Class Counsel have vigorously represented the Classes

As further detailed in Plaintiffs' preliminary approval motion, these settlements are the culmination of hard-fought litigation spanning over three years, which included robust and sophisticated pre-suit forensic investigation, extensive motion practice (including two rounds of multiple motions to dismiss and a motion for class certification), and extensive fact and expert

---

relief also uniformly benefits all Class Members in the *Kiloo* and *Disney* Actions, respectively, and militates in favor of certification of the Settlement Classes.

1    discovery.  By the time the parties reached settlements in principle, Class Counsel had reviewed

2    over 150,000 documents, produced hundreds of documents related to the class representatives,

3    inspected relevant source code, and worked with third-party consultants to preserve and/or

4    forensically image approximately seventeen mobile devices, from which Plaintiffs produced

5    requested information to Defendants. Plaintiffs also took seventeen depositions across two

6    continents (including six in Denmark), and prepared to defend seven class representative

7    depositions which, as negotiations advanced, were cancelled shortly before their scheduled dates.

8    Lastly, Plaintiffs committed hundreds of hours to working with multiple experts to develop their

9    claims for trial. Taken together, these efforts demonstrate that the Settlements are the product of well-

10   informed and vigorous advocacy on behalf of the classes.

11                 **2.        <u>Rule 23(e)(2)(B): The Settlements were negotiated at arm's length</u>**

12                 The Settlements were reached after multiple, informed, arm's-length negotiations.  After

13   significant motion practice and discovery efforts, the parties hired JAMS mediators Judge Jay

14   Gandhi (Ret.) and Lexi Myer (and Plaintiffs, AdColony, and Chartboost also hired Ms. Yanni) for

15   private mediation sessions totaling five days, with extensive follow-up negotiations over four

16   months.  The involvement of these highly experienced mediators supports a finding that the

17   Settlements are not the product of collusion.  *See Harris v. Vector Mktg. Corp.*, 2011 WL

18   1627973, at *8 (N.D. Cal. Apr. 29, 2011) (finding that involvement of a mediator suggested the

19   settlement "was not the result of collusion of bad faith by the parties or counsel"). Separately, the

20   Settlements themselves bear none of the traditional signs of collusion.  *See In re Bluetooth*

21   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-48 (9th Cir. 2011).  Plaintiffs possessed a wealth

22   of information before engaging in settlement negotiations, and this understanding of the contours

23   of the litigation, coupled with Class Counsel's knowledge and experience litigating and settling

24   privacy class actions, supports Class Counsel's belief that the Settlements are fair, reasonable,

25   and adequate. *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009)

26   ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.")

27   (citation omitted).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    Rule 23(e)(2)(C): The Settlements Provide Meaningful Relief to the Classes

The injunctive relief provided to the classes under these Settlements is more than "adequate" considering (i) the costs, risks, and delay of trial and appeal; and (ii) the terms of any proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C); Procedural Guidance (1)(e).[11]

#### a.    The Costs, Risks, and Delay of Trial And Appeal

In reaching the Settlements, Plaintiffs achieved their principal goal of effectuating broad and meaningful changes to Defendants' practices by limiting the collection and use of children's personal data for commercial gain.  *See* Section III.B, *supra*.  By extending relief across thousands of apps and enhancing screening procedures for current and future apps aimed at children, the Settlements will result in industry-wide change.  And, as Chairman Simons of the FTC recently remarked, injunctive relief (like the remedies provided under the Settlements) will carry powerful deterrent effects in the form of "the costs and constraints of complying with the injunction; the fencing in of otherwise legal conduct; the reputational effect of the sanction; the threat of follow-on actions" and "other collateral consequences."[12]

In contrast to the significant benefits conferred by the Settlements, continued litigation (including trial and near-certain appeal) would have carried significant costs, risks, and delay with little additional payoff.  Absent these Settlements, Plaintiffs anticipate Defendants would have continued to aggressively challenge Plaintiffs' claims—by opposing class certification, filing both consolidated and individual summary judgment and *Daubert* motions, and appealing adverse judgments.  Despite Plaintiffs' confidence in the facts and legal theory that underpin their claims, they recognize that such claims are novel and that the relevant law is still undeveloped as it applies to these Actions.  By way of example, Defendants have already disputed the extent to which the personal data collected from Plaintiffs' devices constitutes "children's personal data,"

---

[11] Because the Settlements provide only injunctive relief pursuant to Rule 23(b)(2), there is no claims process or distribution plan.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  Moreover, Plaintiffs have not entered into any agreements "in connection with the proposal" under Rule 23(e)(3).  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

[12] Statement of Chairman Simons, *FTC v. HyperBeard Inc.*, No. 1923109 (June 4, 2020), https://www.ftc.gov/system/files/documents/public_statements/1576438/192_3109_hyperbeard_-_statement_of_chairman_simons.pdf.

and whether Defendants' conduct is considered "highly offensive" to a reasonable person (particularly in light of the unique nature of each Defendant's data collection practices), whether Defendants engaged in any "deceptive" or "misleading" business practices, and whether Plaintiffs have suffered sufficient injury or are entitled to damages.

Moreover, the prospect of continued litigation threatens to delay implementation of injunctive relief to the classes.  The only significant benefit that the Settlements do not provide is monetary relief through a class under Rule 23(b)(3).  However, under the Settlements, Class members will continue to retain *all* rights to pursue damages against *all* Defendants.  Moreover, the risks of further litigation for damages are outweighed by the benefits of significant, immediate injunctive relief available through these Settlements, particularly where any damage award would likely be nominal for most class members.[13]

Considering the costs, risks, and delay associated with continued litigation, the robust injunctive relief secured through these Settlements represents an excellent result for the settlement classes.

### b.   The Settlements Provide For Fair Determination of An Award of Class Counsel's Attorney's Fees and Expenses

The Settlements provide that Class Counsel may apply to the Court for an award of attorneys' fees and expenses up to a specified limit, or "Payment Cap," set forth in each of the Settlement Agreements.  With the assistance of the Mediator, the parties negotiated these Payment Caps only after they reached agreement in principle with respect to the proposed injunctive relief terms.  The provisions in the Settlement Agreements regarding Class Counsel's fees have several key provisions.  First, Defendants have agreed to the pay Class Counsel a reasonable award of attorneys' fees and expenses as awarded by the Court within the agreed-upon caps.  Second, the parties reserved for Defendants the right to oppose in this Court any amount requested by Class Counsel.  Third, the parties have agreed to not appeal this Court's

---

[13] Plaintiffs asserted claims under New York General Business Law § 349 in the *Kiloo* and *Disney* Actions (which provides for the greater of actual damages or $50 per Class Member) and under Massachusetts General Laws ch. 93A in the *Disney* Action (which provides for the greater of actual damages or $25), but statutory damages for those class members in New York and/or Massachusetts were uncertain due to challenging case law concerning digital privacy rights under GBL § 349, and the novel nature of the claims under both statutes.

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD

1    determination of the award of Class Counsel's fees and expenses.  Fourth, approval of the

2    substantive injunctive relief terms in the Settlements is in no way contingent upon the

3    determination of Class Counsel's fee and expense award, i.e., any proceedings with regard to the

4    fees will not delay or affect the force or effect of any Final Approval Order entered by the Court.

5    *See, e.g.*, Kiloo Settlement Agreement, ¶¶ 7.1- 7.5.

6         In short, Class Counsel have assured that the proposed relief to the Class will be evaluated

7    independently of their request for fees by giving Defendants the ability to challenge that request.

8    Indeed, certain Defendants have availed themselves of the "no clear sailing" provision and have

9    raised objections to the amount of Class Counsel's fee request.  *See Kiloo*, Dkt. Nos. 374, 381,

10   382.  The Settlement Agreements' process and structure for determining Class Counsel's

11   compensation further demonstrates the fairness and reasonableness of the proposed Settlements.

12            **4.     Rule 23(e)(2)(D): The Settlements treat all Class members equitably**

13        The Settlements benefit all class members equally by changing how thousands of apps

14   played by children collect and treat *each* child's data from the start of the game, as well as their

15   policies regarding the destruction or segregation of previously collected data.  Because the

16   injunctive relief is based on objective criteria that make changes at the app level, the benefits are

17   shared equally among class members and their children.  This factor supports final approval.

18            **5.     All Remaining Factors Are Addressed in Plaintiffs' Motion for**
19                 **Awards of Attorneys' Fees, Expenses, and Service Awards**

20        Plaintiffs previously filed their fee motion (Dkt. No. 372) in a manner consistent with the

21   District's Procedural Guidance regarding final approval of class action settlements.  Accordingly,

22   the only remaining obligation set forth under the Procedural Guidance is a description of Class

23   members' response.  *See* Procedural Guidance for Class Action Settlements, Final Approval.  As

24   set forth in Section V, *supra*, no Class members have objected to the Settlements.

25   **VII.    CONCLUSION**

26        Plaintiffs respectfully request that the Court enter the Orders granting final approval of the

27   Settlements. *See* Bates Decl. Ex.'s 1 to 32 (proposed orders and judgments).

28

1

2      Dated: December 3, 2020                */s/ Hank Bates*
                                              _____

3                                             Hank Bates (State Bar No. 167688)
                                              hbates@cbplaw.com
4                                             Allen Carney (admitted *pro hac vice*)
                                              acarney@cbplaw.com
5                                             David Slade (admitted *pro hac vice*)
                                              dslade@cbplaw.com
6                                             CARNEY BATES & PULLIAM, PLLC
                                              519 W. 7th St.
7                                             Little Rock, AR 72201
                                              Telephone:  501.312.8500
8                                             Facsimile:  501.312.8505

9                                             Michael W. Sobol (SBN 194857)
                                              msobol@lchb.com
10                                            Michael K. Sheen (SBN 288284)
                                              msheen@lchb.com
11                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                              275 Battery Street, 29th Floor
12                                            San Francisco, CA  94111-3339
                                              Telephone:  415.956.1000
13                                            Facsimile:  415.956.1008

14                                            Nicholas Diamand (admitted *pro hac vice*)
                                              ndiamand@lchb.com
15                                            Douglas I. Cuthbertson (admitted *pro hac vice*)
                                              dcuthbertson@lchb.com
16                                            Sean Petterson (admitted *pro hac vice*)
                                              spetterson@lchb.com
17                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                              250 Hudson Street, 8th Floor
18                                            New York, NY  10013-1413
                                              Telephone:  212.355.9500
19                                            Facsimile:  212.355.9592

20                                            *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
3:17-CV-04344-JD; 3:17-CV-4419-JD; 3:17-CV-4492-JD