1

2

3

4

5               UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7                 SAN FRANCISCO DIVISION

8   MICHAEL MCDONALD, et al.,           Case No.  3:17-cv-04344-JD

9              Plaintiffs,

                                        [PROPOSED] ORDER GRANTING
10  v.                                  PLAINTIFFS' MOTION FOR FINAL
                                        APPROVAL OF CLASS ACTION
11  KILOO A/S, et al.,                  SETTLEMENT WITH ADCOLONY, INC.

12             Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     This matter came before the Court for hearing on December 17, 2020, pursuant to the

2     Court's Preliminary Approval Order dated September 24, 2020 (Dkt. 371). The Court has

3     considered the Settlement Agreement (the "Settlement") between Plaintiffs Michael McDonald,

4     Tamara Draut, and Domonique Murillo ("Plaintiffs") and AdColony, Inc. ("AdColony" or

5     "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including

6     in any papers filed and proceedings had herein.   Good cause appearing, **IT IS HEREBY**

7     **ORDERED, ADJUDGED AND DECREED** as follows:

8          1.      Capitalized terms not otherwise defined herein shall have the same meaning as set

9     forth in the Settlement Agreement.  *See* Dkt 364-3.

10         2.      This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28

11    U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement Class Members.

12    Venue is proper in this District.

13         3.      By entering this Order, the Court does not make any finding of liability or

14    wrongdoing as to Defendant.

15         4.      The Court, for purposes of this Final Approval Order, (1) approves the Settlement

16    described in Plaintiffs' preliminary and final approval papers; (2) enters this Order and a separate

17    judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and

18    definitions set forth in the Settlement Agreement.

19         5.      The Court finds that the notice to the Settlement Class, which consisted of, among

20    other things, (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof;

21    (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to

22    the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions

23    about the Settlement; (v) important dates in the settlement approval process, including the date of

24    the Fairness Hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees

25    and expenses, as detailed in Plaintiffs' preliminary approval papers and as previously approved

26    by this Court (*see* Dkt. 371), has been implemented and fully complied with the requirements of

27    Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or

28

1  (b)(2), the court may direct appropriate notice to the class"), this District's Procedural Guidance

2  for Class Action Settlements, and due process.

3      6.      Notice was provided to Settlement Class Members in compliance with this Court's

4  Preliminary Approval Order, paragraphs 5.1 and 5.2 of the Settlement Agreement, due process,

5  and Rule 23 of the Federal Rules of Civil Procedure.

6      7.      The notice given was the best method for providing such notice that was

7  practicable under the circumstances. The notice: (i) fully and accurately informed Settlement

8  Class Members about the lawsuit and settlement; (ii) provided sufficient information so that

9  Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and

10  pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for

11  Settlement Class Members to file written objections to the proposed settlement, to appear at the

12  hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and

13  place of the final approval hearing.

14      8.      There were no timely objections to the Settlement Agreement.

15      9.      The Court finds that Defendant properly and timely notified the appropriate state

16  and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28

17  U.S.C. § 1715.

18      10.      The Court approves the Settlement as fair, reasonable, and adequate and in the best

19  interests of the Settlement Class Members. The Court has specifically considered the factors

20  relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361

21  F.3d 566 (9th Cir. 2004)), including, inter alia, the strength of Plaintiffs' case; the risk, expense,

22  complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement

23  Class and – if successful – maintaining class action status throughout trial; the relief provided for

24  in the Settlement; the extent of discovery completed and stage of the proceedings; the experience

25  and views of Class Counsel and mediators; and the reaction of Settlement Class Members to the

26  proposed Settlement.  Furthermore, the Court has specifically considered the factors relevant to

27  class settlement approval set forth in Fed. R. Civ. P. 23(e) and this District's Procedural Guidance

28  for Class Action Settlements, including whether:

(A)   the Class Representatives and Class Counsel have adequately represented the Settlement Class;

(B)   the Settlement was negotiated at arm's length;

(C)   the relief provided for the Settlement Class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement Class Members;

    (iii)   the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

    (iv)   any agreement required to be identified under Rule 23(e)(3);

(D)   the number of Class Members who objected to or commented on the Settlement; and

(E)   the Settlement treats Settlement Class Members equitably relative to each other.

11.   The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.

12.   AdColony has agreed to meaningful injunctive relief related to the claims at issue.  The Settlement Agreement with AdColony, including all terms of the agreed-upon injunctive relief, are adopted herein.  *See* Dkt. 364-3.

13.   Changes for Specific Apps Identified By Plaintiffs and AdColony.  Within 120 days of the entry of this Order, for Subway Surfers and all other Apps that meet any of the following criteria and which include AdColony's software development kits ("SDKs") (except Apps which are excluded pursuant to paragraphs 14-16 below), AdColony shall either (a) stop providing any services to the App or (b) limit service to Contextual Advertising and shall reconfigure its services so that it does not store (i) device IDs (including IDFAs, AAIDs and Android IDs (hashed or otherwise)); (ii) the last octet of IP addresses; or (iii) geolocation information sufficient to identify street name and name of a city or town:

A.     Apps included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store, as set forth in in **Exhibit A** to the Settlement (Dkt. 364-3 at 26);

B.     Within 90 days of the entry of this Order, AdColony shall provide Class Counsel with a list of Apps with AdColony's SDK embedded that contain any of the following key words (including as part of a larger word) in the App name, bundle ID, or developer name:  Kid, Boy, Girl, Baby, Toddler, Child, Toy, Princess, Prince, Dress Up, Doll, Makeover, Tiny, Preschool, Kindergarten, Baby Panda, Little Panda, Babybus, Hippo, and Masha; and

C.     Apps that the Children's Advertising Review Unit ("CARU") has determined are directed to children and that have been included in a National Advertising Division ("NAD")/CARU Case Report, as set forth in in **Exhibit B** to the Settlement (Dkt. 364-3 at 119).

14.     Within 120 days of the entry of this Order, AdColony shall add Option A and Option B, listed below, to the developer portal or a substantial equivalent.  Selection of either Option A or Option B within the developer portal or a substantial equivalent shall be mandatory such that AdColony's SDKs shall not be integrated into any App for which a developer has selected neither Option A nor Option B.

A.     Option A:  " [ ] I certify that this app is directed to children under 13 as defined by the Children's Online Privacy Protection Act ('COPPA') and must comply with the requirements of the COPPA."

B.     Option B:  " [ ] I certify that this app is <u>NOT</u> directed to children under 13 as defined by COPPA and need not comply with the requirements of the COPPA."

15.     If an App falls within any of the categories set forth in paragraph 13(B)-(C) above, but has an age-gate, AdColony shall be exempted from the requirements of this Agreement if the App developer opts out of COPPA treatment for the App in the developer portal or a substantial equivalent by selecting Option B (listed above).

ORDER GRANTING PLTFS'MTN FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT WITH ADCOLONY, INC.
CASE NO.  3:17-CV-04344-JD

16.     If AdColony in good faith believes that any App that falls within any of the three categories set forth in paragraph 13(A)-(C) above is not directed primarily to children under the age of 13 then it may seek an exemption of such App from the requirements of this Agreement by providing Class Counsel with written notice specifying the grounds for AdColony's belief and, within five (5) business days of receipt thereof, Class Counsel shall notify AdColony whether it will stipulate to the exemption.  AdColony may also seek such an exemption on the basis that other Defendants to this Action are exempted from the obligations of similar injunctive relief terms with respect to a particular App.  If Class Counsel stipulates to the exemption, or if Class Counsel does not respond to AdColony's request for an exemption, the App shall not be subject to the requirements of the Settlement Agreement.  If Class Counsel does not stipulate to the exemption, the Parties shall, within five (5) business days, submit a joint written submission (no longer than three (3) pages, to be divided equally) to Cathy Yanni (JAMS), who shall make a final determination regarding whether an exemption is appropriate.  The Parties shall each bear an equal share of Ms. Yanni's fees and expenses in connection with this process.

17.     AdColony shall comply with any requirements with respect to any App identified in a supplemental notice from Plaintiffs pursuant to paragraphs 13(A) or 13(C) above within 120 days from receipt of the supplemental notice.

18.     Within 120 days of the entry of this Order, AdColony shall enable encryption-at-rest for all previously collected user-level Personal Data in its possession, custody, or control related to the Apps set forth in paragraph 13(A)-(C) (except those that are excluded pursuant to paragraphs 14-16) such that it cannot be read, copied, changed, or deleted by unauthorized persons while in storage and, within 120 days of the entry of this Order, AdColony shall retroactively delete users' device IDs, the last octet of IP addresses, and geolocation information sufficient to identify street name and name of a city or town from its raw data.  In addition, within 120 days of the entry of this Order, AdColony shall send a written request to any demand-side platforms ("DSPs"), attribution partners, and ad exchanges whom AdColony provided Personal Data related to the Apps set forth in paragraph 13(A)-(C) above (except those that are excluded

pursuant to paragraphs 14-16) requesting that they delete any Personal Data in their custody, possession, or control related to these Apps.

19.     Within 120 days of the entry of this Order, AdColony shall implement a process to vet every App that includes AdColony's SDKs at the point of initial engagement with automated cross-referencing to determine if the App falls into any of the three categories set forth in paragraph 13(A)-(C) above.  For all Apps that fall into any of these categories (except Apps which are excluded pursuant to paragraphs 14-16 above), AdColony either (a) shall stop providing any services to the App or (b) shall limit service to Contextual Advertising and reconfigure its services to not store (i) device IDs (including IDFAs, AAIDs and Android IDs (hashed or otherwise)); (ii) the last octet of IP addresses; or (iii) geolocation information sufficient to identify street name and name of a city or town.

20.     In addition, whenever a user is identified by AdColony as under 13, either via an age-gate, direct notification, or any other mechanism, AdColony either (a) shall stop providing any services to the App related to that user or (b) shall limit service for such user to Contextual Advertising without the storage of (i) device IDs (including IDFAs, AAIDs and Android IDs (hashed or otherwise)); (ii) the last octet of IP addresses; or (iii) street-level location data.

21.     Within 120 days of the entry of this Order, AdColony shall provide Plaintiffs with an affidavit certifying compliance with paragraphs 13, 14, 18, and 19, describing the vetting process for paragraph 19 and the process for compliance with paragraph 20.

22.     The injunctive relief obligations set forth in this Order shall expire three (3) years from the entry of this Order.

23.     The Parties are to bear their own costs, except as awarded by this Court in a separate judgment and Order on Attorneys' Fees made pursuant to Federal Rule of Civil Procedure 54(b), which implements the agreements between the Parties as to reasonable attorneys' fees and expenses.

24.     The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every

Settlement Class Member shall be deemed to have released, acquitted and forever discharged the

Defendant, from any and all Released Claims.

25.     Per the terms of the Settlement, as of the Effective Date, the Class Representatives

and Settlement Class Members shall be deemed to have agreed not to take any step whatsoever to

assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims,

directly or indirectly, against Defendant.

26.     The Court hereby certifies, pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims

of (i) intrusion upon seclusion; and (ii) the California Constitutional Right to Privacy; and

(iii) New York General Business Law ¶ 349; on behalf of a Settlement Class defined as follows:

> All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are under the age of 13, or were under the age of 13 when they played Subway Surfers, and from whom AdColony collected, used, or disclosed Personal Data.

27.     The Court finds, for settlement purposes only, that the Settlement Class satisfies

the requirements of Federal Rule of Civil Procedure 23(a): (1) <u>Numerosity</u>:  the Settlement Class

is comprised of millions of individuals, given that Subway Surfers has been downloaded

hundreds of millions of times in the United States alone during the relevant period ;

(2) <u>Commonality</u>:  Plaintiffs readily meet this standard as the claims of the Settlement Class all

arise from a common course of alleged conduct: that the Defendants worked in concert to

surreptitiously collect Class Members' children's personal data for commercial purposes by

embedding SDKs that operate uniformly as to all users in Subway Surfers ; (3) <u>Typicality</u>:  the

Class Representatives' claims are typical of those of the Settlement Class Members, as the Class

Representative's children played Subway Surfers, and therafter, the Defendants processed their

children's personal data for commercial purposes and (4) <u>Adequacy</u>:  the Settlement Class

Representatives and Class Counsel have fairly and adequately protected the interests of the

Settlement Class, and shall continue to do so.

28.     The Court finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because the agreed-upon injunctive relief "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This is because the Settlement Agreement requires Defendant to make uniform changes that impact all members of the Settlement Class, by changing how its SDK, which is or was embedded in Subway Surfers and many other apps, and the SDKs embedded therein, collects, treats, and uses Personal Data from the mobile devices of users under the age of 13.

29.     The Court has reviewed the application for an award of service awards to the Settlement Class Representatives submitted by Class Counsel and the memoranda of law and other materials submitted regarding that application. The benefits described above are the only consideration the Defendants shall be obligated to give to the Settlement Class Members, with the exception of the service awards to be paid to the Class Representatives, which are supported by – among other things – evidence of the Class Representatives' active involvement in the Lawsuit. Those service awards shall be paid by AdColony as follows within twenty-one days of the Effective Date:

Mr. Michael McDonald:  $833

Ms. Tamara Draut:  $833

Ms. Dominque Murillo:  $833

30.     Defendant has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of Plaintiffs' allegations, or of any liability, fault, or wrongdoing of any kind.

31.     If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

32.     The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession

1   by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into

2   evidence or requested in discovery in this Action or any other action or proceeding as evidence of

3   an admission, concession, or presumption regarding such matters. However, the Settlement

4   Agreement may be introduced as evidence of the Parties' respective obligations under the Court's

5   continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

6       33.   Without affecting the finality of this order or the final judgment in any way, the

7   Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives,

8   the Settlement Class Members, and the Defendant for the purposes of supervising the

9   implementation, enforcement, and construction of the Settlement and this Order.

10       IT IS SO ORDERED.

11   DATED:  April 12, 2021

12

13   _____

14   HON. JAMES DONATO
    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28