1

2

3

4

5                       UNITED STATES DISTRICT COURT

6                     NORTHERN DISTRICT OF CALIFORNIA

7                         SAN FRANCISCO DIVISION

8    MICHAEL MCDONALD, et al.,              Case No.  3:17-cv-04344-JD

9                    Plaintiffs,
                                            **[PROPOSED] ORDER GRANTING**
10   v.                                     **PLAINTIFFS' MOTION FOR FINAL**
                                            **APPROVAL OF CLASS ACTION**
11   KILOO A/S, et al.,                     **SETTLEMENT WITH CHARTBOOST, INC.**

12                    Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    This matter came before the Court for hearing on December 17, 2020, pursuant to the

2    Court's Preliminary Approval Order dated September 24, 2020 (Dkt. 371). The Court has

3    considered the Settlement Agreement (the "Settlement") between Plaintiffs Michael McDonald,

4    Tamara Draut, and Domonique Murillo ("Plaintiffs") and Chartboost, Inc. ("Chartboost" or

5    "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including

6    in any papers filed and proceedings had herein.   Good cause appearing, **IT IS HEREBY**

7    **ORDERED, ADJUDGED AND DECREED** as follows:

8          1.      Capitalized terms not otherwise defined herein shall have the same meaning as set

9    forth in the Settlement Agreement.  *See* Dkt 364-4.

10         2.      This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28

11   U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement Class Members.

12   Venue is proper in this District.

13         3.      By entering this Order, the Court does not make any finding of liability or

14   wrongdoing as to Defendant.

15         4.      The Court, for purposes of this Final Approval Order, (1) approves the Settlement

16   described in Plaintiffs' preliminary and final approval papers; (2) enters this Order and a separate

17   judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and

18   definitions set forth in the Settlement Agreement.

19         5.      The Court finds that the notice to the Settlement Class, which consisted of, among

20   other things, (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof;

21   (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to

22   the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions

23   about the Settlement; (v) important dates in the settlement approval process, including the date of

24   the Fairness Hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees

25   and expenses, as detailed in Plaintiffs' preliminary approval papers and as previously approved

26   by this Court (*see* Dkt. 371), has been implemented and fully complied with the requirements of

27   Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or

28

(b)(2), the court may direct appropriate notice to the class"), this District's Procedural Guidance for Class Action Settlements, and due process.

6.      Notice was provided to Settlement Class Members in compliance with this Court's Preliminary Approval Order, paragraphs 5.1 and 5.2 of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure.

7.      The notice given was the best method for providing such notice that was practicable under the circumstances. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and place of the final approval hearing.

8.      There were no timely objections to the Settlement Agreement.

9.      The Court finds that Defendant properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

10.      The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class Members. The Court has specifically considered the factors relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)), including, inter alia, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement Class and – if successful – maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and mediators; and the reaction of Settlement Class Members to the proposed Settlement.  Furthermore, the Court has specifically considered the factors relevant to class settlement approval set forth in Fed. R. Civ. P. 23(e) and this District's Procedural Guidance for Class Action Settlements, including whether:

(A)    the Class Representatives and Class Counsel have adequately represented the Settlement Class;

(B)    the Settlement was negotiated at arm's length;

(C)    the relief provided for the Settlement Class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement Class Members;

    (iii)    the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

    (iv)    any agreement required to be identified under Rule 23(e)(3);

(D)    the number of Class Members who objected to or commented on the Settlement; and

(E)    the Settlement treats Settlement Class Members equitably relative to each other.

11.    The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.

12.    Chartboost has agreed to meaningful injunctive relief to protect the privacy of children in the United States playing numerous child-directed games containing the Chartboost SDK.  The Settlement Agreement with Chartboost, including all terms of the agreed-upon injunctive relief, are adopted herein.  *See* Dkt. 364-4.

13.    <u>Changes for Specific Apps Identified By Plaintiffs and Chartboost</u>. Within 120 days of the entry of this Order, for Subway Surfers and all other apps that meet the criteria of 13(A), 13(B), or 13(C) below, and which include Chartboost's SDK (except apps which are excluded pursuant to the exemption protocol set forth in paragraph 14), Chartboost shall (a) stop providing any advertising services to the app, or (b) limit its advertising service exclusively to Contextual Advertising.  Such restrictions shall not apply to instances where an app's age gate identifies the user as 13 or older. The relevant apps shall include:

A.     Apps included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store, as set forth in in **Exhibit A** to the Settlement (Dkt. 364-4 at 25);

B.     Apps that the Children's Advertising Review Unit ("CARU") has determined are directed to children and that have been included in a National Advertising Division ("NAD") or CARU Case Report, as set forth in **Exhibit B** to the Settlement (Dkt. 364-4 at 176); and

C.     Apps that include child-centric words in either the app name, bundle ID, or developer name, as displayed in Chartboost's systems 21 days after the Settlement Agreement is executed, as set forth in **Exhibit C** to the Settlement (Dkt. 364-4 at 180).

14.     If Chartboost in good faith believes that any app that falls within paragraph 13(A)-(C) is not directed to children, Chartboost may then seek an exemption of such app from the requirements of the Settlement Agreement by providing Class Counsel with written notice and grounds for Chartboost's belief and, within 5 business days of receipt thereof, Class Counsel shall notify Chartboost whether it will stipulate to the exemption. If Class Counsel does not stipulate to the exemption, the Parties shall, within 5 business days, submit a joint written submission (no longer than 3 pages, to be divided equally) to the Mediator, who shall make a final determination regarding whether an exemption is appropriate. The Parties shall each bear an equal share of the Mediator's fees and expenses in connection with this process.

15.     Within 120 days of the entry of this Order, or for any apps subject to a dispute pursuant to paragraph 14 above, within 30 days of resolution of such dispute, whichever is later, Chartboost shall use best efforts to delete all previously collected Personal Data in its possession, custody or control related to Subway Surfers and any apps identified pursuant to the processes set forth in paragraph 13(A)-(C). Provided, however, that such Personal Data may be used or disclosed to the extent requested by a government agency or required by law, regulation, or court order.

16.     In addition, whenever a device is identified to Chartboost as being used by a child under 13, either via an app's age-gate or direct notification from the publisher that the user is under 13, Chartboost shall (a) stop providing any advertising services to the app related to that user's device(s) as identified to Chartboost or (b) limit service for such user's device(s) (as identified to Chartboost) to Contextual Advertising.

17.     <u>Increased Requirements for Developers vis-à-vis COPPA Settings</u>.  Within 120 days of the entry of this Order, for all developers' apps, Chartboost shall implement the following steps to ensure that developers comply with COPPA Settings including:

        A.     Require developers to click through disclosures about their responsibility to evaluate their apps, determine if the apps are child-directed, and set the proper settings (which disclosures shall include the instruction that Developers should treat apps included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store as child-directed apps);

        B.     Require developers to click a button certifying yes/no that a particular app is directed at children under 13; and

        C.     For all apps that are certified as directed at children under the age of 13, Chartboost will serve exclusively Contextual Advertising in such apps except in instances where the app's age gate identifies the user as age 13 or older.

18.     Within 120 days of the entry of this Order, Chartboost shall provide Plaintiffs an affidavit certifying compliance with paragraphs 13-17.

19.     Nothing in the Settlement shall limit Chartboost from collecting, using, and storing Personal Data for Contextual Advertising to the extent such activities are not in violation of the Children's Online Privacy Protection Act.

20.     If, during the term of the injunctive relief, Plaintiffs believe Chartboost has not complied with the terms of this agreement, they shall provide written notice to Chartboost, and provide 30 days to cure that violation before taking any legal action to enforce this agreement.

1    21.    The duration of these terms for injunctive relief will be in effect for three years

2  from the date of this Order.

3    22.    The Parties are to bear their own costs, except as awarded by this Court in a

4  separate judgment and Order on Attorneys' Fees made pursuant to Federal Rule of Civil

5  Procedure 54(b), which implements the agreements between the Parties as to reasonable

6  attorneys' fees and expenses.

7    23.    The Parties and Settlement Class Members are bound by the terms and conditions

8  of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every

9  Settlement Class Member shall be deemed to have released, acquitted and forever discharged the

10 Defendant, from any and all Released Claims.

11   24.    Per the terms of the Settlement, as of the Effective Date, the Class Representatives

12 and Settlement Class Members shall be deemed to have agreed not to take any step whatsoever to

13 assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims,

14 directly or indirectly, against Defendant.

15   25.    The Court hereby certifies, pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims

16 of (i) intrusion upon seclusion; and (ii) the California Constitutional Right to Privacy; and (iii)

17 New York General Business Law ¶ 349; on behalf of a Settlement Class defined as follows:

18
19
20
21
22
23
> All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are under the age of 13, or were under the age of 13 when they played Subway Surfers, and from whom Chartboost collected, used, or disclosed Personal Data.

24   26.    The Court finds, for settlement purposes only,that the Settlement Class satisfies the

25 requirements of Federal Rule of Civil Procedure 23(a): (1) <u>Numerosity</u>:  the Settlement Class is

26 comprised of millions of individuals, given that Subway Surfers has been downloaded hundreds

27 of millions of times in the United States alone during the relevant period; (2) <u>Commonality</u>:

28 Plaintiffs readily meet this standard as the claims of the Settlement Class all arise from a common

1    course of alleged conduct: that the Defendants worked in concert to surreptitiously collect Class

2    Members' children's personal data for commercial purposes by embedding SDKs that operate

3    uniformly as to all users in Subway Surfers; (3) <u>Typicality</u>:  the Class Representatives' claims are

4    typical of those of the Settlement Class Members, as the Class Representative's children played

5    Subway Surfers, and therafter, the Defendants processed their children's personal data for

6    commercial purposes  and (4) <u>Adequacy</u>:  the Settlement Class Representatives and Class

7    Counsel have fairly and adequately protected the interests of the Settlement Class, and shall

8    continue to do so.

9         27.    The Court finds that the Settlement Class satisfies the requirements of Federal

10   Rule of Civil Procedure 23(b)(2), because the agreed-upon injunctive relief "is appropriate

11   respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  This is because the Settlement

12   Agreement requires Defendant to make uniform changes that impact all members of the

13   Settlement Class, by changing how its SDK, which is or was embedded in Subway Surfers and

14   many other apps, and the SDKs embedded therein, collects, treats, and uses Personal Data from

15   the mobile devices of users under the age of 13.

16        28.    The Court has reviewed the application for an award of service awards to the

17   Settlement Class Representatives submitted by Class Counsel and the memoranda of law and

18   other materials submitted regarding that application. The benefits described above are the only

19   consideration the Defendants shall be obligated to give to the Settlement Class Members, with the

20   exception of the service awards to be paid to the Class Representatives, which are supported by –

21   among other things – evidence of the Class Representatives' active involvement in the Lawsuit.

22   Those service awards shall be paid by Chartboost as follows within twenty-one days of the

23   Effective Date:

24        Mr. Michael McDonald:  $833

25        Ms. Tamara Draut:  $833

26        Ms. Dominque Murillo:  $833

27

28

ORDER GRANTING PLTFS'MTN FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH CHARTBOOST, INC.
CASE NO.  3:17-CV-04344-JD

29.     Defendant has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of Plaintiffs' allegations, or of any liability, fault, or wrongdoing of any kind.

30.     If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

31.     The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission, concession, or presumption regarding such matters. However, the Settlement Agreement may be introduced as evidence of the Parties' respective obligations under the Court's continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

32.     Without affecting the finality of this order or the final judgment in any way, the Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives, the Settlement Class Members, and the Defendant for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Order.

IT IS SO ORDERED.

DATED:  April 12, 2021

_____
HON. JAMES DONATO
UNITED STATES DISTRICT JUDGE

- 8 -