1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7          SAN FRANCISCO DIVISION

8    MICHAEL MCDONALD, et al.,          Case No.  3:17-cv-04344-JD

9              Plaintiffs,

10   v.                                 **[PROPOSED] ORDER GRANTING
                                        PLAINTIFFS' MOTION FOR FINAL
11   KILOO A/S, et al.,                 APPROVAL OF CLASS ACTION
                                        SETTLEMENT WITH INMOBI PTE LTD**
12             Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This matter came before the Court for hearing on December 17, 2020, pursuant to the Court's Preliminary Approval Order dated September 24, 2020 (Dkt. 371). The Court has considered the Settlement Agreement (the "Settlement") between Plaintiffs Michael McDonald, Tamara Draut, and Domonique Murillo ("Plaintiffs") and InMobi Pte Ltd. ("InMobi" or "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including in any papers filed and proceedings had herein.   Good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.      Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.  *See* Dkt 364-6.

2.      This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement Class Members. Venue is proper in this District.

3.      By entering this Order, the Court does not make any finding of liability or wrongdoing as to Defendant.

4.      The Court, for purposes of this Final Approval Order, (1) approves the Settlement described in Plaintiffs' preliminary and final approval papers; (2) enters this Order and a separate judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and definitions set forth in the Settlement Agreement.

5.      The Court finds that the notice to the Settlement Class, which consisted of, among other things, (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof; (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions about the Settlement; (v) important dates in the settlement approval process, including the date of the Fairness Hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees and expenses, as detailed in Plaintiffs' preliminary approval papers and as previously approved by this Court (*see* Dkt. 371), has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or

(b)(2), the court may direct appropriate notice to the class"), this District's Procedural Guidance for Class Action Settlements, and due process.

6.    Notice was provided to Settlement Class Members in compliance with this Court's Preliminary Approval Order, paragraphs 5.1 and 5.2 of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure.

7.    The notice given was the best method for providing such notice that was practicable under the circumstances. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and place of the final approval hearing.

8.    There were no timely objections to the Settlement Agreement.

9.    The Court finds that Defendant properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

10.    The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class Members. The Court has specifically considered the factors relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)), including, inter alia, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement Class and – if successful – maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and mediators; and the reaction of Settlement Class Members to the proposed Settlement.  Furthermore, the Court has specifically considered the factors relevant to class settlement approval set forth in Fed. R. Civ. P. 23(e) and this District's Procedural Guidance for Class Action Settlements, including whether:

(A)   the Class Representatives and Class Counsel have adequately represented the Settlement Class;

(B)   the Settlement was negotiated at arm's length;

(C)   the relief provided for the Settlement Class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)   the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement Class Members;

    (iii)  the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

    (iv)   any agreement required to be identified under Rule 23(e)(3);

(D)   the number of Class Members who objected to or commented on the Settlement; and

(E)   the Settlement treats Settlement Class Members equitably relative to each other.

11.   The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.

12.   InMobi has agreed to meaningful injunctive relief to protect the privacy of children in the United States playing numerous child-directed games containing the InMobi SDK. The Settlement Agreement with InMobi, including all terms of the agreed-upon injunctive relief, are adopted herein. *See* Dkt. 364-6.

13.   Changes for Specific Apps. Within 150 days of the entry of this Order, InMobi shall, except for apps which are excluded pursuant to the exemption protocol set forth in paragraph 14, either (i) stop providing advertising services to the apps identified in sections 13(A) – 13(C) below that include InMobi's SDK (collectively, the "Subject Apps"), (ii) limit its advertising services in the Subject Apps exclusively to Contextual Advertising; or (iii) limit its advertising to exclusively Contextual Advertising for users of those apps that have implemented an age gate and that notify InMobi in an ad request, or through another mechanism, that the user is younger than the threshold age, which may be no younger than 13. For Subject Apps to which

InMobi provides only Contextual Advertising, as described in section 13(B) and 13(C) of this paragraph, InMobi may only collect and use Persistent Identifiers in support of Internal Operations as permitted by the COPPA Rule, 16 C.F.R. 312.

    A.    Apps included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store, and which Class Counsel's analysis identified as containing the InMobi SDK, as set forth in **Exhibit A** to the Settlement (Dkt. 364-6 at 25);

    B.    Apps that the Children's Advertising Review Unit ("CARU") has determined are directed to children and that have been included in a National Advertising Division ("NAD") or CARU Case Report, as set forth in **Exhibit B** to the Settlement (Dkt. 364-6 at 96); and

    C.    Apps set forth in **Exhibit C** to the Settlement (Dkt. 364-6 at 100) that include the following, child-centric words in either the app name, bundle ID, or developer / publisher name, as displayed in InMobi's systems 21 days after the Settlement Agreement is executed: Kid, Boy(s), Girl(s), Baby, Babies, Toddler(s), Child, Children, Candy, Toy(s), Princess(es), Prince(s), Dress Up, Doll(s), Tiny, Bubble(s), Preschool, Kindergarten, Baby Panda, Little Panda, Babybus, Hippo and Masha.

    14.    If InMobi in good faith believes that any of the Subject Apps is not directed to children, it may seek an exemption of such app from the requirements of the Settlement Agreement by providing Class Counsel with written notice specifying the grounds for InMobi's belief and, within 5 business days of receipt thereof, Class Counsel shall notify InMobi whether it will stipulate to the exemption.  If Class Counsel does not stipulate to the exemption, the Parties shall, within 5 business days, submit a joint written submission (no longer than 3 pages, to be divided equally) to the Mediator, who shall make a final determination regarding whether an exemption is appropriate.  The Parties shall each bear an equal share of the Mediator's fees and expenses in connection with this process.

- 4 -

15.     Within 150 days of the entry of this Order, InMobi shall delete any Personal Information collected from Subway Surfers and the other Subject Apps, unless the Personal Information consists of Persistent Identifiers collected in support of Internal Operations or Personal Information was collected from users of Subway Surfers and the other Subject Apps that were above the threshold age of an age gate implemented by Subway Surfers or the Subject App. Provided, however, that such Personal Information may be used or disclosed to the extent requested by a government agency or required by law, regulation, or court order.

16.     In addition, whenever a device is identified to InMobi as being used by a child under 13, either via an app's age-gate or direct notification from the publisher that the user is under 13, InMobi shall (a) stop providing any advertising services to the app related to that user's device(s) as identified to InMobi or (b) limit service for such user's device(s) in the app (as identified to InMobi) to Contextual Advertising.  For those apps, InMobi shall only collect and use Personal Information consisting of Persistent Identifiers in support of Internal Operations as permitted by the COPPA Rule, 16 C.F.R. 312; and (ii) geolocation information sufficient to identify street name and name of a city or town.

17.     <u>Increased Requirements for Publishers vis-à-vis COPPA Settings</u>. Within 150 days of the entry of this Order, for all Publishers' apps, InMobi shall implement the following provisions:

A.     Require Developers / Publishers to click through disclosures about their responsibility to evaluate whether their apps are directed to children or have a substantial number of child users, which disclosures shall include the instruction that Developers should treat apps included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store as directed to children;

B.     Require Publishers to click a button certifying yes/no that a particular app is directed at children under 13; and

C.     If the Developers / Publishers click "yes" to 13(B), require Developers / Publishers to click yes/no that the app is directed to children under 13 as its

- 5 -

primary audience.  If the Developer / Publisher clicks "yes" a COPPA opt-out will be applied, and only Contextual Ads will be served; if the Developer / Publisher clicks "no", the Developer / Publisher must certify that it age-gates users before sending ad requests to InMobi;

D.    Contractually require Developers / Publishers to promptly update their COPPA setting if the Developer / Publisher determines that an app that was previously not identified as directed to children under 13 has become directed to children under 13, and provide a disclosure to Developers / Publishers to confirm that their settings remain accurate whenever they install a new or updated version of the InMobi SDK, unless the updated SDK is only a bug fix release.

18.    Within 150 days of the entry of this Order, InMobi shall provide Plaintiffs an affidavit certifying compliance with Paragraphs 13-17.

19.    <u>Term; Notice and Cure</u>. The Injunction will be in effect for a minimum of three years commencing 150 days of the entry of this Order.  If, during the term of the Injunction, Plaintiffs believe that InMobi has not complied with the terms of this agreement, they shall provide written notice to InMobi, and provide 30 days to cure that violation before taking any legal action to enforce the injunctive relief set forth in the Settlement Agreement.

20.    The Parties are to bear their own costs, except as awarded by this Court in a separate judgment and Order on Attorneys' Fees made pursuant to Federal Rule of Civil Procedure 54(b), which implements the agreements between the Parties as to reasonable attorneys' fees and expenses.

21.    The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every Settlement Class Member shall be deemed to have released, acquitted and forever discharged the Defendant, from any and all Released Claims.

22.    Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Settlement Class Members shall be deemed to have agreed not to take any step whatsoever to

assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims,

directly or indirectly, against Defendant.

23.     The Court hereby certifies, pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims

of (i) intrusion upon seclusion; and (ii) the California Constitutional Right to Privacy; and (iii)

New York General Business Law ¶ 349; on behalf of a Settlement Class defined as follows:

> All parents and/or legal guardians of persons residing in the States
> of Alabama, Alaska, Arizona, Arkansas, California, Colorado,
> Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa,
> Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota,
> Missouri, Nevada, New Hampshire, New Jersey, New York, North
> Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota,
> Texas, Utah, Vermont, Washington, and West Virginia who are
> under the age of 13, or were under the age of 13 when they played
> Subway Surfers, and from whom InMobi collected, used, or
> disclosed Personal Data.

24.     The Court finds, for settlement purposes only, that the Settlement Class satisfies

the requirements of Federal Rule of Civil Procedure 23(a): (1) <u>Numerosity</u>:  the Settlement Class

is comprised of millions of individuals, given that Subway Surfers has been downloaded

hundreds of millions of times in the United States alone during the relevant period;

(2) <u>Commonality</u>:  Plaintiffs readily meet this standard as the claims of the Settlement Class all

arise from a common course of alleged conduct: that the Defendants worked in concert to

surreptitiously collect Class Members' children's personal data for commercial purposes by

embedding SDKs that operate uniformly as to all users in Subway Surfers; (3) <u>Typicality</u>:  the

Class Representatives' claims are typical of those of the Settlement Class Members, as the Class

Representative's children played Subway Surfers, and therafter, the Defendants processed their

children's personal data for commercial purposes  and (4) <u>Adequacy</u>:  the Settlement Class

Representatives and Class Counsel have fairly and adequately protected the interests of the

Settlement Class, and shall continue to do so.

25.     The Court finds that the Settlement Class satisfies the requirements of Federal

Rule of Civil Procedure 23(b)(2), because the agreed-upon injunctive relief "is appropriate

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  This is because the Settlement

Agreement requires Defendant to make uniform changes that impact all members of the

Settlement Class, by changing how its SDK, which is or was embedded in Subway Surfers and many other apps, and the SDKs embedded therein, collects, treats, and uses Personal Data from the mobile devices of users under the age of 13.

26.     The Court has reviewed the application for an award of service awards to the Settlement Class Representatives submitted by Class Counsel and the memoranda of law and other materials submitted regarding that application. The benefits described above are the only consideration the Defendants shall be obligated to give to the Settlement Class Members, with the exception of the service awards to be paid to the Class Representatives, which are supported by – among other things – evidence of the Class Representatives' active involvement in the Lawsuit. Those service awards shall be paid by InMobi as follows within twenty-one days of the Effective Date:

Mr. Michael McDonald:  $833

Ms. Tamara Draut:  $833

Ms. Dominque Murillo:  $833

27.     Defendant has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of Plaintiffs' allegations, or of any liability, fault, or wrongdoing of any kind.

28.     If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

29.     The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission, concession, or presumption regarding such matters. However, the Settlement

1    Agreement may be introduced as evidence of the Parties' respective obligations under the Court's

2    continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

3         30.    Without affecting the finality of this order or the final judgment in any way, the

4    Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives,

5    the Settlement Class Members, and the Defendant for the purposes of supervising the

6    implementation, enforcement, and construction of the Settlement and this Order.

7         IT IS SO ORDERED.

8    DATED:  April 12, 2021

9

10   _____

     HON. JAMES DONATO
11   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28