UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL MCDONALD, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>KILOO A/S, et al.,<br><br>　　　　Defendants. | Case No.  3:17-cv-04344-JD<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH IRONSOURCE USA, INC.** |

1992358.1

ORDER GRANTING PLTFS'MTN FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH IRONSOURCE USA, INC.
CASE NO. 3:17-CV-04344-JD

1  This matter came before the Court for hearing on December 17, 2020, pursuant to the Court's Preliminary Approval Order dated September 24, 2020 (Dkt. 371). The Court has considered the Settlement Agreement (the "Settlement") between Plaintiffs Michael McDonald, Tamara Draut, and Domonique Murillo ("Plaintiffs") and ironSource USA, Inc. ("ironSource" or "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including in any papers filed and proceedings had herein.  Good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

    1.  Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.  *See* Dkt 364-7.

    2.  This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement Class Members. Venue is proper in this District.

    3.  By entering this Order, the Court does not make any finding of liability or wrongdoing as to Defendant.

    4.  The Court, for purposes of this Final Approval Order, (1) approves the Settlement described in Plaintiffs' preliminary and final approval papers; (2) enters this Order and a separate judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and definitions set forth in the Settlement Agreement.

    5.  The Court finds that the notice to the Settlement Class, which consisted of, among other things, (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof; (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions about the Settlement; (v) important dates in the settlement approval process, including the date of the Fairness Hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees and expenses, as detailed in Plaintiffs' preliminary approval papers and as previously approved by this Court (*see* Dkt. 371), has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or

1  (b)(2), the court may direct appropriate notice to the class"), this District's Procedural Guidance
2  for Class Action Settlements, and due process.

3        6.      Notice was provided to Settlement Class Members in compliance with this Court's
4  Preliminary Approval Order, paragraphs 5.1 and 5.2 of the Settlement Agreement, due process,
5  and Rule 23 of the Federal Rules of Civil Procedure.

6        7.      The notice given was the best method for providing such notice that was
7  practicable under the circumstances. The notice: (i) fully and accurately informed Settlement
8  Class Members about the lawsuit and settlement; (ii) provided sufficient information so that
9  Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and
10 pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for
11 Settlement Class Members to file written objections to the proposed settlement, to appear at the
12 hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and
13 place of the final approval hearing.

14       8.      There were no timely objections to the Settlement Agreement.

15       9.      The Court finds that Defendant properly and timely notified the appropriate state
16 and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28
17 U.S.C. § 1715.

18       10.     The Court approves the Settlement as fair, reasonable, and adequate and in the best
19 interests of the Settlement Class Members. The Court has specifically considered the factors
20 relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361
21 F.3d 566 (9th Cir. 2004)), including, inter alia, the strength of Plaintiffs' case; the risk, expense,
22 complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement
23 Class and – if successful – maintaining class action status throughout trial; the relief provided for
24 in the Settlement; the extent of discovery completed and stage of the proceedings; the experience
25 and views of Class Counsel and mediators; and the reaction of Settlement Class Members to the
26 proposed Settlement. Furthermore, the Court has specifically considered the factors relevant to
27 class settlement approval set forth in Fed. R. Civ. P. 23(e) and this District's Procedural Guidance
28 for Class Action Settlements, including whether:

(A) the Class Representatives and Class Counsel have adequately represented the Settlement Class;

(B) the Settlement was negotiated at arm's length;

(C) the relief provided for the Settlement Class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement Class Members;

   (iii) the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

   (iv) any agreement required to be identified under Rule 23(e)(3);

(D) the number of Class Members who objected to or commented on the Settlement; and

(E) the Settlement treats Settlement Class Members equitably relative to each other.

11. The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.

12. ironSource has agreed to meaningful injunctive relief relating to the claims at issue. The Settlement Agreement with ironSource, including all terms of the agreed-upon injunctive relief, are adopted herein. *See* Dkt. 364-7.

13. The injunctive relief measures set forth below in paragraphs 14-19 shall only apply to devices located in the United States as determined by Internet Protocol (IP) address.

14. <u>Changes for Specific Applications</u>. Within 180 days of the entry of this Order, for Subway Surfers and all other applications that meet the criteria of 14(A) – (C) below, and which include ironSource's SDK (except applications which are excluded pursuant to the exemption protocol set forth in paragraph 15), ironSource shall, to the extent it provides advertising services to the application, limit its ad network advertising service exclusively to Contextual Advertising in which (i) ironSource does not store or share with any third party, except for Permitted Purposes, any persistent identifier (hashed or otherwise) that can be used to recognize a user or a

user's device over time and across different Websites or online services (including, but not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier such as IDFA, AAID, or Android ID); and(ii) ironSource does not store or share with any third party any geolocation information sufficient to identify street name and name of a city or town. Such restrictions shall not apply to instances where an application's age-gate identifies the user as 13 or older. The relevant applications shall include:

      A.    Applications included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store, and which Class Counsel's analysis identified as containing the ironSource SDK, as set forth in **Exhibit A** to the Settlement (Dkt. 364-7 at 27);

      B.    Applications that the Children's Advertising Review Unit ("CARU") has determined are directed to children and that have been included in a National Advertising Division ("NAD") or CARU Case Report, as set forth in **Exhibit B** to the Settlement (Dkt. 364-7 at 167); and

      C.    Applications included in **Exhibit C** to the Settlement (Dkt. 364-7 at 171).

15. If ironSource in good faith believes that any application that falls within paragraph 14(C) is not directed to children, it may seek an exemption of such app from the requirements of the Settlement Agreement by providing Class Counsel with written notice specifying the grounds for ironSource's belief and, within 5 business days of receipt thereof, Class Counsel shall notify ironSource whether it will stipulate to the exemption. If Class Counsel does not stipulate to the exemption, the Parties shall, within 5 business days, submit a joint written submission (no longer than 3 pages, to be divided equally) to the Mediator, who shall make a final determination regarding whether an exemption is appropriate. The Parties shall each bear an equal share of the Mediator's fees and expenses in connection with this process.

16. Within 180 days of the entry of this Order, ironSource shall refrain from disclosing, using, or benefitting from any Personal Information previously collected from users of

1  Subway Surfers and any applications identified pursuant to the process set forth in paragraph
2  14(A)-(C), except for Permitted Purposes. Provided, however, that such Personal Information
3  may be used or disclosed to the extent requested by a government agency or required by law,
4  regulation, or court order.

5        17.    In addition, whenever a device is identified to ironSource as being used by a child
6  under 13 via an application's age-gate or an application is identified to ironSource as being
7  directed to children in accordance with paragraph 19(B) below, within 180 days of the entry of
8  this Order, ironSource shall, to the extent it provides advertising services to the application, limit
9  its ad network advertising service exclusively to Contextual Advertising in which (i) ironSource
10 does not store or share with any third party, except for Permitted Purposes, any persistent
11 identifier (hashed or otherwise) that can be used to recognize a user or a user's device over time
12 and across different Websites or online services (including, but not limited to, a customer number
13 held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique
14 device identifier such as IDFA, AAID, or Android ID); and (ii) ironSource does not store or share
15 with any third party any geolocation information sufficient to identify street name and name of a
16 city or town. Such restriction shall not apply to instances where an application's age-gate
17 identifies the user as 13 or older. This restriction shall apply to the specific application for which
18 ironSource receives the identification of the user's age, and not to other applications on the
19 device.

20       18.    Within 180 days of the entry of this Order, ironSource shall implement a process
21 to determine with automated cross-referencing, at the point of initial engagement with any
22 application, if the application falls into the categories set forth in paragraph 14(A) above. For all
23 applications that fall into paragraph 14(A), ironSource shall, to the extent it provides advertising
24 services to the applications, limit its ad network services exclusively to Contextual Advertising in
25 which (i) ironSource does not store or share with any third party, except to the extent permitted
26 for Permitted Purposes, a persistent identifier (hashed or otherwise) that can be used to recognize
27 a user or a user's device over time and across different Websites or online services (including, but
28 not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor

or device serial number, or unique device identifier such as IDFA, AAID, or Android ID); and (ii) ironSource does not store or share with any third party any geolocation information sufficient to identify street name and name of a city or town. Such restriction shall not apply to instances where an application's age-gate identifies the user as 13 or older.

19. <u>Increased Requirements for Developers vis-à-vis COPPA Settings</u>. Within 180 days of the entry of this Order, for all Developers' applications, ironSource shall implement the following steps to ensure that Developers comply with COPPA Settings including:

    A. Require Developers to click through disclosures about their responsibility to evaluate their applications, determine if the applications are child-directed, and set the proper settings (which disclosures shall include the instruction that Developers should treat applications included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store as child-directed applications);

    B. Require Developers to click a button certifying yes/no that a particular application is directed at children under 13; and

    C. Require Developers to re-affirm these settings whenever they install a new or updated version of the ironSource SDK, unless the updated SDK is only a bug fix release.

20. Within 180 days of the entry of this Order, ironSource shall provide Plaintiffs an affidavit certifying compliance with paragraphs 14-19.

21. The Parties are to bear their own costs, except as awarded by this Court in a separate judgment and Order on Attorneys' Fees made pursuant to Federal Rule of Civil Procedure 54(b), which implements the agreements between the Parties as to reasonable attorneys' fees and expenses.

22. The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every

1  Settlement Class Member shall be deemed to have released, acquitted and forever discharged the
2  Defendant, from any and all Released Claims.

3      23.    Per the terms of the Settlement, as of the Effective Date, the Class Representatives
4  and Settlement Class Members shall be deemed to have agreed not to take any step whatsoever to
5  assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims,
6  directly or indirectly, against Defendant.

7      24.    The Court hereby certifies, pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims
8  of (i) intrusion upon seclusion; and (ii) the California Constitutional Right to Privacy; and (iii)
9  New York General Business Law ¶ 349; on behalf of a Settlement Class defined as follows:

> All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are under the age of 13, or were under the age of 13 when they played Subway Surfers, and from whom ironSource collected, used, or disclosed Personal Data.

16      25.    The Court finds, for settlement purposes only, that the Settlement Class satisfies
17  the requirements of Federal Rule of Civil Procedure 23(a): (1) <u>Numerosity</u>:  the Settlement Class
18  is comprised of millions of individuals, given that Subway Surfers has been downloaded
19  hundreds of millions of times in the United States alone during the relevant period;
20  (2) <u>Commonality</u>:  Plaintiffs readily meet this standard as the claims of the Settlement Class all
21  arise from a common course of alleged conduct: that the Defendants worked in concert to
22  surreptitiously collect Class Members' children's personal data for commercial purposes by
23  embedding SDKs that operate uniformly as to all users in Subway Surfers; (3) <u>Typicality</u>:  the
24  Class Representatives' claims are typical of those of the Settlement Class Members, as the Class
25  Representative's children played Subway Surfers, and therafter, the Defendants processed their
26  children's personal data for commercial purposes  and (4) <u>Adequacy</u>:  the Settlement Class
27  Representatives and Class Counsel have fairly and adequately protected the interests of the
28  Settlement Class, and shall continue to do so.

26. The Court finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because the agreed-upon injunctive relief "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This is because the Settlement Agreement requires Defendant to make uniform changes that impact all members of the Settlement Class, by changing how its SDK, which is or was embedded in Subway Surfers and many other apps, and the SDKs embedded therein, collects, treats, and uses Personal Data from the mobile devices of users under the age of 13.

27. The Court has reviewed the application for an award of service awards to the Settlement Class Representatives submitted by Class Counsel and the memoranda of law and other materials submitted regarding that application. The benefits described above are the only consideration the Defendants shall be obligated to give to the Settlement Class Members, with the exception of the service awards to be paid to the Class Representatives, which are supported by – among other things – evidence of the Class Representatives' active involvement in the Lawsuit. Those service awards shall be paid by ironSource as follows within ten days of the Effective Date:

Mr. Michael McDonald:  $833

Ms. Tamara Draut:  $833

Ms. Dominque Murillo:  $833

28. Defendant has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of Plaintiffs' allegations, or of any liability, fault, or wrongdoing of any kind.

29. If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

30. The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession

by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission, concession, or presumption regarding such matters. However, the Settlement Agreement may be introduced as evidence of the Parties' respective obligations under the Court's continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

31. Without affecting the finality of this order or the final judgment in any way, the Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives, the Settlement Class Members, and the Defendant for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Order.

IT IS SO ORDERED.

DATED: April 12, 2021

_____
HON. JAMES DONATO
UNITED STATES DISTRICT JUDGE