UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMANDA RUSHING, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>　　　　　Defendants. | Case No.  3:17-cv-04419-JD<br><br>**[PROPOSED]** **ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH COMSCORE, INC. AND FULL CIRCLE STUDIES, INC.** |

This matter came before the Court for hearing on December 17, 2020, pursuant to the Court's Preliminary Approval Order dated September 24, 2020 (Dkt. 371). The Court has considered the Settlement Agreement (the "Settlement") between Plaintiffs Amanda Rushing, Ashley Supernault, Julie Remold, and Ted Poon ("Plaintiffs") and Comscore, Inc. and Full Circle Studies, Inc. ("Comscore" or "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including in any papers filed and proceedings had herein. Good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1. Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement. *See* Dkt 364-11.

2. This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement class members. Venue is proper in this District.

3. By entering this Order, the Court does not make any finding of liability or wrongdoing as to Defendant.

4. The Court, for purposes of this Final Approval Order, (1) approves the Settlement described in Plaintiffs' preliminary and final approval papers; (2) enters this Order and a separate judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and definitions set forth in the Settlement Agreement.

5. The Court finds that the notice to the Settlement Class, which consisted of, among other things, (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof; (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions about the Settlement; (v) important dates in the settlement approval process, including the date of the fairness hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees and expenses, as detailed in Plaintiffs' preliminary approval papers and as previously approved by this Court (*see* Dkt. 371), has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or

ORDER GRANTING PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH COMSCORE

1  (b)(2), the court may direct appropriate notice to the class"), this District's Procedural Guidance
2  for Class Action Settlements, and due process.

3        6.      Notice was provided to Settlement Class Members in compliance with this Court's
4  Preliminary Approval Order, paragraphs 4.1 and 4.2 of the Settlement Agreement, due process,
5  and Rule 23 of the Federal Rules of Civil Procedure.

6        7.      The notice given was the best method for providing such notice that was
7  practicable under the circumstances. The notice: (i) fully and accurately informed Settlement
8  Class Members about the lawsuit and settlement; (ii) provided sufficient information so that
9  Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and
10 pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for
11 Settlement Class Members to file written objections to the proposed settlement, to appear at the
12 hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and
13 place of the final approval hearing.

14       8.      There were no timely objections to the Settlement Agreement.

15       9.      The Court finds that Defendant properly and timely notified the appropriate state
16 and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28
17 U.S.C. § 1715.

18       10.     The Court approves the Settlement as fair, reasonable, and adequate and in the best
19 interests of the Settlement class members. The Court has specifically considered the factors
20 relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361
21 F.3d 566 (9th Cir. 2004)), including, inter alia, the strength of Plaintiffs' case; the risk, expense,
22 complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement
23 Class and – if successful – maintaining class action status throughout trial; the relief provided for
24 in the Settlement; the extent of discovery completed and stage of the proceedings; the experience
25 and views of Class Counsel and mediators; and the reaction of Settlement class members to the
26 proposed Settlement.  Furthermore, the Court has specifically considered the factors relevant to
27 class settlement approval set forth in Fed. R. Civ. P. 23(e) and this District's Procedural Guidance
28 for Class Action Settlements, including whether:

    (A)    the Class Representatives and Class Counsel have adequately represented the Settlement Class;

    (B)    the Settlement was negotiated at arm's length;

    (C)    the relief provided for the Settlement Class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement class members;

        (iii)    the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);

    (D)    the number of class members who objected to or commented on the Settlement; and

    (E)    the Settlement treats Settlement class members equitably relative to each other.

11. The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.

12. Comscore has agreed to meaningful injunctive relief to further protect the privacy of children in the United States playing mobile games that interact with Comscore services. The Settlement Agreement with Comscore, including all terms of the agreed-upon injunctive relief, is adopted herein. *See* Dkt. 364-11.

13. <u>Injunctive Relief Pertaining to Client Notification</u>: At present, Comscore's clients must proactively inform Comscore whether a given application is child-directed by designating the application as child-directed in a client dashboard. In those circumstances, Comscore categorizes the application within the "Kids" category in the Client Focus Dictionary ("CFD"). The CFD is the taxonomy used for reporting traffic in Comscore's digital products using a categorization structure (category and subcategory) with 29 categories and 79 subcategories. "Kids" is one of those 29 categories. Client requests to add an application to the Comscore CFD

are reviewed by the Client Success Team which decides whether to submit a CFD Form to the CFD Team for inclusion into the CFD.

    A. <u>ENHANCEMENT NO. 1</u>: Comscore will update external-facing tagging documentation to include a section for Children & Children's Directed Content to describe the process for setting the label ns_ak (*i.e.*, device ID) – to not collect nor transmit data. Internal manuals will also include updates. Comscore will continue to receive the obfuscated IP address and event data (e.g., duration, etc.). The CFD Form will be updated to request affirmative confirmation of whether an application is child-directed. The Client Success Team will receive training, and template language/processes will be updated, so that clients will be asked proactively whether an application is child-directed, and how to categorize the CFD. Information about which applications are child-directed will be proactively supplemented by third party data sources as described below. Comscore will continue to use proprietary methodology to create a list of child-directed applications, which will be monitored and updated periodically.

    B. <u>ENHANCEMENT NO. 2</u>: In addition to proprietary methodology, Comscore will utilize third-party information to align application identification. Specifically, Comscore will work with a third-party application intelligence provider, that reviews age related signals from Google and Apple mobile application stores. The review will use platform developer guidance requirements to best identify child-directed applications. Review criteria will be updated in accordance with industry developments. All applications identified in this category will be included in the list of child-directed applications.

    C. <u>ENHANCEMENT NO. 3</u>: Comscore will create a client objection policy. Under this policy, a client will be required to provide explicit evidence, in the

form of an attestation, that its application is not directed to children in order to remove the application from the list of child-directed applications.

14. <u>Injunctive Relief Pertaining to Data Use and Treatment for COPPA Settings</u>:

   A. <u>ENHANCEMENT NO. 4</u>: Comscore will create a process to remove device IDs at ingest. Specifically, in accordance with Enhancements Nos. 1-3, Comscore will automatically review applications against the list of child-directed applications and all device IDs will be removed at ingest from all applications on the child-directed list.

   B. <u>ENHANCEMENT NO. 5</u>: Comscore will review its client list against the list of child-directed applications. Where able, Comscore will send its clients notification that the application is categorized as child-directed, and instructions for updating SDK implementations and setting the label ns_ak (i.e., device ID) – so they do not collect or transmit data. If the client does not respond to Comscore's notification within 60 days, Comscore will take reasonable efforts as set forth above to cease ingestion of device IDs transmitted to or from that client's child-directed application(s).

15. <u>Injunctive Relief Pertaining to Data Use</u>: Data is only used for pre-approved syndicated audience measurement products and is not used in behavioral advertising products (*i.e.*, the SDK itself is not a behavioral advertising product). Data derived from the SDK and Comscore's services might be used in conjunction with standalone behavioral advertising products, but in such instances, Comscore requires that any such behavioral advertising does not include any identifier for which the age was modeled as under 13.

   A. <u>ENHANCEMENT NO. 6</u>: Comscore would increase the age threshold described above such that behavioral advertising would not include any identifier for which the age was modeled as under eighteen (18).

16. Within 180 days of entry of this Order, Defendants shall provide Plaintiffs with an affidavit certifying compliance with paragraphs 13-15.

17. The injunctive relief set forth above shall be in place for a period of three years from the Effective Date, subject to any applicable change in the U.S. privacy data laws which renders the injunctive relief set forth above inapplicable.

18. The Parties are to bear their own costs, except as awarded by this Court in a separate judgment and order on attorneys' fees made pursuant to Federal Rule of Civil Procedure 54(b), which implements the agreements between the Parties as to reasonable attorneys' fees and expenses.

19. The Parties and Settlement class members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every Settlement class member shall be deemed to have released, acquitted and forever discharged the Defendant, from any and all Released Claims.

20. Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Settlement class members shall be deemed to have agreed not to take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims, directly or indirectly, against Defendant.

21. The Court hereby certifies, pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims of (i) the common law claim of intrusion upon seclusion; (ii) the right to privacy under California Constitution Article 1, Section 1; (iii) New York General Business Law § 349; (iv) California Business & Professions Code §§ 17200 et seq.; and (v) Massachusetts General Laws ch. 214, § 1B; on behalf of a Settlement Class defined as follows:

> All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 18, or were younger than the age of 18 when they played the Where's My Water? and Where's My Water? Free/Lite Disney Gaming Apps.

1   22.     The Court finds, for settlement purposes only, that the Settlement Class satisfies
2   the requirements of Federal Rule of Civil Procedure 23(a): (1) <u>Numerosity</u>:  the Settlement Class
3   is comprised of millions of individuals, given that the Where's My Water? and Where's My
4   Water? Free/Lite Disney Gaming Apps have been downloaded millions of times in the United
5   States alone during the relevant period; (2) <u>Commonality</u>:  Plaintiffs readily meet this standard as
6   the claims of the Settlement Class all arise from a common course of alleged conduct: that the
7   Defendants worked in concert to collect class members' children's personal data for commercial
8   purposes by embedding SDKs that operate uniformly as to all users in the Where's My Water?
9   and Where's My Water? Free/Lite Disney Gaming Apps; (3) <u>Typicality</u>:  the Class
10  Representatives' claims are typical of those of the settlement class members, as the Class
11  Representative's children played the Where's My Water? and Where's My Water? Free/Lite
12  Disney Gaming Apps, and therafter, the Defendants processed their children's personal data for
13  commercial purposes and (4) <u>Adequacy</u>:  the Settlement Class Representatives and Class Counsel
14  have fairly and adequately protected the interests of the Settlement Class, and shall continue to do
15  so.

16  23.     The Court finds that the Settlement Class satisfies the requirements of Federal
17  Rule of Civil Procedure 23(b)(2), because the agree-upon injunctive relief "is appropriate
18  respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  This is because the Settlement
19  Agreement requires Defendant to make uniform changes that impact all members of the
20  Settlement Class, by changing how it collects, treats, and uses personal data of users under the
21  age of 18.

22  24.     The Court has reviewed the application for an award of service awards to the
23  Settlement Class Representatives submitted by Class Counsel and the memoranda of law and
24  other materials submitted regarding that application. The benefits described above are the only
25  consideration the Defendants shall be obligated to give to the Settlement class members, with the
26  exception of the service awards to be paid to the Class Representatives, which are supported by –
27  among other things – evidence of the Class Representatives' active involvement in the Lawsuit.
28  Those service awards shall be paid as follows within thirty days of the the Effective Date:

        Ms. Amanda Rushing:  $500

        Ms. Ashley Supernault:  $500

        Ms. Julie Remold:  $500

        Mr. Ted Poon:  $500

25. Defendant has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of Plaintiffs' allegations, or of any liability, fault, or wrongdoing of any kind.

26. If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

27. The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission, concession, or presumption regarding such matters. However, the Settlement Agreement may be introduced as evidence of the Parties' respective obligations under the Court's continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

28. Without affecting the finality of this order or the final judgment in any way, the Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives, the Settlement Class Members, and the Defendant for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Order.

IT IS SO ORDERED.

DATED: April 12, 2021

_____
HON. JAMES DONATO
UNITED STATES DISTRICT JUDGE