UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMANDA RUSHING, et al.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>　　　　　　Defendants. | Case No. 3:17-cv-04419-JD<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH TWITTER, INC. AND MOPUB, INC.** |

1   This matter came before the Court for hearing on December 17, 2020, pursuant to the Court's Preliminary Approval Order dated September 24, 2020 (Dkt. 371). The Court has considered the Settlement Agreement (the "Settlement") between Plaintiffs Amanda Rushing, Ashley Supernault, Julie Remold, and Ted Poon ("Plaintiffs") and Twitter, Inc. and MoPub, Inc. ("Twitter" or "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including in any papers filed and proceedings had herein.  Good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.   Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.  *See* Dkt 364-12.

2.   This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement Class Members. Venue is proper in this District.

3.   By entering this Order, the Court does not make any finding of liability or wrongdoing as to Twitter.

4.   The Court, for purposes of this Final Approval Order, (1) approves the Settlement described in Plaintiffs' preliminary and final approval papers and attached hereto; (2) enters this Order and a separate judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and definitions set forth in the Settlement Agreements.

5.   The Court finds that the notice to the Settlement Class, which consisted of, among other things, a website containing information regarding (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof; (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions about the Settlement; (v) important dates in the settlement approval process, including the date of the Fairness Hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees and expenses, as detailed in Plaintiffs' preliminary approval papers and as previously approved by this Court (*see* Dkt. 371), has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct

1  appropriate notice to the class"), this District's Procedural Guidance for Class Action Settlements,
2  and due process.

3      6.    Notice was provided to Settlement Class Members in compliance with this Court's
4  Preliminary Approval Order, paragraphs 5.1 through 5.3 of the Settlement Agreement, due
5  process, and Rule 23 of the Federal Rules of Civil Procedure.

6      7.    The notice given was the best method for providing such notice that was
7  practicable under the circumstances. The notice: (i) fully and accurately informed Settlement
8  Class Members about the lawsuit and settlement; (ii) provided sufficient information so that
9  Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and
10 pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for
11 Settlement Class Members to file written objections to the proposed settlement, to appear at the
12 hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and
13 place of the final approval hearing.

14     8.    There were no timely objections to the Settlement Agreement.

15     9.    The Court finds that Defendant properly and timely notified the appropriate state
16 and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28
17 U.S.C. § 1715.

18     10.    The Court approves the Settlement as fair, reasonable, and adequate and in the best
19 interests of the Settlement Class Members. The Court has specifically considered the factors
20 relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361
21 F.3d 566 (9th Cir. 2004)), including, inter alia, the strength of Plaintiffs' case; the risk, expense,
22 complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement
23 Class and – if successful – maintaining class action status throughout trial; the relief provided for
24 in the Settlement; the extent of discovery completed and stage of the proceedings; the experience
25 and views of Class Counsel and mediators; and the reaction of Settlement Class Members to the
26 proposed Settlement. Furthermore, the Court has specifically considered the factors relevant to
27 class settlement approval set forth in Fed. R. Civ. P. 23(e) and this District's Procedural Guidance
28 for Class Action Settlements, including whether:

    (A)    the Class Representatives and Class Counsel have adequately represented the Settlement Class;

    (B)    the Settlement was negotiated at arm's length;

    (C)    the relief provided for the Settlement Class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement Class Members;

        (iii)    the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);

    (D)    the number of Class Members who objected to or commented on the Settlement; and

    (E)    the Settlement treats Settlement Class Members equitably relative to each other.

11.    The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion.

12.    Twitter has agreed to injunctive relief relating to the claims at issue. The Settlement Agreement with Twitter, including all terms of the agreed-upon injunctive relief, is adopted herein. *See* Dkt. 364-12.

13.    <u>Changes for Specific Apps Identified By Plaintiffs</u>. Within 120 days of the entry of this Order, for all apps on **Exhibits A-C** to the Settlement (Dkt. No. 364-12 at 26-188), which are using the MoPub SDK to serve ads as of that date, Twitter will either (a) stop providing ad serving or marketplace services to the app or (b) shall notify the app publisher that their use of MoPub's services will be limited within 60 days of notice to Contextual Advertising unless the app publisher opts-out pursuant to paragraph 14(D) below or has implemented an age gate, in which case the MoPub marketplace service shall require Contextual Advertising to be shown to users whom the publisher identifies to MoPub as being under age 13. In such instances that

1  Twitter does not have contact information for the developer of apps identified in **Exhibits A-C**,
2  Twitter will either stop providing ad serving or marketplace services to the app or shall switch the
3  affected app(s) to receive only Contextual Advertising on marketplace.

    A. Apps set forth in Exhibit A to the Settlement that are included in Google's "Designed for Families" program, the "Family" section of Google Play, or the "Kids Category" of the Apple App Store, and which Class Counsel's forensic analysis identified as containing the MoPub SDK(Dkt. 364-12 at 26);

    B. Apps set forth in **Exhibit B** to the Settlement (Dkt. 364-12 at 184) that the Children's Advertising Review Unit ("CARU") has determined are directed to children and that have been included in a National Advertising Division ("NAD")/CARU Case Report;

    C. Apps set forth in **Exhibit C** to the Settlement that include the following child-centric words in the app name: Kid, Boy(s), Girl(s), Baby, Babies, Toddler(s), Child, Children, Candy, Toy(s), Princess(es), Prince(s), Dress Up, Doll(s), Tiny, Bubble(s), Coloring, Preschool, and Kindergarten (Dkt. 364-12 at 188).

    D. Subject to paragraph 14(A) above, if a developer contacts Twitter and provides attestation (including by written communication or by making appropriate designations in the MoPub interface) that one of its apps is not child-directed then Twitter will have no further obligations with respect to any such app.

20      14. <u>Deletion of Data</u>. Within 180 days of entry of this Order, Twitter will confirm
21  that it has deleted Personal Data (i.e., device IDs, including IDFAs, AAIDs and Android IDs
22  (hashed or otherwise); (ii) IP addresses; or (iii) geographic longitude and latitude or any other
23  street-level location information) collected from the Disney Gaming Apps and any apps identified
24  pursuant to the processes set forth in paragraphs 13(A)-13(C), above, unless and to the extent
25  such information is allowed for Contextual Advertising. Provided, however, that such Personal
26  Information may be stored, used or disclosed to the extent requested by a government agency or
27  required by law, regulation, or Court order.

28

1      15.    In addition, for mixed-audience apps, whenever a user of a device is identified to
Twitter as being a child under 13, either via an age-gate or direct notification from the publisher
that the user is under 13, Twitter either (a) shall stop providing any advertising services to the
App related to that user's device(s) as identified to Twitter or (b) shall limit marketplace service
for such user (as identified to Twitter) to Contextual Advertising.

       16.    <u>Prospective Changes for Developers vis-à-vis COPPA Settings</u>.  Within 120 days
of the entry of this Order, for all new Developers, Twitter shall:

      A. Require Developers to agree to MoPub's terms of service and policies which currently provide that Developers not use MoPub's services for any apps directed to children under 13 or transmit personal information from children under 13 to MoPub unless they have an agreement with MoPub that addresses COPPA and/or child-directed apps (including a publisher's responsibilities for evaluating their apps and making appropriate designations.

      B. Require Developers to confirm that their app is not child directed or acknowledge whether a particular app is directed at children under 13.

       17.    <u>Duration</u>.  Twitter agrees to follow these requirements for at least three years after the entry of this Order unless there is a change in legal requirements.  If COPPA or similar law is amended or enacted or the FTC provides regulatory changes, additional guidance, or the FTC or another party takes any other action that is inconsistent with the injunctive relief described herein, Twitter may adapt its practices to comply with that new law, regulation, FTC guidance, or FTC instruction or position on the issue.  In such an instance, Twitter will provide Class Counsel in writing with an explanation of how Twitter is adapting its practices to comply with that new law, regulation, FTC guidance, or FTC instruction on the issue.

       18.    The Parties are to bear their own costs, except as awarded by this Court in a separate judgment and Order on Attorneys' Fees made pursuant to Federal Rule of Procedure 54(b), which implements the agreements between the Parties as to reasonable attorneys' fees and expenses.

1      19.    The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every Settlement Class Member shall be deemed to have released, acquitted and forever discharged the Defendant, from any and all Released Claims.

20.    Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Settlement Class Members shall be deemed to have agreed not to take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims, directly or indirectly, against Defendant.

21.    The Court hereby certifies, for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims of (i) the common law claim of intrusion upon seclusion; (ii) the right to privacy under California Constitution Article 1, Section 1; (iii) New York General Business Law § 349; (iv) California Business & Professions Code §§ 17200 et seq.; and (v) Massachusetts General Laws ch. 214, § 1B; on behalf of a Settlement Class defined as follows:

> all parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 13, or were younger than the age of 13 when they used a Disney app including Where's My Water? Free / Lite and/or Where's My Water? 2 (collectively, "Disney Gaming Apps") and/or an app listed in Exhibits A through C (Dkt. No. 364-12 at 26-188) that was embedded with MoPub's SDK.

22.    The Court finds, for settlement purposes only, that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a): (1) <u>Numerosity</u>: the Settlement Class is comprised of millions of individuals, given that the Disney Gaming Apps have been downloaded millions of times in the United States alone during the relevant period; (2) <u>Commonality</u>: in the context of the Settlement there are questions of law or fact common to the Settlement Class with respect to the Disney Gaming Apps, including whether the conduct alleged violates the common law of intrusion upon seclusion, the California constitutional right of

1  privacy, New York General Business Law § 349, or Massachusetts General Laws ch. § 214; (3)

2  <u>Typicality</u>:  the Class Representatives' claims are typical of those of the Settlement Class

3  Members they seek to represent;  and (4) <u>Adequacy</u>:  the Settlement Class Representatives and

4  Class Counsel have fairly and adequately protected the interests of the Settlement Class, and shall

5  continue to do so.

6        23.    The Court finds that the Settlement Class satisfies the requirements of Federal

7  Rule of Civil Procedure 23(b)(2), because the agree-upon injunctive relief "is appropriate

8  respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  This is because the Settlement

9  Agreement requires Defendant to make uniform changes applicable to members of the Settlement

10 Class.

11       24.    The Court has reviewed the application for an award of service awards to the

12 Settlement Class Representatives submitted by Class Counsel and the memoranda of law and

13 other materials submitted regarding that application. The benefits described above are the only

14 consideration the Defendant shall be obligated to give to the Settlement Class Members, with the

15 exception of the service awards to be paid to the Class Representatives, which are supported by –

16 among other things – evidence of the Class Representatives' active involvement in the Lawsuit.

17 Those service awards shall be paid to the Settlement Administrator within thirty days of the

18 Effective Date:

19     Ms. Amanda Rushing:  $500

20     Ms. Ashley Supernault:  $500

21     Ms. Julie Remold:  $500

22     Mr. Ted Poon: $500

23       25.    Defendant has denied any liability, fault, or wrongdoing of any kind in connection

24 with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor

25 any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall

26 be construed as an admission or concession by Defendant of the truth of any of Plaintiffs'

27 allegations, or of any liability, fault, or wrongdoing of any kind.

28

1  26. If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

27. The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission, concession, or presumption regarding such matters. However, the Settlement Agreement may be introduced as evidence of the Parties' respective obligations under the Court's continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

28. Without affecting the finality of this Order or the final judgment in any way, the Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives, the Settlement Class Members, and the Defendant for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Order.

IT IS SO ORDERED.

DATED:  April 12, 2021

_____
HON. JAMES DONATO
UNITED STATES DISTRICT JUDGE